IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WHITMAN INSURANCE COMPANY, LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> TRAVELERS INDEMNITY COMPANY, *et al.* <br><br> *Defendants.* | Civil Action No. 1:05CV01125 <br> John Garrett Penn, Judge |

### DECLARATION OF ARCHIE L. MEAIRS IN SUPPORT OF WHITMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE TRIGGER-OF-COVERAGE ISSUE

I, Archie L. Meairs, declare as follows:

1.  I am President of Whitman Insurance Company, Ltd. and Director of Risk Management for PepsiAmericas, Inc. Through those capacities I have personal knowledge of the matters set forth herein, and if called and sworn to testify as a witness, I could and would testify competently thereto.

2.  Whitman Insurance Company, Ltd. ("Whitman") is a captive insurance company responsible for portions of the primary Comprehensive General Liability ("CGL") insurance issued to IC Industries, Inc., previously known as Illinois Central Industries, Inc., later known as Whitman Corporation and now known as PepsiAmericas, Inc. (collectively "IC Industries") for the policy periods between March 1, 1978 to April 1, 1985.

3.  Consultants, staff under my supervision, and I have reviewed the historical insurance CGL policies of IC Industries from time to time for various reasons. These CGL policies issued to IC Industries provided coverage to Abex Corporation, now known as Pneumo

Abex LLC("Abex") as an additional insured. During those policy periods, Abex was a wholly-owned subsidiary of IC Industries. Whitman has paid millions of dollars in connection with the indemnity and defense costs for the Abex asbestos-related suits and claims, as defined herein.

4.  Abex has admitted that it was a manufacturer, seller, and distributor of brake-linings for automobiles, trucks, industrial machinery, and railroad cars (hereinafter "friction products"). Abex has also admitted that, at one time, the friction products manufactured, sold and/or distributed by Abex contained asbestos.

5.  Review of data summaries and underlying complaints establishes that, as a result of its manufacture, sale, and/or distribution of friction products containing asbestos, thousands of product liability suits and claims have been brought against Abex (the "Abex asbestos-related suits and claims").

6.  Review of data summaries and underlying complaints reveals that the Abex asbestos-related suits and claims seek damages because of alleged bodily injury or personal injury (hereinafter, "bodily injury"). The Abex asbestos-related suits and claims allege causes of action including, without limitation, negligence, strict liability, and product liability, that allegedly arose from exposure to a friction product allegedly manufactured and sold or distributed by Abex. The Abex asbestos-related suits and claims include claims based on theories such as conspiracy, market share, and/or similar claims or causes of action.

7.  The Abex asbestos-related suits and claims are covered by numerous primary CGL policies issued to American Brake Shoe Company and IC Industries between 1943 and 1985. These primary policies, and certain umbrella policies, have been the subject of more than two decades of litigation before this Court and the Court of Appeals in the related action captioned *Abex Corporation v. Maryland Casualty Company*, No. 82-2098 (JGP) ("*Abex*

*Action*").

8. The defendant insurers in this case issued various umbrella and excess policies of insurance to Abex Corporation or its affiliates providing excess liability coverage for the same time period as that provided in the policies at issue in the *Abex Action*. Review of the policies and summaries establishes that most of the defendant insurers' policies, which sit above the primary policies or on the same layers as the umbrella policies at issue in the *Abex Action*, "follow form" to, or have substantially the same terms and conditions as those contained in, the underlying primary or umbrella policies.

9. Review of the policies and summaries and other historic documents also establishes that all of the post-1970 insurance policies identified in this action were negotiated, drafted, issued and delivered in Illinois to IC Industries, that all of these policies were also brokered in Illinois through Rollins Burdick Hunter Company's Chicago, Illinois office, and that all premiums for these policies were paid in Illinois. The Lloyd's post-1970 policies even provide an Illinois-based agent for purposes of process of service under the policies.

10. Since the time of their issuance, the post-1970 policies have been maintained in Illinois in the insurance department of IC Industries, where they remain to date.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of July, 2005 at Rolling Meadows, Illinois.

*[signature]*

Archie L. Meairs