IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WHITMAN INSURANCE COMPANY, LTD.,**

    *Plaintiff,*

v.

**TRAVELERS INDEMNITY COMPANY,** *et al.*

    *Defendants*.

Civil Action No. 1:05CV01125
John Garrett Penn, Judge

### PROPOSED ORDER

This matter is before the Court on Whitman Insurance Company Ltd.'s Motion for Partial Summary Judgment on the Trigger-of-Coverage Issue made pursuant to Fed. R. Civ. P. 56. Having considered the motion, together with the declaration, statement of undisputed facts, and memorandum offered in support thereof, and the responses thereto, the Court hereby finds and orders as follows:

**Undisputed Facts**

1.    Abex Corporation, now known as Pneumo Abex LLC, ("Abex"), was a manufacturer engaged in the sale and distribution of brake-linings for automobiles, trucks, industrial machinery, and railroad cars ("friction products"). *Abex Corporation v. Maryland Casualty Company,* 790 F.2d 119, 122 (D.C. Cir. 1986); Declaration of Archie L. Meairs ("Meairs Decl.") ¶4.

2.    Abex manufactured and sold or distributed friction products containing asbestos. 790 F.2d at 122; Meairs Decl. ¶4.

3.    For 24 years this Court has adjudicated the coverage dispute between Abex and its insurers over the insurers' obligations to defend and indemnify Abex in connection with

thousands of personal injury claims arising from exposure to products containing asbestos allegedly manufactured and sold or distributed by Abex (hereinafter, the "Abex asbestos-related suits and claims").

4. This case concerns the obligations of certain excess insurers to defend and indemnify Abex in connection with the Abex asbestos-related suits and claims. Liability for these claims is covered by numerous primary Comprehensive General Liability ("CGL") policies issued to American Brake Shoe Company and IC Industries, Inc. between 1943 and 1985. Meairs Decl. ¶7.

5. These primary policies, and certain umbrella policies, have been the subject of extensive litigation before this Court and the Court of Appeals in the related action captioned *Abex Corporation v. Maryland Casualty Company*, No. 82-2098 (JGP) ("*Abex Action*").

6. In this case, Plaintiff Whitman seeks the hold the defendant excess insurers to the same or consistent coverage rulings that have governed the responsibilities of Abex's primary and umbrella insurers for the last two decades.

7. Whitman is a captive insurance company responsible for portions of the primary CGL insurance issued to IC Industries, Inc., previously known as Illinois Central Industries, Inc., later known as Whitman Corporation, and now known as PepsiAmericas, Inc. (collectively "IC Industries"), for the policy periods between March 1, 1978 to April 1, 1985. Meairs Decl. ¶2.

8. The CGL policy is the standard liability insurance policy that, with only rare exceptions, is uniformly used by the insurance industry in the United States, and all of the primary policies at issue in the *Abex Action* contain identical or substantively identical language to the standard CGL policy in defining the insurers' obligations to the insured. *Abex*, 790 F.2d at 122.

9. Under the CGL policy, the insurers are obligated to indemnify Abex for all damages that result from "bodily injury or property damage to which [the] policy applies caused by an occurrence . . . ." An "occurrence," in turn, is defined in the CGL policy to include "injurious exposure to conditions which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." 790 F.2d at 122.

10. The defendant insurers issued various umbrella and excess policies of insurance to Abex Corporation or its affiliates providing excess liability coverage for the same time period as that provided in the policies at issue in the *Abex Action*. Most of the umbrella and excess policies, which sit above the primary policies or on the same layers as the excess policies at issue in the *Abex Action*, "follow form" to, or have substantially the same terms and conditions as, the underlying primary policies. Meairs Decl. ¶8. Consequently, the umbrella and excess policies at issue in this case require the defendant insurers to indemnify Abex for all damages that result from "bodily injury" caused by an "occurrence," as defined in the primary policies. The definition of "occurrence" in the primary policies therefore determines what event or events will "trigger" the defendant insurers' duties to defend and indemnify Abex.

11. In May 1999, this Court conducted an eight-day trial in the *Abex Action* on the issue of when injury-in-fact occurred in the underlying Abex asbestos-related suits and claims.

12. In an opinion dated October 9, 2001, the Court concluded that the issue had been "resolved by the parties by way of a stipulation which is not inconsistent with the evidence this Court heard during a factual hearing on when injury-in-fact occurs." *Pneumo Abex Corp. v. Maryland Cas. Co.*, No. 82-2098, 2001 U.S. Dist. LEXIS 20297 at *7 (D.D.C. Oct. 9, 2001).

13. All of the post-1974 policies – in fact, all of the post-1970 policies – were issued to IC Industries in Illinois. Meairs Decl. ¶¶ 9-10.

### **Conclusions of Law**

The courts of the only potentially relevant jurisdictions – Illinois and New York– have held that coverage under the standard CGL policy is triggered when injury occurs during the policy period. *See Zurich v. Raymark*, 514 N.E.2d 156, 159 (Ill. 1987) (applying Illinois law); *Stonewall Ins. Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178, 1196-97 (2d Cir. 1995) (applying New York and Texas law); *Abex*, 790 F.2d at 4 (applying New York law). Illinois law applies to the post-1970 policies.

Addressing the same issue presented by this motion, the Court of Appeals in *Abex* held that the insurers' duty to indemnify is triggered by an injury occurring during the policy period. *Abex*, 790 F.2d at 126-27. Under this theory, "'a real but undiscovered *injury*, proved in retrospect to have existed at the relevant time, would establish coverage, irrespective of the time the injury became diagnosable.*"* *Stonewall*, 73 F.3d at 1194 (quoting *American Home Prods. Corp. v. Liberty Mutual Ins. Co.*, 565 F. Supp. 1485, 1497, (S.D.N.Y. 1983), *aff'd*, 748 F.2d 260 (2d Cir. 1984)) (alterations and internal quotation marks omitted). In other words, the asbestos-induced injury "need not be compensable or diagnosable during the policy period if its existence during that period can be proved in retrospect." *Abex*, 790 F.2d at 121.

Although the Court of Appeals in *Abex* focused on New York law, a consistent result is reached if Illinois law is applied to all of the post-1970 policies. In *Zurich* the Illinois Supreme Court held that the insurers' obligations are triggered by "bodily injury," "sickness," or "disease" taking place during the policy period. *Zurich*, 514 N.E.2d at 161. Accordingly, the injury-in-fact trigger applied by the Court of Appeals to the Abex asbestos-related suits and claims in *Abex* is entirely consistent with the trigger of coverage applicable to all post-1970 Illinois policies.

In *Abex*, the Court of Appeals reversed this Court's grant of summary judgment because the record at that time was "devoid of evidence on when asbestos-related injury occurs." 790

F.2d at 127. The court recognized, however, that asbestos-related injury may occur "simultaneously with exposure," as Abex argued, but declined to so hold as a matter of law because the courts were split on the issue at that time. *Id.* at 127 & n.36.

In the 19 years since the Court of Appeals' 1986 decision, a wealth of scientific and medical information has been made available to the courts on precisely this issue, which has resulted in a growing consensus that injury-in-fact indeed occurs at or shortly after initial exposure to asbestos. *See, e.g., Zurich*, 514 N.E.2d at 159-61; *Stonewall*, 73 F.3d at 1194, 1199. As a result, each exposure to asbestos constitutes a separate injury-in-fact for purposes of determining whether coverage under a particular policy period is triggered. Consequently, coverage under the excess policies in this case is triggered for each year in which the claimants in the Abex asbestos-related suits and claims were exposed to asbestos fibers.

In addition, a claimant who has been exposed to asbestos suffers injury not only at the time of initial exposure, but also during every year thereafter, until the claimant dies. *Stonewall*, 73 F.3d at 1198; *Stonewall Ins. Co. v. Asbestos Management Corp.*, No. 86 Civ. 9671, 1998 WL 405047 *3 (S.D.N.Y. July 17, 1998). These conclusions are consistent with this Court's findings following the May 1999 trial on the injury-in-fact issue held in the *Abex Action*.

There is no need for the Court to conduct an additional trial on this issue. As the Court of Appeals recognized in *Abex*, since the Court already has determined "that asbestos exposure causes injury at a particular time and in a particular manner," it is appropriate for the Court "to apply these findings to *all* similar cases." 790 F.2d at 128 (emphasis original).

IT IS THEREFORE ORDERED that Plaintiff Whitman Insurance Company Ltd.'s Motion for Partial Summary Judgment on the Trigger-of-Coverage Issue should be and hereby is GRANTED in all respects; and it is further

ORDERED that

a)  Coverage under defendants' umbrella and excess policies in this case is triggered if injury-in-fact occurs during the policy period;

b)  Defendants' excess policies in this case are triggered if the claimants in the underlying Abex asbestos-related suits and claims were exposed to asbestos at any time during the policy period; and

c)  The insurer defendants' duty to indemnify was triggered if a claimant who had previously been exposed to asbestos fibers was alive during the applicable policy period.

_____  _____
DATE  UNITED STATES DISTRICT JUDGE