IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WHITMAN INSURANCE COMPANY, LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**TRAVELERS INDEMNITY COMPANY,** *et al.*<br><br>*Defendants*. | **Civil Action No. 1:05CV01125**<br>**John Garrett Penn, Judge**<br><br>Related Case:<br>Civil Action No. 82-2098 |

### WHITMAN INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE NUMBER-OF-OCCURRENCE ISSUE

Pursuant to Fed. R. Civ. P. 56, plaintiff Whitman Insurance Company, Ltd. ("Whitman" or "plaintiff") respectfully moves this Court for an order granting partial summary judgment and for a determination that all Abex asbestos-related suits and claims arise from a single occurrence for purposes of determining that the post-1973 primary layer of insurance, including any deductibles, self-insured retentions, or unaggregated layers contained therein is exhausted. A single occurrence interpretation is consistent with (i) this Court's interpretation of identical occurrence definitions to similar asbestos-related products claims in *Owens-Illinois, Inc. v. Aetna Cas. and Sur. Co.*, 597 F. Supp. 1515, 1528 (D.D.C. 1984) ("*Owens-Illinois*"), (ii) the law of Illinois, the state in which all the post-1973 primary policies were negotiated, drafted, brokered, issued and delivered, and (iii) agreements between the post-1973 primary insurers and the insureds interpreting their own policy terms.

For these reasons, and those set forth in the accompanying memorandum of points and authorities, and the declaration of Archie L. Meairs, plaintiff seeks a ruling that all Abex

asbestos-related suits and claims arise from one occurrence pursuant to the terms and conditions of the post-1973 primary policies. Specifically plaintiff requests that this Court find, for the purposes of defendants' policies of insurance, (i) all Abex asbestos-related suits and claims stem from one occurrence per policy period under the primary policies providing coverage between March 1, 1974 and April 1, 1985; (ii) only one deductible is payable for all past, pending and future Abex asbestos-related suits and claims that trigger policies providing coverage between March 1, 1974 and March 1, 1975; (iii) only one self-insured retention per policy period is payable for all past, pending and future Abex asbestos-related suits and claims that trigger policies providing coverage between March 1, 1975 and March 1, 1978; and (iv) only one effective self-insured retention is payable per policy period for all past, pending and future Abex asbestos-related suits and claims that trigger policies providing coverage between March 1, 1978 and April 1, 1985.

          Respectfully submitted,

Dated: July 14, 2005

Daniel E. Chefitz (D.C. Bar No. 481420)
Brooke Clagett (D.C. Bar No. 460570)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:   202.739.3000
Facsimile:   202.739.3001

*Attorneys for Plaintiff*
*Whitman Insurance Company, Ltd.*

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WHITMAN INSURANCE COMPANY, LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**TRAVELERS INDEMNITY COMPANY,** *et al.*<br><br>*Defendants*. | Civil Action No. 1:05CV01125<br>John Garrett Penn, Judge<br><br>Related Case:<br>Civil Action No. 82-2098 |

**WHITMAN INSURANCE COMPANY'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT ON THE NUMBER-OF-OCCURRENCE ISSUE</u>**

By this motion, plaintiff Whitman Insurance Company, Ltd. ("Whitman" or "plaintiff") seeks a determination that all Abex asbestos-related suits and claims that arise from a single occurrence for purposes of determining that the post-1973 primary layer of insurance, including any deductibles, self-insured retentions, or unaggregated layers contained therein is exhausted. A single occurrence interpretation is consistent with (i) this Court's interpretation of identical occurrence definitions to similar asbestos-related products claims in *Owens-Illinois, Inc. v. Aetna Cas. and Sur. Co.*, 597 F. Supp. 1515, 1528 (D.D.C. 1984) ("*Owens-Illinois*"), (ii) the law of Illinois, the state in which all the post-1973 primary policies were negotiated, drafted, brokered, issued and delivered, and (iii) agreements between the post-1973 primary insurers and the insureds interpreting their own policy terms.

I.      **INTRODUCTION**

Plaintiff is a captive insurance company responsible for portions of the post-1977 primary comprehensive general liability insurance issued to IC Industries, Inc., later known as Whitman Corporation and now known as PepsiAmericas, Inc. (collectively "IC Industries"), which during the relevant years in question provided products liability coverage for Abex Corporation ("Abex") as an additional insured. (IC Industries and Abex are collectively referred to as the "insureds").

For more than two decades, this Court has adjudicated coverage disputes between the insureds and several of its insurers, including National Union, Continental, Northwestern National, Argonaut, Travelers, Liberty Mutual and Maryland Casualty, regarding the obligation to pay for the Abex asbestos-related suits and claims. This Court has resolved many issues concerning the nature and scope of the insurers' duty to defend and indemnify the Abex asbestos-related suits and claims through the issuance of opinions and orders. This Court has repeatedly encouraged the parties to resolve remaining issues by settlement. For example, in an October 9, 2001 opinion, this Court instructed the parties as follows:

> " . . . the parties are strongly encouraged to immediately begin to engage in settlement discussions to resolve the various claims between the parties and to resolve this case."

*Pneumo Abex Corp. v. Maryland Cas. Co.,* 2001 U.S. Dist. LEXIS 20297, 47.

The insureds (including Whitman) and Argonaut, Continental, Northwestern National and National Union have followed this Court's instructions and resolved numerous issues including how the post-1973 primary per-occurrence limits are applied to the Abex asbestos-related suits and claims. The parties have agreed that all Abex asbestos-related suits and claims

2

arise out of one occurrence per policy period for purposes of determining that all applicable deductibles, self-insured retentions and unaggregated per-occurrence layers in their primary policies are exhausted for such suits and claims.

A number of the excess carriers, including Continental, Columbia Casualty, Continental Casualty, Harbor, National Union and Northbrook, are respecting the single occurrence determination and are paying for Abex asbestos-related suits and claims on the basis that the post-1973 primary policies are fully exhausted for such suits and claims. However, Whitman is forced to bring this motion because certain non-performing excess insurers refuse to recognize that such suits and claims arise out of one occurrence for purposes of determining that the post-1973 primary layer, and all deductibles, self-insured retentions, or unaggregated layers contained therein, are exhausted. Accordingly, for the reasons set forth in this memorandum of points and authorities, plaintiff seeks a ruling that all Abex asbestos-related suits and claims arise from one occurrence under the terms and conditions of the post-1973 primary policies.

## II.     STATEMENT OF UNDISPUTED FACTS

The material facts are straightforward and not in dispute. The Abex asbestos-related suits and claims arise from Abex's manufacture and sale or distribution of friction products. Each of the post-1973 primary policies is governed by Illinois law, since all of these policies were drafted, negotiated, brokered, issued and delivered in Illinois to IC Industries at its headquarters in Chicago, Illinois. All of the post-1973 primary policies contain the same, or substantively identical, definitions of "occurrence," which has been applied by this Court in *Owens-Illinois* and by Illinois courts to mean that asbestos-related product claims arise from a single occurrence, namely the manufacture and sale or distribution of asbestos-containing products.

Accordingly, all Abex asbestos-related suits and claims arise from a single occurrence under the terms and conditions of the post-1973 primary policies.

> **A.   The Abex Asbestos-Related Suits and Claims Arise From Manufacture And Sale or Distribution of Abex's Friction Products.**

Abex manufactured and sold or distributed friction products containing asbestos materials.  Statement of Undisputed Facts ("SOF"), ¶¶1 & 2.  As a result of this activity, Abex has faced, faces, and may in the future face, claims, suits, actions, causes of action, and demands alleging bodily injury and/or personal injury due to exposure to products allegedly containing asbestos ("Abex asbestos-related suits and claims").  SOF, ¶3  The Abex asbestos-related suits and claims seek damages because of bodily injury or personal injury (hereafter, "bodily injury") and allege causes of action, including, without limitation, negligence, strict liability, and product liability, that allegedly arose from exposure to a product allegedly manufactured and sold or distributed by Abex.  SOF, ¶4.  The Abex asbestos-related suits and claims include all claims and suits asserted against Abex or its successors alleging bodily injury as the result of the manufacture and sale or distribution of asbestos-containing friction products, including (without limitation) claims based on theories of market share, conspiracy, and similar claims or causes of action.  SOF, ¶5.

Although the Abex asbestos-related suits and claims are based on numerous theories of recovery, they all arise from the manufacture and sale or distribution of asbestos-containing friction products.  Consequently, each of the Abex asbestos-related suits and claims is based on the same cause, causative agency, or "occurrence," *i.e.*, the manufacture and sale or distribution of asbestos-containing friction products by Abex.

4

### B.  All Post-1970 Policies Were Drafted, Brokered, and Issued In Illinois.

All of the known post-1970 policies that potentially provide coverage for the Abex asbestos-related suits and claims were negotiated, drafted, and issued in Illinois to IC Industries at its Chicago, Illinois headquarters.  SOF, ¶6.  At the time the policies were issued to IC Industries, Abex was a wholly-owned subsidiary and an additional insured under the policies.  *Id.*  Since their issuance, the policies have been maintained in the risk management department of IC Industries in Illinois.  SOF, ¶8.  All of the post-1970 policies were brokered through an Illinois broker at its Chicago, Illinois office.  SOF, ¶7.  All of the premiums were paid by IC Industries in Illinois.  *Id.*

### C.  Each Post-1973 Primary Insurance Policy Has the Same or Substantively Identical Definition of Occurrence.

Each of the post-1973 primary insurers defines the term "occurrence" in the same or similar manner for purposes of determining that all Abex asbestos-related suits and claims arise from one occurrence, and that, as a result, any and all deductibles, self-insured retentions, or unaggregated layers contained in the primary layer of insurance is exhausted for Abex asbestos-related suits and claims.   Consistent with this interpretation, excess insurers in each of the post-1973 policy periods, including Continental, Columbia Casualty, Continental Casualty, Harbor, National Union and Northbrook, are currently responding to the Abex asbestos-related suits and claims.

#### 1.  1974 Policy Period

Argonaut Insurance Company ("Argonaut") issued policy CL90308006142 to IC Industries providing primary comprehensive general liability ("CGL") coverage for the policy period March 1, 1974 to March 1, 1975 ("1974 policy period").  SOF, ¶9.  The Argonaut policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to

5

conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." SOF, ¶10.

## 2. **1975 Policy Period**

Continental Insurance Company ("Continental") issued policy L6348764 to IC Industries providing primary CGL coverage for the policy period March 1, 1975 to March 1, 1976 ("1975 policy period"). SOF, ¶11. The Continental policy defines an occurrence to mean "all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." SOF, ¶12.

## 3. **1976 Policy Period**

Continental issued policy L6348764 to IC Industries providing primary CGL coverage for the policy period March 1, 1976 to March 1, 1977 ("1976 policy period"). SOF, ¶13. The Continental policy defines an occurrence to mean "all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." . SOF, ¶14.

## 4. **1977 Policy Period**

Continental issued policy L6348764 to IC Industries providing primary CGL coverage for the policy period March 1, 1977 to March 1, 1978 ("1977 policy period"). SOF, ¶15. The Continental policy defines an occurrence to mean "all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." SOF, ¶16.

### 5.     1978 Policy Period

Northwestern National Insurance Company ("Northwestern") issued policy CLA 791731 to IC Industries providing primary CGL coverage for the policy period March 1, 1978 to April 1, 1979 ("1978 policy period").  SOF, ¶17.  The Northwestern primary policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  SOF, ¶18.  *Id.*

### 6.     1979 Policy Period

Continental issued policy SRL 3632812 to IC Industries providing primary CGL coverage for the policy period April 1, 1979 to April 1, 1980 ("1979 policy period").  SOF, ¶19.  The Continental primary policy defines an occurrence to mean as "all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence."  SOF, ¶20.

### 7.     1980 Policy Period

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") issued policy GLAL 1270278 to IC Industries providing primary CGL which provides coverage for the policy period April 1, 1980 to April 1, 1981 ("1980 policy period").  SOF, ¶21.  This National Union primary policy defines an occurrence to mean "all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence."   SOF, ¶22.

8.     **1981 Policy Period**

National Union issued policy GLAL 1270278 to IC Industries providing primary CGL which provides coverage for the policy period April 1, 1981 to April 1, 1982 ("1981 policy period"). SOF, ¶23. This National Union primary policy defines an occurrence to mean "all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." SOF, ¶24.

9.     **1982 Policy Period**

National Union issued policy GLA 956 76 32 to IC Industries providing primary CGL coverage for the policy period, April 1, 1982 to April 1, 1983 ("1982 policy period"). SOF, ¶25. This National Union primary policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." SOF, ¶26.

10.    **1983 Policy Period**

National Union issued policy GLA 9184801 to IC Industries providing primary CGL coverage for the policy period April 1, 1983 to April 1, 1984 ("1983 policy period"). SOF, ¶27. This National Union policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." SOF, ¶28.

11.    **1984 Policy Period**

National Union issued policy GLA 9184801 to IC Industries providing primary CGL coverage for the policy period April 1, 1984 to April 1, 1985 ("1984 policy period"). SOF, ¶29.

This National Union policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." SOF, ¶30.

In sum, all post-1973 primary insurers contain the same or substantively identical standard form "occurrence" language that this Court in *Owens-Illinois* and the courts of Illinois following the analysis of *Owens-Illinois* have consistently applied to asbestos-related suits and claims to determine that such suits and claims arise from a single occurrence.

### III.    ARGUMENT

The issue and facts presented by this motion are undisputed, straightforward, and have been addressed directly in the *Owens-Illinois* decision by Judge Hogan, and in similar decisions reached by Illinois courts that rely on the legal principles set forth in *Owens-Illinois*.[1]  Both *Owens-Illinois* and *United States Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226 (Ill. App. Ct. 1994) ("*U.S. Gypsum*"), apply the same "cause" test, which focuses on the underlying circumstances that resulted in the claim for damages.  Consistent with the holdings in *Owens-Illinois* and *U.S. Gypsum*, the single underlying circumstance that gives rise to all Abex asbestos-related suits and claims is Abex's manufacture and sale or distribution of asbestos-containing friction products.  Accordingly, under applicable law, all Abex asbestos-related suits and claims

---

[1]   This motion concerns the interpretation of the "occurrence" definition in the post-1973 primary policies.  All of these policies were issued to IC Industries, an Illinois-based company.  SOF, ¶7.  All of these polices were (i) drafted in Illinois, (ii) negotiated in Illinois, (iii) brokered in Illinois through a Chicago broker, and (iv) issued to IC Industries' corporate headquarters in Illinois.  *Id.*  Accordingly, Illinois law applies to this issue.  Although the *Owens-Illinois* Court applied Ohio law, the Court relied principally on "basic precepts of insurance law," noting that "Ohio insurance law does not deviate from general insurance jurisprudence in any important respect . . . ." 597 F. Supp. at 1521, 1527-28.  As set forth herein, there is no conflict between Illinois law and *Owens-Illinois* that would prevent the Court from holding that all Abex asbestos-related suits and claims stem from a single occurrence.

9

must be treated as one occurrence per policy period under the post-1973 primary policies. Consequently, because all such suits and claims are to be treated as one occurrence per policy period, only one per-occurrence deductible, self-insured retention, or effective self-insured retention is owed for the policy periods March 1, 1974 to April 1, 1985.

>  A.  **All Liability Arising From Abex's Manufacture And Sale Or Distribution Of Asbestos-Containing Friction Products Stems From A Single Occurrence.**

Whether the thousands of lawsuits alleging injury or damage as a result of exposure to asbestos arose from a single occurrence (*i.e.*, the manufacture and sale or distribution of asbestos-containing products) or from multiple occurrences (*i.e.*, each individual claimant's exposure to asbestos) was addressed by this Court in *Owens-Illinois*, which held that the insured's "manufacture and sale of [an asbestos-containing product] must be regarded as the single occurrence triggering liability for asbestos-related injury." *Owens-Illinois*, 597 F. Supp. at 1528.

In *Owens-Illinois*, the Court was presented with the "number of occurrence" issue in the context of thousands of asbestos-related claims that had been asserted against Owens-Illinois because it manufactured and sold thermal insulation products containing asbestos. *Owens-Illinois*, 597 F. Supp. at 1516. The dispute over the number of occurrences arose between Owens-Illinois and its insurer, Aetna, because Owens-Illinois was effectively self-insured up to a per-occurrence retained limit or deductible that ranged from $100,000 to $250,000 per policy period. *Id*. The court explained the financial impact of the dispute as follows:

> Regarding the manufacture and sale of [asbestos-containing thermal products] as the single occurrence triggering liability would require [Owens-Illinois] to absorb a single deductible from the aggregate of claims against it, leaving Aetna to satisfy the excess liability. If each claimant's exposure to the product must be regarded as a separate occurrence, on the other hand, [Owens-Illinois] must absorb a deductible on each asbestos claimant's lawsuit before Aetna is obligated to indemnify it. This "multiple occurrence" interpretation would effectively deny

10

> [Owens-Illinois] coverage because the deductibles are larger than the amount of any single claim successfully brought against [Owens-Illinois]to date.

*Owens-Illinois*, 597 F. Supp. at 1525.

The policies at issue in *Owens-Illinois* contain the same definition of "occurrence" and related limits of liability provisions as that is found in the policies responsive to the Abex asbestos-related suits and claims. *Id*. After reviewing those definitions, the Court reasoned that "the calculation of the number of occurrences must focus on the underlying *circumstances* which resulted in the personal injury and claims for damage rather than each individual claimant's injury." *Id*. (emphasis in original). The Court further found that "the number of injuries or claims, even if temporally removed from their causes, are irrelevant when determining the number of occurrences. *Id*. Since the applicable test is the "cause of the injury," the Court framed the inquiry as whether "there was but one proximate, uninterrupted and continuing cause which resulted in all of the injuries and damages." *Id*.

Focusing the analysis on "the underlying circumstances which resulted in the claim for damages," the *Owens-Illinois* Court found that there was a single unifying cause of the injury in the thousands of asbestos-related claims against Owens-Illinois:

> Here, the underlying circumstance that gave rise to the claims for damages was [Owens-Illinois's] manufacture and sale of a hazardous asbestos containing product. [Owens-Illinois] was insuring against its liability for personal injuries arising out of its products. [Owens-Illinois's] liability in the underlying suits is premised on the claimants' submission of proof that among the asbestos fibers that he inhaled was an asbestos fiber from [Owens-Illinois's asbestos-containing product].

597 F. Supp. at 1527.

In reaching its decision that all liability arising out of the manufacture and sale of asbestos-containing products is one occurrence, the *Owens-Illinois* Court also considered the reasonable expectations of the parties to the insurance contracts:

> [T]he allocation of rights and obligations established by the insurance policies would be undermined if [Owens-Illinois's] coverage is subject to multiple deductibles. The Court finds that in order to preserve [Owens-Illinois's] reasonable expectations, ***the manufacture and sale of [asbestos-containing products] must be regarded as the single occurrence triggering liability for asbestos-related injury***.

597 F. Supp. at 1528 (emphasis added).  Accordingly, the Court held that Owens-Illinois's "coverage under a policy for asbestos-related claims is subject to payment of a single deductible. 'Occurrence' is interpreted to mean all personal injury arising out of the asbestos contained in [asbestos-containing] products." *Id*.

*Owens-Illinois* is directly applicable to the "number of occurrence" issue presented by this motion.  The Abex asbestos-related suits and claims are analogous to the asbestos-related claims facing Owens-Illinois, and the relevant policy definitions and provisions are substantively identical.  Like Owens-Illinois, Abex faces thousands of claims by claimants alleging exposure to asbestos.  Just as the claims against Owens-Illinois were predicated on the fact that Owens-Illinois manufactured and sold asbestos-containing products, so too the Abex asbestos-related suits and claims arise from Abex's manufacture and sale or distribution of asbestos-containing friction products.  Finally, both the policies issued to Owens-Illinois and the policies issued to IC Industries contain deductibles, retentions or effective self-insured retentions written on a per-occurrence basis.  IC Industries purchased $201,000,000 in per-occurrence limits of coverage for *each* of three policy years between April 1, 1982 and April 1, 1985.  If each asbestos exposure constitutes a separate occurrence as some of the excess carriers contend, then the purchase of most of the $200 million in excess coverage for these years would have been unnecessary as

12

most if not all of the claims, would fall exclusively within the $250,000 effective self-insured retention. To preserve the insured's reasonable expectation at the time that it purchased these policies, the manufacture and sale or distribution of the Abex products that are the alleged source of all of the underlying suits and claims must be regarded as the single occurrence.

> B.  **Illinois Follows *Owens-Illinois* In Treating All Claims Arising Out Of The Manufacture And Sale Or Distribution Of Asbestos-Containing Products As One Occurrence Per Policy Period.**

Illinois courts, like this Court, employ the "cause" test to determine whether asbestos-related product liability claims qualify as a single occurrence or multiple occurrences, focusing on the cause or causes of the damage, rather than the number of individual claims or injuries. *See United States Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1258 (Ill. App. Ct. 1994) ("*U.S. Gypsum*"); *Illinois Central Railroad Co. v. Accidental and Cas. Co. of Winterthur*, 739 N.E.2d 1049, 1056-57 (Ill. App. Ct. 2000); *Michigan Chemical Corp. v. American Home Assurance Co.*, 728 F.2d 374, 379 (6th Cir. 1984) (the number of occurrences is determined by referring to the causes of the damage, not the number of claims).

In *U.S. Gypsum*, the court held that all claims and suits arising out of the insured's manufacture and sale of asbestos-containing building products constituted one occurrence applied per policy deductible. *U.S. Gypsum*, 739 N.E.2d at 1258-59. The court found that "Illinois has followed the majority of jurisdictions which have concluded that the number of occurrences is determined by referring to the cause or the causes of the damage rather than to the number of individual claims or injuries." *Id.* at 1258. After reviewing how other courts have addressed the occurrence issue in the context of asbestos products claims and quoting extensively from *Owens-Illinois*, the court concluded that "the occurrence for purposes of calculating the deductible should look to the cause of the damage and . . . that cause should be characterized as the ***continuing process of the manufacture and sale of asbestos containing***

13

*products*. *Id*. (emphasis added). Accordingly, both the law of this Court and the law of Illinois require a finding that all Abex asbestos-related suits and claims arise from a single occurrence per policy period under the post-1973 primary policies.

### C. Only One Deductible, Self-Insured Retained Limit, Or Effective Self-Insured Retention Per Policy Period Is Payable For All Past, Pending And Future Abex Asbestos-Related Suits And Claims.

The Abex asbestos-related suits and claims arise out of a single occurrence per policy period. Consequently, with respect to all past, pending and future Abex asbestos-related suits and claims, only one deductible, self-insured retained limit or effective self-insured retention through reinsurance, retrocessions or similar means per policy period for the policy periods between March 1, 1974 and April 1, 1985 is payable. After amounts in excess of such deductibles and retentions are made, any further payments by Abex or by its insurers on Abex's behalf for the Abex asbestos-related suits and claims exhaust the applicable limits attaching above such deductibles, retentions, or unaggregated per-occurrence layer. Not only is this a correct application of the terms and conditions of the post-1973 primary policies to the Abex asbestos-related suits and claims under the applicable law, it is the manner in which all performing insurers have responded to date.

### IV. CONCLUSION

For the foregoing reasons, Whitman respectfully requests that this Court grant its motion for partial summary judgment and hold that all Abex asbestos-related suits and claims stem from one occurrence per policy period under the primary policies providing coverage between March 1, 1974 and April 1, 1985.

                    Respectfully submitted,

Dated: July 14, 2005

_____
Daniel E. Chefitz (D.C. Bar No. 481420)
Brooke Clagett (D.C. Bar No. 460570)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:   202.739.3000
Facsimile:    202.739.3001

*Attorneys for Plaintiff*
*Whitman Insurance Company, Ltd.*

15