IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WHITMAN INSURANCE COMPANY, LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**TRAVELERS INDEMNITY COMPANY,** *et al.*<br><br>*Defendants*. | **Civil Action No. 1:05CV01125**<br>**John Garrett Penn, Judge** |

**PROPOSED ORDER**

This matter is before the Court on Whitman Insurance Company Ltd.'s Motion for Partial Summary Judgment on the Number-of-Occurrence Issue made pursuant to FED.R.CIV.P. 56. Having considered the motion, together with the declaration, statement of undisputed facts, and the memorandum offered in support thereof, and the responses thereto, the Court hereby finds and orders as follows:

**Undisputed Facts**

1.1     Abex Corporation ("Abex") was a manufacturer engaged in the sale and distribution of brake-linings for automobiles, trucks, industrial machinery, and railroad cars (hereinafter "friction products"). *Abex Corporation v. Maryland Casualty Company,* 790 F.2d 119, 122 (D.C. Cir. 1986); Declaration of Archie L. Meairs ("Meairs Decl."), ¶3.

1.2     Abex manufactured and sold or distributed friction products containing asbestos. *Abex,* 790 F.2d at 122; Meairs Decl., ¶3.

1.3     As a direct and proximate result of this activity, Abex, has faced, faces, and may in the future face, claims, suits, actions, causes of action, and demands alleging bodily injury

and/or personal injury due to exposure to products allegedly containing asbestos ("Abex asbestos-related suits and claims"). *Abex,* 790 F.2d at 122; Meairs Decl., ¶4.

    1.4    The Abex asbestos-related suits and claims seek damages because of bodily injury or personal injury (hereafter, "bodily injury") and allege causes of action, including (without limitation) negligence, strict liability, and product liability, that allegedly arose from exposure to a product allegedly manufactured and sold or distributed by Abex. The "Abex asbestos-related suits and claims" include all claims and suits asserted against Pneumo Abex alleging bodily injury as the result of the manufacture and sale or distribution of asbestos-containing friction products, including (without limitation) claims based on theories of market share, conspiracy, and similar claims or causes of action. *Abex,* 790 F.2d at 122; Meairs Decl., ¶5.

    1.5    All of the primary insurers in the related *Abex* case have adopted identical or substantively identical language from the standard CGL policy in defining their obligations to Abex. *Abex,* 790 F.2d at 122.

    1.6    Under the CGL policy, the insurers are obliged to indemnify Abex for all damages that result from "bodily injury or property damage to which this policy applies caused by an occurrence. . . ." *Abex,* 790 F.2d at 122.

    1.7    An "occurrence" is defined in CGL policies to include "injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Abex,* 790 F.2d at 122; *See* Meairs Decl., ¶¶9-15.

    1.8    Argonaut issued policy CL90308006142 to IC Industries providing primary CGL coverage for the period March 1, 1974 to March 1, 1975. The policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the

insured." Meairs Decl. ¶9.

1.9     Continental issued policy L6348764 to IC Industries providing primary CGL coverage for the policy periods March 1, 1975 to March 1, 1976, March 1, 1976 to March 1, 1977, and March 1, 1977 to March 1, 1978. The policy provides, in part, that "[f]or the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." Meairs Decl., ¶10.

1.10    Northwestern issued policy CLA 791731 to IC Industries providing primary CGL coverage for the policy period March 1, 1978 to April 1, 1979. The policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Meairs Decl., ¶11.

1.11    Continental issued policy SRL 3632812 to IC Industries providing primary CGL coverage for the policy period April 1, 1979 to April 1, 1980. The policy provides, in part, that "[f]or the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." Meairs Decl., ¶12.

1.12    National Union issued policy GLAL 1270278 to IC Industries providing primary CGL coverage for the policy periods April 1, 1980 to April 1, 1981 and April 1, 1981 to April 1, 1982. The policy provides, in part, that "[f]or the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." Meairs Decl., ¶13.

1.13    National Union issued policy GLA 956 76 32 to IC Industries providing primary

CGL coverage for the policy period April 1, 1982 to April 1, 1983. The policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Meairs Decl., ¶14.

      1.14     National Union issued policy GLA 9184801 to IC Industries providing primary CGL coverage for the policy periods April 1, 1983 to April 1, 1984 and April 1, 1984 to April 1, 1985. The policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Meairs Decl., ¶15.

      1.15     All of the post-1970 insurance policies identified in this action, as well as all underlying primary and umbrella policies, were negotiated, drafted, issued and delivered in Illinois to IC Industries. All of these policies were also brokered in Illinois through Rollins Burdick Hunter Company's Chicago, Illinois office. All premiums were paid in Illinois. Meairs Decl., ¶7.

      **Conclusions of Law**

      2.1     For the purposes of interpreting the post-1973 primary insurance policies issued to IC Industries, the calculation of the number of occurrences must focus on the underlying circumstances that resulted in the personal injury and claims for damage, rather than on each individual claimant's injury. *Owens-Illinois, Inc. v. Aetna Cas. and Sur. Co.*, 597 F.Supp. 1515, 1525 (D.D.C. 1984); *United States Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1258 (Ill. App. Ct. 1994).

      2.2     For the purposes of interpreting the post-1973 primary insurance policies issued to IC Industries, the number of injuries or claims, even if temporally removed from their causes, are irrelevant when determining the number of occurrences. *Owens-Illinois, Inc. v. Aetna Cas.*

*and Sur. Co.*, 597 F.Supp. 1515, 1525 (D.D.C. 1984); *United States Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1258 (Ill. App. Ct. 1994).

2.3   For the purposes of interpreting the post-1973 primary insurance policies issued to IC Industries, the manufacture and sale or distribution of asbestos-containing products is a single occurrence triggering liability for asbestos-related injury. *Owens-Illinois, Inc. v. Aetna Cas. and Sur. Co.*, 597 F.Supp. 1515, 1525 (D.D.C. 1984); *United States Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1258 (Ill. App. Ct. 1994).

2.4   For the purposes of interpreting the post-1973 primary insurance policies issued to IC Industries, all loss relating to an insured's manufacture and sale or distribution of asbestos-containing friction products arises out of a single "occurrence" per policy period  *Owens-Illinois, Inc. v. Aetna Cas. and Sur. Co.*, 597 F.Supp. 1515, 1528  (D.D.C. 1984); *United States Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1258 (Ill. App. Ct. 1994).

2.5   Abex's manufacture and sale, or distribution of asbestos-containing friction products constitutes a single occurrence. *Owens-Illinois, Inc. v. Aetna Cas. and Sur. Co.*, 597 F.Supp. 1515, 1528 (D.D.C. 1984); *United States Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1258 (Ill. App. Ct. 1994).

IT IS THEREFORE ORDERED that Plaintiff Whitman Insurance Company Ltd.'s Motion for Partial Summary Judgment on the Number of Occurrence Issue should be and hereby is GRANTED in all respects; and it is further

ORDERED that

(i) for the purposes of interpreting the post-1973 primary insurance policies issued to IC Industries, the Abex asbestos-related suits and claims arise from a single occurrence;

(ii) only one deductible is payable for all past, pending and future Abex asbestos-related suits and claims that trigger insurance policies providing coverage to Abex between March 1,

1974 and March 1, 1975;

  (iii) only one self-insured retention per policy period is payable for all past, pending and future Abex asbestos-related suits and claims that trigger insurance policies providing coverage to Abex between March 1, 1975 and March 1, 1978; and

  (iv) only one effective self-insured retention is payable per policy period for all past, pending and future Abex asbestos-related suits and claims that trigger insurance policies providing coverage to Abex between March 1, 1978 and April 1, 1985.

_____        _____
DATE                  UNITED STATES DISTRICT JUDGE