SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------ X
CERTAIN UNDERWRITERS AT LLOYD'S,    :
LONDON, et al.,

                Plaintiffs,         :    Index No. 602493/02

                                 :    IAS Part 49

    -against-

                                 :    Hon. Herman Cahn, J.S.C.

PNEUMO ABEX CORPORATION, et al.,,

                Defendants.         :

                                 :

------------------------------------ X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO STAY

MORGAN, LEWIS & BOCKIUS LLP

101 Park Avenue
New York, New York 10178
Tel: 212-309-6000
Fax: 212-309-6001

1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202-739-3000
Fax: 202-739-3001

David A. Luttinger, Jr.
Daniel E. Chefitz (admitted *pro hac vice*),
    Of Counsel

Dated: July 14, 2005

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------- X

CERTAIN UNDERWRITERS AT LLOYD'S,  :
LONDON, et al.,

                                :    Index No. 602493/02
            Plaintiffs,

                                :    IAS Part 49
    -against-

                                :    Hon. Herman Cahn, J.S.C.
PNEUMO ABEX CORPORATION, et al.,,

           Defendants.          :

                                :
------------------------------------- X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY

The parties opposing PepsiAmericas, Inc.'s ("PAS") motion to stay this action *pendente lite*, many of whom claim not to have been involved in the D.C. Litigation[1], devote a large percentage of their briefs to characterizing the D.C. Litigation and the implication of the numerous coverage rulings and opinions issued by Judge Penn and the D.C Circuit Court of Appeals. The confusion resulting from parties debating the scope and implication of 24 years of rulings in the D.C. Litigation, most of which are filed under seal, underscores the common sense of allowing the D.C. court to make the decision concerning what it has or has not decided, what it presently has pending for decisions, and the extent to which those decisions are applicable to the excess policies that are now in front of the D.C. court.

Not surprisingly, the insurer parties leading the way in opposing the stay (Travelers Indemnity Company ("Travelers"), Lloyd's and American Re-Insurance Company ("American Re")) have the most to lose if the decades of D.C. rulings continue to be applied in a consistent manner. Travelers, London and American Re all issued policies which include language that

---

[1]    Capitalized terms not defined herein are used as defined in PAS' Memorandum of Law in Support of Stay dated June 20, 2005 ("PAS Mem.").

Abex relies on to claim reimbursement for tens of millions of dollars spent for defense of underlying asbestos cases. Judge Penn already has ruled on many defense obligation issues, and the D.C. Circuit has confirmed his ruling on the wide breadth of the defense obligation. Travelers has lost that issue and indeed, last year Judge Penn entered an order that could cost Travelers north of $50 million, with prejudgment interest materially raising the stakes every day. Lloyd's and American Re are likewise vulnerable to pay "supplemental defense" costs and so they too are desperate to try to avoid the prior defense ruling and its affirmance by the D.C. Circuit.

Cooper Industries, LLC ("Cooper), which is also opposing the stay, is not an insured. Presumably, Cooper welcomes the fact that Lloyd's has named Cooper as a party. Cooper now must think it has an opportunity to try to seek insurance proceeds from PAS' policies, even though by its own admission it has no insurance rights, and thus should not be a party. *See* Cooper Opposition to PepsiAmericas Inc.'s Motion to Stay ("Cooper Mem.") at 5.

The oppositions are most remarkable for what they do not contain. The opposing parties do not dispute – because they cannot – that the D.C. Litigation has already construed many key terms and provisions of the primary policies and that multiple summary judgment motions currently are pending which will resolve additional issues. The opposing parties also do not contest – because they cannot – that most of the excess policies "follow form" to the primary policies and/or contain many or all of the same terms and provisions. Lloyd's in particular conveniently fails to mention that it has taken the position in this action that its liability is contingent on the interpretation of the underlying primary policies, which of course is one of the issues squarely before Judge Penn in the D.C. Litigation.[2] Finally, not one of the parties

---

[2]    *See* PAS Mem. at 9-10.

1-NY/1929074.1

opposing this motion disputes the fact that, in the absence of a stay, there is a very real threat of inconsistent or conflicting adjudications. The reason for this is clear – inconsistent adjudications are *exactly* what the opposing parties are seeking.

Also conspicuously absent from the insurers' opposition papers is even the barest attempt to argue that New York has a substantial or compelling connection with this insurance coverage dispute or the underlying asbestos suits and claims at issue. Again, the reason for this is clear. Lloyd's is not a New York domiciliary. The majority of the other insurers are not New York corporations, nor are they based in New York. The insured is not a New York corporation, nor is it based in New York. Over 95% of the policy limits at issue in this case were negotiated, brokered, issued and delivered outside New York and the policies were maintained and premiums paid outside New York. The underlying asbestos claims have been brought in multiple state and federal courts across the country and are in no way concentrated in New York. The D.C. court already determined that New York was not a more convenient forum. *See* Affidavit of Paul A. Zevnik in support of PAS' motion to stay ("Zevnik Aff.") ¶ 9. The opposing insurers dispute none of these facts.

Instead, the opposing parties largely resort to red herrings, and then contradict each other on the facts, in addition to relying on outright misrepresentations. For example, they offer up the red herring that Judge Penn has not construed each individual insurance policy. That fact is irrelevant. What is important is that Judge Penn already has construed terms which are literally or substantively identical through the vast majority of the policies, and the opposing parties cannot and do not offer any reason why it matters which name is on a policy containing a clause he already has construed. The opponents also reveal their desperation by contradicting each other on the facts. Thus, Travelers claims that Abex and its indemnitors are one big happy

family united around the same views, but Lloyd's contradicts Travelers by pointing to conflicts between and among Abex and its indemnitors because all are trying to obtain assets from a limited pot. Cooper then confirms the conflict and revealingly argues that it prefers the New York suit because Lloyd's made Cooper a party to that suit even though Cooper was not an insured and has no rights to the policies. And, finally, Travelers goes the furthest when it submits orders apparently filed under seal and then wrongly claims there have been no rulings addressing excess policies in the D.C. Litigation. The truth is that Judge Penn last year issued a financially enormous order against Travelers, which includes terms involving the Travelers excess policy which drops down and "acts as primary."

Sweeping, factually inaccurate generalizations of "doom and gloom" are another favored tactic of the opposing parties. For example, the opposing parties apparently would have this Court believe that if it stays this action in favor of the D.C. Litigation, the opposing parties will receive no discovery and Judge Penn will immediately apply all prior rulings issued in that case to them without further ado.[3] This, of course, is nonsense. The defendants in the Whitman D.C. Action are entitled to access to the discovery that has occurred over the past two decades, including without limitation over 90 days of deposition testimony, and millions of pages of document discovery, and they will be free to argue to Judge Penn that such discovery is insufficient. They also will be entitled to argue to Judge Penn that his prior rulings on identical or virtually identical policy language should not apply to them.[4]

---

[3]    *See, e.g.*, Plaintiffs' Opposition to PepsiAmercas, Inc.'s Motion to Stay ("Lloyd's Mem.") at 17.

[4]    If in fact Judge Penn has erred or the applicable law has changed, as certain opposing insurers contend, only Judge Penn has the proper historic and equitable view of whether or how adjustments should be made. Judge Penn has made many rulings and multiple insurers have paid out well over $170 million based on those rulings and based on settlements which followed rulings. PAS does not believe adjustments are in order, but if inter-insurer adjustments are needed, only Judge Penn has the proper view and power to enter orders which can properly do equity for insurers and claimants who have invested well over twenty years and millions of dollars in the D.C. Litigation. Moreover, PAS, its captive, and Abex all have a vested stake in what happens between insurers because

-4-

PAS' point – to which the opposing insurers have no viable counterargument – is that Judge Penn has presided over two bench trials, rendered numerous coverage rulings, overseen years of discovery and *already addressed* many of the questions that necessarily will be at issue in this case. Thus, there is an alternate forum that has substantial experience with and knowledge of the facts underlying this non-New York dispute. Accordingly, as set forth herein and in PAS' opening papers, in the interests of consistency and efficiency, this action should be stayed pending the resolution of the D.C. Litigation.

## ARGUMENT

### I.   THE PARTIES AND ISSUES HERE ARE THE SAME AS THOSE IN THE D.C. LITIGATION

Contrary to the opposing insurers' contentions, the parties in this case are identical to those in the D.C. Litigation, the issues in the two cases substantially overlap and a stay of this action therefore is warranted.

#### A.   The Only Parties to this Action that are not Parties to the D.C. Litigation are Parties Who are Improperly Named Here

Travelers disingenuously argues that the parties in this action are not identical to those in the D.C. Litigation because certain excess carriers named in this action are not parties to the D.C. Litigation. *See* Travelers Memorandum of Law in Opposition to PepsiAmericas, Inc.'s Motion to Stay ("Travelers Mem.") at 6-7. There is a simple explanation for this – as PAS explained in its moving papers (*see* PAS Mem. at 6), Lloyd's improperly named as defendants numerous excess carriers which either have fulfilled their policy obligations through settlement or are insolvent. We anticipate that motions to dismiss the excess carriers which have settled their obligations will be filed shortly. Accordingly, the proper parties here are identical to those in the

---

they are the ones who are out of pocket while the insurers point fingers at one another.

-5-

D.C. Litigation.[5]

    B.    The Issues Here and in the D.C. Litigation Substantially Overlap

Because the opposing insurers cannot dispute that the policies at issue in this case follow

form to and/or use the same or substantially the same terms and provisions as the policies at

issue in the D.C. Litigation, they attempt to divert the Court's attention from these undisputed

facts by drawing artificial distinctions between the two D.C. litigations and between this case and

the D.C. Litigation. The insurers' arguments are at best red herrings and at worst demonstrably

false.

    1.    All of the Excess Policies at Issue in This Suit Either "Follow the Form"
        of, or Have Substantially Similar Terms as, the Primary Policies That
        Have Been Litigated in the D.C. Litigation

Even if it were correct that the D.C. Litigation was limited to the primary policies –

which, as discussed *infra* it is not – the D.C. court has recognized that all of the Abex policies

are substantially identical:

> For the most part, all of the insurers have adopted identical language from the
> standard CGL policy in defining their obligations to Abex. Under the CGL
> policy, the insurers are obliged to indemnify Abex for all damages that result from
> bodily injury or property damage to which this policy applies caused by an
> occurrence. . . . An "occurrence" is defined as an accident, including injurious
> exposure to conditions, which results, during the policy period, in bodily injury or
> property damage neither expected nor intended from the standpoint of the insured.

*Abex Corp. v. Maryland Casualty Co.*, 790 F.2d 119, 122 n.7, n.8 ( D.C. Cir. 1986 ).

---

[5]    Moreover, substantial rather than exact identity of parties is all that is required to impose a stay under New
York law. *See, e.g., Goodridge v. Fernandez*, 121 A.D.2d 942, 945, 505 N.Y.S.2d 144, 147 (1st Dept. 1986)
(granting stay and noting that "it is not necessary that the parties in the instant action and the consolidated Federal
action be identical or that the respective parties in each action assume identical positions."). *See also* Cooper Mem.
at 6.

Contrary to the insurers' contentions, it is well established that where "follow the form" policies are involved, [6] an interpretation of the primary policy is binding on all parties thereto. *See Claim of Lac D'Amiante Du Quebec, Ltee (ASARCO) v. Superintendent of Insurance of the State of New York*, 269 A.D.2d 50, 62, 709 N.Y.S.2d 24, 33 (1st Dept. 2000) ("given the 'follow-the-form' language of the Midland policy, the interpretation would have remained binding upon Midland, even in a liquidation proceeding, since liability under a primary policy triggers liability in an excess 'follow the form' policy"); *see also Associated Indem. Corp. v. Dow Chem. Co.,* 814 F. Supp. 613, 618 (E.D. Mich. 1993) ("The umbrella and excess policies contain their own definitions of occurrence, but it is unnecessary to examine the definitions. The excess policy follows the form of the umbrella policy and the umbrella policy states that its coverage is as broad as the primary policy. The definition of occurrence construed in the context of the primary policy controls the number of occurrence issue with respect to all parties under all policies.").

Accordingly, it is appropriate that the D.C. court resolve the issues asserted in this action. Courts have stayed actions in the context of this case. *See Procter & Gamble Distrib. Co. v. Lloyd's Underwriters*, 255 N.Y.S.2d 361, 365 (Sup. Ct. 1964) (staying state court action involving excess policy in favor of federal court action involving primary policy); *cf. Eagle-Picher Indus., Inc. v. American Employers Ins. Co.*, 557 F. Supp. 225, 227 (D.C. Cir. 1983) (transferring case involving umbrella policies to Massachusetts court that had previously resolved dispute regarding primary and other umbrella policies that incorporated identical language "in order to obtain as promptly as possible a single, coherent consistent judgment

---

[6]    "Follow the form" policies are policies issued by excess insurers that incorporate by reference some or all of the insurance provisions, terms or conditions of the underlying primary or umbrella policies. This is a very common way that excess carriers write insurance coverage, and thus, it is the interpretation of the primary coverage that is of most import.

1-NY/1929074.1

covering all insurers").[7]

        2.     The D.C. Litigation has Addressed Excess Policies

      The opposing insurers' often repeated argument that the excess policies are not at issue in the D.C. Litigation is simply wrong. In fact, the D.C. Litigation *has* issued orders with respect to certain excess policies, including Travelers' excess policy. *See* Affidavit of Daniel E. Chefitz sworn to on July 13, 2005 ("Chefitz Aff.") ¶ 5. A protective order exists in the D.C. Litigation which allows documents filed under seal in that action to be used here but *only* if an appropriate protective order is in place. No such protective order is in place. Although Travelers attached copies of orders identified as filed "under seal" to the Affidavit of Jonathan K. Youngwood in Support of Travelers Opposition to PepsiAmericas, Inc.'s Motion to Stay ("Youngwood Affidavit"), PAS declines to follow suit. Accordingly, PAS respectfully requests that the Court not consider the documents annexed to the Youngwood Affidavit. Alternatively, if the Court chooses to consider the documents, PAS requests that it be allowed to submit under seal concrete evidence that the D.C. Litigatiion has addressed excess policies and that Travelers has misled the Court.

      In any event, it is not in dispute that the excess policies issued by Travelers, National Union Fire Insurance Company of Pittsburgh, PA and Argonaut Insurance Company have been in the DC Litigation for almost a decade. Furthermore, rulings regarding the scope and

---

[7]     Both Travelers and Cooper imply that a stay is inappropriate in light of the purportedly slow pace of the D.C. Litigation. Through Judge Penn's steady oversight and rulings, not less than $170 million in coverage has been paid for the Abex asbestos-related suits and claims and numerous key issues have been resolved leading to several settlements. Further, as one New York court noted in rejecting such an argument:

> It may well be that it will take somewhat longer for the Federal Court actions to be ready for trial than it would for this State court action.... I think this complexity of the Federal Court actions is in a sense merely a necessary concomitant of the fact that in the present procedural posture, a more complete disposition of the issues may be obtained in that court than in this court.

*Procter & Gamble Distrib. Co.* 255 N.Y.S.2d at 365.

1-NY/1929074.1

applicability of supplemental defense language to the Abex asbestos-related suits and claims is equally applicable whether the specific ruling addresses that language in a primary policy or in the excess policies issued by Travelers, Lloyd's and American Re. Likewise, determinations that the Abex asbestos-related suits and claims trigger the policy periods of the primary policies are highly relevant to determining that those same Abex asbestos-related suits and claims trigger the same policy periods of the excess policies. Finally, the determination of when and how a primary policy exhausts is relevant to deciding whether the excess policy is ripe, especially when the excess carriers like Lloyd's and American Re are specifically challenging the way the D.C. court determined the exhaustion of the primary policies.

3.    The Abex D.C. Action and the Whitman D.C. Action
      are Related Cases and Involve or Will Involve the Same Issues

The opposing insurers continually refer to the two related D.C. litigations as though they were totally unrelated actions pending in separate courts and involving different subject matters. In fact, nothing could be further from the truth. First, Whitman's complaint was filed as a related case, accepted as a related case, and will be heard by the same judge as the Abex D.C. Action. Accordingly, although not technically consolidated, they will proceed in tandem.

Further, as Lloyd's itself demonstrates in quoting an excerpt from Whitman's complaint, the issues are the same as those already before Judge Penn. *See* Lloyd's Mem. at 9. The fact that certain entities may be parties to one or the other of the D.C. litigations but not both related actions is simply irrelevant to this motion – the questions at issue in this action can and will be resolved by Judge Penn in one or both of the D.C. cases. In accordance with the United States District Court Rules for the District of Columbia, both D.C. Actions before Judge Penn are deemed to be "related cases" because the earlier case is still pending on the merits and both cases, "(1) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of

-9-

the same event or transaction . . ." LCvR 40.5(3). Here both D.C. cases "relate to common property," *i.e.*, the insurance policies issues to IC Industries and Abex, "involve common issues of fact," *i.e.*, the same Abex asbestos related suits and claims, "and grow out of the same event or transaction," *i.e.*, the purchase of insurance to cover product liability claims arising out of the manufacture and sale or distribution of asbestos-containing friction products.

Again, the point is that Judge Penn is experienced with the issues, policies and background facts underlying the D.C. Litigation and is in a position to resolve substantially all of the issues that will likely be raised in this action. In the absence of a stay, two courts will be forced to address the very same questions, resulting in a waste of judicial and the parties' resources and running the risk of inconsistent adjudications.

## II.    NEW YORK HAS NO SIGNIFICANT CONNECTION
WITH THIS INSURANCE COVERAGE DISPUTE

Not one of the opposing parties contests PAS' assertion that New York lacks a substantial or compelling interest in this coverage dispute. *See* PAS Mem. at 17-18. It is undisputed that the first-named insured to the majority of the policies at issue in this action was an Illinois corporation. Neither Lloyd's nor many of the excess insurers named in this action are domiciled or have their principal places of business in New York. In fact, the excess carriers named by Lloyd's in this action are incorporated in twelve different states and have their principal places of business in eleven different states.

Perhaps most significantly, the vast majority of the insurance coverage at issue here has no connection whatsoever to New York. Over 95% of the policy limits at issue in this case were negotiated in Illinois, brokered in Illinois through a Chicago broker, and issued and delivered in Illinois. Chefitz Aff. at ¶¶ 14-16.[8] All post-1970 policies have been maintained in

---

[8]    *See also* the Complaint filed in this action, which does not allege that the Lloyd's excess policies were

Illinois in the insurance department of PAS. *Id.* at 17. All of the premiums were paid by IC

Industries in Illinois. *Id.* at 16. Similarly, the underlying asbestos exposures and claims also are

not limited to (or even concentrated in) any one location – the claims have been brought in

multiple state and federal courts with a very small percentage in New York and a concentration

in other states. Given the clear absence of a substantial nexus with New York, there is no reason

why this Court should add to its already heavy burden by allowing this duplicative insurance

coverage action to go forward. *See Shin-Etsu Chemical Co. v. ICICI Bank Ltd.*, 9 A.D.3d 171,

176-77, 777 N.Y.S.2d 69, 73-74 (1st Dept. 2004).

In addition, it is important to note that it is categorically untrue that PAS ever "conceded

New York law" applies. *See* Chefitz Aff. at ¶¶ 14-15.[9] Further, contrary to the opposing

insurers' contentions, there also has been no order by the court in the D.C. Litigation finding that

New York law governs.[10] The opinions rendered in that litigation have relied on *both* Illinois

and New York law – the court there has never made a choice of law determination because, as

yet, there has been no conflict between the two states' laws, and therefore, no need to choose one

over the other. However, were a choice of law analysis undertaken with respect to the policies at

issue in this action, it is clear that Illinois and not New York law would govern because 95% of

the limits were brokered in Illinois, drafted in Illinois, negotiated in Illinois, issued in Illinois,

delivered in Illinois and performed in Illinois. *See, e.g., Oltarsh v. Aetna Ins. Co.*, 204 N.E.2d

---

brokered, negotiated, issued or delivered in New York.

[9]     Curiously, Lloyd's arguments concerning PAS' position on the applicability of New York law are self-contradictory. Lloyd's simultaneously argues that PAS has conceded New York law applies to the D.C. Litigation (Lloyd's Mem. at 9) and that it has filed this motion to stay in favor of the D.C. Litigation in an attempt to forum shop to *avoid* the application of New York law. *Id.* at 11.

[10]    As discussed in PAS's motion papers, what the District Court *has* determined is that the District of Columbia, rather than New York, is the appropriate forum for the coverage dispute concerning the Abex asbestos-related suits and claims. *See* PAS Mem. at 9; Zevnik Aff. at ¶ 9.

622, 625-26, 256 N.Y.S.2d 577, 582 (1964) (refusing to apply New York law where insurance

policy was issued to Puerto Rican company in Puerto Rico and Puerto Rico had most significant

contacts with dispute); *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. American

Re-Insurance Co.*, 351 F. Supp. 2d 201, 201 (S.D.N.Y. 2005) (applying Ohio rather than New

York law where policy was negotiated and issued to Ohio insured*): Empire Fire and Marine Ins.

Cos. v. H. Moran and Sons, Inc.*, 00-CV-6261, 2003 U.S. Dist. LEXIS 21498, at *7 (S.D.N.Y.

Dec. 2, 2003) (Florida rather than New York law governs policy brokered, negotiated and

executed in Florida to Florida company); *Holmes v. The Brethren Mutual Ins. Co.*, 868 A.2d 155,

157 n2 (D.C. 2005) (Maryland law governs where the insured was a Maryland corporation, the

policy was prepared and delivered in Maryland and the suit involved the scope of insurance

coverage rather than a personal injury that occurred in the District of Columbia).[11]  Thus, in

addition to having no substantial nexus with New York, New York law does not govern the

policies at issue in this litigation.

## III.    PAS HAS NOT WAIVED ITS RIGHT TO REQUEST A STAY

### A.    This Motion is Timely

Lloyd's argument that PAS has waived its right to move to stay this argument (Lloyd's

Mem. at 14-15) is simply wrong.  First, PAS has not moved to dismiss the complaint – it has

moved for a stay.  Accordingly, the cases cited by Lloyd's which hold that a party waives its

right to move to dismiss a complaint unless the existence of a prior pending action is asserted as

an affirmative defense in the answer are irrelevant.  In fact, CPLR § 2201 authorizes a stay at any

time so long as an "action is pending." *See also Halloran v. Halloran*, 161 A.D.2d 562, 563, 555

N.Y.S.2d 139, 141 (2d Dept. 1990).  Indeed, a stay may be granted under CPLR §2201 even

---

[11]     *See also* Cooper Mem. at 2, n.1.

when, due to filing a responsive pleading, a party may have waived its right to a stay under CPLR §3211. *Theatre Confections, Inc. v. Cate Enterprises*, 385 N.Y.S.2d 237, 239 (Just. Ct. 1976) (granting stay under §2201 even though an answer had been filed and §3211 was therefore waived).[12]

## B.  PAS is not Responsible for Delays in this Action

In an obvious attempt to poison the well against PAS, the opposing insurers falsely accuse PAS of endeavoring for three years to move this case to federal bankruptcy court. *See, e.g.*, Lloyd's Mem. at 2. In fact, as Lloyd's themselves later admit, PAS had nothing to do with the removal and subsequent motion to transfer this case, for which Coopers and Pneumo Abex were solely responsible. In fact, PAS took no position on either the removal or the transfer motion. Chefitz Aff. at ¶ 24.

Nor is there any ground for asserting that PAS deliberately dragged its heels in filing this motion. As Cooper states in its brief in direct contradiction of Lloyd's misleading argument, Cooper – and not PAS – moved to remove this lawsuit to federal court. Cooper Mem. at 2, n.1. Until recently, this action was dormant as result of Cooper's removal and transfer motions and as a result of the agreement of the insurers, including Lloyd's, as memorialized in Judge Preska's previously-issued stay. *See* Chefitz Aff., Exh. 3. Indeed, it was not even possible for PAS to seek a stay because of that order. In any event, no party will be prejudiced if a stay is granted since, as discussed above, the discovery sought by the insurer defendants thus far is the very

---

[12]    Further, CPLR § 2201 imparts the court with broad discretion to grant a stay when to do so would best serve "the interests of justice." To suggest that this provision is limited to cases where a foreign action is pending – as Lloyd's appears to do using only a single mischaracterized citation to a treatise (Lloyd's Mem. at 21-22) – is ridiculous. In fact, CPLR § 2201 has been applied broadly to many types of pending actions. *See, e.g., Halloran*, 161 A.D.2d at 562, 555 N.Y.S.2d at 139; *Pappas v Freund*, 660 N.Y.S.2d 302 (Sup. Ct. 1997); *National Management Corp. v. Adolfi*, 715 N.Y.S.2d 526, 528 (3d Dept. 2000).

-13-

same discovery they are likely to seek in the D.C. Litigation.[13]

## IV.    THE FIRST-FILED RULE IS NOT DETERMINATIVE

Even if it were relevant that this action was filed before the Whitman D.C. Action, which
it is not, priority in filing is merely one factor to be considered in analyzing whether a stay is
appropriate and it is by no means controlling. Indeed, New York courts have repeatedly held
that, regardless of which case was first-filed, "the case should be heard by the forum with the
most reason to hear the case." *White Light Productions, Inc. v. On The Scene Productions, Inc.*,
231 A.D.2d 90, 97, 660 N.Y.S.2d 568, 573 (1st Dept. 1997) ("The practice of determining
priorities between pending actions on the basis of dates of filing is a general rule, not to be
applied in a mechanical way, regardless of other considerations.") (internal quotation omitted);
*see also Atlantic Mut. Ins. Co. v. Cadillac Fairview US, Inc.*, 125 A.D.2d 181, 185, 508
N.Y.S.2d 445, 448 (1st Dept. 1986) (dismissing first-filed New York action in favor of second-
filed California action because "California is the most appropriate forum for resolution of the ...
coverage dispute"); *Flinkote Co. v. American Mut. Liability Ins. Co.*, 103 A.D.2d 501, 506, 480
N.Y.S.2d 742, 746 (2d Dept. 1984) (staying first-filed action because second-filed action was
pending in the most appropriate forum to resolve the dispute).[14]  As discussed above, that forum
is not New York.

In addition, and perhaps more importantly, Lloyd's forum shopping tactics would defeat

---

[13]    For this reason, this case is clearly distinguishable from *Anagnostou v. Stifel*, 204 A.D.2d 61, 611 N.Y.S.2d
525 (1st Dept. 1994), relied upon by certain opposing parties.  In *Agagnostou*, defendants raised a forum non
conveniens argument only after three years had gone by and "a significant degree of activity had already taken
place, including defendants' unsuccessful motion for summary judgment." *Id.*  No such "significant activity" has
taken place in this action.

[14]    In addition, it is well established that a plaintiff's choice of forum is entitled to less deference where, as
here, New York is not the plaintiffs' home district and New York has little connection to the dispute.  *See, e.g.,
Herbert Ltd. Partnership v. Electronic Arts Inc.*, 325 F. Supp. 2d 282 (S.D.N.Y. 2004); *Fertel v. Resorts Int'l, Inc.*,
43 A.D.2d 241, 242, 350 N.Y.S.2d 913, 914 (1st Dept. 1974).

-14-

any priority to which its action otherwise would be granted. As explained in detail in PAS's

moving papers (PAS Mem. at 10-11, 16-17; Zevnik Aff. ¶¶ 30-33), PAS engaged in extensive

settlement discussions with Lloyd's from 2000 through 2002 concerning its obligation to pay for

Abex asbestos-related suits and claims in manner consistent with the controlling rulings in the

D.C. Litigation. In connection with those settlement discussions, the parties executed a series of

tolling agreements to enable them to conduct negotiations without fear that one party would try

to gain an unfair advantage through forum shopping. On July 2, 2002, PAS sought to extend the

tolling agreement beyond its expiration date of July 8, 2002 and its counsel executed an

extension of the tolling agreement in the same manner that the parties had previously extended

the tolling agreement. Lloyd's neither countersigned the agreement nor went forward with a

previously scheduled settlement meeting – rather, Lloyd's blindsided PAS and filed this action,

presumably to avoid the controlling rulings issued in the D.C. Litigation.[15]

The first-ruled rule simply is not determinative in these circumstances, since to make it so

would "reward a party for winning a race to the courthouse which it had completed before its

adversary heard the starting gun." *White Light*, 231 A.D.2d at 98, 660 N.Y.S.2d at 573 (internal

quotation and citation omitted); *see also Continental Ins. Co. v. Amax, Inc.*, 192 A.D.2d 391, 596

N.Y.S.2d 370 (1st Dept. 1993). This was confirmed by a recent decision in the First Department.

*See Certain Underwriters at Lloyd's, London v. Hartford Accident and Indem. Co.*, 16 A.D.3d

167, 791 N.Y.S.2d 90 (1st Dept. 2005) (dismissing New York case filed before existing

Connecticut case could be amended to add new claims where "[c]omplex litigation concerning

the reinsurance contracts is already pending in Connecticut and encompasses the same

---

[15]    Lloyd's accuses PAS of improperly discussing confidential settlement negotiations in its moving papers.
Lloyd's Mem. at 19, n. 9. In fact, PAS made no reference to the substance of any such discussions, it simply said
that Lloyd's jumped the gun and filed this action in the midst of such discussions – a fact that, tellingly, Lloyd's
does not deny.

1-NY/1929074.1

underlying insured, the same reinsurance contracts, and the same source of losses.").

Accordingly, priority in filing is meaningless where, as here, a court in another jurisdiction is

already addressing the relevant insurance issues and the filing of the New York action was

"motivated simply by plaintiffs' wish to gain a tactical advantage through forum shopping." *Id.*

## V.    THE D.C. COURT HAS JURISDICTION OVER THE WHITMAN D.C. ACTION

Perhaps knowing that the D.C court's knowledge and stewardship of this decades old

dispute strongly favors this Court exercising its discretion to defer to the D.C. Litigation, the

opposing briefs challenge the justiciability of the related D.C. Litigation. While at least one of

the opposing parties acknowledges that the federal jurisdiction issue must be decided by the D.C.

court if and when a challenge is actually made, the challenges will be without merit and will not

succeed.

### A.    Complete Diversity Exists Under 28 U.S.C.A. § 1332(a)

Despite the opposing parties' protestations to this Court that the D.C. Litigation is

jurisdictionally deficient, Whitman, a Vermont domiciliary, has properly alleged diversity

jurisdiction under 28 U.S.C.A. § 1332(a) against Lloyd's' managing agents (*i.e.*, "agent-

underwriters"), all of whom are believed to be non-Vermont residents or companies. Whitman is

a company that is reinsuring certain of the primary policies at issue in the D.C. Litigation and is

seeking to protect its interests in ensuring that the Abex asbestos-related suits and claims are

treated in a manner consistent with the prior rulings in the D.C. Litigation, and as such, is a real

party in interest. Furthermore, in contrast to the managing agents sued by Whitman in the D.C.

Litigation, any non-diverse "Names"[16] that may exist are at best peripheral to the D.C. Litigation,

---

[16]      There is no dispute that the parties sued by Whitman in D.C. are agents for the undisclosed underwriters, or
"Names." As the Sixth Circuit explained, Lloyd's of London is a "venerable institution shrouded in the corporate
vagaries of British law" and "[t]he business of insuring risk at Lloyd's is carried on by a group of more than four
hundred syndicates. These syndicates are not incorporated, and they are comprised of some 30,000 member-

and therefore are not required to be added to it to destroy the federal court's diversity jurisdiction.

"The real party in interest analysis turns upon whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief." *Certain Interested Underwriters at Lloyd's, London, England v. Layne,* 26 F.3d 39, 43 (6th Cir. 1994); *see also Gustafson v. Finn,* No. 90-C-06822, 1991 U.S. Dist. LEXIS 2671, at \*4 (N.D. Ill. 1991) ("A real party in interest is one who, by the substantive law of the state, has the duty or right sought to be enforced").[17] Because the identity of the syndicate members or "Names" who subscribe to the Lloyd's policies is not disclosed in the subject Lloyd's policies, under the substantive law creating Whitman's rights – that of Illinois – Whitman can choose to seek recovery from *either* the agent for the undisclosed principal (here, the agent-underwriters), *or* the Names. "It is Illinois law that a third-party who seeks recovery from both an agent and a previously undisclosed principal must elect from whom to take judgment." *See U.S. Fidelity & Guaranty Corp. v. Putzy,* 613 F. Supp. 594 (N.D. Ill. 1985) (citing *General Refrigeration & Plumbing Co. v. Goodwill Industries,* 333 N.E.2d 607, 613, 30 Ill. App. 3d 1081, 1088 (5th Dist.

---

investors, sometimes called "underwriters" or "names," who hope to share in any profit the syndicate might make. A particular syndicate may have a few hundred or many thousand investors. These investors, however, do not actively participate in the insurance business.... Each syndicate is managed on a day-to-day basis by an underwriter appointed or nominated by the syndicate. These underwriters, sometimes called agent-underwriters or active-underwriters, buy and sell insurance risks and if successful make a profit for their syndicate. The underwriter has the authority to bind the syndicate members in these transactions. Also, the underwriter has the authority to bring a lawsuit on behalf of the syndicate members." *Certain Interested Underwriters at Lloyd's, London, England v. Layne,* 26 F.3d 39 (6th Cir. 1994)(citations omitted); *see also,* George S. Couch, *Couch on Insurance 2d* § 26A:289 at 559 (1984)("an insurance agent making a contract of insurance for an undisclosed principal becomes personally liable to the insured. For the purposes of this rule a binder signed by such agent for 'account of Underwriters at Lloyd's, London,' is for undisclosed principals.").

[17]    The agent-underwriters as defendants in the D.C. Litigation could also be found to be real parties in interest under Fed. R. Civ. Proc. 17: "[A]s plaintiffs prosecute their claims, defendants prosecute their defenses. The word 'prosecute' means 'to follow up; to carry on an action or other judicial proceeding.' Black's Law Dictionary. Thus a defendant as well as a plaintiff can follow up and carry on an action. If the rule used the terms 'instituted' or 'commenced' instead of 'prosecuted' we might hold otherwise." *B.P. Oil, Inc. v. Bethlehem Steel Corp.,* 536 F. Supp. 293 (E.D. Pa. 1982).

1975); *Vander Wagen Bros. v. Barnes*, 304 N.E.2d 663, 665, 15 Ill. App. 3d 550 (1st Dist. 1973)); *see also Layne,* 26 F.3d at 43-44.[18]

Once either the agent or non-disclosed principal is chosen as the party against whom recovery is sought, the non-chosen party is rendered a "nominal" or dispensable party to the action under Rule 19 of the Federal Rules of Civil Procedure, and thus not "a real party in interest." Indeed, as Rule 19 points out, a party need not be joined in an action if such joinder will "deprive the court of jurisdiction over the subject matter of the action" and "complete relief" can be accorded the parties. Fed. R. Civ. Proc. 19(a); *see also, Chemical Lehman Tank Lines v. Aetna Cas. & Sur. Co.*, 177 F.3d 210 (3d Cir. 1999) (where court, in examining the Lloyd's policies, "saw no reason why [insured] should not be entitled to sue less than all of the names if it so chooses. Thus, while the absent names would be proper parties to this suit, they are not necessary parties" due to the Names' several liability under the Lloyd's policies; *see also* Chefitz Aff., Ex. 2.

Accordingly, because Whitman has the right to proceed against the Lloyd's agent-underwriters in the D.C Litigation, the Names become, by virtue of Illinois law, nominal and dispensable for the purposes of Fed. R. Civ. Proc., Rule 19. Whitman therefore expects the D.C. court to maintain diversity jurisdiction over the Whitman D.C. Action under 28 U.S.C.A. § 1332(a).

---

[18]     In fact, both Illinois and the District of Columbia follow the Restatement (Second) of Agency, § 322 (1958) which allows for the application of alternative liability of either the agent or the principal in the case of undisclosed principals. *See, e.g., General Refrigeration*, 30 Ill. App. 3d at 1088, 333 N.E.2d at 613; *American Ins. Co. v. Smith*, 472 A.2d 872 (D.C. 1984). Application of the Restatement § 322 is even clearer in the case of Lloyd's underwriters, who are contractually bound to be *severally, not jointly*, liable on each Lloyd's policy to which they subscribe. *See, e.g.,* Lloyd's policy no. UQA0088, for the period April 1, 1983 to April 1, 1984 (Chefitz Aff., Exh. 2): "We the Underwriters, members of the Syndicates... hereby bind Ourselves *each for his own part*... to pay or make good to the Assured... or to indemnify him... against all such loss, damage or liability as herein provided...." (emphasis added).

-18-

### B.    The Alignment of the Parties in the Whitman D.C. Action Is Proper

Contrary to Travelers' position on what it believes to be the proper alignment of the

parties in the D.C. Litigation, the D.C. Litigation is not jurisdictionally deficient due to the

alignment of Whitman and its potential insured, Abex, on opposite sides of the lawsuit. On the

contrary, Abex was properly named as a defendant in the D.C. Litigation because Whitman is an

insurance company that may be obligated to provide coverage for asbestos-related suits by virtue

of reinsuring certain layers of insurance coverage issued to Abex. *See* Affidavit of Archie L.

Mears, ¶¶2-3..[19]   It is axiomatic that an insurance company's interests in minimizing the impact

claims may have on coverage are adverse to an insured's interests in obtaining as much

insurance coverage as possible for those same claims: "[A] conflict arises between the insurer

and the insured, because it is in the insurer's interest for the third-party action to establish that

any liability is outside the coverage of the policy, while it is in the insured's interest to show the

opposite." *Employers Ins. of Wausau v. Albert D. Seeno Const. Co.,* 692 F. Supp. 1150 (N.D.

Cal. 1988); *see also Federal Ins. Co. v. Quantachrome Corp.,* No. 93-Civ-3423, 1994 U.S. Dist.

LEXIS 7244, at *12 (S.D.N.Y. June 2, 1994) (finding the "interests of the insurer and the insured

often diverge" with regard to defense and investigation of claims). In short, while Whitman has

an interest in minimizing losses arising from Abex asbestos-related claims that Whitman may be

required to insure, Abex's interest is to recover from Whitman and other insurers the maximum

amount of money possible for those claims.

In any event, all defendants in the D.C. Litigation have been served[20] and the deadline to

answer or otherwise respond to the complaint is August 4, 2005. Accordingly, as the opposing

---

[19]    Nor, as Travelers implies, is Abex is a "sham" defendant for the purposes of creating diversity, since diversity was not "created" by naming Abex as a defendant and would still exist even if Abex were not named as defendant to the D.C. Litigation.

[20]    *See* Chefitz Aff., ¶ 19.

parties implicitly concede,[21] if any party in fact moves to dismiss the D.C. Litigation based on lack of jurisdiction, that question will be addressed by the federal court in the immediate future. At a minimum, therefore, this Court should stay this action pending the District Court's ruling on jurisdiction.

## VI.    A STAY OF THIS ACTION WILL AVOID DUPLICATION OF EFFORT AND WILL PREVENT INCONSISTENT ADJUDICATIONS

If this Court declines to enter a stay, two courts simultaneously will be litigating disputes involving the same parties, the same insurance policies and the same coverage disputes. Judge Penn in the District of Columbia has already conducted two bench trials and has decided numerous substantive motions that are directly applicable to this action. Currently, at least seven motions for partial summary judgment concerning the same or similar terms and conditions of the policies at issue in this action are pending in the Abex D.C. Action. Two more motions for partial summary judgment are currently pending in the Whitman D.C. Action. Chefitz Aff., ¶¶ 20-21). If this action is not stayed, this Court will be forced to retread many if not all of those paths and a duplication of effort by the parties and a waste of judicial resources will be the inevitable result. Perhaps more significant is the very real threat of inconsistent adjudications. A stay of this action will prevent this untenable result. *See Associated Indemnity Corp. v. Dow Chemical Co.*, 814 F. Supp. 613, 618 (E.D. Mich. 1993) (related insurance policies should be construed so that they are consistent with each other; otherwise the insured's reasonable expectation of having a meaningful and coordinated insurance program could be frustrated).

## CONCLUSION

Deference to the D.C. federal court and the D.C. Circuit is what is at issue here, not a bunch of wild assertions by parties' lawyers who admit a total lack of involvement with the D.C.

---

[21]    *See, e.g.*, Lloyd's Mem. at 11 n.7 ("London Market Insurers are not asking this court to make any determinations with respect to the procedural and jurisdictional defects of the D.C. action....").

Litigation. The first stop in determining the obligations of the excess insurers should by the D.C court where the record in this case is largely controlled. This dispute is a morass and would consume a disproportionate amount of this Court's time unnecessarily, given that Judge Penn has already gone through many of the issues that would only be beginning here. There is no need for duplication, no need to bring yet another judge up to speed with the complicated corporate issues and underlying liability, and no need to force the parties to incur the expense already incurred in D.C. Such a course only benefits two sets of litigants – the insurers and their counsel. For the reasons set forth herein and in PAS' moving papers, PAS respectfully requests that this action be stayed *in pendente lite* of the D.C. Litigation.

Dated: New York, New York.        Respectfully submitted,
July 14, 2005

MORGAN, LEWIS & BOCKIUS LLP

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

David A. Luttinger, Jr.

101 Park Avenue
New York, New York 10178
Tel.: (212) 309-6000
Fax: (212) 309-6001

*Attorneys for Defendant PepsiAmericas Inc.*

-and-

Daniel E. Chefitz (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

*Of Counsel*

1-NY/1929074.1