SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, et al., | Index No. 602493/02 |
| Plaintiffs, | **AFFIDAVIT OF PAUL A. ZEVNIK** |
| vs. | |
| PNEUMO ABEX CORPORATION, et al.; | |
| Defendants. | |

I, Paul A. Zevnik, being first duly sworn upon oath, state that I make this affidavit based on personal knowledge, and that if called upon to testify, I would be competent to testify to the following:

1. I am a partner in the law firm of Morgan, Lewis & Bockius LLP, and am a member in good standing of the bars of the District of Columbia, State of California, and the Commonwealth of Pennsylvania.

2. I am counsel to PepsiAmericas, Inc., which was formerly named "Whitman Corporation," and before that, "IC Industries, Inc.," which is an abbreviated form of the name "Illinois Central Industries, Inc." (collectively "Illinois Central Industries"). I have been counsel to Illinois Central Industries and, at certain times, many of its past and present subsidiaries, including Abex, in connection with longstanding coverage litigation in the District of Columbia and in California involving all of the same insurers and all of the same policies as have now been brought into this case (the "Prior Pending Coverage Litigation"). The Prior Pending Coverage Litigation has been pending since 1982 and 1992; the Prior Pending Coverage Litigation and related cases remain pending in the District of Columbia and in California. The Prior Pending Coverage Action was brought by Illinois Central Industries and its former wholly owned

subsidiary Abex Corporation, now known as Pneumo Abex LLC, ("Abex") that have been brought into this case by Lloyd's.

3. Lloyd's issued comprehensive general liability insurance to Illinois Central Industries and Abex including coverage for product liability claims such as the asbestos-related friction product suits asserted against Pneumo Abex ("Abex asbestos-related suits"). The vast majority – almost 80% -- of the Lloyd's coverage that is responsive to the Abex asbestos-related suits and claims was drafted and negotiated in Illinois, and issued to Illinois Central Industries at its headquarters in Chicago, Illinois.

4. The insurance companies sued by Lloyd's have paid or agreed to pay over $400 million for the Abex asbestos-related suits. Lloyd's has not paid one penny. Lloyd's has no claim, right or cause of action against any of the other insurance companies that it sued; all of them should be dismissed from this action.

5. Lloyd's suit can be only against its insureds, Illinois Central Industries, or PepsiAmericas (to which it issued 80% of its limits of liability), and Abex. The Lloyd's suit against Abex and Illinois Central Industries however, is both manufactured and contrived. Lloyd's and its policyholders were engaged in settlement discussions when Lloyd's abruptly sued its policyholders to gain leverage in those discussions. Lloyd's joined other insurers against which it has no cause of action in an effort to manufacture a case or controversy where in fact none exists.

6. The longstanding coverage litigation involving the same Abex asbestos-related suits as are involved here, and a related case, remains active and pending in the District of Columbia. A case related to the *Jensen-Kelly* litigation (which was filed in 1992 in Los Angeles Superior Court and involved all of the insurance policies as in this case), remains active and pending in Los Angeles.

7. As set forth in more detail below, this action should be stayed or, alternatively, dismissed in whole or in part as to the following matters, for the following reasons:

a. The following parties improperly named as defendants by Lloyd's have paid or agreed to pay their entire applicable limits of liability for the Abex asbestos-related suits and, accordingly, there is no case or controversy as to any of these parties' insurance policies or related rights and obligations: Argonaut Insurance Company, Allstate Insurance Company (including as successor to Northbrook Insurance Company), Evanston Insurance Company, Great American Surplus Lines Insurance Company, Continental Insurance Company, Harbor Insurance Company, Columbia Casualty Company and Continental Casualty Company.

b. The following parties improperly named as defendants by Lloyd's are in liquidation proceedings and are immune from suit in this Court: Home Insurance Company and Highlands Insurance Company.

c. The following parties improperly named as defendants by Lloyd's only issued coverage attaching at $100,000,000 and above during the 1981 through 1985 policy years and, accordingly, Lloyd's has no claim against such parties under any possible legal theory, however contrived: Allianz Insurance Company, Employers Mutual Casualty Company, Gibraltar Casualty Company n.k.a. Mt. McKinley Insurance Company, Hudson Insurance Company, Evanston Insurance Company, and Highlands Insurance Company.

d. The following parties improperly named as defendants by Lloyd's are all parties that have already been subject to numerous rulings in the *Abex* D.C. Action filed in 1982 which is in fact proceeding on the merits: Travelers Insurance Company, Argonaut Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA., and related AIG Companies, Continental Insurance Company and related CNA Companies, Cooper Industries, Inc., Pneumo Abex, and Illinois Central Industries/Whitman Corporation/PepsiAmericas, Inc.

e. The following party improperly named as a defendant has made an offer to pay and exhaust its limits of liability: Stonewall Insurance Company.

f. In addition, since Lloyd's has to date paid not one penny toward the Abex asbestos-related suits it has no right of contribution and, accordingly, no cause of action against the following parties improperly named as defendants: American Re-Insurance Company,

Associated International Insurance Company, Century Indemnity Company a.k.a. California Union Insurance Company, Falcon Insurance Company, Fireman's Fund Insurance Company, First State Insurance Company, National Surety Corporation, and International Insurance Company.

   g. All of the parties and policies under which Lloyd's has sued were subject to fulsome discovery in the *Jensen-Kelly* case referenced below that was filed in 1992 and discovery proceedings should be stayed or not allowed to go forward in a manner that repeats or seeks to repeat discovery already had by Lloyd's. Lloyd's was an active litigant in *Jensen-Kelly* and received voluminous discovery, including millions of pages of documents, thousands of interrogatory responses and several hundred days of depositions.

  **I.** **The *Abex* D.C. Action**

  8. In 1982, Abex, a subsidiary of Illinois Central Industries, filed the still pending *Abex Corporation v. Maryland Casualty Company*, C.A. No. 82-2098 (D.D.C.) ("*Abex D.C. Action*") in the United States District Court for the District of Columbia. The *Abex D.C. Action* concerns the claims and the same issues presented by this lawsuit, *i.e.*, whether the Abex and Illinois Central insurers must pay for the Abex asbestos-related suits. The answer for 24 years has been "yes," which explains Lloyd's forum shopping. The Honorable John Garrett Penn has effectively presided over the *Abex D.C. Action* during the entire 24 year history of the case, which has included bench trials, fact discovery, and dozens of rulings and opinions. All of the rulings made by Judge Penn in the *Abex D.C. Action* apply directly to this case. The *Abex D.C. Action* has resulted, directly or indirectly, in making over $400 million of insurance available for the Abex asbestos-related suits. Essentially every possible factual and legal issue has already been decided or a motion is currently pending before Judge Penn. To the extent any significant legal issue remains to be decided, it is currently before Judge Penn; these key legal issues are applicable to all of the insurers of Illinois Central Industries and Abex await decision by Judge Penn. A true and correct copy of the *Abex D.C. Action* docket sheet showing all pending

motions, rulings, opinions and stipulations is attached as Exhibit 1 to the Appendix of Exhibits to the Affidavit of Paul A. Zevnik filed herewith.

### II.  The Insurers Have Already Unsuccessfully Tried to Move the Case to New York

9.  Judge Penn has already addressed the issue of whether the District of Columbia or New York is the appropriate forum for the coverage dispute concerning the Abex asbestos-related suits and claims. In 1982, the insurers of Illinois Central Industries and Abex filed a motion in the *Abex D.C. Action* asking Judge Penn to transfer the case to the Southern District of New York. *See* Exhibit 1 – Docket Entry #14. After numerous briefs were filed on this issue, *See* Exhibit 1 – Docket Entry ## 14, 20, 28, 48, 51, 52, and a hearing on the issue on December 23, 1982, Judge Penn denied the insurers' motion to transfer the action to New York. *See* Exhibit 1 – Docket Entry #53.

### III.  Rulings in the *Abex* D.C. Action Are Directly Applicable To This Suit

10.  The United States Court of Appeals for the District of Columbia Circuit ruled that "Abex is entitled to defense by the insurance companies if the underlying tort complaints 'permit proof' of the facts establishing coverage, or if the complaints do not exclude the possibility that injury-in-fact occurred during the policy period." *Abex Corp., v. Maryland Cas. Co.*, 790 F.2d 119, 128-29 (D.C. Cir. 1986).

11.  The United States Court of Appeals for the District of Columbia Circuit has further held that "as long as there remains a possibility – however remote – that injury occurred during the policy periods of each insurer, the insurers must defend Abex. Because it is possible for asbestos-induced injuries to occur at any time following initial exposure, the tort complaints against Abex 'permit proof' that the injury-in-fact occurred during the policy periods of all three insurers. We hold therefore that the insurers must immediately fulfill their duty to defend Abex. This obligation will continue until the insurers establish that, as a matter of law, there is no

possibility that they will have to indemnify Abex." *Abex Corp., v. Maryland Cas. Co.*, 790 F.2d 119, 129 (D.C. Cir. 1986).

12.  In the Abex D.C. Action, Judge Penn has determined that all of the Lloyd's policy periods are triggered by the Abex asbestos-related suits and claims.

13.  Judge Penn also made a determination that all of the Liberty Mutual Insurance Company insurance coverage limits issued to Abex were exhausted for Abex asbestos-related suits and claims on June 1, 2000. *See* Exhibit 1 – Docket Entry #1616. Many of the Lloyd's policies sit directly excess of the Liberty Mutual policies that were found to have exhausted on June 1, 2000, and therefore Lloyd's has been in breach of its insuring obligations since then.

14.  In addition to the numerous coverage determinations already made by the court in the *Abex D.C. Action*, summary judgment motions are pending in the *Abex D.C. Action* on issues relevant to the insurance policies issued to Illinois Central Industries and Abex. The issues addressed by these currently pending motions in the *Abex D.C. Action* include:

- The obligation of excess insurance policies to "drop down" and provide coverage for Abex asbestos-related suits and claims;

- Whether insurers waived coverage defenses by failing promptly to disclaim coverage;

- Whether Abex asbestos-related suits and claims that allege causes of action such as "market share", "conspiracy" and similar theories of recovery are covered under the policies;

- Whether the so-called "aircraft products exclusion" has any applicability to the Abex asbestos-related suits and claims;

- The obligation of the insurers to indemnify settled Abex asbestos-related suits and claims;

- The obligation of the insurers to pay for Pneumo Abex's in-house defense costs incurred in connection with the in the Abex asbestos-related suits and claims; and

- Whether the Abex asbestos-related suits and claims arise from an occurrence, the manufacture, sale or distribution of asbestos containing friction products, under comprehensive general liability policies.

15.     The terms of all of the excess policies at issue in this action "follow the form," either wholly or to a substantial degree, of the primary policies that have been at issue in the D.C. Litigation for more than 20 years. For example, the insuring agreement of Lloyd's excess policy ULL 0122 (policy period: April 1, 1979 to April 1, 1980), specifically incorporates the definitions contained in "the Underlying Umbrella Policy." The underlying Great American umbrella policy, 9CX 00245, in turn, follows the form of a National Union primary policy, GLA 1270278, which more fully defines the terms and conditions of the hazards covered by the Lloyd's, Great American, and National Union policies. That National Union primary policy has been the subject of discovery, motions practice, and rulings in the *Abex D.C. Action*.

16.     Similarly, the American Reinsurance American Re excess policy M0372960 (policy period: March 1, 1971 to March 1, 1974), attaches above a Travelers umbrella policy, T-Cup 957503 71, and incorporates the definitions, conditions, and exclusions contained in that policy. The underlying Travelers umbrella policy, which is also at issue in this case, has been the subject of extensive litigation in the U.S. District Court in the *Abex D.C. Action*. American Re, a defendant in this case, is also a party to the *Related D.C. Action*. Consequently, the interpretation of the terms and conditions of both the American Re and the Travelers policies, as applied to the Abex asbestos-related suits and claims, is already before the U.S. District Court in the *Abex D.C. Action*.

17.     Moreover, five of the Lloyd's excess policies at issue in this case, which provide $70 million of per-occurrence limits, follow the form of the terms and conditions of National Union umbrella policy BE 1338972. Those Lloyd's excess policies, as well as the National Union umbrella policy, unequivocally incorporate the terms and conditions of the National Union primary policy, GLA 9184801, because the National Union umbrella policy has a "Broad As Primary" endorsement. This National Union umbrella policy, like its primary policy is and has been at issue in the *Abex D.C. Action*.

18.  In addition, all of the remaining Lloyd's policies sit directly above and follow form to policies issued by Maryland Casualty and Liberty Mutual that were litigated extensively in the *Abex D.C. Action* for more than 20 years.

### IV. Additional Policies Have Been Added to the *Abex* D.C. Action Over the Years When Appropriate

19.  The *Abex D.C. Action* originally involved 32 primary insurance policies, including 10 policies that directly underlie policies issued by Lloyd's. As the Abex asbestos-related suits and claims increased, an additional 11 primary policies issued to Illinois Central Industries were added to the *Abex D.C. Action*. Further, as the applicable limits of liability of some of the first layer of policies began to exhaust from payment of Abex asbestos-related suits and claims, several umbrella excess policies were added to the *Abex D.C. Action*.

20.  When certain of the first-layer and excess policies in the *Abex D.C Action* were no longer available to pay for Abex asbestos-related suits and claims, the insureds engaged in settlement discussions with the ripe excess insurers in an attempt to reach agreements to have those excess insurers pay for Abex asbestos-related suits and claims in a manner consistent with the controlling rulings in the *Abex D.C. Action*. As a result of these settlement discussions, the following excess insurers have fully satisfied, or agreed to satisfy fully, in a manner consistent with the rulings in the *Abex D.C. Action*, their insuring obligations for Abex asbestos-related suits and claims: Allstate Insurance Company, as successor-in-interest to Northbrook Excess Surplus Insurance Company (formerly known as Northbrook Insurance Company), Argonaut Insurance Company, Columbia Casualty Insurance Company, Continental Casualty Insurance Company, Continental Insurance Company, Evanston Insurance Company, Harbor Insurance Company, and Great American Surplus Insurance Company.

21.  The insureds remain in active settlement discussions with Stonewall Insurance Company, First State Insurance Company, and the AIG Companies (including National Union Fire Insurance Company of Pittsburgh, Pa., AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, The Insurance Company of the State of

Pennsylvania, and New Hampshire Insurance Company), consistent with the controlling rulings in the *Abex D.C. Action*.

### V. Lloyd's and American Re Have Rejected Their Insuring Obligations And Have No Claim for Contribution Against Any Party

22.  Lloyd's and American Re-Insurance Company ("American Re") are the only presently ripe excess carriers that have refused to comply with their insuring obligations for Abex asbestos-related suits and claims, that are no longer engaged in active settlement discussions with the insureds, or that are in liquidation or insolvency proceedings. After the recent ending of settlement discussions with Lloyd's and American Re, a declaratory judgment action was filed in the United States District Court for the District of Columbia captioned *Whitman Insurance Company, Ltd v. Travelers Indemnity Company, et al.*, 1:05CV01125 (D.D.C.) ("*Related D.C. Action*"). The *Related D.C. Action*, which has been assigned to Judge Penn as a related case to the *Abex D.C. Action*, requests that the same court determine the obligations of the non-settled excess insurers of Illinois Central Industries and Abex to pay for Abex asbestos-related suits and claims in a manner consistent with the 24 year history of rulings in the *Abex D.C. Action* that have controlled the performance of the insurers under primary and excess policies. A true and correct copy of the complaint in the *Related D.C. Action* is attached as Exhibit 2 to the Appendix of Exhibits to the Affidavit of Paul A. Zevnik filed herewith.

23.  Lloyd's and the solvent London Market Insurers issued approximately $172,000,000 of applicable limits of liability that are responsive to the Abex asbestos-related suits and claims. Of that amount, almost 80%, or approximately $135,500,000 of coverage, are policies that were drafted, negotiated and issued to Illinois Central Industries at its headquarters in Chicago, Illinois. The remaining $36,500,000 in coverage sits directly above, and follow form to, policies that were litigated and adjudicated in the *Abex* D.C. Action. All of these limits are currently due and payable to the insureds under the rulings in the *Abex* D.C. Action and, accordingly, there is nothing more to litigate other than Lloyd's breach of contract. These

circumstances, do not gain Lloyd's a right of action against anyone, let alone other insurers that have in fact performed under their policies.

24. American Re issued $30,000,000 of coverage to Illinois Central Industries at its headquarters in Chicago, Illinois, with applicable limits that are responsive to the Abex asbestos-related suits and claims. All of this coverage, representing more than 62% of the total American Re limits responsive to the Abex asbestos-related suits and claims, participates in a quota-share layer with policies issued by CNA in Illinois. The quota-share CNA policies are presently responding to the Abex asbestos-related suits and claims in a manner consistent with the rulings in the *Abex* D.C. Action. American Re should be estopped from failing to pay on the same basis as its co-subscriber to the very same insurance policies.

### VI. All of The Parties and Insurance Policies In This Case Were Previously Subject to Extensive Discovery and Other Proceedings In A California Litigation Known As *Jensen*-Kelly, Filed In Los Angeles in 1992; A Case Related To *Jensen-Kelly* Is Currently Pending In The Same Court

25. In 1992, I was lead counsel in a complaint filed by Illinois Central Industries, then known as Whitman Corporation, in Los Angeles Superior Court as *Jensen-Kelly Corporation et al. v. Allianz Underwriters, et al.*, No. BC 069 018 (Los Angeles Superior Court) ("*Jensen-Kelly*").

26. *Jensen-Kelly*, which was filed by Illinois Central Industries on behalf of itself and Pneumo Abex, was an insurance coverage action that sought to recover costs incurred in connection with environmental claims from all of the same insurers and insurance policies named by Lloyd's in this action.

27. *Jensen-Kelly*, included seven years of discovery by the insurers of Illinois Central Industries and Abex concerning the same policies and the same insured operations that are at issue in this lawsuit filed by Lloyd's.

28. In *Jensen-Kelly*, the court applied California law to the policies at issue in this case. A true and correct copy of the original 1992 *Jensen-Kelly* Complaint for Declaratory

Relief and Breach of Contract is attached as Exhibit 3 to the Appendix of Exhibits to the Affidavit of Paul A. Zevnik filed herewith. .

29.     A case related to *Jensen-Kelly* is pending before Los Angeles Superior Court Judge Peter D. Lichtman, who presided over *Jensen-Kelly* from approximately 1997 to 2001, is the presiding judge in the related action.

### VII. Lloyd's Filed This Lawsuit In New York in The Middle of Ongoing Settlement Discussions To Avoid the Controlling Rulings in the *Abex* D.C. Action and the Application of Illinois or California Law To The Policies Issued To Illinois Central Industries

30.     Beginning in 2000 until just last month, Illinois Central Industries and Abex were engaged in active settlement discussion with Lloyd's concerning its obligation to pay for Abex asbestos-related suits and claims in a manner consistent with the controlling rulings in the *Abex D.C. Action*. Prior to July 2002, those discussions took place subject to a tolling agreement to enable the parties to conduct negotiations without fear that one party would try to gain an unfair procedural advantage by participating in forum shopping.

31.     On July 2, 2002, counsel for Illinois Central Industries executed an extension of the tolling agreement in the same manner that the parties had previously extended the tolling agreement. Illinois Central Industries was led to believe that the tolling agreement with Lloyd's was extended and was preparing for a settlement meeting that had been planned between the parties but had been postponed by Lloyd's.

32.     Instead of going forward with the settlement meeting, or co-signing the already executed tolling agreement, Lloyd's chose to file this lawsuit in order to attempt to gain leverage. Lloyd's chose not to file its complaint (i) in the District of Columbia, the forum where Illinois Central Industries, Abex and their insurance carriers had litigated for more than 20 years and continue to litigate regarding the insurers' responsibility to pay for the same Abex asbestos-related suits and claims; (ii) in California, the forum in which Lloyd's and all of the other insurers in this lawsuit litigated over the same policies and same operations for almost a decade; or (iii) in Illinois, the state where more than 90% of the policies (by limits of liability) were

drafted, negotiated and issued; but instead Lloyd's chose New York, a forum that had never before adjudicated these policies, and a forum that was previously rejected by Judge Penn. Nor did Lloyd's chose to pay for any of the Abex asbestos-related suits. Lloyd's still has not paid one penny of the more than $400 million in payments and commitments made by other insurers, despite having issued $172 million in responsive limits.

33. Despite being blindsided by Lloyd's forum shopping, the insureds continued to work in good faith with Lloyd's in an attempt to change Lloyd's status as one of the few recalcitrant insurers of Illinois Central Industries, to an insurer that would finally join the ranks of the many other insurers of Illinois Central Industries that are paying, or have paid, Abex asbestos-related suits and claims in a manner consistent with the controlling rulings in the *Abex D.C. Action*. Unfortunately, these negotiations concluded unsuccessfully last month and Lloyd's is now a defendant in the *Related D.C. Action*, which seeks to apply the decades of coverage rulings to the polices of the remaining unsettled insurers in a consistent manner.

### VIII. None of the Insurance Company Defendants Should Have Been Sued By Lloyd's

34. The insurance company defendants in this lawsuit have been improperly sued by Lloyd's in this lawsuit because these parties:

(i) are subject to the rulings in the *Abex* D.C. Action (Travelers, Argonaut, Continental Insurance and affiliated CNA Companies including Continental Casualty, Columbia Casualty, Harbor, National Union including affiliated AIG Companies; AIU, American Home, Granite State, ISOP, New Hampshire);

(ii) have fully satisfied, or agreed to satisfy fully their insuring obligations to the insureds for Abex asbestos-related suits and claims (Argonaut, CNA Companies including Continental Insurance, Continental Casualty, Columbia Casualty, Harbor, Allstate, Great American Surplus, Evanston);

(iii) are not subject to lawsuit because of participation in liquidation proceedings (Home and Highlands);

(iv) are neither an insurer of Illinois Central Industries or Abex nor an insured under any of the policies (Insurance Company of North America);

(v) are actively engaged in settlement discussions by which the policy limits would be paid and exhausted (Stonewall Insurance Company); or

(vi) "sit above" Lloyd's and are not properly subject to Lloyd's complaint (Allianz, Employers Mutual, Gibraltar/Mt. McKinley, Husdon, Evanston, Highlands); or (vii) are not subject to contribution claims because Lloyd's has never paid anything (American Re-Insurance Company, Associated International, Century Indemnity a.k.a. California Union, Falcon, Fireman's Fund, First State, National Surety, and International).

35. Attached hereto at Tab A is a coverage chart of all of the responsive policies issued to Illinois Central Industries and Abex. All of this coverage is or has been in litigation in California and the District of Columbia.

36. Attached hereto at Tab B is a coverage chart showing all of the policies that are not subject to the jurisdiction of this court (i.e. all policies on chart shown *without* color), even assuming that any of Lloyd's claims in the lawsuit against other insurers is valid.

37. Pepsiamericas, Inc. has not previously made any application for the relief herein requested.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Paul A. Zevnik

Subscribed and sworn to before me this 19th day of June, 2005.

_____
NOTARY PUBLIC

JO ANN MIMMS
Notary Public, District Of Columbia
My Commission Expires November 30, 2006