## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

———————————————————————————x

CERTAIN UNDERWRITERS AT LLOYD'S, :
LONDON (Members of Syndicate Nos. 002, 015, :
016, 023, 029, 033, 035, 036, 049, 056, 057, 059, 065, :
069, 073, 074, 075, 077, 086, 088, 090, 101, 108, 109, :
110, 112, 116, 126, 130, 132, 133, 135, 138, 151, 164, :
165, 169, 174, 188, 189, 190, 204, 211, 212, 219, 223, :
224, 227, 231, 233, 235, 238, 243, 250, 263, 264, 265, :
267, 278, 279, 283, 286, 297, 299, 300, 301, 303, 304, :
311, 316, 317, 328, 329, 334, 347, 357, 358, 360, 365, :     INDEX NO. _____
371, 373, 374, 395, 396, 397, 404, 405, 417, 420, 422, :
427, 433, 434, 440, 448, 450, 461, 462, 465, 471, 472, :     COMPLAINT FOR
474, 475, 476, 479, 484, 489, 490, 499, 507, 518, 538, :     DECLARATORY JUDGMENT
553, 555, 576, 583, 589, 590, 592, 595, 604, 610, 612, :
618, 619, 620, 621, 625, 629, 632, 634, 650, 651, 653, :
656, 660, 661, 677, 680, 687, 688, 694, 701, 707, 711, :
713, 719, 724, 755, 756, 763, 767, 768, 773, 795, 796, :
797, 799, 800, 819, 830, 838, 845, 849, 857, 867, 870, :
896, 899, 901, 905, 917, 918, 924, 928, 947, 948, 964, :
975, 989, 999); DOMINION INSURANCE :
COMPANY LTD.; AND WORLD AUXILIARY :
INSURANCE CORPORATION LTD., :

                            Plaintiffs, :
                                        :
    -against-                           :
                                        :
PNEUMO ABEX CORPORATION; PEPSI :
AMERICAS, INC.; COOPER INDUSTRIES, :
INC.; AIU INSURANCE COMPANY; ALLIANZ :
INSURANCE COMPANY; ALLSTATE :
INSURANCE COMPANY (as successor-in-interest :
to Northbrook Excess Surplus Insurance Company :
Formerly Northbrook Insurance Company); :
AMERICAN HOME ASSURANCE COMPANY; :
AMERICAN REINSURANCE COMPANY; :
ARGONAUT INSURANCE COMPANY; :
ASSOCIATED INTERNATIONAL INSURANCE :
COMPANY; CENTURY INDEMNITY :
COMPANY (as successor-in-interest to California :
Union Insurance Company); COLUMBIA :
CASUALTY; CONTINENTAL INSURANCE :
COMPANY; CONTINENTAL CASUALTY :

02602493

COMPANY; EMPLOYERS MUTUAL          :
CASUALTY COMPANY; EVANSTON          :
INSURANCE COMPANY; FALCON          :
INSURANCE COMPANY; FEDERAL          :
INSURANCE COMPANY; FIREMAN'S FUND          :
INSURANCE COMPANY; FIRST STATE          :
INSURANCE COMPANY; GRANITE STATE          :
INSURANCE COMPANY; GREAT AMERICAN          :
SURPLUS; HARBOR SPECIALTY INSURANCE          :
GROUP; HIGHLANDS INSURANCE          :
COMPANY; THE HOME INSURANCE          :
COMPANY; HUDSON INSURANCE          :
COMPANY; INSURANCE COMPANY OF          :
NORTH AMERICA; INTERNATIONAL          :
INSURANCE COMPANY; MT. MCKINLEY          :
INSURANCE COMPANY (formerly known as          :
Gibraltar Casualty Company); ISOP; NATIONAL          :
SURETY CORP.; NATIONAL UNION FIRE          :
INSURANCE COMPANY OF PITTSBURGH,          :
PA.; NEW HAMPSHIRE INSURANCE          :
COMPANY; STONEWALL INSURANCE CO.;          :
TRAVELERS CASUALTY & SURETY          :
COMPANY; and JOHN DOES 1-100,          :
          :
            Defendants,          :
          :
ALBA GENERAL INSURANCE COMPANY          :
LTD.; ANGLO FRENCH INSURANCE          :
COMPANY LTD.; ANGLO SAXON INSURANCE          :
ASSOCIATION LTD.; BISHOPSGATE          :
INSURANCE COMPANY LTD.; BRITISH          :
AVIATION INSURANCE COMPANY LTD.;          :
BRITISH MERCHANTS INSURANCE          :
COMPANY LTD.; BRITTANY INSURANCE          :
COMPANY LTD.; COMPAGNIE          :
D'ASSURANCE MARITIMES AERIENNES &          :
TERRESTRES, S.A.; CITY GENERAL          :
INSURANCE COMPANY; COMPAGNIE          :
EUROPEENNE D'ASSURANCES          :
INDUSTRIELLES, S.A.; CORNHILL          :
INSURANCE PLC; ECONOMIC INSURANCE          :
COMPANY LTD.; EXCESS INSURANCE          :
COMPANY LTD.; FIDELIDADE INSURANCE          :
COMPANY; FOLKSAM INTERNATIONAL          :
INSURANCE COMPANY LTD.; HEDDINGTON          :
INSURANCE (UK) LTD.; HELVETIA-          :

ACCIDENT SWISS INSURANCE COMPANY :
LTD.; LEXINGTON INSURANCE COMPANY :
(UK) LTD.; LONDON & EDINBURGH :
INSURANCE COMPANY LTD.; LUDGATE :
INSURANCE COMPANY LTD.; MINSTER :
INSURANCE COMPANY LTD.; MITSUI :
MARINE & FIRE INSURANCE COMPANY :
(EUROPE) LTD.; OSLO REINSURANCE :
COMPANY (UK) LTD.; RIVER THAMES :
INSURANCE COMPANY LTD.; ROYAL :
SCOTTISH INSURANCE COMPANY LTD.; :
SPHERE/DRAKE INSURANCE COMPANY :
LTD.; ST. PAUL INTERNATIONAL :
INSURANCE COMPANY LTD.; STRONGHOLD :
INSURANCE COMPANY LTD.; SWISS :
NATIONAL INSURANCE COMPANY LTD.; :
SWITZERLAND GENERAL INSURANCE :
COMPANY; THREADNEEDLE INSURANCE :
COMPANY LTD.; TOKIO MARINE & FIRE :
INSURANCE (UK) LTD.; TRENT INSURANCE :
COMPANY LTD.; VANGUARD INSURANCE :
COMPANY LTD.; WINTERTHUR SWISS :
INSURANCE COMPANY; and WORLD :
MARINE & GENERAL INSURANCE :
COMPANY LTD.

**Nominal Defendants.**

--------------------------------------------------------------x

Plaintiffs ("Plaintiff Insurers") allege for their complaint against Defendants as follows:

## INTRODUCTION

1.       This is an action for declaratory judgment pursuant to CPLR § 3001 for the purpose of

determining an actual controversy among the parties in this action and construing the rights and legal

relations of the parties in this action arising under contracts of insurance entered into between the

American Brake Shoe Company and/or I.C. Industries, Inc., the Plaintiff Insurers, Defendant Insurers,

and Nominal Defendants. Upon information and belief, Pneumo Abex Corporation ("PNEUMO

ABEX") is a successor-in-interest to the American Brake Shoe Company; and Pepsi Americas, Inc.

("PEPSIAMERICAS") is a successor-in-interest to I.C. Industries, Inc.

-3-

2.    Plaintiff Insurers seek to resolve the controversy as to what obligation(s), if any, they may have under certain policies of excess insurance to defend or indemnify PNEUMO ABEX in connection with products liability claims asserted against it or its predecessors-in-interest, arising from alleged asbestos-related bodily injury, sickness or disease, as more fully set forth below.

## THE PARTIES

3.    Plaintiff Insurers Certain Underwriters at Lloyd's, London are individuals who, at the times relevant to this action, were underwriting members at Lloyd's, London, who, as members of one or more of the syndicates identified as Nos. 002, 015, 016, 023, 029, 033, 035, 036, 049, 056, 057, 059, 065, 069, 073, 074, 075, 077, 086, 088, 090, 101, 108, 109, 110, 112, 116, 126, 130, 132, 133, 135, 138, 151, 164, 165, 169, 174, 188, 189, 190, 204, 211, 212, 219, 223, 224, 227, 231, 233, 235, 238, 243, 250, 263, 264, 265, 267, 278, 279, 283, 286, 297, 299, 300, 301, 303, 304, 311, 316, 317, 328, 329, 334, 347, 357, 358, 360, 365, 371, 373, 374, 395, 396, 397, 404, 405, 417, 420, 422, 427, 433, 434, 440, 448, 450, 461, 462, 465, 471, 472, 474, 475, 476, 479, 484, 489, 490, 499, 507, 518, 538, 553, 555, 576, 583, 589, 590, 592, 595, 604, 610, 612, 618, 619, 620, 621, 625, 629, 632, 634, 650, 651, 653, 656, 660, 661, 677, 680, 687, 688, 694, 701, 707, 711, 713, 719, 724, 755, 756, 763, 767, 768, 773, 795, 796, 797, 799, 800, 819, 830, 838, 845, 849, 857, 867, 870, 896, 899, 901, 905, 917, 918, 924, 928, 947, 948, 964, 975, 989, 999, conducted insurance business, through Managing Agents, at Lloyd's, London. Plaintiff Insurers Certain Underwriters at Lloyd's severally subscribed, each in his own proportionate share, to one or more insurance policies issued in favor of American Brake Shoe Company and/or I.C. Industries, Inc., which policies are identified in Exhibit "A" attached hereto (the "London Policies"). Dominion Insurance Company Ltd. and World Auxiliary Insurance Corporation Ltd. are foreign corporations with principal places of business outside the State of New York, who severally subscribed, each in its own

-4-

proportionate share, to one or more of the London Policies (collectively Underwriters and Companies are referred to as "Plaintiff Insurers"). A list of plaintiff companies is appended hereto as Exhibit "B".

4.    Upon information and belief, Defendant PNEUMO ABEX is a corporation organized and existing under the laws of the State of Delaware. Upon information and belief, PNEUMO ABEX's principal place of business is located in New York. Upon further information and belief, PNEUMO ABEX regularly has conducted and continues to conduct business in New York, and/or is authorized, licensed and does business in New York and maintains an office in New York County.

5.    Upon information and belief, Defendant PEPSIAMERICAS is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in Illinois. Upon further information and belief, PEPSIAMERICAS regularly has conducted and continues to conduct business in New York.

6.    Upon information and belief, Defendant COOPER INDUSTRIES, INC. ("COOPER") is a corporation organized and existing under the laws of Ohio and maintains its principal place of business in Texas. Upon further information and belief, COOPER regularly has conducted and continues to conduct business in New York and maintains offices in Queens County and Onondaga County.

7.    Upon information and belief, Defendant AIU Insurance Company, is a corporation organized and existing under the laws of the State of New York, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

8.    Upon information and belief, Defendant Allianz Insurance Company is a corporation organized and existing under the laws of the State of California, whose principal place of business is located in California and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

9.    Upon information and belief, Defendant Allstate Insurance Company, solely as successor-in-interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company ("Allstate") is a corporation organized and existing under the laws of the State of Illinois whose principal place of business is located in Illinois and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

10.    Upon information and belief, Defendant American Home Assurance Company, is a corporation organized and existing under the laws of the State of New York, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

11.    Upon information and belief, Defendant American Reinsurance Company is a corporation organized and existing under the laws of the State of Delaware, whose principal place of business is located in New Jersey and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

12.    Upon information and belief, Defendant Argonaut Insurance Company is a corporation organized and existing under the laws of the State of California, whose principal place of business is located in California and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

13.    Upon information and belief, Defendant Associated International is a corporation organized and existing under the laws of the State of California, whose principal place of business is located in Virginia and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

14.    Upon information and belief, Defendant Century Indemnity Company, as successor-in-interest to California Union Company, is a corporation organized and existing· under the laws of the State of Pennsylvania, whose principal place of business is located in Pennsylvania and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

15.    Upon information and belief, Defendant Columbia Casualty Company is a corporation organized and existing under the laws of the State of Illinois, whose principal place of business is located in Illinois and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

16.    Upon information and belief, Defendant Continental Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

17.    Upon information and belief, Defendant Continental Casualty Company is a corporation organized and existing under the laws of the State of Illinois, whose principal place of business is located in Illinois and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

18.    Upon information and belief, Defendant Employers Mutual Casualty Company is a corporation organized and existing under the laws of the State of Iowa, whose principal place of business is located in Iowa and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

19.    Upon information and belief, Defendant Evanston Insurance Company is a corporation organized and existing under the laws of the State of Illinois, whose principal place of business is

located in Virginia and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

20.    Upon information and belief, Defendant Falcon Insurance Company is a corporation organized and existing under the laws of the State of Texas, whose principal place of business is located in Texas and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

21.    Upon information and belief, Defendant Federal Insurance Company is a corporation organized and existing under the laws of the State of Indiana, whose principal place of business is located in New Jersey and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

22.    Upon information and belief, Defendant Fireman's Fund Insurance Company is a corporation organized and existing under the laws of the State of California, whose principal place of business is located in California and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

23.    Upon information and belief, Defendant First State Insurance Company is a corporation organized and existing under the laws of the State of Connecticut, whose principal place of business is located in Massachusetts and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

24.    Upon information and belief, Defendant Granite State Insurance Company is a corporation organized and existing under the laws of the State of Pennsylvania, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

25.    Upon information and belief, Defendant Great American Surplus is a corporation organized and existing under the laws of the State of Delaware, whose principal place of business is located in Ohio and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

26.    Upon information and belief, Defendant Harbor Specialty Insurance Group is a corporation organized and existing under the laws of the State of New Jersey, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

27.    Upon information and belief, Defendant Highlands Insurance Company is a corporation organized and existing under the laws of the State of Texas, whose principal place of business is located in Texas and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

28.    Upon information and belief, Defendant The Home Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

29.    Upon information and belief, Defendant Hudson Insurance Company is a corporation organized and existing under the laws of the State of Delaware, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

30.    Upon information and belief, Defendant Insurance Company of North America ("INA") is a corporation organized and existing under the laws of the State of Delaware, whose principal place of

business is located in Pennsylvania and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

31.    Upon information and belief, Defendant International Insurance Company is a corporation organized and existing under the laws of the State of Illinois, whose principal place of business is located in Illinois and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

32.    Upon information and belief, Defendant ISOP is a corporation organized and existing under the laws of the State of Pennsylvania, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

33.    Upon information and belief, Defendant McKinley Insurance Company is a corporation organized and existing under the laws of the State of Delaware, whose principal place of business is located in New Jersey and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

34.    Upon information and belief, Defendant National Surety Company is a corporation organized and existing under the laws of the State of Illinois, whose principal place of business is located in California and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

35.    Upon information and belief, Defendant National Union Fire Insurance Company of Pittsburgh, Pa. is a corporation organized and existing under the laws of the State of Pennsylvania, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

36.    Upon information and belief, Defendant New Hampshire Insurance Company is a corporation organized and existing under the laws of the State of Pennsylvania, whose principal place of business is located in New York and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

37.    Upon information and belief, Defendant Stonewall Insurance Company is a corporation organized and existing under the laws of the State of Ohio, whose principal place of business is located in Massachusetts and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

38.    Upon information and belief, Defendant Travelers Casualty & Surety Company is a corporation organized and existing under the laws of the State of Connecticut, whose principal place of business is located in Connecticut and which is licensed or authorized to conduct business in New York and which has regularly conducted and continues to conduct business in New York.

39.    Plaintiff Insurers intend to include as Defendants to this action, upon learning the identity thereof, any additional insurers that issued insurance policies to American Brake Shoe Company and/or I.C. Industries, Inc. that have or may have an interest in the subject matter of this action. John Does 1-100 are any additional insurers that issued insurance policies to American Brake Shoe Company and/or I.C. Industries, Inc. whose identities are currently unknown, that have or may have an interest in the subject matter of this action.

40.    Nominal Defendants Alba General Insurance Company Ltd., Anglo French Insurance Company Ltd., Anglo Saxon Insurance Association Ltd., Bishopsgate Insurance Company Ltd., British Aviation Insurance Company Ltd., British Merchants Insurance Company Ltd., Brittany Insurance Company Ltd., Compagnie d'Assurance Maritimes Aeriennes & Terrestres, S.A., City General Insurance Company, Compagnie Europeenne d'Assurances Industrielles, S.A., Cornhill Insurance PLC, Economic

Insurance Company Ltd., Excess Insurance Company Ltd., Fidelidade Insurance Company, Folksam International Insurance Company Ltd., Heddington Insurance (UK) Ltd., Helvetia-Accident Swiss Insurance Company Ltd., Lexington Insurance Company (UK) Ltd., London & Edinburgh Insurance Company Ltd., Ludgate Insurance Company Ltd., Minster Insurance Company Ltd., Mitsui Marine & Fire Insurance Company (Europe) Ltd., Oslo Reinsurance Company (UK) Ltd., River Thames Insurance Company Ltd., Royal Scottish Insurance Company Ltd., Sphere/Drake Insurance Company Ltd., St. Paul International Insurance Company Ltd., Stronghold Insurance Company Ltd., Swiss National Insurance Company Ltd., Switzerland General Insurance Company, Threadneedle Insurance Company Ltd., Tokio Marine & Fire Insurance (UK) Ltd., Trent Insurance Company Ltd., Vanguard Insurance Company Ltd., Winterthur Swiss Insurance Company, and World Marine & General Insurance Company Ltd. are foreign corporations doing business in the London Insurance Market. Upon information and belief, each Nominal Defendant is incorporated outside of New York in the country set forth in Exhibit "C".

41.     Upon information and belief, each of the Nominal Defendant Insurers subscribed to one or more of the "London Policies" identified in Exhibit "A".

42.     The Nominal Defendants are joined as Nominal Defendants to ensure that all parties having an interest in the subject matter of this action are before the Court.

### JURISDICTION AND VENUE

43.     Jurisdiction in this Court is proper pursuant to CPLR § 3001 and all other applicable provisions of the CPLR and the New York State Insurance Law. Venue in this Court is proper pursuant to CPLR § 503(a) and (c).

44.     Plaintiff Insurers allege that there exists a justiciable case or controversy between and among Plaintiff Insurers, Defendants PNEUMO ABEX, PEPSIAMERICAS, and COOPER, the

Defendant Insurers, and Nominal Defendants with respect to the coverage disputes described in this Complaint.

45.     The Defendant Insurers and Nominal Defendants are necessary parties to this action pursuant to CPLR § 1001(a) in that a determination of the coverage issues between and among the parties could inequitably affect the rights of the Defendant Insurers and Nominal Defendants absent their participation in this action.

## THE POLICIES

46.     Plaintiff Insurers, Defendant Insurers, and Nominal Defendants issued or subscribed to one or more umbrella or excess liability insurance policies in favor of American Brake Shoe Company during the period from 1952 through 1971.

47.     Plaintiff Insurers, Defendant Insurers, Nominal Defendants issued or subscribed to one or more umbrella, or excess liability policies in favor of I.C. Industries, Inc. during the period from 1971 through 1985.

48.     Upon information and belief, each of the umbrella or excess liability policies issued or subscribed in favor of the American Brake Shoe Company provided product liability coverage, subject to all of the terms, conditions, and definitions included therein, to American Brake Shoe Company, any "Additional Insureds" identified in the policies and those entities which are an "Insured" within the definitions of the policies.

49.     Upon information and belief, each of the umbrella, or excess liability policies issued or subscribed in favor of I.C. Industries, Inc. provide product liability coverage, subject to all of the terms, conditions, and definitions included therein, to I.C. Industries, Inc., any "Additional Insureds" identified in the policies and those entities which are an "Insured" within the definitions of the policies.

50.    Upon information and belief, during the period from August 8, 1952 to August 1, 1962, certain of the Plaintiff Insurers and Nominal Defendants subscribed to umbrella or excess liability policies in favor of the American Brake Shoe Company, and during the period from January 5, 1979 to April 1, 1985, Plaintiff Insurers and Nominal Defendants subscribed to excess liability policies in favor of I.C. Industries, Inc.

51.    Upon information and belief, during the period from April 1, 1980 to April 1, 1985, AIU Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by AIU Insurance Company and which were, in whole or in part, negotiated and issued in New York.

52.    Upon information and belief, during the period from April 1, 1982 to April 1, 1983 Allianz Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Allianz Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

53.    Upon information and belief, during the period from March 30, 1976 to April 1, 1983, Allstate Insurance Company as successor-in-interest to Northbrook Excess Surplus Insurance Company formerly Northbrook Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Northbrook and which may have been, in whole or in part, negotiated and issued in New York.

54.    Upon information and belief, during the period from March 1, 1973 to March 1, 1976, American Home Assurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by American Home Assurance Company and which were, in whole or in part, negotiated and issued in New York.

55. Upon information and belief, during the period from August 1, 1962 to August 1, 1971, American Reinsurance Company issued insurance policies to American Brake Shoe Company, and during the period from March 1, 1971 to March 31, 1977, American Reinsurance Company issued policies to I.C. Industries, Inc. Attached as Exhibit "D" and Exhibit "E" are lists of insurance policies, which lists include policies issued by American Reinsurance Company and which were, in whole or in part, negotiated and issued in New York.

56. Upon information and belief, Argonaut Insurance Company during the period March 1, 1974 to March 1, 1975 to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Argonaut Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

57. Upon information and belief, Associated International during the period from January 5, 1979 to April 1, 1982, Associated International issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Associated International and which may have been, in whole or in part, negotiated and issued in New York.

58. Upon information and belief, during the period from April 1, 1982 to April 1, 1985, Century Indemnity Company, as successor-in-interest to California Union Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Century Indemnity Company and which may have been, in whole or in part, negotiated and issued in New York.

59. Upon information and belief, during the period from March 1, 1971 to April 1, 1985, Columbia Casualty Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E"

is a list of insurance policies, which list includes the policies issued by Columbia Casualty and which may have been, in whole or in part, negotiated and issued in New York.

60.    Upon information and belief, during the period from April 1, 1981 to April 1, 1984, Continental Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Continental Insurance Company and which was, in whole or in part, negotiated and issued in New York.

61.    Upon information and belief, during the period from April 1, 1981 to April 1, 1984, Continental Casualty Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Continental Casualty Company and which may have been, in whole or in part, negotiated and issued in New York.

62.    Upon information and belief, during the period from April 1, 1981 to April 1, 1982, Employers Mutual issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Employers Mutual and which may have been, in whole or in part, negotiated and issued in New York.

63.    Upon information and belief, during the period from April 1, 1982 to April 1, 1984, Evanston Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Evanston Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

64.    Upon information and belief, during the period from April 1, 1982 to April 1, 1983, Falcon Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Falcon Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

65.    Upon information and belief, during the period from April 1, 1980 to April 1, 1982, Federal Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Federal Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

66.    Upon information and belief, during the period from April 1, 1981 to April 1, 1982, Fireman's Fund Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Fireman's Fund Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

67.    Upon information and belief, during the period from March 1, 1977 to April 1, 1985, First State Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by First State Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

68.    Upon information and belief, during the period from March 1, 1979 to April 1, 1981, Great American Surplus issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Great American Surplus and which may have been, in whole or in part, negotiated and issued in New York.

69.    Upon information and belief, during the period from April 1, 1981 to April 1, 1984, Mt. McKinley Insurance Company (formerly Gibraltar Casualty Company) issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Mt. McKinley Insurance Company (formerly Gibraltar Casualty Company) and which may have been, in whole or in part, negotiated and issued in New York.

70.    Upon information and belief, during the period from March 1, 1979 to April 1, 1982 Granite State Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit

"E" is a list of insurance policies, which list includes the policies issued by Granite State Insurance Company and which was, in whole or in part, negotiated and issued in New York.

71.     Upon information and belief, during the period from March 1, 1977 to April 1, 1985, Harbor Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Harbor Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

72.     Upon information and belief, during the period from April 1, 1981 to April 1, 1985, Highlands Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Highlands Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

73.     Upon information and belief, during the period from August 1, 1962 to August 1, 1971, The Home Insurance Company issued insurance policies to the American Brake Shoe Company, and during the period from August 1, 1962 to August 1, 1971, The Home Insurance Company issued policies to I.C. Industries, Inc. Attached as Exhibits "D" and "E" are lists of insurance policies, which lists include the policies issued by The Home Insurance Company, and which were, in whole or in part, negotiated and issued in New York.

74.     Upon information and belief, during the period from April 1, 1983 to April 1, 1984, Hudson Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Hudson Insurance Company and which was, in whole or in part, negotiated and issued in New York.

75.     Upon information and belief, during the period from April 1, 1980 to April 1, 1981, International Insurance Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit

"E" is a list of insurance policies, which list includes the policies issued by International Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

76.    Upon information and belief, during the period from March 1, 1977 to March 1, 1978, ISOP issued insurance policies to I.C. Industries, Inc.  Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by ISOP and which was, in whole or in part, negotiated and issued in New York.

77.    Upon information and belief, during the period from April 1, 1980 to April 1, 1985, National Surety Company issued insurance policies to I.C. Industries, Inc.  Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by National Surety Company and which may have been, in whole or in part, negotiated and issued in New York.

78.    Upon information and belief, during the period from April 1, 1981 to April 1, 1985, National Union Fire Insurance Company issued insurance policies to I.C. Industries, Inc.  Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by National Union Fire Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

79.    Upon information and belief, during the period from March 1, 1978 to March 1, 1979, New Hampshire Insurance Company issued insurance policies to I.C. Industries, Inc.  Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by New Hampshire Insurance Company and which may have been, in whole or in part, negotiated and issued in New York.

80.    Upon information and belief, during the period from March 1, 1975 to March 1, 1977, Stonewall issued insurance policies to I.C. Industries, Inc.  Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Stonewall and which may have been, in whole or in part, negotiated and issued in New York.

81.    Upon information and belief, during the period from March 1, 1971 to March 1, 1974, Travelers Indemnity Company issued insurance policies to I.C. Industries, Inc. Attached as Exhibit "E" is a list of insurance policies, which list includes the policies issued by Travelers Indemnity Company and which was, in whole or in part, negotiated and issued in New York.

## THE ASBESTOS-RELATED PRODUCTS LIABILITY CLAIMS

82.    Upon information and belief, numerous claims and suits have been asserted and are expected to be asserted in the future against PNEUMO ABEX seeking substantial sums in compensatory and punitive damages for alleged bodily injuries, sickness or disease arising from the claimants' exposure to, inhalation or ingestion of asbestos fibers contained in or released from various products (hereafter "Asbestos-related Products Liability Claims").

83.  Upon information and belief, the majority of the Asbestos-related Products Liability Claims which have been asserted against PNEUMO ABEX arise from American Brake Shoe Company's past business of manufacturing, selling and distributing asbestos-containing friction products, including asbestos-containing brake linings.

84.  On or about July 20, 2000, Mafco Consolidated Group, Inc. notified certain Plaintiff Insurers and Nominal Defendants that Liberty Mutual policies underlying London Market policies in effect from August 8, 1957 through August 1, 1962 were exhausted as of June 30, 2000.  PNEUMO ABEX demands that Plaintiff Insurers and Nominal Defendants defend and indemnify PNEUMO ABEX with respect to Asbestos-Related Products Liability Claims under London Market policies in effect from August 8, 1957 to August 1, 1962.

85.    PNEUMO ABEX has notified certain Plaintiff Insurers and Nominal Defendants of thousands of asbestos-related product liability claims under London Market policies subscribed in favor of I.C. Industries, Inc., which policies include those in effect from January 5, 1979 to April 1, 1985.

86.    Upon information and belief, PNEUMO ABEX has demanded or intends to demand indemnification of defense expenses and amounts paid or to be paid as settlements and/or judgments in connection with Asbestos-related Products Liability Claims asserted against PNEUMO ABEX and its predecessors under the London Policies identified in Exhibit "A" in effect from August 1, 1952 to August 1, 1962 and January 5, 1979 to March 31, 1985

87.    Plaintiff Insurers deny any obligation to indemnify PNEUMO ABEX or PEPSIAMERICAS for any amounts incurred by them in connection with Asbestos-related Products Liability Claims under any of the London Policies identified in Exhibit "A".

88.    If and in the event Plaintiff Insurers are found to be obligated to indemnify PNEUMO ABEX and/or PEPSIAMERICAS, in connection with any Asbestos-related Products Liability Claims under any of the London Policies, particularly including but not limited policies in effect from August 8, 1957 to August 1, 1962, some or all of the Defendant Insurers may also be so obligated under one or more of the policies they issued to American Brake Shoe Company and/or I.C. Industries, Inc. Under such circumstances, Plaintiff Insurers are entitled to indemnification and/or contribution from said Defendant Insurers.

89.    Upon information and relief, Cooper claims to have an interest in the proceeds of the London Market American Brake Shoe policies based upon its relationship with PNEUMO ABEX.

90.    Plaintiff Insurers deny that Cooper has any rights under the London Market policies identified herein.

### FIRST CAUSE OF ACTION

### (DECLARATORY RELIEF UNDER POLICIES)

91.    Plaintiff Insurers repeat and incorporate by reference all the allegations set forth in Paragraphs 1 through 94 as if fully set forth herein.

92.    The London Policies identified in Exhibit "A" contain various terms, conditions and definitions which PNEUMO ABEX, or PEPSIAMERICAS, must satisfy or otherwise must be satisfied for the losses and expenses PNEUMO ABEX, or PEPSIAMERICAS, have incurred and will in the future incur in connection with the Asbestos-related Products Liability Claims to come within the scope of coverage afforded by such policies. COOPER has no rights under the policies and any alleged interest in the policy proceeds is contingent upon satisfaction of policy terms, conditions and definitions with respect to any alleged rights under the policies. In addition, the London Policies contain certain exclusions which may bar coverage for some or all of the Asbestos-related Products Liability Claims.

93.    PNEUMO ABEX, PEPSIAMERICAS and COOPER are unable to prove or establish coverage or coverage is otherwise precluded for Asbestos-related Products Liability Claims for one or more of the following reasons:

a.    Coverage of the Asbestos-related Products Liability Claims asserted against PNEUMO ABEX or PEPSIAMERICAS may be barred, in whole or in part, by asbestos-related exclusions, contained within the policies.

b.    Coverage of the Asbestos-related Products Liability Claims asserted against PNEUMO ABEX or PEPSIAMERICAS may be barred, in whole or in part, by pollution exclusions contained within the policies.

c.    The PNEUMO ABEX or PEPSIAMERICAS claims against Plaintiff Insurers and Nominal Defendants may be precluded, in full or in part, by their failure to satisfy one or more of the terms and conditions of the policy(ies) including but not limited to: (i) the insured must provide timely and adequate notice of an occurrence for which reimbursement is sought; (ii) the insured must assist and cooperate by furnishing London Market Insurers with information requested concerning claims for which reimbursement is sought; (iii) the insured must establish that it has maintained underlying insurance as disclosed at the time of placement; and (iv) the insured must establish that the full policy limits of the primary policy and any other underlying policy have been properly and completely exhausted in accordance with their terms and conditions.

d.    The PNEUMO ABEX or PEPSIAMERICAS claims may be barred, in whole or in part, to the extent that the Asbestos-related Products Liability Claims against them do not arise from and are not caused by an "occurrence" as that term is defined in the London Policies.

e.    The PNEUMO ABEX or PEPSIAMERICAS claims may be barred, in whole or in part, to the extent that the Asbestos-related Products Liability Claims brought against them do not arise from or seek damages for " bodily injury" and/or "Personal Injury" as those terms are defined in the policies.

f.    The London Policies do not afford coverage for claims against PNEUMO ABEX or PEPSIAMERICAS for punitive or exemplary damages or fines or penalties.

g.    The PNEUMO ABEX or PEPSIAMERICAS claims may be barred, in whole or in part, to the extent that they failed to disclose prior to or at the time of contracting, either in their applications or otherwise, that they held the interpretation of policy terms, conditions and exclusions for which they now contend, and this failure to disclose materially increased the risk at issue.

h.    The PNEUMO ABEX or PEPSIAMERICAS claims may be barred, in whole or in part, to the extent that they may have or did fraudulently conceal or misrepresent material facts at the time the policy was negotiated or placed.

i.    To the extent that PNEUMO ABEX or PEPSIAMERICAS expected or intended the acts or harm giving rise to the Asbestos-related Products Liability Claims, coverage for said claims is barred.

j.    The London Policies contain no duty to defend PNEUMO ABEX or PEPSIAMERICAS with respect to Asbestos-related Products Liability Claims.

k.    The PNEUMO ABEX or PEPSIAMERICAS claims may be barred, in whole or in part, to the extent that they failed to mitigate, minimize or avoid any damages sustained in connection with any Asbestos-related Products Liability Claims.

l.    The PNEUMO ABEX or PEPSIAMERICAS claims may be barred, in whole or in part, to the extent they knew or should have known of any loss, risk, condition, damage, or injury at the time the London Policies were placed or renewed or to the extent any loss, risk, condition, damage, or injury had already commenced or was in process on or before the inception or renewal of the London Policies.

m.    Any accident, occurrence, loss or injury for which PNEUMO ABEX or PEPSIAMERICAS may be found liable with respect to the Asbestos-related Products Liability Claims asserted against them did not take place during the effective periods of the London Policies.

n.    The London Policies contain provisions providing that, if any loss which is covered under said policies is also covered in whole or in part under any other excess policy issued to PNEUMO ABEX or PEPSIAMERICAS prior to the inception date of the policy subscribed by Plaintiff Insurers and Nominal Defendants, then the limit of liability under Plaintiff Insurers and Nominal Defendants' policy is reduced by any amount due to Defendant Insureds on account of such loss under such prior insurance.

o.   The London Policies provide that, if other valid and collectible insurance with any other insurer is available to PNEUMO ABEX or PEPSIAMERICAS covering a loss also covered by Plaintiff Insurers and Nominal Defendants' policy, then the insurance afforded by Plaintiff Insurers and Nominal Defendants' policy shall be deemed in excess of and shall not contribute with such other insurance.

p.   According to their terms and conditions, the London Policies attach, if at all, only after the underlying insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability, or have otherwise exhausted their full policy limits of liability.

q.   The PNEUMO ABEX or PEPSIAMERICAS claims may be barred, in whole or in part, to the extent they have voluntarily paid or assumed an obligation to pay or have incurred any expense without notice to Plaintiff Insurers and Nominal Defendants.

r.   The PNEUMO ABEX or PEPSIAMERICAS claims may be barred, in whole or in part, to the extent that the Asbestos-related Products Claims are excluded from coverage by the provisions of any policy underlying the London Policies which are incorporated into the London Policies.

s.   The PNEUMO ABEX or PEPSIAMERICAS are not entitled to indemnification of any amounts paid in settlement of alleged Asbestos-related Products Liability Claims in which the claimant has not, in fact, sustained an asbestos-related injury, illness, disease or damage.

t.   COOPER has no rights under the London Policies with respect to asbestos-related Products Liability Claims and any other claims.

94.   The terms, conditions and exclusions of the London Policies and the application of said policies to the Asbestos-related Products Liability Claims should be determined in accordance with the substantive law of New York.

95   A ripe and justiciable controversy exists between Plaintiff Insurers and Defendant Insureds regarding the parties' respective rights and obligations under the London Policies.

96.   The Plaintiff Insurers have no adequate remedy at law.

97.   Plaintiff Insurers seek a judicial declaration of the respective rights and duties of the parties. Such a declaration is necessary and proper at this time in order that all the parties be bound by

the same interpretation of the London Policies and may determine their rights and obligations among themselves, and so as to avoid the multiplicity of legal actions that would otherwise be necessary.

WHEREFORE, Plaintiff Insurers hereby demand judgment as follows:

(a)    Determining and declaring that the London Policies do not provide coverage for the Asbestos-related Products Liability Claims asserted against PNEUMO ABEX or PEPSIAMERICAS; and that pursuant to the London Policies, Plaintiff Insurers have no obligation to indemnify or defend PNEUMO ABEX or PEPSIAMERICAS with respect to the Asbestos-related Products Liability Claims asserted against them; and further determining and declaring that COOPER has no rights under the London policies.

(b)    Determining and declaring, if, and in the event, a finding is made that Plaintiff Insurers are obligated to defend or indemnify PNEUMO ABEX or PEPSIAMERICAS under one or more London Policies, the amount of Plaintiff Insurers' allocated shares of such defense costs and damages, including any and all rights of set off and contribution against Defendant Insureds and Defendant Insurers.

(c)    Determining and declaring that New York law applies to the issues raised in this action;

(d)    Granting Plaintiff Insurers such other and further relief as this Court may deem just, proper, and equitable, including attorneys fees, expenses, and costs.

Dated: July 9, 2002

Respectfully submitted,

Thomas J. Quinn, Esq.
Richard C. Milazzo, Esq.
Eugene P. Murphy, Esq.
Christine Gagliano, Esq.
Carrie Gallagher, Esq.
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, New York 10019-6829
(212) 261-8000