UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, et al., | ) ) ) | 02 CV 8604 |
| Plaintiffs, | ) ) ) | Assigned to The Honorable Loretta A. Preska |
| against | ) | |
| PNEUMO ABEX CORPORATION, et al., | ) ) | RESPONSE OF DEFENDANTS PNEUMO ABEX CORPORATION AND COOPER INDUSTRIES, INC. TO PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND |
| Defendants, | ) ) | |
| ALBA GENERAL INSURANCE COMPANY LTD., et al., | ) ) ) | |
| Nominal Defendants. | ) ) | |

Michael A. Rosenthal
Jon G. Shepherd
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 698-3400

ATTORNEYS FOR DEFENDANT
COOPER INDUSTRIES, INC.

Edward Tessler (ET-4503)
DICKSTEIN SHAPIRO MORIN
    & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 835-1400
Facsimile: (212)

Jerold Oshinsky (JO-2080)
DICKSTEIN SHAPIRO MORIN
    & OSHINSKY LLP
2101 L Street, N.W.
Washington, DC 20037
Telephone: (202) 785-9700
Facsimile: (212) 887-0689

ATTORNEYS FOR DEFENDANTS
PNEUMO ABEX CORPORATION
AND COOPER INDUSTRIES, INC.

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 3

    A.    This Case Is Related To The Federal-Mogul Bankruptcy. ..................................... 3

        1.    The contractual indemnification and guarantee obligations among Federal-Mogul, F-M Products, Cooper, and Pneumo Abex cause this case to be related to the Federal-Mogul Bankruptcy. ................................................. 4

        2.    If Cooper is a proper party, Federal-Mogul and F-M Products are proper parties and this case is related to the Bankruptcy. ...................................... 8

        3.    The Federal-Mogul Bankruptcy Court's actions demonstrate that the insurance policies at issue are related to the Bankruptcy. ........................ 12

        4.    Judge Wolin's February 2002 decision in the Federal-Mogul Bankruptcy supports removal here. ............................................................................. 13

    B.    Mandatory Abstention Is Not Applicable Here. ................................................... 14

    C.    There Is No Basis To Support Plaintiffs' Request For Equitable Remand. ......... 15

        1.    Factors 1 (the effect on the efficient administration of the bankruptcy estate) and 5 (the degree of relatedness or remoteness of the proceeding to the main bankruptcy case) do not support remand. ................................... 15

        2.    Factors 2 (the extent to which state law issues predominate) and 3 (the difficulty or unsettled nature of applicable state law) do not support remand. ..................................................................................................... 16

        3.    Factor 4 (comity) does not support remand. ............................................. 16

        4.    Factor 6 (the existence of the right to a jury trial) does not support remand under the circumstances of this case. ......................................................... 17

        5.    Factor 7 (prejudice to the involuntary removed defendants) does not support remand. ......................................................................................... 17

    D.    There Is No Basis For Discretionary Abstention Here. ....................................... 18

III.  CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) .............................................. 8

*ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308 (S.D.N.Y. 1997) .......... 4, 8

*Allegheny County v. Mashuda Co.*, 360 U.S. 185 (1959) ............................................... 19

*American Hardwoods, Inc. v. Deutsche Credit Corp.*, 885 F.2d 621 (9th Cir. 1989) ..................... 5

*American Int'l Specialty Lines Ins. Co. v. Towers Financial Corp.*, 198 B.R. 55 (S.D.N.Y. 1996) ......................................................................................................................... 6

*Apex Inv. Assoc., Inc. v. TJX Cos., Inc.*, 121 B.R. 522 (Bank. N.D. Ill. 1990) .............................. 5

*Blackacre Bridge Capital LLC v. Korff (In re River Ctr. Holdings, LLC)*, 288 B.R. 59 (Bank. S.D.N.Y. 2003) .............................................................................................. 8, 16, 17

*Bond Street Assoc. Ltd v. Ames Dep't Stores, Inc.*, 174 B.R. 28 (S.D.N.Y. 1994) ........................ 5

*Carver v. Brecher*, 144 B.R. 643 (S.D.N.Y. 1992) ........................................................................ 5

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ........................................................................ 3, 4

*Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800 (1976) .................................. 19

*Freeport-McMoran, Inc. v. KN Energy, Inc.*, 498 U.S. 426 (1991) ............................................. 7

*Hickox v. Leeward Isles Resorts, Ltd.*, 224 B.R. 533 (S.D.N.Y. 1998) ....................................... 7

*Home Capital Collateral, Inc. v. Federal Deposit Ins. Corp.*, 96 F.3d 760 (5th Cir. 1996) .......... 7

*Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores)*, 190 B.R. 157 (S.D.N.Y. 1995) ................ 8

*In re A.H. Robins Co.*, 828 F.2d 1023 (4th Cir. 1987) .................................................................. 7

*In re Allied Mech. & Plumbing Corp.*, 62 B.R. 873 (Bank. S.D.N.Y. 1986) .............................. 15

*In re Federal-Mogul Global, Inc.*, 282 B.R. 301, 384 (D. Del. 2002), *mandamus denied*, 300 F.3d 368 (3d Cir. 2003), *cert. denied*, 123 S. Ct. 884 (2003) .................................. 13, 14, 17

*In re Lawrence*, 233 B.R. 248 (N.D.N.Y. 1999) ........................................................................... 5

*In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984) ..................................................................... 4

*In re Pan American Corp.*, 950 F.2d 839 (2d Cir. 1991) ............................................................. 19

*In re Titan Energy, Inc.*, 837 F.2d 325 (8th Cir. 1988) ................................................................ 7

*Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695 (Bank. S.D.N.Y. 1989) .................................. 17

*Lazar v. State of California (In re Lazar)*, 237 F.3d 967 (9th Cir. 2001) .................................... 18

*LTV Corp. v. Back (In re Chateaugay Corp.)*, 201 B.R. 48 (Bank. S.D.N.Y. 1996) .................... 5

*Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 41 B.R. 511 (Bank. S.D.N.Y. 1999)) ........................................................................................ 8

*ML Media Partners, L.P. v. Century/ML Cable Venture (In re Adelphia Comm. Corp.)*, 285 B.R. 127 (Bank. S.D.N.Y. 2002) ...................................................................................... 15

*Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .......................................... 19

*Mt. McKinley Ins. Co. v. Corning, Inc.*, 2003 U.S. Dist. LEXIS 4295 (S.D.N.Y. Mar. 20, 2003) .................................................................................................................................. 1, 11, 12

*National Union Fire Ins. Co. v. Karp*, 108 F.3d 17 (2d Cir. 1997) ...................................... 18, 19

*Nemsa Establishment, S.A. v. Viral Testing Sys., Corp.*, 1995 U.S. Dist. LEXIS 11650 (S.D.N.Y. Aug. 15, 1995) ............................................................................................ 4, 11, 16, 17

*Neuman v. Goldberg*, 159 B.R. 681 (S.D.N.Y. 1993) ................................................................ 20

*Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp)*, 980 F.2d 110 (2nd Cir. 1992) ............................................................................................................................... 3

**Table of Authorities**
**(Continued)**

Page(s)

*Refinery Holding Co. v. TRMI Holdings, Inc. (In re El Paso Refinery, LP)*, 302 F.3d 343
  (5th Cir. 2002)...............................................................................................................8
*Renaissance Cosmetics, Inc. v. Development Specialists, Inc.*, 277 B.R. 5 (S.D.N.Y.
  2002) ....................................................................................15, 16, 17, 18, 20
*Weisman v. Southeast Hotel Prop. Ltd.*, 1992 U.S. Dist. LEXIS 7736, No. 91 Civ. 6232,
  1992 WL 131080 (S.D.N.Y. June 1, 1992) ........................................17, 20
*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ......................................... 18
*Wolde-Meskel v. Vocational Instruction Project Comm. Servs., Inc.*, 166 F.3d 59 (2d Cir.
  1999) .............................................................................................................7

**Statutes**
11 U.S.C. § 365(g)(1) ......................................................................................... 7
28 U.S.C. § 1334(b) ........................................................................................... 3
28 U.S.C. § 1334(c)(1) ..................................................................................... 18
28 U.S.C. § 1334(c)(2) ..................................................................................... 15
28 U.S.C. § 1452(b) ......................................................................................... 15

**Rules**
Fed. R. Evid. 408 ............................................................................................... 9

Defendants Pneumo Abex Corporation ("Pneumo Abex") and Cooper Industries, Inc. ("Cooper") hereby submit this response to Plaintiffs' Motion to Remand.[1]

## I.
## INTRODUCTION

Cooper timely removed this case because it is related to an ongoing bankruptcy proceeding in the District of Delaware involving Federal-Mogul Corporation ("Federal-Mogul ") and Federal-Mogul Products, Inc. ("F-M Products"). Although Plaintiffs object to removal, their posturing on this issue is unpersuasive given that their similar arguments recently were rejected in another asbestos-related bankruptcy case in this District, *see Mt. McKinley Ins. Co. v. Corning, Inc.*, 2003 U.S. Dist. LEXIS 4295 (S.D.N.Y. Mar. 20, 2003), and the fact that Plaintiffs have taken exactly the opposite position in a case currently pending in the Northern District of Texas, *Dresser Industries, Inc. v. Underwriters at Lloyd's*, No. 3-02CV-998-K. In the former case, Judge Cote ruled that "related to" jurisdiction was proper with respect to a declaratory judgment action concerning certain insurance policies for which an asbestos bankrupt and others claimed rights to policy proceeds. Similarly, jurisdiction exists here because Pneumo Abex, Cooper, Federal-Mogul, and F-M Products all claim rights under the policies at issue, F-M Products assumed certain Pneumo Abex asbestos-related liabilities, and Federal-Mogul and F-M Products agreed to indemnify Pneumo Abex and Cooper with respect to those liabilities (which are covered by the insurance policies at issue here).

In the latter case, the plaintiff ("Dresser") sued Lloyd's, Dominion, and World Auxiliary in Texas state court, asserting claims related to certain insurance policies providing coverage for

---

[1] We are authorized to advise the Court that Defendant PepsiAmericas, Inc. joins in the general arguments and proposed outcome advanced in this response, without necessarily adopting each fact described and relied upon herein.

asbestos and related bodily injury claims.[2]  According to Lloyd's, because Dresser had "spun off

[Harbison-Walker Refractories Co. ('Harbison')] as a separate corporate entity in 1992," Dresser

and Harbison "shared insurance coverage" and both Dresser and Harbison could submit claims

under the policies at issue.  London Market Defendants' Motion to Transfer Venue and Brief in

Support ("London Market Defendants' Motion to Transfer") at 2, 3 (filed June 12, 2002)

(Affidavit of Edward Tessler ("Tessler Aff.") Ex. A).  Harbison was not a party to the Texas suit,

however, because it was in the midst of bankruptcy proceedings in the Western District of

Pennsylvania.  Because Dresser and Harbison both claimed rights in the policy proceeds, Lloyd's

removed the *Dresser* case from state court and then asked the federal court to transfer Dresser's

claims to the court overseeing the Harbison bankruptcy.

     Thus, Plaintiffs here are challenging the very same actions that they took in the *Dresser*

litigation.  Dresser sued Lloyd's, Dominion, and World Auxiliary in state court and asserted

claims concerning insurance policies to which both Dresser and Harbison, a bankrupt entity, had

the right to receive proceeds;  Lloyd's removed the case because the claims were "related to" the

Harbison bankruptcy and sought to transfer it to the court overseeing those proceedings.  Here,

Plaintiffs sued Pneumo Abex and Cooper in state court and requested declarations concerning

insurance policies to which Pneumo Abex, Cooper, and F-M Products, a bankrupt entity, claim

the right to receive proceeds;  Cooper removed the case because it relates to the Federal-Mogul

---

[2]  "Underwriters at Lloyd's, London Participating In, Subscriber To, Or Reinsuring-To-Close,
Directly Or Indirectly, The Syndicate Years of Account Participating in the Lloyd's Policies,"
Dominion Insurance Company Ltd. ("Dominion"), and World Auxiliary Insurance
Corporation Ltd. ("World Auxiliary") are both Plaintiffs here and defendants in *Dresser*.
(Although Defendants are not aware of the exact overlap between the "Underwriters at
Lloyd's " from *Dresser* and the "Certain Underwriters at Lloyd's, London" that are Plaintiffs
in this matter, there undoubtedly is overlap.)  Moreover, many nominal defendants here are
defendants *represented by counsel for Lloyd's* in *Dresser*.

2

Bankruptcy. Thus, Cooper has done here precisely what Plaintiffs/Lloyds did in *Dresser*.

Plaintiffs cannot have it both ways – either removal is proper under these circumstances, as they

argue in *Dresser* and as Cooper and Pneumo Abex argue here, or it is not. Cooper and Pneumo

Abex submit that removal of this case was proper.

## II.
## ARGUMENT

### A.    This Case Is Related To The Federal-Mogul Bankruptcy.

Plaintiffs contend that this Court lacks jurisdiction because this action is not "related to"

the Federal-Mogul Bankruptcy. As recently stated by several of the Plaintiffs,

> [a] proceeding is "related to" a bankruptcy case if the outcome of the proceeding
> could conceivably have any effect on the estate being administered in bankruptcy.
> The "related to" standard is quite broad. "Certainty, or even likelihood of [any]
> effect, is not required." . . . "[R]elated to" jurisdiction is not based on whether any
> particular aspect of a case is related to a bankruptcy, but rather whether "the
> outcome of the *proceeding* could conceivably have any effect on the estate being
> administered in bankruptcy."

*Dresser*, London Market Defendants' Reply Memorandum in Support of Motion to Transfer

Venue at 3 (citations omitted; filed June 12, 2002) (attached as Tessler Aff. Ex. 2).

It is not surprising that Plaintiffs, as defendants in *Dresser*, argued that "related to"

jurisdiction under 28 U.S.C. § 1334(b) is very broad: Although "Congress did not delineate the

scope of 'related to' jurisdiction, . . . its choice of words suggests a grant of some breadth."

*Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995). "The test for determining whether

litigation has a significant connection with a pending bankruptcy proceeding is whether its

outcome might have any 'conceivable effect' on the bankrupt estate. If that question is answered

affirmatively, the litigation falls within the 'related to' jurisdiction of the bankruptcy court."

*Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp)*, 980 F.2d 110, 114 (2nd

Cir. 1992). Put another way, "if the outcome of the [litigation] 'could alter the debtor's rights,

liabilities, options or freedom of action (either positively or negatively)' or 'in any way impact[]

3

upon the handling and administration of the bankrupt estate,' it is 'related to' the bankruptcy."

*ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1322 (S.D.N.Y. 1997)

(quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984)).  Moreover, "[p]roceedings are

'related to' bankruptcy cases . . . also where parties are sufficiently intertwined with the debtor."

*Nemsa Establishment, S.A. v. Viral Testing Sys., Corp.*, 1995 U.S. Dist. LEXIS 11650, at *9

(S.D.N.Y. Aug. 15, 1995)  Thus, "[p]roceedings 'related to' the bankruptcy include . . . suits

between third parties which have an effect on the bankruptcy estate."  *Celotex*, 514 U.S. at 307

n.5 (1995).[3]

1.     **The contractual indemnification and guarantee obligations among Federal-Mogul, F-M Products, Cooper, and Pneumo Abex cause this case to be related to the Federal-Mogul Bankruptcy.**

Courts facing cases that implicate guarantees or indemnification claims against a debtor

"have broadly interpreted whether a particular matter might have a 'conceivable effect' on or a

'significant connection' with the bankrupt estate . . . ."  *LTV Corp. v. Back (In re Chateaugay*

---

[3] Plaintiffs assert that jurisdiction is lacking because this action deals with policies in effect from 1952-1985, and Pneumo Abex retained all "liabilities related to the presence of asbestos in any products shipped by its Friction Products Division prior to August 29, 1988." Plaintiffs' Motion at 9 n.3.  Plaintiffs thus implicitly concede that if Pneumo Abex has transferred any portion of its asbestos liabilities to F-M Products, jurisdiction exists.  This is in fact the case.  Contrary to Plaintiffs' misunderstanding, Pneumo Abex only retained liabilities relating to asbestos claims for (a) products of Pneumo Abex's Friction Products Division for which notice was given prior to August 29, 1998; (b) employee related claims, and (c) railroad and aerospace products.  *See* Declaration of Robert W. Teets ("Teets Decl.") ¶ 2 (Ex. B hereto).  As a result of the agreements at issue, F-M Products, which continued the operations of the Friction Products Division of Pneumo Abex, is liable directly to asbestos claimants for asbestos claims asserted after August 29, 1998 and not retained by Pneumo Abex, by virtue of the fact that F-M Products succeeded to the asbestos liabilities that Wagner assumed under the 1994 Agreement with Pneumo Abex.  *See id.* ¶ 8.  Moreover, F-M Products is liable to Pneumo Abex for an indemnity claim under the 1994 Agreement, and Federal-Mogul is liable for an indemnity claim under the 1998 Agreement.  *See id.* ¶ 9. Pneumo Abex did not retain all asbestos liabilities – instead they were assumed by F-M Products which, along with Federal-Mogul, agreed to indemnify Cooper and Pneumo Abex. Consequently, Plaintiffs' argument must fail.

4

*Corp.)*, 201 B.R. 48, 63 (Bank. S.D.N.Y. 1996). Thus, actions that would result in a third party

asserting indemnification and other claims against a debtor are related to the debtor's bankruptcy

proceeding. *Id.* at 65-66; *Bond Street Assoc. Ltd v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 32-33

(S.D.N.Y. 1994) (court had jurisdiction over dispute between debtor's sublessor and sublessee

that might result in indemnity action against Debtor) ; *American Hardwoods, Inc. v. Deutsche

Credit Corp.*, 885 F.2d 621, 623 (9th Cir. 1989) (finding "related to" jurisdiction where creditor's

enforcing judgment against debtor's guarantors would affect administration of reorganization

plan); *Apex Inv. Assoc., Inc. v. TJX Cos., Inc.*, 121 B.R. 522, 526-27 (Bank. N.D. Ill. 1990) (even

without indemnification agreement, creditor's action against guarantor of debtor's obligations

affects creditor's status vis-à-vis other creditors and, therefore, administration of the estate

necessarily depends on the outcome of litigation).[4]

Here, Plaintiffs seek to void coverage for asbestos claims under policies covering

Pneumo Abex. Following a series of transactions, F-M Products (then Wagner) became an

indemnitor for certain Pneumo Abex asbestos-related liabilities. *See* Teets Decl. ¶ 2. F-M

Products agreed to indemnify Pneumo Abex for those liabilities[5] and, under the 1994 Asset

Purchase and Insurance Agreements, obtained certain benefits under the London Market Policies

---

[4] *See also In re Lawrence*, 233 B.R. 248, 252 (N.D.N.Y. 1999) ("Actions which could
diminish the pool of funds available on an insurance policy held by the Debtor have been
held to satisfy this test."); *Carver v. Brecher*, 144 B.R. 643, (S.D.N.Y. 1992) ("an action
between non-debtors is regarded as related to a bankruptcy case if its outcome would affect
the amount of property available for distribution to creditors of a bankruptcy estate").

[5] Although Plaintiffs argue Cooper has not disclosed these agreements, they have been filed by
Cooper and other companies with the SEC. *See, e.g.,* Cooper Form 10-Q for quarter ended
September 30, 1998 (filed Nov. 13, 1998) Exhibit 10(i) (1998 Purchase and Sale
Agreement); Pneumo Abex Inc. Form 10-K for the year ended December 31, 1996 (filed
March 31, 1997), Exhibit 10.4 (1994 Agreement).

put at issue by the Complaint.[6] *See* Teets Decl. ¶¶ 5, 7. Additionally, Federal-Mogul

indemnified Cooper for all obligations that F-M Products owes to Pneumo Abex for the

Assumed Liabilities. *See id.* Consequently, this litigation could affect the bankrupt estate in at

least two ways. First, if the policies cover the asbestos claims asserted against Pneumo Abex,

that would reduce the total amount of the damage claims that could be asserted against the

Federal-Mogul estate. Second, if the policies are found to not cover the asbestos claims, the

entities facing direct or contractual liability for the underlying asbestos bodily injury claims –

Pneumo Abex and Cooper – would assert claims against Federal-Mogul and F-M Products in

bankruptcy, thereby increasing the number of creditor claims and causing each creditor to

receive a smaller share of the estate. As the court stated in *American Int'l Specialty Lines Ins.*

*Co. v. Towers Financial Corp.* :

> [A] proceeding to determine the plaintiff insurers' rights and obligations under the
> Policies could conceivably have an effect on Towers' bankruptcy estate. If the
> Court were to determine that the Policies cover any claims by Towers' officers
> and directors for indemnity, that holding would reduce the total amount of
> damage claims that could be lodged against the estate. If the Court were to find
> coverage lacking, then the directors and officers seeking indemnity would join the
> general creditors queue, and each creditor would receive a smaller share of the
> Towers' pie. Thus, even if the Policy proceeds do not flow directly into the
> estate's coffers, "they do serve to reduce some claims and permit more extensive
> distribution of available assets in the liquidation of the estate. . . ."

198 B.R. 55, 62 (S.D.N.Y. 1996) (quoting *In re Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir.

1988)); *see also In re A.H. Robins Co.*, 828 F.2d 1023, 1024-26 (4th Cir. 1987) (court properly

stayed product liability litigation against non-debtor co-defendants named as additional insured

under debtor's insurance policies); *Hickox v. Leeward Isles Resorts, Ltd.*, 224 B.R. 533, 538

---

[6] Plaintiffs' Motion contends that a pending arbitration between Pneumo Abex and Cooper
may affect the insurance obligations or allocations between them. That arbitration, now
resolved, in no way related to the insurance coverages issues presented in this matter.

(S.D.N.Y. 1998) (lawsuit seeking to recover on promissory notes issued by non-debtor "related to" bankruptcy proceeding since debtor, as joint and several obligor, and debtor's limited partners, as guarantors, could be forced to cover payments that the non-debtor could not make).

Plaintiffs also argue there is no jurisdiction because Federal-Mogul "*may* reject their alleged indemnity obligations at anytime during the next several months." Plaintiffs' Motion at 3 (emphasis added). This Court cannot be deprived of jurisdiction based upon Plaintiffs' guess about what Federal-Mogul may do (and Federal-Mogul has not rejected those obligations in the eight months since Plaintiffs filed their Motion). *Cf. Freeport-McMoran, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991) (diversity jurisdiction is determined as of the date the action is filed); *Wolde-Meskel v. Vocational Instruction Project Comm. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) ("diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset"); *Home Capital Collateral, Inc. v. Federal Deposit Ins. Corp.*, 96 F.3d 760, (5th Cir. 1996) (subject matter jurisdiction determined at the time of filing). Moreover, even if Federal-Mogul did reject its indemnity obligations, that would constitute a breach of contract, *see* 11 U.S.C. § 365(g)(1), and Cooper and Pneumo Abex would present claims against the bankruptcy estate based upon the underlying potential asbestos liability; accordingly, F-M Products undoubtedly still would claim rights under the London Market Policies – at the very least, Federal-Mogul and F-M Products would have a significant interest in ensuring that the policies covered as much of the underlying asbestos liability as possible to reduce the total claims asserted against the bankruptcy estate. Further, the result of this action may very well affect any decision that Federal-Mogul may make concerning rejection, and it will affect the claims made against the estate due to the breach of Federal-Mogul's and F-M Products' indemnification obligations. Finally, F-M Products, through Wagner, has specifically agreed to indemnify certain Pneumo Abex asbestos liabilities. *See* Teets Decl. ¶¶ 2,

7

5, 8. Whether or not Federal-Mogul ultimately attempts to reject its indemnity obligations, F-M

Products retains the asbestos liabilities that Federal-Mogul acquired along with the Abex Friction

Products business when it purchased Moog Automotive Products, Inc. (now F-M Products).

Accordingly, the outcome of this litigation could alter Federal Mogul's "options or

freedom of action (either positively or negatively)," and this case is related to the bankruptcy.

*ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1322 (S.D.N.Y. 1997).[7]

> **2.      If Cooper is a proper party, Federal-Mogul and F-M Products are
> proper parties and this case is related to the Bankruptcy.**

Plaintiffs voluntarily named Cooper as a defendant. Indeed, Plaintiffs sued 35

defendants, John Does 1-100, and 36 nominal defendants in their supposed effort to "ensure that

all parties having an interest in the subject matter of this action are before the Court." Complaint

¶ 42. Interestingly, the only entities they appear to have omitted are Federal-Mogul and F-M

Products, even though Plaintiffs obviously knew that those entities "ha[d] an interest in the

subject matter of this action" given that Plaintiffs have engaged in settlement negotiations with

F-M Products and have stated that any settlement of the claims asserted in this action would have

---

[7] *See also Blackacre Bridge Capital LLC v. Korff (In re River Ctr. Holdings, LLC)*, 288 B.R.
59 (Bank. S.D.N.Y. 2003) (related-to jurisdiction exists "if the disputed or conditional
indemnification claim has a 'reasonable legal basis'") (quoting *Masterwear Corp. v. Rubin
Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 516 (Bank.
S.D.N.Y. 1999)); *Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores)*, 190 B.R. 157, 161
(S.D.N.Y. 1995) (bankruptcy court had jurisdiction over lessor's lawsuit against guarantor of
debtor's lease because guarantor *possibly* could recover under an indemnity from the debtor:
"the resolution of the [lessor-guarantor] dispute will affect the value of the stock in the
reorganized [debtor], stock that many creditors receive under the Plan"); *Refinery Holding
Co. v. TRMI Holdings, Inc. (In re El Paso Refinery, LP)*, 302 F.3d 343, 349 (5th Cir. 2002)
("RHC's claim against Texaco could conceivably have an effect on the [El Paso] Estate in
light of the chain of indemnification provisions beginning with Texaco and leading directly
to the Debtor."); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) ("the clear
implication of the [*Pacor*] decision is that, if there had been a contract to indemnify," the
court would have had related-to jurisdiction).

to be approved by the Federal-Mogul Bankruptcy Court.[8]  *See* Teets Decl. ¶ 15.  Cooper is in

essentially the same position as Federal-Mogul – both Federal-Mogul and Cooper provided an

indemnification for the Pneumo Abex liabilities assumed by F-M Products and each of Cooper,

Federal-Mogul and F-M Products has rights to the proceeds of the insurance for such assumed

liabilities.  *See* Teets Decl. ¶ 10.  If Plaintiffs concede that Cooper is a proper party, they likewise

must concede that Federal-Mogul and F-M Products also are proper parties.

      Similarly, Plaintiffs contend that "Cooper claims to have an interest in the proceeds of the

London Market Brake Shoe policies based upon its relationship with Pneumo Abex."  Complaint

¶ 89.  Federal-Mogul and F-M Products also claim an interest in those proceeds based upon their

relationship with Pneumo Abex.  *See* Teets Decl. ¶ 7.  Essentially, Cooper, Federal-Mogul, and

F-M Products claim an interest in the policy proceeds for the very same reasons – contractual

indemnification, assumption, and guarantee obligations resulting from transactions involving the

sales of Pneumo Abex's Friction Products Division.  Thus, Cooper claims its interest because:

> (1) one of its former subsidiaries – Wagner Electric Corporation ("Wagner"), later
> known as Moog Automotive Products, Inc. ("Moog") – purchased certain assets
> of Pneumo Abex's Friction Products Division,
> (2) Wagner agreed to provide indemnification for and is deemed to have assumed
> certain asbestos-related liabilities (the "Assumed Liabilities") of Pneumo Abex's
> Friction Products Division,

---

[8]  Plaintiffs argued that the earlier declaration of Robert W. Teets, submitted in support of
Cooper's Motion to Transfer Venue, improperly discloses "statements or communications
exchanged in the course of settlement discussions."  Plaintiffs' Motion at 18-19.  It does no
such thing.  The Declaration simply points out that contrary to Plaintiffs' contention F-M
Products is irrelevant to the claims herein, (1) Plaintiffs have held settlement discussions with
F-M Products (as well as Pneumo Abex, Cooper, and Defendant PepsiAmericas) and (2)
Plaintiffs have told Cooper that any settlement related to the policies at issue here would
have to be approved by the Federal-Mogul Bankruptcy Court.  *See also* Fed. R. Evid. 408
(statements made during compromise negotiations only inadmissible "to prove liability for or
invalidity of the claim or its amount").  Mr. Teets' declaration discloses no information about
the substance of any settlement discussions and is not offered to prove Plaintiffs' liability.

(3) Wagner agreed to indemnify Pneumo Abex with respect to the Assumed
Liabilities,
(4) Cooper guaranteed Wagner's performance,
(5) Pneumo Abex agreed to make available to Wagner the benefits, including
insurance proceeds, of any insurance under which Pneumo Abex is an insured
party to the extent the insurance may respond to claims related to the Assumed
Liabilities, and
(6) Wagner is entitled to submit claims related to the Assumed Liabilities directly
to the insurance companies.

*See* Teets Decl. ¶¶ 2-4.  Therefore, Cooper's claim to an interest in the proceeds only arises as a

result of its position as guarantor of F-M Products' performance.[9]

Federal-Mogul and F-M Products claim an interest in the proceeds for the same reasons:

(1) Federal-Mogul purchased from Cooper the stock of the subsidiary Moog
(successor to Wagner), which held the assets and certain asbestos liabilities and
conducted the business of Pneumo Abex's Friction Products Division, and
Federal-Mogul renamed the entity F-M Products,
(2) The purchase of the stock of F-M Products by Federal-Mogul did not affect
the assumption of the Assumed Liabilities of Pneumo Abex's Friction Products
Division or F-M Products' obligation to indemnify Pneumo Abex with respect to
the Assumed Liabilities,
(3) Federal-Mogul indemnified Cooper for Cooper's guarantee of F-M Products'
(Wagner's) performance,
(4) F-M Products has claimed an interest in the benefits, including insurance
proceeds, of any insurance under which Pneumo Abex is an insured party to the
extent the insurance may respond to claims related to the Assumed Liabilities,
(5) F-M Products is entitled to submit claims related to the Assumed Liabilities
directly to the insurance companies, and
(6) Federal-Mogul indemnified Cooper for all obligations F-M Products (Wagner)
owes to Pneumo Abex.

*See* Teets Decl. ¶¶ 4-7, 11;  *Nemsa*, 1995 U.S. Dist. LEXIS 11650, at *13-14 (where parties are

"sufficiently intertwined with the debtor," action falls within "related to" jurisdiction).

Moreover, Plaintiffs implicitly admit this case is related to the Federal-Mogul

Bankruptcy.  Plaintiffs note one question to be addressed herein is "whether the Liberty Mutual

---

[9] After Federal-Mogul filed its bankruptcy petition on October 1, 2001, Cooper and Pneumo
Abex entered into an Interim Agreement, dated October 23, 2001, regarding the handling of
the asbestos claims and related insurance. *See* Teets Decl. ¶ 16.

primary policies were fully and properly exhausted." Plaintiffs' Motion at 17; *see also* Complaint ¶ 84. The settlement agreement exhausting the Liberty Mutual policies was executed by Pneumo Abex, Cooper, *and F-M Products*. *See* Teets Decl. ¶ 14. Moreover, and contrary to Plaintiffs' assertions (Plaintiffs' Motion at 17 (#5)), from October 9, 1998 (the closing of the Cooper-Federal-Mogul transaction) through the filing of the Federal-Mogul Bankruptcy, F-M Products defended asbestos claims asserted against Pneumo Abex. Thus, F-M Products made claims, and received insurance proceeds, under American Brake Shoe and IC Industries policies; in fact, F-M Products still has an outstanding claim in the amount of approximately $18 million that has not been reimbursed by the carriers that issued those policies. *See* Teets Decl. ¶ 17.

Simply put, if Cooper is a proper party to this lawsuit (and both Plaintiffs and Cooper agree that it is), Federal-Mogul and F-M Products are proper parties, and this case is related to the Federal-Mogul Bankruptcy. *See Mt. McKinley Ins. Co. v. Corning, Inc.*, 2003 U.S. Dist. LEXIS 4295, *18-19 (S.D.N.Y. Mar. 20, 2003) (where Judge Cote held in the context of another asbestos-related bankruptcy matter that the portion of the action relating to policies which provided coverage for debtor "related to" bankruptcy proceeding).[10]

---

[10] In *Mt. McKinley* two insurers sought a declaratory judgment against Corning, Inc. and insurers that wrote general liability coverage for Corning to determine the parties' obligations related to Corning's liability for asbestos claims. Corning removed the action, arguing it was related to the bankruptcy of its affiliate Pittsburgh Corning Corp. ("PCC"). 2003 U.S. Dist. LEXIS 4295, *2-3. With respect to policies that specifically excluded PCC from coverage, the court found that jurisdiction was lacking. However, Judge Cote held that where policies provided coverage for PCC, jurisdiction existed. *Id.* at *12. Here, F-M Products is liable for the underlying asbestos claims. *See* note 2 *supra*. The policies at issue here, as explained above, provide coverage related to those asbestos claims, and F-M Product has accessed those policies. *See also* page 6 *supra*. Thus, even focusing solely on the insurance policies here, *Mt. McKinley* demonstrates this action is related to the Federal-Mogul Bankruptcy. However, this case presents an even more compelling argument for jurisdiction because of the contractual indemnification, assumption, and guarantee obligations.

11

3.    **The Federal-Mogul Bankruptcy Court's actions demonstrate that the insurance policies at issue are related to the Bankruptcy.**

Plaintiffs argue that the insurance policies here are not related to the Federal-Mogul Bankruptcy. However, the Bankruptcy Court in effect already has decided that these policies are related. The Bankruptcy Court has appointed special insurance counsel for "matters related to Pneumo Abex Corporation and its predecessors-in-interest" as such appointment was "in the best interest of the Debtors, their estates and creditors." *See* Tessler Aff. Ex. 3 (November 9, 2001 Order Authorizing the Debtors to Employ Spriggs & Hollingsworth as Special Insurance Counsel (the "Order")). As explained in the Application seeking the Order, special insurance counsel was being appointed to, *inter alia*, advise Federal-Mogul and F-M Products with respect to their contractual liability for asbestos claims asserted against Pneumo Abex, advise them "with respect to their rights to various insurance coverages in matters related to [Pneumo] Abex," "negotiating with the relevant insurance carriers to secure recoveries for such Abex-related asbestos liabilities through settlements," and "litigating coverage disputes related to Abex." *See* Tessler Aff. Ex. 4 (Application for an Order Authorizing the Debtors to Employ Spriggs & Hollingsworth as Special Insurance Counsel at 10). Indeed, Federal-Mogul and F-M Products specifically informed the bankruptcy court "*their insurance rights in matters related to Abex . . . are a substantial asset of the U.S. Debtors' estates.*" *See id.* at 11-12 (emphasis added).

The Bankruptcy Court certainly believed that the insurance policies at issue here were sufficiently related to the Federal-Mogul Bankruptcy that it authorized the expenditure of estate funds and appointed special insurance counsel to pursue recoveries under those policies.[11]

---

[11] Indeed, Federal-Mogul and F-M Products claim that their liability for asbestos claims – liability which "in most cases" was transferred to them "through merger and acquisition" – is what caused them to file for Chapter 11 protection in the first place. Application at 7.

12

Cooper and Pneumo Abex concur with the Bankruptcy Court that the rights to the proceeds under these policies are related to the Federal-Mogul Bankruptcy.

### 4. Judge Wolin's February 2002 decision in the Federal-Mogul Bankruptcy supports removal here.

Plaintiffs contend that a decision by Judge Wolin in the Federal-Mogul Bankruptcy, *In re Federal-Mogul Global, Inc.*, 282 B.R. 301 (D. Del. 2002), *mandamus denied*, 300 F.3d 368 (3d Cir. 2003), *cert. denied*, 123 S. Ct. 884 (2003), supports their motion to remand. There, Judge Wolin was confronted with thousands of personal injury cases removed from various state courts by a group of domestic and foreign automakers, who contended the tort cases were related to the Federal-Mogul Bankruptcy because the automakers had common law rights of contribution against Federal-Mogul for those claims. Judge Wolin rejected the argument and remanded the cases. However, in doing so, Judge Wolin specifically contrasted the situation confronting him – a "bare claim" of common-law indemnity or contribution – with situations where a bankrupt entity had contractually obligated to indemnify or guarantee other parties.

For example, Judge Wolin discussed cases where courts found "related to" jurisdiction based upon non-debtors having "rights of indemnification against the debtor, either by operation of state law as officers of the corporation, under the corporate bylaws, and/or by express agreement." *Id.* at 309-10. Indeed, Judge Wolin contrasted the "bare contribution claims" asserted by most of the automakers with the claim asserted by Chrysler, which was based on purchase orders that appeared to incorporate indemnification obligations; although he ultimately decided there was no related-to jurisdiction because Chrysler drafted the terms, they were not bargained for, and they were not actually printed in the purchase orders, Judge Wolin indicated

that Chrysler's argument presented "a closer question" than the "bare contribution claims" of the other automakers. *Id.* at 311-12.[12]

Here, the extensive bargained-for contractual and indemnity obligations among Federal-Mogul, F-M Products, Cooper, and Pneumo Abex with respect to the insurance and the underlying asbestos claims, F-M Products' claimed interest in the proceeds of the policies, and F-M Products' ability to submit claims directly to the insurers under the policies demonstrates beyond doubt that this matter is related to the Federal-Mogul Bankruptcy. *Cf. id.* at 310 (noting that in addition to indemnification agreements, "the question of the common insurance policy created a link decisively favoring bankruptcy jurisdiction") (discussing *A.H. Robins*, 788 F.2d at 994).

**B.    Mandatory Abstention Is Not Applicable Here.**

Plaintiffs contend the Court must abstain from this "related to" case pursuant to 28 U.S.C. § 1334(c)(2). Although courts elsewhere may believe that § 1334(c)(2) applies to removed actions, "the cases from this circuit 'almost uniformly hold that Section 1334(c)(2) does not apply to removed action, at least where, as here, there is no parallel state court action.'" *Renaissance Cosmetics, Inc. v. Development Specialists, Inc.*, 277 B.R. 5, 12 (S.D.N.Y. 2002) (citing cases); *see also ML Media Partners, L.P. v. Century/ML Cable Venture (In re Adelphia Comm. Corp.)*, 285 B.R. 127, 143-44 (Bank. S.D.N.Y. 2002). Indeed, although it is contrary to their Motion, those Plaintiffs that are defendants in *Dresser* agree with the courts of this District. *See Dresser*, London Market Defendants' Response and Brief in Opposition to Plaintiff's Motion for

---

[12]   The court of appeals upheld Judge Wolin and refused to issue a writ of mandamus overturning his decision because the automakers did not meet the "rigorous standard for the issuance of the extraordinary writ of mandamus." 300 F.3d at 384. Notably, the court did not "reach[] the merits of whether the District Court has 'related to' jurisdiction." *Id.*

14

Mandatory Abstention, Discretionary Abstention, or Equitable Remand ("London Market

Defendants' Abstention Opposition") at 13 n.9 ("London Market Defendants do not agree that

mandatory abstention may be applied in a removed case") (Tessler Aff. Ex. 5). Accordingly,

Plaintiffs' request for mandatory abstention should be rejected.

**C.    There Is No Basis To Support Plaintiffs' Request For Equitable Remand.**

Plaintiffs argue that the Court should remand this action on equitable grounds under 28

U.S.C. § 1452(b). *In re Allied Mech. & Plumbing Corp.*, 62 B.R. 873, 878 (Bank. S.D.N.Y.

1986). Seven factors are relevant to whether a court should remand a case under § 1452(b):

> (1) the effect on the efficient administration of the bankruptcy estate;  (2) the
> extent to which issues of state law predominate;  (3) the difficulty or unsettled
> nature of the applicable state law;  (4) comity;  (5) the degree of relatedness or
> remoteness of the proceeding to the main bankruptcy case;  (6) the existence of
> the right to a jury trial;  and (7) prejudice to the involuntary removed defendants.

*Renaissance Cosmetics*, 277 B.R. at 14.

> **1.    Factors 1 (the effect on the efficient administration of the bankruptcy
> estate) and 5 (the degree of relatedness or remoteness of the proceeding to
> the main bankruptcy case) do not support remand.**

As discussed in great detail *supra*, this case is related to the Federal-Mogul Bankruptcy.

Moreover, to the extent the policies at issue do not cover claims for which F-M Products is

responsible, Cooper and/or Pneumo Abex will have substantial claims that will be asserted

against Federal-Mogul and F-M in the Federal-Mogul Bankruptcy. "Accordingly, to remand this

case would result in 'a duplication of effort and multiplicity of litigation' which may waste

judicial resources and impede the efficient administration" of the Federal-Mogul estate as the

same issues are litigated before multiple courts. *Renaissance Cosmetics*, 277 B.R. at 17 (quoting

*Nemsa.*, 1995 U.S. Dist. LEXIS 11650, at *8). Moreover, to remand this case instead of

transferring it so that Federal-Mogul and F-M Products could be joined as parties would have a

great potential to lead to inconsistent results, as Plaintiffs expressly admit. *See* Plaintiff's Motion

15

at 12 ("if Plaintiff Insurers prevail in [this] action . . . , the Debtors would still be able to re-litigate any issue, or adopt any position, in response to a subsequent claim by Cooper"); *see also River Center*, 288 B.R. at 69 (court should retain matter where outcome "could at least reasonably be expected to give [third party] an indemnity claim against the estate").

### 2. Factors 2 (the extent to which state law issues predominate) and 3 (the difficulty or unsettled nature of applicable state law) do not support remand.

Assuming New York law applies, Plaintiffs do not contend that there are any state law issues in this case that are unsettled or particularly difficult.[13] "This lack of complexity 'significantly undercuts the degree to which the state law factor weighs in favor of remand to [the] New York courts.'" *Renaissance Cosmetics*, 277 B.R. at 16 (citing *Nemsa*, 1995 U.S. Dist. LEXIS 11650, 1995 WL 489711, at \*7; *Weisman*, 1992 U.S. Dist. LEXIS 7736, 1992 WL 131080, at \*5). Moreover, the federal district and bankruptcy courts "address matters of state law on a regular basis." *River Center*, 288 B.R. at 70. These factors do not support remand.

### 3. Factor 4 (comity) does not support remand.

Comity focuses on New York's interest in *developing its law* and applying its law *to its citizens*. *Renaissance Cosmetics*, 277 B.R. at 16. As noted above, Plaintiffs make no claim that the relevant law is in any way unsettled or needs to be "developed" in any way. Additionally, Plaintiffs are not New York residents. Virtually every defendant is incorporated outside New York (seven are incorporated in Delaware, where Pneumo Abex and Cooper seek to transfer this case), almost three-quarters of the defendants have their principal places of business outside New York, and all thirty-six nominal defendants are foreign companies. *See* Complaint at 4-13.

---

[13] Although Plaintiffs assert this is a "complex coverage action," that complexity results from the "multiple parties, tens of thousands of underlying claims, approximately 33 years of insurance coverage, and over 100 policies." Plaintiffs' Motion at 17. Plaintiffs carefully did not assert that "New York insurance and contract law" is complex or unsettled. *See id.*

16

"These circumstances, combined with the fact that any New York law at issue is not unusually complex or unsettled, neutralizes any comity concerns that would favor remand." *Renaissance Cosmetics*, 277 B.R. at 16; *Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695, 705 (Bank. S.D.N.Y. 1989) (comity not a concern where "there is no action pending in state court").

### 4. Factor 6 (the existence of the right to a jury trial) does not support remand under the circumstances of this case.

Assuming that Plaintiffs are entitled to a jury trial, that does not favor remand. *Renaissance Cosmetics*, 277 B.R. at 17. Either this Court or District Judge Alfred A. Wolin, assigned to manage the Federal-Mogul Bankruptcy by the Chief Judge of the Third Circuit pursuant to 28 U.S.C. § 292(b), *see Federal-Mogul*, 300 F.3d at 373, can preside over any jury trial. Accordingly, that Plaintiffs claim entitlement to a jury trial does not support remand.

### 5. Factor 7 (prejudice to the involuntary removed defendants) does not support remand.

Plaintiffs assert that they are protecting the "involuntarily removed defendants" by seeking remand. Although the entities which Plaintiffs have sued undoubtedly appreciate Plaintiffs now protecting their interests, no defendant actually has claimed prejudice (and the true defendants, Pneumo Abex, Cooper, and PepsiAmericas,[14] oppose remand). Moreover, it is difficult to understand how prejudice could result from having this matter decided by either this Court or the Delaware federal court instead of the New York state courts (and Plaintiffs do not make any attempt to explain what prejudice would result). Consequently, Plaintiffs' request for equitable remand should be rejected.

---

[14] As demonstrated during the recent conference held by the Court, the "involuntarily removed defendants" really are aligned with Plaintiffs.

17

**D.    There Is No Basis For Discretionary Abstention Here.**

Plaintiffs also seek discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1). Like mandatory abstention, discretionary abstention is not available given the lack of a pending state court action. *Renaissance Cosmetics*, 277 B.R. at 17 ("courts in the Second Circuit have generally held that abstention under 28 U.S.C. § 1334(c) does not apply to removed actions"); *see also Lazar v. State of California (In re Lazar)*, 237 F.3d 967, 981-82 (9th Cir. 2001) (once state court proceeding has been removed, § 1334(c) is inapplicable).[15] However, even if this Court considers whether it should decide to abstain from hearing this matter, consideration of the relevant factors demonstrates that the Court should deny Plaintiff's Motion.

Section 1334(c) summarizes and incorporates federal non-bankruptcy abstention principles. *See In re Pan American Corp.*, 950 F.2d 839, 836 (2d Cir. 1991). Foremost among those principles is the concept that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813 (1976); *see also Allegheny County v. Mashuda Co.*, 360 U.S. 185, 188 (1959) ("the doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it"). Indeed, the inquiry triggered by an abstention request is not whether there is a substantial reason to exercise federal jurisdiction, but whether

---

[15] Counsel for Stonewall intends to argue that "[a] separate basis for abstention is the line of cases holding that, even where diversity jurisdiction exists, federal courts have discretion to abstain from deciding insurance coverage declaratory judgment actions in favor of state court actions that had already been filed. *See, e.g., Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-90 (1995); *National Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22-23 (2d Cir. 1997)." However, there is no pending state court case here. Therefore, this argument is inapplicable. *See, e.g., Wilton*, 515 U.S. at 290 (declining to address whether district courts can exercise discretion to abstain in "cases in which there are no parallel state proceedings"); *Karp*, 108 F.3d at 22 (noting existence of pending "concurrent" state court action).

there are "exceptional circumstances" that justify surrendering jurisdiction. *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).[16]

In arguing for discretionary abstention, Plaintiffs rely primarily on the factors reviewed by courts addressing equitable remand. *See* Plaintiffs' Motion at 16-18. As discussed above, those factors do not support this Court ceding jurisdiction here. The only additional relevant factor is Plaintiffs' contention that if this Court remands the action, the New York state court will be able timely adjudicate their claims. "The burden of establishing that the state court proceeding can be timely adjudicated rests on the party seeking abstention. 'The moving party does not carry its burden merely by arguing that a proceeding can be adjudicated in state court.'" *Dresser*, London Market Defendants' Abstention Opposition at 11 (citations omitted). Here, however, that is exactly what the Plaintiffs do. *See* Plaintiffs' Motion at 15. Again, the words of the Plaintiffs that are defendants in *Dresser* are directly on point:

> Ignoring its obligation to establish that timely adjudication in state court is possible, [Plaintiffs] provide[] no information about the state court's calendar. [They] do[] not acknowledge the speed with which the [Federal-Mogul] bankruptcy is likely to proceed. [They] fail[] to acknowledge that *no* substantive discovery had even begun in the state court litigation.

*Dresser*, London Market Defendants' Abstention Opposition at 12 (citations omitted, emphasis in original); *see also Renaissance Cosmetics*, 277 B.R. at 17 ("naked assertion that the matter can be timely adjudicated in the state court" is insufficient to satisfy plaintiff's burden).[17]

---

[16] Those Plaintiffs that are parties to the *Dresser* action, including Lloyds, agree: "[A]bstention is to be used sparingly, whether denominated mandatory or discretionary. Abstention is the exception, not the rule. Discretionary abstention 'should apply *only* if the interests of the entities *see*king abstention will be promoted by abstention and when they override the court's presumptive duty to hear and resolve matters which are properly before it.'" *Dresser*, London Market Defendants' Abstention Opposition at 13 (citations omitted).

In sum, there is no state court proceeding that is pending, Plaintiffs do not argue that there are any novel or complex issues of state law confronting the Court, and there are no reasons for the Court to abstain. *See Weisman v. Southeast Hotel Prop. Ltd.*, 1992 U.S. Dist. LEXIS 7736, No. 91 Civ. 6232, 1992 WL 131080, at *5 (S.D.N.Y. June 1, 1992); *Neuman v. Goldberg*, 159 B.R. 681, 688 (S.D.N.Y. 1993). Accordingly, Plaintiffs' request for discretionary abstention should be rejected.

### III.
### CONCLUSION

WHEREFORE, Defendants Pneumo Abex Corporation and Cooper Industries, Inc. hereby request that the Court deny Plaintiffs' Motion to Remand.

---

[Footnote continued from previous page]

17  Stonewall intends to argue this Court should abstain because "[i]f the bankruptcy court determines that any particular insurance policy potentially provides coverage to any other entity but not also to Federal-Mogul, the bankruptcy court would no have interest whatsoever in the interpretation or application of that insurance policy. The possibility of this happening provides an additional basis for discretionary abstention of the entire case." This speculation about what the bankruptcy court might later determine not only cannot serve as the basis for abstention, but also recognizes that to the extent the policies potentially provide coverage to claims for which Federal-Mogul is responsible, this case should be remain in federal court and be consolidated with the Federal-Mogul Bankruptcy proceedings.

DATE:  May 21, 2003

Respectfully submitted

By:  Edward Tessler (ET-4503)
DICKSTEIN SHAPIRO MORIN
    & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 835-1400

Jerold Oshinsky (JO-2080)
DICKSTEIN SHAPIRO MORIN
    & OSHINSKY LLP
2101 L Street, N.W.
Washington, DC  20037
Telephone:  (202) 785-9700
Facsimile:  (212) 887-0689

ATTORNEYS FOR DEFENDANTS PNEUMO
ABEX CORPORATION AND COOPER
INDUSTRIES, INC.

Michael A. Rosenthal
Jon G. Shepherd
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas  75201
Telephone:  (214) 698-3160
Facsimile:  (214) 698-3400

ATTORNEYS FOR DEFENDANT COOPER
INDUSTRIES, INC.

21