1

2      B E F O R E:  HONORABLE JOHN BRADLEY, JHO

3

4      A P P E A R A N C E S:

5          MENDES & MOUNT, LLP
           Attorneys for Certain Underwriters at Lloyd's and
               Certain London Market Companies
6          750 Seventh Avenue
           New York, New York
7          BY:  EILEEN T. McCABE, ESQ.
               ANNA NEWSOM

8

9          JONES DAY
           Attorneys for Pneumo Abex and Cooper
10         222 East 41st Street
           New York, New York
11         BY:  THOMAS H. SEAR, ESQ.
               MICHAEL H. GINSBERG, ESQ.

12

13         MORGAN LEWIS
           Attorneys for PepsiAmericas
14         101 Park Avenue
           New York, New York
15         BY:  PAUL A. ZEVNIK, ESQ.
               DANIEL E. CHEFITZ, ESQ.

16

17         MARTIN LAVELLE, ESQ.
           Attorney for AIU, National Union, Lexington, ICSOP,
18             Granite State and New Hampshire
           110 William Street
19         New York, New York

20

21         CROWELL, MORING
           Attorneys for Stonewall & Fulcrom Insurance
22         1001 Pennsylvania Avenue NW
           Washington, DC.
           BY: BARRY M. PARSONS, ESQ.

23

24

25

26

*John Phelps C.S.R., R.P.R.*
*Official Court Reporter*
*Supreme Court Of The State Of New York*

Direct-212-374-5304
Main-212-374-8516

60 Centre Street
New York, New York 10007

*pd in Full*
*$ 234.00*

*John Phelps*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - CIVIL TERM
----------------------------------------------X
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON
(Members of Syndicate Nos. 002, 015, 016, 023,
029, 033, 035, 036, 049, 056, 057, 059, 065,
069, 073, 074, 077, 086, 088, 090, 101, 108,
109, 110, 112, 116, 126, 130, 133, 135, 138,
151, 164, 165, 169, 174, 188, 189, 190, 204,
211, 212, 219, 223, 224, 227, 231, 233, 235,
238, 243, 250, 263, 264, 265, 267, 278, 279,
283, 297, 299, 300, 201, 303, 304, 311, 316,
317, 328, 329, 334, 357, 358, 360, 365, 371,
373, 374, 395, 396, 397, 404, 405, 417, 420,
422, 427, 433, 434, 440, 448, 450, 461, 462,
465, 471, 472, 474, 475, 476, 479, 484, 489,
490, 499, 507, 518, 538, 553, 555, 576, 583,
590, 592, 595, 604, 610, 612, 618, 619, 620,
621, 629, 632, 634, 650, 651, 653, 656, 660,
661, 677, 680, 687, 688, 694, 701, 707, 711,
713, 719, 724, 755, 756, 763, 767, 768, 773,
795, 796, 797, 799, 800, 819, 830, 838, 845,
849, 857, 867, 870, 896, 899, 901, 905, 917,
918, 924, 928, 947, 948, 964, 975, 989, 999);
DOMINION INSURANCE COMPANY LTD.; AND WORLD
AUXILIARY INSURANCE CORPORATION LTD.,

                         PLAINTIFFS,

             -against-


PNEUMO ABEX CORPORATION; PEPSIAMERICAS, INC.;
COOPER INDUSTRIES, INC.; AIU INSURANCE COMPANY;
ALLIANZ INSURANCE COMPANY; ALLSTATE INSURANCE
COMPANY (as Successor-in-interest to Northbrook
Excess Surplus Insurance Company Formerly
Northbrook Insurance Company); AMERICAN HOME
ASSURANCE COMPANY; AMERICAN REINSURANCE COMPANY;
ASSOCIATED INTERNATIONAL INSURANCE COMPANY;
CENTURY INDEMNITY COMPANY (as Successor-in-interest
to California Union Insurance Company); COLUMBIA
CASUALTY; CONTINENTAL INSURANCE COMPANY; CONTINENTAL
CASUALTY COMPANY; EMPLOYERS MUTUAL CASUALTY COMPANY;
EVANSTON INSURANCE COMPANY; FALCON INSURANCE COMPANY;
FEDERAL INSURANCE COMPANY; FIREMAN'S FUND INSURANCE
COMPANY; FIRST STATE INSURANCE COMPANY; GRANITE STATE
INSURANCE COMPANY; GREAT AMERICAN SURPLUS; HARBOR
SPECIALTY INSURANCE GROUP; HIGHLANDS INSURANCE

1

2    COMPANY; THE HOME INSURANCE COMPANY; HUDSON INSURANCE
     COMPANY; INSURANCE COMPANY OF NORTH AMERICA;
3    INTERNATIONAL INSURANCE COMPANY; MT. MCKINLEY
     INSURANCE COMPANY (formerly known as Gibraltar
4    Casualty Company); ISOP; NATIONAL SURETY CORP.;
     NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
5    PA.; NEW HAMPSHIRE INSURANCE COMPANY; STONEWALL
     INSURANCE CO.; TRAVELERS CASUALTY & SURETY COMPANY;
     and JOHN DOES 1-100,

6

7                          DEFENDANTS,

8

9    ALBA GENERAL INSURANCE COMPANY LTD.; ANGLO FRENCH
     INSURANCE COMPANY LTD.; ANGLO SAXON INSURANCE
10   ASSOCIATION LTD.; BISHOPSGATE INSURANCE COMPANY LTD.;
     BRITISH AVIATION INSURANCE COMPANY LT.; BRITISH
11   MERCHANTS INSURANCE COMPANY LTD.; COMPAGNIE
     D'ASSURANCE MARITIMES AERIENNES & TERRESTRES,
12   S.A.; CITY GENERAL INSURANCE COMPANY; COMPAGNIE
     EUROPEENNE D'ASSURANCES INDUSTRIELES, S.A.; CORNHILL
13   INSURANCE PLC; ECONOMIC INSURANCE COMPANY LTD.;
     EXCESS INSURANCE COMPANY LTD.; FIDELIDADE INSURANCE
14   COMPANY; FOLKSAM INTERNATIONAL INSURANCE COMPANY LTD.;
     HEDDINGTON INSURANCE (UK) LTD.; HELVETIA-ACCIDENT
15   SWISS INSURANCE COMPANY LTD.; LEXINGTON INSURANCE
     COMPANY (UK) LTD.; LONDON & EDINBURGH INSURANCE
16   COMPANY LTD.; LUDGATE INSURANCE COMPANY LTD.; MINSTER
     INSURANCE COMPANY LTD.; MITSUI MARINE & FIRE INSURANCE
17   COMPANY (EUROPE) LTD.; OSLO REINSURANCE COMPANY (UK)
     LTD.; RIVER THAMES INSURANCE COMPANY LT.; ROYAL
18   SCOTTISH INSURANCE COMPANY LTD.; SPHERE/DRAKE INSURANCE
     COMPANY LTD.; ST. PAUL INTERNATIONAL INSURANCE COMPANY
19   LTD.; STRONGHOLD INSURANCE COMPANY LTD.; SWISS NATIONAL
     INSURANCE COMPANY LTD.; SWITZERLAND GENERAL INSURANCE
20   COMPANY; THREADNEEDLE INSURANCE COMPANY LTD.; TOKO
     MARINE & FIRE INSURANCE (UK) LTD.; TRENT INSURANCE
21   COMPANY LTD.; VANGUARD INSURANCE COMPANY LTD.;
     WINTERTHUR SWISS INSURANCE COMPANY; and WORLD MARINE
22   & GENERAL INSURANCE COMPANY LTD.,

23                          NOMINAL DEFENDANTS.

24   ------------------------------------------------X
     Index No. 602493/02        60 Centre Street
25                              New York, New York
                                June 16, 2005
26

```
1

2    B E F O R E:  HONORABLE JOHN BRADLEY, JHO

3
     A P P E A R A N C E S:
4
          MENDES & MOUNT, LLP
5         Attorneys for Certain Underwriters at Lloyd's and
               Certain London Market Companies
6         750 Seventh Avenue
          New York, New York
7         BY:  EILEEN T. McCABE, ESQ.
               ANNA NEWSOM
8

9         JONES DAY
          Attorneys for Pneumo Abex and Cooper
10        222 East 41st Street
          New York, New York
11        BY:  THOMAS H. SEAR, ESQ.
               MICHAEL H. GINSBERG, ESQ.
12

13        MORGAN LEWIS
          Attorneys for PepsiAmericas
14        101 Park Avenue
          New York, New York
15        BY:  PAUL A. ZEVNIK, ESQ.
               DANIEL E. CHEFITZ, ESQ.
16

17        MARTIN LAVELLE, ESQ.
          Attorney for AIU, National Union, Lexington, ICSOP,
18             Granite State and New Hampshire
          110 William Street
19        New York, New York

20
          CROWELL, MORING
21        Attorneys for Stonewall & Fulcrom Insurance
          1001 Pennsylvania Avenue NW
22        Washington, DC.
          BY: BARRY M. PARSONS, ESQ.
23

24

25

26
```

1

2        A P P E A R A N C E S:  (Continued)

3


4        HUGHES, HUBBARD & REED
         Attorneys for First State
5        One Battery Park Plaza
         New York, New York 10004
6        BY: DAVID R. BIESTER, ESQ.

7


8        SIEGAL, NAPIER GOWSHI & PARK
         Attorneys for Century
         220 Lake Drive East
9        Cherry Hill, New Jersey
         BY: JERRALD J. HOCHMAN, ESQ.

10

11

12

13

14                        JOHN PHELPS, CSR, RPR, CRR
                          SENIOR COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25

26

Proceedings

1
2    MS. McCABE:  Your Honor, I gave you a

3 brief background about the case, where we are and

4 how we got here.  We, Certain Underwriters at

5 Lloyd's filed a complaint July 9, 2002 in New

6 York Supreme.  July 30, 2002, certain of the

7 defendants, I believe it was Cooper and Abex

8 removed the action initially to Federal

9 Bankruptcy Court here in New York.

10    It was a procedural morass.  It became

11 confusing procedurally.  Everybody agreed.  I never

12 wanted it up there, but the federal judge, Judge

13 Preska said no, it shouldn't have been done in

14 bankruptcy court.  We all ended up at the end of the

15 day in front of Judge Preska in Southern District.

16 What we were fighting was effort on the part of the

17 defendants herein, your Honor, to remove this case to

18 a Federal Mogul Bankruptcy Court action that was

19 pending -- the case is pending in Delaware being heard

20 in front of Judge Lyons in Trenton, New Jersey.  For

21 almost three years, your Honor, we fought the issue

22 with regard to whether or not this case we filed in

23 New York Supreme was related to the Federal Mogul

24 bankruptcy.

25 We being Underwriters and companies prevailed on that.

26 Last month Judge Preska remanded the case back down to

Proceedings

1    New York Supreme.  We filed an RJI because quite
2    frankly what, the case got to Bankruptcy Court,
3    Federal Court people were filing answers in both
4    dockets and one of the initial things we think needs
5    to be done here is some housekeeping with respect to
6    procedurally who filed answers.  Do they have to be
7    filed in New York State Court et cetera, et cetera,
8    but the original thing we wanted to do your Honor is
9    commence discovery.
10   We, the plaintiffs, filed the case three years ago.
11   We want to move forward with it and we feel one
12   barrier after another was put up to try to get out of
13   New York.  I think the papers will reflect this.  The
14   defendants don't want to be in New York and they're
15   doing everything they can to get out of New York.
16   Once I filed the RJI Judge Cahn signed, he signed the
17   preliminary conference the day before yesterday, I got
18   served with a complaint.  Now there's a complaint
19   filed against me and all, I think all the other excess
20   insurers.  All the other excess insurers down in
21   Washington and what they're contending is that the new
22   case they filed, this was filed by a company called
23   Whitman Insurance Company, which we found out is a
24   wholly owned subsidiary of one of those defendants
25   they're saying they're seeking a declaration with

JOHN PHELPS SENIOR COURT REPORTER

Proceedings

1
2  respect to coverage and they're saying it's now
3  related to this case that has been pending since 1982
4  down in the Federal Court and that case involves Abex
5  claims.
6  We're not excess insurers there.  We've never been
7  defendants there.  That case has been going on
8  apparently for 24 years.  The case apparently is still
9  ongoing.  What they told me during a conference call
10  yesterday, now they're going to try to stay this case
11  here and try to get me down to DC and I said obviously
12  I can't stop you from filing whatever motion -- in
13  fact, Justice Cahn just said discovery has got to go
14  forward.
15  He told me to convey to your Honor he wants document
16  discovery to go on here.  If they want to file, they
17  should do it via order to show cause.  He said I think
18  they said they want to try to file that on Monday, but
19  he wants discovery to go forward.
20  I think one of the other critical things here is that
21  our position, your Honor, and of course we'll respond
22  to this in the context of papers that it's just yet
23  another move to try to get us out of here in New York.
24  We want to go forward with the case where the
25  plaintiff has been three years, three years of
26  procedurally dancing from court to court.

Proceedings

1

2    First, I'm told it's related to the Federal Mogul

3    Bankruptcy.  Now I'm told it's related to a case down

4    in DC.  What we're asking, your Honor, is to help us

5    with sorting out the procedural housekeeping stuff.

6    I'm a little confused that people are calling me as

7    plaintiff.  Why do I have to file if we can sort that

8    out, set a discovery schedule here and one of the

9    other critical things I ask you to note is based on

10   the representations of counsel to me even if their

11   action goes forward, which I don't think they have a

12   serious jurisdictional issue, even if this does go

13   forward, it will not get rid of this entire case.

14   There are portions of the case before you that are

15   going to go forward anyway.  So this case is here.  We

16   want to move forward with it and that's our

17   application and that's what this reference is to this

18   '82 case.  I said the '82 case is irrelevant to this.

19   I'm not a party in that case.  I haven't been a party

20   in that case.  It's been going on for 24 years and

21   what they're trying to do, your Honor, they're trying

22   to avoid the application of New York law, and in that

23   case down there I think what it is, is that the judge

24   15 or 20 years ago made predictions, I'm talking

25   practical here, made predictions what he thought New

26   York law would be, this is what I'm picking up from

Proceedings

1
2    this, what he thought New York law was going to be.

3    He was wrong in those predictions, but they want to

4    seek the applications of those wrong interpretations

5    of a District Court judge and they want to apply them

6    to me down there so they can avoid what has actually

7    developed here in New York and not get New York law as

8    it currently exists there.  So that's my spin on the

9    case, your Honor.

10    MR. GINSBERG:  Mike Ginsberg for Cooper

11    and Pneumo Abex.  Let me say first Pepsi

12    Americas -- I'm going to let Pepsi Americas

13    address the other lawsuit.  I raised it in front

14    of Justice Cahn, Ms. McCabe when we had a

15    conference call, she said the case is complex and

16    started discovery.  What I had suggested to

17    Justice Cahn is that there is a plethora of

18    discovery from all these policies in the DC case

19    that has been going on since 1982.

20    This is the docket sheet from that case.

21    There was another case in California that

22    involved environmental liabilities of Pneumo Abex

23    where all the parties were parties.  All the

24    insurers were parties with discovery for seven

25    years of some sort with 250 depositions, 4,000

26    interrogatories, document production, all the

```
1                         Proceedings
2    policies have been produced.  All the corporate
3    histories of the companies have been discussed
4    and deposed and investigated at length.
5         The transaction that created these
6    companies have been investigated.  The operations
7    of the manufacturing facilities that were
8    involved in that case have been investigated at
9    length, and the products that were manufactured
10   have been investigated at length and the point I
11   will make again that I made to Justice Cahn, this
12   is an asbestos insurance coverage case.  This is
13   not rocket science.
14        This case has been going on since the
15   early '80s.  The law is fairly well settled in a
16   case about when particularly the London
17   defendants, Ms. McCabe represents has to start
18   paying for the liabilities that have been
19   incurred by these parties on behalf of tens of
20   thousands of underlying asbestos cases.  That's
21   what this is about.
22        The primary carriers in DC who are in
23   the DC case as well as some excess insurers, as
24   well as the parties in this courtroom, are in
25   that case.  Also many of them have paid or
26   exhausted their policies because they paid, they
```

Proceedings

1
2    continue to pay under agreements.  There are
3    reviewed recalcitrant insurers left.  One of them
4    is London.  That's why we're here.  They decided
5    they want to fight tooth and nail before they pay
6    any dollars.
7          This is a case that can be resolved on a
8    short discovery schedule.  There's not much to do
9    to date.  Motion practice following the short
10   time frame and we can get to that is my view and
11   we have to stop deciding we're going to treat
12   this as a new case.  There's only a lot of
13   parties involved because Ms. McCabe decided to
14   bring a lot of parties in the case.  That's my
15   plea, to begin with a short discovery timetable
16   six or eight months and let's look at testimony,
17   see how much more we want to do because there's a
18   lot of people in the room that we have to treat
19   this as the most complex case in the world.
20         MR. CHEFITZ:  Your Honor, I'm Daniel
21   Chefitz.  I think Mr. Ginsburg did a good job of
22   explaining the prior actions.  We've been
23   involved with coverage disputes with these
24   insurers as Mr. Ginsburg said, since 1982.  Just
25   addressing the discovery issues which is the
26   appropriate forum for this case, that's a

Proceedings

1
2  different issue that will be addressed by our

3  motion to stay.

4       There were two coverage actions that

5  have produced probably thousands of boxes of

6  discovery and in some way involved every single

7  one of these parties in this case.  The first one

8  is the action filed in 1982.  It's titled Abex V.

9  Maryland Casualty filed in the District Court,

10 Federal District Court, District of Columbia.

11 The defendants in that case tried to move the

12 case and transfer it to New York and their motion

13 back then was defeated.

14      So I object to the proposition that

15 we're trying to avoid New York.  The case has

16 been there since 1982.  It involves primary as

17 well as umbrella which are excess policies and

18 corporate relationships of the different parties

19 here involve no less than 14 of the parties that

20 are parties to this case.  And in that case,

21 which was an asbestos coverage case and every

22 issue manageable regarding underlying claims

23 regarding obligations of the standard form CGL

24 policies because they're all the same, whether

25 excess or primary.

26      In fact, I believe London's policies are

| | |
|---|---|
| 1 | Proceedings |
| 2 | form policies in that case.  So the same issues |
| 3 | that were not only litigated but discovery, |
| 4 | there's volumes and volumes of discovery in that |
| 5 | case. |
| 6 | In addition to that case in 1992 there |
| 7 | was an environmental coverage case filed out in |
| 8 | California titled Vincent Kelly V. Alliance. |
| 9 | Every single one of the policies in that case was |
| 10 | an issue in that case.  The same exact policies. |
| 11 | How they respond to them?  Environmental water |
| 12 | property claims and asbestos coverage claims. |
| 13 | But everything regarding the terms of the |
| 14 | policies, whether the policies were sufficient in |
| 15 | evidence.  All the questions regarding corporate |
| 16 | transactions of the insured were as Mr. Ginsburg |
| 17 | said, I think more than 4,000 interrogatories |
| 18 | were responded to, months of corporate designee |
| 19 | depositions by the same parties in this case.  So |
| 20 | I would suggest assuming the case goes forward |
| 21 | and we go forward with discovery in this case, |
| 22 | the first thing you do is to consider what has |
| 23 | already been taken in this case, determine what |
| 24 | if anything else needs to be taken because as I |
| 25 | agree with Mr. Ginsburg, I do not think much more |
| 26 | needs to be done.  The issue is really clear. |

1                        Proceedings

2            The other excess carriers, some of them

3     who aren't involved at all in DC, having read the

4     underlying policies in exhaustion are responding

5     and London is one of the only carriers right now

6     not responding.  So I would suggest we first look

7     to those other cases, you see what's been done

8     there and see if anything further needs to be

9     done.

10           One further thing.  There are protective

11    orders in both cases, both which will allow the

12    information to be used here assuming we had a

13    protective order here and the issues regarding

14    privilege in those cases.  It went on for months

15    and months and months and to try to start from

16    scratch and go through all that, I suggest 15

17    months probably wouldn't be enough time to do all

18    that and there's no reason to waste judicial

19    resources and undergo that activity again.

20           MR. ZEVNIK:  Paul Zevnik for Pepsi.  I

21    was lead counsel on that case in California and I

22    think Mr. Chefitz accurately summarized that we

23    litigated the discovery for seven years in that

24    case in that every one of the parties who's here,

25    every one of the policies are here, every one of

26    the factual contentions that are going to be at

Proceedings

1

2       issue here, and I conducted that litigation.

3              It is still a related proceeding still

4       pending in California.  California law was

5       applied to that.  The discovery disputes were

6       resolved and your Honor, I think it's also

7       important to note that all of the policies issued

8       to IC Industries which is 95 percent of the

9       limits of the liability involved here was issued

10      to IC Industries in Illinois, Chicago.

11             So I have to respectfully submit that we

12      have, it is not certainly as portrayed here by

13      Lloyd's.  One of the important things I also

14      think needs to be brought out is many of the

15      parties that Lloyd's sued here have already

16      completely settled and resolved all of the

17      claims.  That coverage litigation that's been

18      pending in 1982 has resulted in an enormous

19      amount of limits of liability that have been

20      completely resolved and they sued a number of the

21      carriers like All State CNA Companies, they have

22      resolved all issues as with respect to the policy

23      holder and the very same asbestos language.

24             Those parties I submit should not be

25      here in this case at all.  So there's a lot of

26      sorting out.  We certainly don't want to go back

| | |
|---|---|
| 1 | Proceedings |
| 2 | and do discovery against parties that have fully |
| 3 | paid their limits, that have been subject to |
| 4 | judicial determinations or that are parties to |
| 5 | full binding settlement agreements under which |
| 6 | they will pay their limits of liability for these |
| 7 | asbestos claims.  That's true for an enormous |
| 8 | amount of coverage that's at issue here and all |
| 9 | these parties who shouldn't be here need to get |
| 10 | out of here before we have proceedings, I would |
| 11 | respectfully submit, or we're going to be causing |
| 12 | them to do unnecessary work both because of the |
| 13 | prior discovery in Jason Kelly, prior discovery |
| 14 | in Abex versus Maryland Casualty. |
| 15 | Some of them may want to be heard on |
| 16 | that issue, but we the policy holder have no bone |
| 17 | to pick with the carriers at issue.  Coverage to |
| 18 | us that have fully resolved their claims, that's |
| 19 | All State Insurance Companies and the CNA |
| 20 | Companies, those parties issued policies to IC |
| 21 | Industries full and binding settlement |
| 22 | agreements.  It covers Pneumo Abex and I |
| 23 | respectfully submit, your Honor, before we launch |
| 24 | off in discovery, we need to sort out who ought |
| 25 | to be here. |
| 26 | MS. McCABE:  Your Honor, if I may? |

Proceedings

1

2    There are things I am finding quite frankly a

3    little bit incredible about all of this.  They

4    talk about all the discovery that happened in

5    Washington, DC.  I'm not a party to that case.

6    They did not name me in Washington, DC.  They

7    didn't sue me down in Washington, DC.  I'm not

8    down there.  I haven't engaged in any of the

9    discovery in Washington, DC.

10           What I found amazing, which they moved

11   it to Federal Court and I had started asking

12   questions about what would happen in the DC

13   action, I met with every single time they told

14   me, nobody could tell me anything there because

15   the whole case is under seal.  Now they're coming

16   in, everything is under seal, they did the whole

17   case under seal in Washington, DC.  They told me

18   there's no need to do discovery.  They've been

19   doing it for 24 years and they had told me we

20   need six months here, but what they want to do is

21   play this game, like I said to, your Honor,

22   before they apparently got rulings, I'm not sure

23   exactly what they've done down there because as I

24   said, everything is done under seal.

25           They want to impose that against me.

26   These are the same people that also I had to

18

Proceedings

1

2    fight three years ago that are saying where was

3    IC Industries, where was Pepsi America three

4    years ago when the action was filed.  Why didn't

5    they file the motion then?  Why didn't they come

6    into court three years ago and tell you this

7    shouldn't be happening because there's an action

8    in DC.  They tried to moved -- they had to move

9    it to Federal Bankruptcy Mogul Court for three

10    years.

11          They could have come in the court and

12    they could have gone to Judge Preska and said

13    Judge Preska, you don't need to do deal with this

14    because this is being taken care of down there.

15    They let a Federal Judge deal with this for three

16    years.  They didn't go in front of her and move

17    in front of her.  They didn't go in front of the

18    Bankruptcy Court and say by the way, this is

19    improper.  You don't need to do this because

20    there's a case in DC pending for all this.

21          They didn't go down in the DC court,

22    they didn't go before Judge Lyons and tell Judge

23    Lyons you don't need to deal with this because

24    it's being dealt with in Washington DC.  This is

25    what I said before, it's an attempt to avoid the

26    application of New York law, your Honor.  We

JOHN PHELPS SENIOR COURT REPORTER

1                          Proceedings

2      argue and as your Honor know, New York law

3      governs this and under New York law our position

4      is that our policies won't be triggered.  They're

5      trying to avoid the GE decision on a number of

6      occurrences because the GE position puts them in

7      a bad position.  What they're trying to do is get

8      it out.

9                There's an environmental case.  Yes, we

10     were involved in the environmental case in

11     California, your Honor that was an environmental

12     case.  What I've been met with, it took me three

13     years of gamesmanship to get out of here.  I'm

14     not entitled to do discovery.  In 24 years they

15     can't resolve the claims with these people they

16     have a great relationship apparently?  They're

17     still not done.  It's a complex case.  It's

18     designated as a complex case Justice Cahn doesn't

19     dispute it's a complex case.

20               Justice Cahn heard some of these

21     arguments from these counsel and they said let's

22     proceed forward with discovery in this case.  If

23     they want to file a motion, I think it's

24     ridiculous I do it.  If they want to file a

25     motion and get me to DC and file the lawsuit last

26     week, when they heard it's finally in New York,

Proceedings

1

2   I'll deal with that, in the mean time I'm asking

3   to proceed forward with this case.  In addition

4   to that, maybe counsel can answer this question.

5   My understanding is they're not going to move to

6   stay the whole case, so that's being glossed over

7   as well.

8           This case, that's so comprehensive down

9   in Washington DC that's going to allegedly take

10  care of it and some of these defendants are going

11  to be here.

12          MR. ZEVNIK:  I think you misspeak.

13  First of all, let me address the discovery issue

14  which is what we're here for.  All of the

15  discovery was taken in the California case by her

16  colleague.  Counsel wasn't there, but if they

17  consulted with the London market counsel, counsel

18  in California, they would have discovery of all

19  of the policies and the actions and the

20  transaction that was done in California in the

21  Jayson Kelly case that involves the same parties,

22  very same transactions, very same operations, so

23  it is true that there's been a tremendous amount

24  of discovery, which is what we're here for.  I

25  don't want to debate the other issues.

26          Frankly, the reason we didn't sue

Proceedings

1
2     Lloyd's before, we were involved in settlement
3 discussions with them.  I'm not going to raise
4 that issue either.  The settlement discussions
5 were terminated with the filing of the lawsuit
6 here.  We continued those discussions,
7 unfortunately with Lloyd's that has never been
8 successful.  It was with the other parties.  You
9 don't sue people when you're in the middle of
10 settlement discussions.  We didn't do that.  I
11 apologize for that, but that's the way we conduct
12 business.
13         I think the issue here I want to talk
14 about in terms of discovery, we're not evading
15 the issue.  We do intend to move to stay the
16 entire case, but the issue here as we said to
17 your Honor deals with discovery.
18         So I wanted to address that issue by
19 referring to the prior litigation.  I don't think
20 anybody here wants to redo discovery that
21 everybody acknowledges was taken in California,
22 that everyone acknowledges was taken in DC.
23 There was a trial in DC on these very same
24 asbestos claims.
25         There was a trial about when the bodily
26 injury took place.  That's an important issue.

1                    Proceedings

2    Obviously there's discovery about that.  There

3    was a trial involving the primary carrier that

4    sits underneath Lloyd's of London and that

5    primary carrier lost on all of those issues and

6    it was held there was full coverages for all of

7    the policy periods.  That's relevant your Honor

8    and I don't think we ought to go back in and

9    retry and redo discovery on the same claims.

10   Everyone admits it's the same claims.  It's the

11   same asbestos related bodily injury claims.

12           For purposes of presenting the discovery

13   issues here, your Honor, yes, we understand Judge

14   Cahn said let's meet and talk about discovery.

15   What we don't want to do is redo the discovery

16   and the trial that we had in DC and we don't want

17   to redo the discovery we had in California, and

18   we don't want to go into hassling parties that

19   settled the case.

20           The threshold is what can we use to

21   accelerate this matter and not go back over the

22   same ground we've already been over for 23 years,

23   for seven years and with some of the parties here

24   they don't belong here because they've settled

25   their claims.

26           I hope they will join in seeking at

1                    Proceedings

2    least to terminate this litigation as to those

3    parties.  We do intend to move to stay the case

4    as to everyone.

5          MS. McCABE:  Your Honor, I'm sorry if I

6    misspoke.  My representation with regard to that

7    was based on a conversation that we had

8    yesterday.  Counsel in anticipation of this

9    hearing and what my understanding was, they

10   weren't going to do that.  If I misspoke, it

11   wasn't intentional.

12         Also, your Honor, if there can be an

13   easy way to do this -- by the way, I should also

14   point out my firm was representing London in that

15   case in California as well and it was my partner.

16   So I'm fully aware of what happened in that case,

17   your Honor.  It wasn't like it was a different

18   London firm and we still despite counsel's

19   representation, need discovery here.  I can do a

20   document request.

21         I can send a request for documents.  If

22   they have it, they can just ship it.  If it's

23   that easy, if they did it, it's not a hassle for

24   them.  Let me at least file some document request

25   here, that's with Justice Cahn, and if they want

26   to come forward and say they have it some place,

Proceedings

1

2    they can do that.  I don't want to unnecessarily

3    hassle people.  I want to move the case.

4           MR. HOCHMAN:  My name is Jerald Hochman.

5    I represent one of the excess carriers in the

6    case.  I heard counsel say that everybody knows

7    this and everybody knows that.  I don't know any

8    of that.  I can't say what counsel has

9    represented is true or not true.

10          I just don't know.  What I do know is

11   that this sure sounds likes it's going to take at

12   least 15 months to sort out everything that's

13   happened before and at the very least, I would

14   like to get my hands on documents that may have

15   been produced before, may not have been produced

16   before, and if there's a problem with additional

17   discovery, well, counsel has a remedy.

18          THE COURT:  It seems to me that you

19   wanted to go Mr. Zevnik wants to go expeditiously

20   and you want to start discovery.  So perhaps

21   that's exactly what we should do.  Clearly

22   documentary discovery should come first before

23   interrogatories or depositions.

24          I presume you either have gotten or will

25   get out a notice of discovery spelling out

26   exactly what it is you want in the form of

1              Proceedings
2   documents as to discovery.  Since counsel
3   represents that most of the discovery has already
4   been done, I would presume they have the
5   documents.
6              MR. ZEVNIK:  Well, your Honor, so do
7   they.
8              THE COURT:  So do they?
9              MR. ZEVNIK:  That's right.  That's my
10  point.  They got them.  We didn't ask for them
11  back.
12             THE COURT:  Counsel represented she's
13  not in the Washington case.
14             MR. ZEVNIK:  Those documents were also
15  produced in Los Angeles where counsel was.  Most
16  of the discovery that they're asking for was
17  produced not only, was produced essentially in
18  the California case and I believe that New York
19  counsel may not have the documents, but I think
20  the first inquiry is I don't think we ought to
21  have to produce everything that they already
22  have.  That's the first inquiry because it has
23  been produced.
24             THE COURT:  Ms. McCabe's clients in the
25  California case.
26             MR. ZEVNIK:  Yes, they were.

1                              Proceedings

2   Absolutely.

3                    THE COURT:  And Ms. McCabe, do your

4   clients or their California counsel have the

5   documents you're now seeking.

6                    MS. McCABE:  Your Honor, some -- my

7   counsel, counsel for Lloyd's in California was my

8   partner.  We have an L.A. office.  So it was the

9   same firm, your Honor, and what we would seek

10  for, any documents that we would seek in this

11  action, we haven't filed the request yet, your

12  Honor, but any documents we seek, if they were

13  already produced in California, we will ask them

14  to lift the protective order from California so

15  we can use that here, but that was the

16  environmental case, your Honor.

17                   If they've already given it to us, fine,

18  if we can use it, but we're asking for additional

19  materials here.

20                   THE COURT:  So an adequate response to

21  your request for documents will be we had already

22  gave them to you in California.

23                   MS. McCABE:  Right.  If they did that,

24  then they tell me that.  That's a one line

25  answer.  They can put in the request.

26                   MR. HOCHMAN:  If I may, I don't know

| | |
|---|---|
| 1 | Proceedings |
| 2 | what happened with London's counsel in |
| 3 | California, but I don't know whether my client |
| 4 | was a party in California, but assume they were a |
| 5 | party in the California case, I can guarantee you |
| 6 | my firm did not represent you in California, and |
| 7 | I don't have access to those documents. |
| 8 | MR. ZEVNIK:  Your Honor, I can guarantee |
| 9 | you they were all parties in California and I |
| 10 | will be happy to give a service list for that |
| 11 | case because the related case is still pending, I |
| 12 | would be happy to seek to lift the protective |
| 13 | order from the court in California.  It's the |
| 14 | Honorable Peter D. Lichtman, Department 322 Los |
| 15 | Angeles Superior Court.  He's on the bench.  We |
| 16 | will go back to that same judge and ask him |
| 17 | extend a protective order, I believe is the right |
| 18 | terminology, because I don't believe that since |
| 19 | it's the same party, certainly what I would like |
| 20 | to do is extend the protective order. |
| 21 | Nobody here wants to have the documents |
| 22 | out in the open.  So it's not a question of |
| 23 | lifting it, it's extending it, and I would be |
| 24 | happy to provide the names of the lawyers who are |
| 25 | the defendant insurance companies and for London, |
| 26 | to counsel and they can go back to their own |

1                        Proceedings

2    client's counsel and get the materials that were

3    already produced, which I can also say to the

4    court in my judgment knowing both counsel and

5    having been lead counsel 95 percent of the volume

6    of discovery or more is all in the California

7    case, and every single party here has had that

8    discovery.

9            THE COURT:  Ms. McCabe, when are you

10   going to have your discovery --

11           MS. McCABE:  I can get out a set next

12   week.  I can get out a set of discovery next

13   week, and if they want to designate from

14   California, they can tell me what they think is

15   responsive from the California case and designate

16   it by Bates range or something.

17           MR. ZEVNIK:  Your Honor, not all of it

18   was Bates numbered because over five million,

19   maybe 20 million pages of documents were

20   produced.  Not everything was Bates numbered.

21   Only what the defendants copied were Bates

22   numbered.

23           THE COURT:  All right.

24           MR. ZEVNIK:  In fact, I think the

25   production probably included 100 million pages of

26   documents, were made available for production for

| | |
|---|---|
| 1 | Proceedings |
| 2 | copying.  Not all of those were copied.  The |
| 3 | defendants were the ones that made the selection. |
| 4 | THE COURT:  Now these documents, are |
| 5 | they all original pieces of paper or are they |
| 6 | electronic? |
| 7 | MR. ZEVNIK:  The defendants, I believe, |
| 8 | recorded those documents the ones that they, the |
| 9 | defendant insurance company selected to copy I |
| 10 | believe they kept electronic versions, but we the |
| 11 | plaintiffs did not.  We were the ones who made |
| 12 | the documents available.  That's the discovery |
| 13 | that they want.  We didn't need to make copies of |
| 14 | the documents that we had that were made |
| 15 | available.  They did. |
| 16 | And, your Honor, so I think they really |
| 17 | have a better idea about what they want because |
| 18 | they're the ones that selected them. |
| 19 | THE COURT:  It seems to me if you're |
| 20 | talking about a million documents and a million |
| 21 | documents are all on CDs or DVDs, there's no |
| 22 | great task to copy them. |
| 23 | MR. ZEVNIK:  That's correct, your Honor, |
| 24 | all though I'm not sure I have the CDs, I believe |
| 25 | the defendant law firms has the -- they were the |
| 26 | one's that paid for the copying and production of |

Proceedings

1

2   that.  Plaintiff did not.

3          THE COURT:  Well, perhaps then

4   Ms. McCabe can get out a request by the 23rd of

5   this month, and how long would it take you,

6   Mr. Zevnik, to respond.  You're either going to

7   find the documents, they've already got the

8   documents or any other appropriate response to

9   Ms. McCabe.

10          MR. ZEVNIK:  My point, your Honor, is

11   that the insurance companies are the ones that

12   copied the documents and created the CD.  They

13   did not give us a copy of those.  So I do not

14   physically have them.  They do.  What I can do is

15   to provide, I believe a summary of the discovery,

16   including approximately 4,000, I believe,

17   interrogatories that were responded to.

18         At least I don't have to give them all,

19   but certainly I can give an indication what was

20   produced or what was descriptive.  Again, the

21   defendants were the ones who kept the CDs, not

22   the plaintiff or the insured -- not the insured.

23   I'll use that term.

24         MS. McCABE:  Your Honor, we may be

25   jumping the gun.  I think he can tell me in his

26   response to whatever document request I've got,

JOHN PHELPS SENIOR COURT REPORTER

1                    Proceedings

2    he can tell me whether he made them available,

3    where he thinks they are, and then I'll deal with

4    that.

5              THE COURT:  Okay.  How long will that

6    take you?

7              MR. ZEVNIK:  I don't know, your Honor.

8    I have to go and seek extend the protective order

9    before I can make anything available, but I would

10   say 60 days.

11             THE COURT:  How about a little less than

12   that say.

13             MR. ZEVNIK:  I can do it on a rolling

14   fashion, say in 30 days.

15             THE COURT:  Can you do it by the end of

16   July?

17             MR. ZEVNIK:  Oh, yes.  I think in terms

18   of what I understand needs to be done here, yes,

19   your Honor, I can.  In terms of indicating the

20   discovery requests that were made by the

21   defendants, certified that we responded to them

22   and indicated whether those responses were made.

23   I think that should be possible.

24             THE COURT:  Okay.

25             MR. ZEVNIK:  It was extensive discovery.

26   The only reason I'm saying it takes a little

1              Proceedings

2  time.

3        THE COURT:  I understand that if we can

4  get started, we can find out from Ms. McCabe what

5  she wants.  We can find out from you what your

6  clients already have or where it is, where the

7  documents are and then we can fully proceed with

8  turning over the documents.

9        MR. ZEVNIK:  Your Honor, what I'm going

10  to start with are the discovery demands already

11  made, but I can alert everybody there's not a

12  discovery demand that has not been made, either

13  the DC Abex case --

14        THE COURT:  I understand it's going to

15  be made and it's going to be made within one

16  week.  So that takes care of that.  As to all the

17  parties, which you say should not be in this

18  case, so far as I know, there's no motion to get

19  them out of the case.

20        MR. ZEVNIK:  We will be filing a motion

21  to stay on Monday.  To the extent there are

22  parties here who should not be here, we will

23  consult with them and as appropriate, bring a

24  motion to stay or dismiss along with him or they

25  can do that or we'll have to consult with them.

26        We have an interest as a signatory to a

1                          Proceedings

2       settlement agreement and not having that

3       disrupted.

4               THE COURT:  All right.  Now I understand

5       Justice Cahn wants to see you all again on August

6       18th?

7               MS. McCABE:  That's right, your Honor,

8       and what he suggested is that if things were

9       going well in working with you, we'll call him on

10      the 15th or 16th and tell him if we need to see

11      him or not.

12              THE COURT:  Okay.  I think I will try to

13      find out from Justice Cahn or arrange with

14      Justice Cahn for a future date, for future

15      discovery once we know.  So you're going to act

16      by the 23rd, you got until the end of July, then

17      mid August conference with Justice Cahn and then

18      we'll find out hopefully, we'll know where all

19      the documents are, who's got them and the

20      California order will be extended at that period

21      of time.

22              MR. LAVELLE:  Your Honor, not to

23      complicate things, but to the extent any of the

24      other defendants might have discovery requests

25      and I'm not saying they do --

26              THE COURT:  I think expeditiously as

1                      Proceedings

2    they can pull it in, it will be fine.

3              MR. LAVELLE:  Understood.

4              MR. PARSONS:  Barry Parsons on behalf of

5    Stonewall and Fulcrom Insurance Companies.  I

6    wonder if it might make sense the companies

7    claiming insured under the policies if

8    interrogatories were served on them, in the other

9    actions and if filed responses to those

10   interrogatories, if they can also make those

11   available to us, that may help a bit with the

12   discovery.

13             MR. ZEVNIK:  I'm not sure I understand

14   that.  We are the named insured.  We did all the

15   discovery.

16             MR. PARSONS:  We don't have to get into

17   a debate now --

18             MR. ZEVNIK:  The policies were issued

19   after 1971 to IC Industries Inc., now known by

20   name change as Pepsi Americas Inc..  I represent

21   Pepsi Americas Inc., formerly known as IC

22   Industries Inc..  we were the policy holder.  We

23   were the claimant under the policies in

24   California.  We were the claimant under the

25   policies that were issued in Washington, DC the

26   named insured, the principle named insured.  The

```
1                    Proceedings

2    other named insured is Pneumo Abex Corporation,

3    that was also the named plaintiff in the

4    California case, and it is formerly known as

5    Abex, and all of the claimants are either IC

6    Industries or Pneumo Abex.  There is nobody else.

7              MR. PARSONS:  For the purpose of my

8    point, I don't think we need to get into a debate

9    whether they're insured or not, but the

10   proposition is if they already answered

11   interrogatories, that it would be no burden to

12   them to produce those interrogatories now to us,

13   so we can hopefully eliminate the need of filing

14   duplicative interrogatories at some point in the

15   future.

16             MS. McCABE:  I can make that a document

17   request.

18             THE COURT:  Fine.  Good.

19             MR. BIESTER:  David Biester on behalf of

20   First State.  We filed answers from Federal

21   Court.  If we can have an agreement that they

22   could be refiled and perhaps with the notice of

23   filing in the State Supreme Court with the proper

24   caption, without having to repeat and redo all of

25   those prior pleadings.

26             THE COURT:  I assume there's no
```

1          Proceedings

2    objection to that?  All right.

3          MR. GINSBERG:  Just so we're clear, Mike

4    Ginsburg, there's also a sealed order of the case

5    in the District of Columbia.  So we're going to

6    need to extend that or ask the judge to lift the

7    seal for purposes of this litigation.

8          THE COURT:  You want to get that done?

9          MR. GINSBERG:  We'll take care of it.

10         MR. CHEFITZ:  Your Honor, Daniel Chefitz

11   I believe the protective order, the seal in DC

12   already was extended in this case to be allowed

13   to be used here.  To the extent there's a similar

14   protective order in this case, we'll address

15   that, but maybe that needs to be done, there

16   needs to be a protective order here.

17         THE COURT:  Okay.  Thank you.  Very

18   good.

19         (Whereupon, at this time, the

20   proceedings were concluded.)

21         C E R T I F I C A T E

22         I do hereby certify that the foregoing

23   taken at the time and place aforesaid, is a true

24   and correct transcription of my shorthand notes.

25         _____

26         JOHN PHELPS, CSR, RPR, CRR