SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, et al., | : <br> : |
| *Plaintiffs*, | : Index No. 602493/02 |
| vs. | : |
| PNEUMO ABEX CORPORATION, et al.; | : |
| *Defendants*. | : <br> : |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO STAY

MORGAN, LEWIS & BOCKIUS LLP

101 Park Avenue
New York, NY 10178-0060
Tel: 212-309-6000
Fax: 212-309-6001

1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel. (202) 739-3000
Fax (202) 739-3001

David A. Luttinger, Jr.,
Anne Krepshaw,
Daniel E. Chefitz (admitted *pro hac vice*),
    Of Counsel.

Dated: June 20, 2005

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, et al., | : |
| *Plaintiffs,* | : **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY** |
| vs. | : |
| PNEUMO ABEX CORPORATION, et al.; | : Index No. 602493/02 |
| *Defendants.* | : |

This case centers on the obligations of the historical comprehensive general liability insurers of Illinois Central Industries, Inc. (subsequently known as IC Industries, Inc. and Whitman Corporation, and now known as PepsiAmericas Inc., all of which are referred to collectively herein as "PAS"), and its former subsidiary, Abex Corporation ("Abex"). Those obligations concern the insurers' duty to pay in full the costs and expenses arising from or in connection with claims, suits, actions, causes of action, and demands that have been or may in the future be asserted against Abex alleging bodily injury and/or personal injury due to exposure to friction products allegedly containing asbestos (hereinafter referred to as "Abex asbestos-related suits and claims"). PAS and Abex are referred to collectively herein as the "insureds" or "policyholder."

All of the policies involved in this action, and the issue of whether and how the policy terms must respond to Abex asbestos-related suits and claims, have been the subject of extensive litigation in a comprehensive asbestos coverage action that remains pending in the United States District Court for the District of Columbia ("U.S. District Court") and a comprehensive environmental coverage action in Los Angeles Superior Court in California. The litigation has

resulted in millions of pages of fact and expert discovery, several bench trials, numerous coverage rulings and determinations by the court, and dozens of settlements. In addition, several motions on key coverage issues await determination by the U.S. District Court.

In more than 24 years of litigation in the U.S. District Court, Judge John Garrett Penn has presided over two bench trials, rendered numerous coverage rulings, and overseen years of discovery concerning the application of the same policy terms to the identical Abex asbestos-related suits and claims that are the subject of this action. The U.S. District Court action entitled *Abex Corporation et al. v. Maryland Casualty Company et al.*, Civil Action No. 82-2098 ("*Abex D.C. Action*") already has resolved such key coverage issues as the scope of the duty to defend and indemnify, the trigger of coverage applicable to all of the insurers' policy periods, whether the injury in the Abex asbestos-related suits and claims took place during all of the policy periods, and the applicable allocation formulas. In addition, the United States Court of Appeals for the District of Columbia Circuit issued an opinion in the *Abex D.C. Action* on the fundamental issue of which trigger of coverage applies to the Abex asbestos-related suits and claims. *See Abex Corp. v. Maryland Cas. Co.*, 790 F.2d 119 (D.C. Cir. 1986). Several other key coverage issues applicable to the Abex asbestos-related suits and claims have been briefed in the *Abex D.C. Action* and await a ruling by Judge Penn. Moreover, Judge Penn already considered and rejected arguments by the insurers back in the 1980's, when the insurers wanted to transfer the asbestos coverage litigation to New York.

All of the insurers and policies in this lawsuit were also parties to a California coverage action filed by the policyholder in 1992 as *Jensen-Kelly Corporation et al. v. Allianz Underwriters, et al.*, No. BC 069 0181 (Los Angeles Superior Court) ("*Jensen-Kelly*"). *Jensen-Kelly* concerned environmental claims arising from the same insured operations that are at issue

in the Abex asbestos-related suits and claims, and those operations, as well as the policies and relevant corporate transactions, were the subject of seven years of extensive discovery in that case.

Certain Underwriters at Lloyd's, London ("Lloyd's") abruptly filed this lawsuit in New York while the parties were actively engaged in settlement discussions pursuant to a tolling agreement. Rather than filing suit in (i) the District of Columbia, where this coverage dispute has been litigated for more than 20 years, (ii) California, where all the parties were involved in more than 8 years of litigation concerning the same policies and insured operations, or (iii) Illinois, where over 90% of the policy limits at issue were negotiated, drafted, and issued, Lloyd's came to this Court, which has no familiarity with the parties and policies at issue. Further, many of the defendants named by Lloyd's are inappropriate parties who should be dismissed. The policyholder will soon be filing joint motions with a number of these improperly named defendants to seek their prompt dismissal from this lawsuit as Lloyd's has refused voluntarily to correct its errors.

Consistent with the insureds' desire to exhaust all settlement options to avoid unnecessary litigation, the insureds continued their attempts to reach a settlement with Lloyd's after Lloyd's filed this lawsuit, even traveling to London for settlement talks. The insureds have reached settlements with **more than a dozen** primary and excess insurers on the basis of the controlling rulings in the *Abex D.C. Action*. After it became clear at a meeting with Lloyd's last month that settlement discussions had finally reached an insurmountable impasse, Lloyd's and other non-settling excess carriers were brought before the U.S. District Court by way of a related case that is also pending before Judge Penn, entitiled *Whitman Insurance Company, Ltd. v. Travelers Indemnity Company*, Civil Action No. 05-01125 ("*Whitman D.C. Action*"). The *Abex*

3

*D.C. Action* and the related *Whitman D.C. Action* are referred to collectively herein as the "D.C. Litigation." Currently, therefore, all of the non-settled policies are before Judge Penn in the D.C. Litigation.

Accordingly, the issue presented by the accompanying order to show cause – whether this Court should exercise its discretion and decline to become embroiled in a 24 year coverage dispute in deference to the ongoing D.C. Litigation – is simple and straightforward. In light of the U.S. District Court's familiarity with the parties, insurance policies, and issues involved in this case, and because New York has little interest in adjudicating this complex and long-standing dispute, the policyholder respectfully requests that the Court stay this action pending resolution of the D.C. Litigation.

I.  **STATEMENT OF FACTS**

   A.  **For More than Two Decades, the U.S. District Court in the D.C. Litigation Has Effectively Managed and Resolved Many of the Coverage Disputes Arising Out of the Abex Asbestos-Related Suits and Claims.**

Since 1977, thousands of Abex asbestos-related suits and claims have been asserted in federal and state courts across the United States alleging exposure to asbestos-containing friction products allegedly manufactured, sold, used, or distributed by Abex, including claims based on theories of market-share liability, conspiracy, and similar claims. *See Abex Corp.*, 790 F.2d at 122. In July 1982, Abex, then a wholly owned subsidiary of Illinois Central Industries, filed the *Abex D.C. Action* seeking defense and indemnity for the Abex asbestos-related suits and claims against roughly 40 years of Comprehensive General Liability ("CGL") primary policies. *See* Affidavit of Paul A. Zevnik ("Zevnik Aff."), ¶ 8. The case has been ongoing since; the docket

4

now runs over 150 pages, containing 1,683 entries, with new activity occurring on a weekly basis. *See* Zevnik Aff. ¶ 8, Exhibit 1.

The D.C. Litigation has evolved over the years in response to changing circumstances. As the number of Abex asbestos-related suits and claims continued to rise, the insureds asserted claims in the D.C. Litigation against four additional insurers that had issued 11 primary policies to Illinois Central Industries, now known as PAS. Zevnik Aff. ¶ 19. As claims continued to rise and policies began to exhaust, the insureds also asserted coverage claims under certain umbrella excess policies. *Id.* When other excess insurers, such as Lloyd's and American Reinsurance ("American Re"), refused to follow the path of their co-excess insurers that reached settlements with the policyholder, Whitman Insurance Company, Ltd, a captive insurer for the policyholder that has paid millions of dollars in connection with Abex asbestos-related suits and claims, filed suit against those additional excess insurers in the D.C. Litigation. Zevnik Aff. ¶ 22.

During the course of the D.C. Litigation, the U.S. District Court has issued rulings on key coverage issues and entered stipulations and orders on the exhaustion of certain primary policies. Zevnik Aff. ¶¶ 10-13. The court also has conducted two bench trials, the first concerning lost or missing policy terms, and the second concerning whether policies issued in the 1950's and 1960's were triggered by the underlying asbestos claims under an "injury-in-fact" trigger test. *Id.*

As a result, the D.C. Litigation has produced a number of key rulings concerning the defense and indemnity obligations of standard-form CGL policies issued by insurers of Illinois Central and Abex. For example, in 1986, the D.C. Circuit held that Abex's insurers had an immediate duty to defend Abex "as long as there remains a possibility – however remote – that injury occurred during the policy periods of each insurer." *Abex Corp.*, 790 F.2d at 129. The Court of Appeals further held that, "[b]ecause it is possible for asbestos-induced injuries to occur

5

at any time following initial exposure, the tort complaints against Abex 'permit proof' that the injury-in-fact occurred during the policy periods . . . ." *Id.*

### 1. All Necessary Parties to This Action Are Also Parties in the D.C. Litigation.

In this action, Lloyd's essentially seeks two declarations. First, Lloyd's asks this Court to hold that the Lloyd's policies do not provide coverage for the Abex asbestos-related suits and claims. *See* Lloyd's Complaint at p. 25. Alternatively, Lloyd's seeks a declaration that, if its policies do cover the Abex asbestos-related suits and claims, Lloyd's is entitled to indemnification and/or contribution from PAS's other excess and umbrella insurers. *Id.* Lloyd's seeks this contingent relief against numerous parties that were not properly sued, including (i) eight insurers that already have fulfilled their policy obligations through settlement with the insureds (Zevnik Aff. ¶34.ii), (iii) six insurers that issued policies that lie above the highest Lloyd's layer (Zevnik Aff. ¶34.vi), (iv) two insurers that are insolvent (Zevnik Aff. ¶34.iii), and (iv) one party that never was an insured or insurer in connection with the Abex asbestos-related suits and claims (Zevnik Aff. ¶34.iv).

In short, all proper parties to this suit are also before the U.S. District Court. Indeed, a total of 12 of the insurer defendants in this case have been involved in the D.C. Litigation, either directly or through affiliated companies, for roughly 20 years. *See* Zevnik Aff., ¶ 34.ii. Because the D.C. Litigation also includes primary and umbrella carriers that are not parties here, the U.S. District Court is in a better position to render a more complete disposition of the case.

2.  **All of the Excess Policies at Issue in This Suit Either "Follow the Form" of, or Have Substantively Similar Terms as, the Primary Policies That Have Been Litigated in the D.C. Litigation.**

Lloyd's presumably will argue that this Court should ignore the 24 years of rulings, expert testimony, bench trials, appeals, and discovery in the *Abex D.C. Action* because that case has been principally concerned with the underlying primary policies, not the excess policies issued by Lloyd's and other excess carriers. This argument fails for several reasons in addition to the fact that the *Abex D.C. Action* did include certain key umbrella excess policies. First, the Lloyd's and other excess policies in this lawsuit "follow form" to the terms and conditions in the umbrella and primary policies at issue in the *Abex D.C. Action. See* Zevnik Aff. ¶¶ 15-18. Second, even if some excess policies do not "follow form," they contain the identical or substantively similar standard-form provisions included in the underlying policies. Third, many of the factual and legal findings regarding the insureds' corporate transactions and the Abex asbestos-related suits and claims are equally applicable to all policies. Finally, key coverage determinations, such as the trigger of coverage and when injury occurred in the Abex asbestos-related suits and claims, are applicable to all policies. In short, the terms of the Lloyd's policies and the other excess policies at issue in this case cannot be construed without reference to the underlying primary policies that are and have been the subject of the D.C. Litigation and, in many respects, already have been interpreted by the U.S. District Court.

3.  **The U.S. District Court Already Has Litigated and Resolved Many of the Key Coverage Disputes at Issue in This Action.**

It is clear from Lloyd's complaint that it asks this Court to resolve questions that already have been decided in the D.C. Litigation. For example, Lloyd's seeks a declaration concerning the trigger of coverage – *i.e.*, that the injuries alleged in the Abex asbestos-related suits and

7

claims did not take place during the effective periods of the Lloyd's policies. *See* Lloyd's Complaint, ¶93(m) ("Any accident, occurrence, loss or injury for which Pneumo Abex or PepsiAmericas may be found liable with respect to the Asbestos-related Products Liability Claims asserted against them did not take place during the effective periods of the [Lloyd's] policies."). In 1998, however, six of the seven primary carriers – Maryland Casualty, Travelers, Argonaut, Continental, Northwestern National, and National Union – entered into a stipulation that injury-in-fact caused by asbestos exposure occurred during their policy periods. Although Liberty Mutual did not join in the stipulation, it ultimately settled Abex's claims after extensive discovery in 1997 and 1998, the submission of expert reports, and a bench trial in the U.S. District Court to determine whether the asbestos claims were covered by Liberty Mutual primary policies in effect from 1957 to 1962 under an injury-in-fact trigger of coverage. *See* Zevnik Aff. ¶12. The Lloyd's excess policies at issue in this case cover the same time periods as the primary policies issued by Liberty Mutual and the parties to the stipulation. *See* Zevnik Aff., Tab A. Therefore, the Abex

Additionally, the result of the first bench trial conducted by the U.S. District Court in 1987 and 1988 is relevant to this case because certain Lloyd's policies follow the form of the policies that were at issue in that trial. The trial concerned lost or missing Maryland Casualty policies. Abex prevailed at trial, with Judge Penn holding that Abex had proved by clear and convincing evidence that Maryland Casualty issued responsive CGL policies providing coverage from August 1, 1943 to August 1, 1957. Zevnik Aff. ¶12. All of the Lloyd's policies issued prior to 1957 sit directly above, and follow form to, these Maryland Casualty policies. *See* Zevnik Aff., Tab A.

Finally, as acknowledged in Lloyd's complaint, the potential liability of Lloyd's is contingent on the proper and complete exhaustion of the full policy limits of underlying policies. *See* Lloyd's Complaint at ¶ 93(c) & (p). Lloyd's also claims that the limit of its own liability is reduced if and to the extent that prior excess policies also cover the same loss. *Id.* at 93(n). Because coverage under some of the underlying policies and excess policies is still being litigated before the U.S. District Court, it would be impossible to determine the extent of Lloyd's liability until the D.C. Litigation is concluded.

Moreover, regarding the primary policies, the U.S. District Court already has determined that the coverage limits of the Liberty Mutual policies, some of which sit directly underneath Lloyd's coverage, were exhausted by June 1, 2000. Zevnik Aff., ¶13. In addition, the U.S. District Court issued an order (stipulated to by Abex and Maryland Casualty) holding that all of Abex's defense and indemnity costs incurred in the underlying asbestos-related cases through the date of the stipulation had been necessary and reasonable in amount. Thus, the U.S. District Court already has confronted and resolved a number of issues concerning the predicates to Lloyd's liability – *i.e.*, the extent and propriety of the exhaustion of underlying policies and prior excess policies.

### 4.     Key Coverage Issues Are Pending Before the U.S. District Court.

In addition to the issues already decided, crucial coverage issues are currently pending before Judge Penn in the D.C. Litigation. For example, Lloyd's alleges in its complaint in this Court that PAS's claims against it "may be barred, in whole or in part," because the Abex asbestos-related suits and claims "do not arise from and are not caused by an 'occurrence' as defined in the [Lloyd's policies]." Lloyd's Complaint, ¶93(d). But the Lloyd's policies do not

9

themselves define the term "occurrence." They rely instead on the definitions contained in the underlying policies. Thus, whether Lloyd's is entitled to the declaration it seeks is dependant on the terms of the underlying policies, the interpretation of which is currently pending before Judge Penn.

Second, Lloyd's claims that PAS is "not entitled to indemnification of any amounts paid in settlement" of any Abex asbestos-related suit or claim "in which the claimant has not, in fact, sustained an asbestos-related injury, illness, disease or damage." Lloyd's Complaint at ¶ 93(s). This issue is also currently pending in the D.C. Litigation by virtue of Abex's Motion For Partial Summary Judgment For Indemnification Of Settled Cases. *See* Zevnik Aff., ¶14.

Similarly, Lloyd's claims that the Abex asbestos-related suits and claims are not covered by Lloyd's in part because the claims are excluded from coverage, either by the Lloyd's policies themselves, or by the "provisions of any policy underlying the [Lloyd's] policies which are incorporated into the [Lloyd's] policies." *See* Lloyd's Complaint, ¶93(a), (b) and (r). But the interpretation of exclusions contained in the underlying policies is the subject of several motions that are currently pending in the D.C. Litigation. *See* Zevnik Aff. ¶14. As explained above, and as Lloyd's complaint makes clear, whether exclusions in the underlying policies apply to PAS's claims will directly affect the extent and amount of Lloyd's own liability. *See, e.g.,* Lloyd's Complaint ¶ 93(r). Numerous motions regarding these and other coverage issues pertinent to Lloyd's obligations are pending before the U.S. District Court. *See* Zevnik Aff., ¶14.

B.  <u>Lloyd's Brought This Action After Abruptly Ending Settlement Discussions</u>

As explained above, PAS has managed to settle its claims with eight of the excess carriers that are parties in this action. In 2001 and 2002, with the D.C. Litigation proceeding,

PAS also engaged in extensive settlement discussions with Lloyd's, having executed a series of tolling agreements. Zevnik Aff., ¶30. On July 2, 2002, PAS and Abex sought to extend the tolling agreement beyond its expiration date of July 8, 2002. Zevnik Aff., ¶31. Lloyd's responded by filing this action. Zevnik Aff., ¶32. The case was removed to federal court and only recently remanded to this Court. No discovery has been conducted in this case and neither this Court nor the Southern District of New York has made any substantive rulings to date.

    C.    **All of the Insurers in this Case Participated in Extensive Discovery in the *Jensen-Kelley* Case**

In addition to the D.C. Litigation, the parties to this case were involved in litigation in Los Angeles Superior Court in a case called *Jensen-Kelly Corporation et al. v. Allianz Underwriters, et al.*, No. BC 069 018 ("*Jensen-Kelly*"). *Jensen-Kelly*, which was filed by Illinois Central Industries on behalf of itself and Pneumo Abex, was an insurance coverage action that sought to recover costs incurred in connection with environmental claims from all of the same insurers and insurance policies named by Lloyd's in this action. Zevnik Aff., ¶26. *Jensen-Kelly*, included seven years of discovery, consisting of millions of pages of documents, hundreds of depositions, and thousands of interrogatories, concerning the same policies and the same insured operations that are at issue in this case. Zevnik Aff., ¶27. Significantly, the court in *Jensen-Kelly* applied California law to many of the policies that are at issue here. Zevnik Aff., ¶28.

11

## II. ARGUMENT

A stay of a New York state action may be warranted when there is substantial identity between that action and a pending federal action.[1] *Asher v. Abbott Laboratories*, 307 A.D.2d 211, 211, 763 N.Y.S.2d 555 (N.Y.App.Div., 1st Dept. 2003). In such cases, "[g]rant or denial of the stay is discretionary, the basis for the exercise of discretion being comity and orderly procedure." *See Gallo v. Mayer*, 50 Misc.2d 385, 386, 270 N.Y.S.2d 295 (N.Y. Sup. Ct. 1966) (citing *General Aniline & Film Corp. v. Bayer Co.*, 305 N.Y. 479, 485 (1953); Ann. 56 ALR 2d 335); *see also, Cye Haberdashers, Inc. v. Crummins*, 142 N.Y.S.2d 682, 684 (N.Y. Sup. Ct. 1955) ("The application for a stay is addressed to the court's discretion.").

New York courts consider a wide variety of factors when deciding whether to grant a stay in the interests of comity and orderly procedure, including (a) whether issues to be resolved before the state and federal court overlap; (b) whether the federal court has a greater familiarity and expertise with the issues; (c) whether a more complete disposition of issues may be obtained by deferring to the federal court; whether the stay avoids duplication of proof and a potential waste of judicial resources; (d) whether a stay will avoid the risk of inconsistent adjudications; and (e) whether a stay will discourage procedural gamemanship and encourage settlement negotiations. *See General Aniline*, 305 N.Y. at 485, *El Greco, Inc. v. Cohn*, 139 A.D.2d 615, 616-17, 527 N.Y.S.2d 256 (N.Y. App. Div., 2nd Dept. 1988); *Gallo*, 50 Misc.2d at 386, 270 N.Y.S.2d 295; *White Light Productions, Inc. v. On the Scene Productions, Inc.*, 231 A.D.2d 90, 660 N.Y.S.2d 568 (N.Y. App. Div., 1st Dept. 1997).

---

[1] Three separate provisions of the CPLR authorize a court to grant a stay. *See* CPLR 327 (authorizing the stay or dismissal of an action, in whole or in part, "[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum"); CPLR 2201 (authorizing "the court in which an action is pending [to] grant a stay of proceedings in a proper case, upon such terms as may be just," except where prescribed by law); CPLR 3211(a)(4)

12

A stay is appropriate in this case for all of these reasons. In addition, this Court has little to no interest in simultaneously litigating issues that are already before the U.S. District Court because the dispute has no substantial connection with New York. *See Shin-Etsu Chemical Co. v. 3033 ICICI Bank Ltd.*, 9 A.D.3d 171, 176, 777 N.Y.S.2d 69, 73 (N.Y. App. Div., 1st Dept. 2004)

### A.   The Issues Before This Court Substantially Overlap with Those Involved in the D.C. Litigation.

The first factor to be considered in deciding whether to grant a stay – *i.e.*, the existence of overlapping issues – is clearly met in this case. First, the underlying Abex asbestos-related suits and claims for which coverage is disputed in this case are the same asbestos claims for which coverage is being sought in the D.C. Litigation.

Second, the trigger-of-coverage under the Lloyd's policies is identical to the trigger of coverage of several of the primary policies in the D.C. Litigation because the Lloyd's policies sit on top of those primary policies. *See* Zevnik Aff., Tab A. As mentioned above, Judge Penn already has conducted a trial on whether the asbestos-related suits and claims occurred during the effective dates of the primary policies, and several primary insurers have stipulated that they did.

Third, as explained above, all of the excess policies at issue in this case either "follow the form" of, or have substantially similar terms as, the primary and umbrella policies that are the subject of the D.C. Litigation. Therefore, in order to determine whether Lloyd's is entitled to the relief it seeks, the Court will have to construe the terms and conditions of the underlying policies, many of which already have been interpreted by the federal courts in the District of Columbia. The interpretation of additional terms is currently pending before the U.S. District Court.

---

(authorizing a stay where "there is another pending action between the same parties for the same cause of action" in another court).

13

### B. A More Complete Disposition of Issues May Be Obtained by Deferring to the Federal Court.

This longstanding insurance coverage dispute, concerning thousands of asbestos-related suits and claims, should be resolved in a comprehensive manner involving all parties to the dispute. Ideally, the disputes would be resolved by agreement the parties, but where agreement is not possible, the litigation of the interrelated issues should be conducted before a single court. The U.S. District Court has more than twenty years of experience in resolving, and providing the conditions for the parties to resolve, the coverage disputes arising from the Abex asbestos-related suits and claims. Furthermore, it is before that court, and not this one, that all the live disputants are parties.[2] Consequently, the D.C. Litigation provides the best forum to obtain a more complete disposition of all coverage issues arising from the Abex asbestos-related suits and claims.

### C. A Stay Avoids Duplication of Proof and Potential Waste of Judicial Resources.

If this Court declines to enter a stay, two courts will simultaneously be litigating disputes involving the same parties, the same insurance policies, and the same coverage disputes. A stay by this Court would greatly reduce the potential for waste of judicial resources. As a 20-year veteran of this dispute, Judge Penn is extensively familiar with the policy terms and conditions and the underlying claims. Voluminous discovery already has been conducted in the D.C. Litigation (and in *Jensen-Kelly*). Judge Penn has conducted two bench trials and has decided numerous substantive motions. Currently, at least seven motions for partial summary judgment concerning the same or similar terms and conditions of the policies at issue in this action are

---

[2] As explained above, the only parties to this action that are not involved in the D.C. Litigation are insurers that are either insolvent or that have fulfilled their obligations to the insured. Zevnik Aff., ¶¶ 7, 32.

14

pending in the D.C. Litigation. By contrast, this action has been substantively dormant since it was filed. If this Court denies a stay, duplicative discovery will be propounded, two courts will be simultaneously considering the same issues, and this Court would be required to retread ground that already has been well-plowed by the Judge Penn.

### D. A Stay Avoids The Risk of Inconsistent Adjudications.

In addition to wasting resources, allowing this case to proceed will create the substantial risk that the two courts will reach inconsistent or conflicting findings and conclusions. *See El Greco, Inc.*, 139 A.D.2d at 616-17. As described above, the interpretation of the Lloyd's policies is dependent on the interpretation of the policies sitting beneath them. Those policies are and have been before the U.S. District Court in the D.C. Litigation. If two courts are simultaneously construing the terms of those policies, they may reach different conclusions.

This result is highly undesirable, as it is widely held that the terms of excess and umbrella policies should be construed so as to be consistent with those contained in their underlying policies. The interpretation of the terms and conditions of an excess or umbrella policy that either follows the form of an underlying policy or contains a "broad as primary policy" term is inextricably linked to the interpretation of the terms and conditions contained in the underlying policies. *See Jefferson Ins. Co. v. Travelers Indemnity Co.*, 92 N.Y.2d 363, 369, 681 N.Y.S.2d 208, 703 N.E.2d 1221 (1998) ("Jefferson's excess policy 'followed the form' of the Reliance policy, incorporating the terms and conditions of the Reliance policy, such that liability triggered under the Reliance policy would also trigger liability under the Jefferson policy after the coverage limit was reached."). Furthermore, at least some of the policies at issue in this case not only partially follow the form of an underlying policy, but actually explicitly provide coverage as

broad as the primary policy. In such situations, it is unnecessary even to examine the definitions in the excess policy because the definitions in the primary policy control "with respect to all parties under all policies." *Associated Indemnity Corp. v. Dow Chemical Co.*, 814 F. Supp. 613, 618 (E.D. Mich. 1993).

Indeed, even where an excess or umbrella policy does not "follow the form" of the primary policy or contain "broad as primary" language, it is appropriate to construe all related policies so that they are consistent with each other. 814 F. Supp. at 618 n.5. "Otherwise, the insured's reasonable expectation of having a meaningful and coordinated insurance program in place might be frustrated." *Id.* These rules of construction strongly counsel against the simultaneous and potentially inconsistent interpretation by two courts of terms and conditions contained in related primary, umbrella, and excess policies.

### E. A Stay Will Encourage Resolution of the Parties' Claims and Will Deter Irresponsible Litigation Tactics.

The resolution in the D.C. Litigation of key defenses and coverage issues has prompted settlement between the insureds and eleven carriers. Although Lloyd's also initially participated in settlement discussions, these discussions terminated with Lloyd's preemptive filing of this declaratory judgment action in this Court. In *Continental Insurance Company v. Amax Inc.*, 192 A.D.2d 391, 596 N.Y.S.2d 370 (N.Y. App. Div., 1st Dept. 1993), the court dismissed on *forum non conveniens* grounds a similar declaratory judgment action brought by an insurer, even though the New York suit was filed first. The court explained that "[s]ince plaintiff commenced this action at a time when negotiations for settlement of these claims were taking place, we afford plaintiff no benefit from having commenced this action before defendant Amax commenced its similar Colorado action." *Id.* at 391, 596 N.Y.S.2d at 370-71. Similarly here,

16

Lloyd's should not benefit from abruptly filing suit in an inappropriate forum before PAS was even aware that settlement discussions had broken down. The Court should not reward Lloyd's tactics in filing this action, because doing so would create "'. . . disincentives to responsible litigation' by discouraging settlement negotiations out of apprehension that an adversary might take advantage of the opportunity to file a preemptive suit in [a perceived-to-be] advantageous forum." *White Lights Productions, Inc.*, 231 A.D.2d at 98-99 (citations omitted).

Moreover, granting a stay will have the further beneficial effect of preventing an unseemly race to judgment between the parties to the two proceedings. As both suits are ongoing, the decisions of neither court would have preclusive effect in the other court until a final judgment is rendered. By staying this case, however, the Court would permit Judge Penn, who has been living with this dispute for more than 20 years, to reach a final, binding, and complete resolution of all issues among the proper parties to this case.

### F.   A Stay Should Be Granted Because New York Has No Significant Connection With This Insurance Coverage Dispute.

New York courts are not compelled to add to their heavy burdens by accepting jurisdiction over a dispute that has no substantial nexus to New York. *Shin-Etsu*, 9 A.D.3d at 176, 777 N.Y.S.2d at 73. In this case, New York does not have a substantial or compelling connection with this insurance coverage dispute or the underlying asbestos suits and claims at issue. The underlying suits and claims arose and have been brought in multiple state and federal courts across the country. Furthermore, more than 95% of the policy limits at issue in this action involve policies that were brokered, issued, and paid for in Illinois. The first-name insured to most of these policies is an Illinois Corporation. The excess carriers Lloyd's named as parties in this action are incorporated in twelve different states (California, Connecticut, Delaware, Illinois,

Iowa, Indiana, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, and Texas), having principal places of business in eleven states (California, Connecticut, Illinois, Massachusetts, Iowa, New Jersey, New York, Ohio, Pennsylvania, Texas, and Virginia).

Although New York has little connection with this dispute, there is an alternative forum that has substantial experience with and knowledge of the coverage claims and underlying suits. The U.S. District Court has been handling the coverage disputes arising out of the Abex asbestos-related suits and claims for more than two decades. Indeed, Judge Penn presumably determined long ago that New York was not a more convenient forum the D.C., when he denied the primary insurers' 1982 motion to transfer the *Abex D.C. Action* to the Southern District of New York. *See* Zevnik Aff., ¶ 9.

As a result of that Judge Penn's stewardship of the dispute, eleven carriers have fully satisfied or agreed to satisfy fully their insuring obligations to Abex. There is every reason to expect that the U.S. District Court's resolution of this case will be complete and equitable. Consequently, a stay should be granted to relieve this Court from the task of duplicating Judge Penn's efforts during the course of 20 years.

## CONCLUSION

For the foregoing reasons, and those set forth in the accompanying Affidavit of Paul A. Zevnik and exhibits, PAS respectfully requests that this action be stayed *in pendente lite* of the D.C. Litigation.

          Respectfully submitted,

          MORGAN, LEWIS & BOCKIUS LLP

By: *[signature]*
     David A. Luttinger, Jr.
     Joshua Pepper
     Anne M. Krepshaw

101 Park Avenue
New York, New York 10178
Tel. (212) 309-6000
Fax (212) 309-6001

*Attorneys for Defendant PepsiAmericas Inc.*

-and-

Daniel E. Chefitz (*pro hac vice*)

MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel. (202) 739-3000
Fax (202) 739-3001