# Exhibit 3 (continued)

|  | Witness Name | Affiliation |
|---|---|---|
| 40 | Gary Roush | Expert witness – defense and settlements |
| 41 | Terry Eichenseer | Crawford and Company (TPA) employee; National Union representative |
| 42 | Robert Kuehn | National Union/AIG representative |
| 43 | John Abrams | Former Rollins Burdick Hunter employee |
| 44 | Kirk Dinkins | Argonaut Insurance representative |
| 45 | James Smith | Abex defense counsel in underlying cases |
| 46 | Norman Micklin | Argonaut insurance representative |

7.    Each excess insurer that is a proper defendant in this lawsuit issued policy(ies) that either follow form to, contain the same or substantively similar terms and conditions of, or contain the identical supplemental defense obligations, as the policies in the *Abex D.C. Action* that have been the subject of 24 years of asbestos coverage rulings, voluminous discovery regarding the Abex asbestos-related suits and claims, and weeks of trials and hearings.

8.    Lloyd's, Travelers and American Re issued policies that contain the same supplemental defense obligation found in all the policies at issue in the *Abex D.C. Action* that have been subject of numerous rulings by Judge Penn regarding the application of the supplemental defense obligation to the Abex Asbestos-related suits and claims.

9.    Travelers excess policy, referred to as a T-CUP policy, is in the *Abex D.C. Action*, has been the subject of rulings by Judge Penn concerning its supplemental defense obligation, and is currently subject to a motion to enforce previous orders of Judge Penn pursuant to which the Travelers excess policy is subject to pending claims of more than $30 million in defense costs for the Abex asbestos-related suits and claims.

10.    American Re's policies contain the same type of supplemental defense obligation found in the primary and excess policies in the Abex D.C. Action, including the underlying

Travelers policy for the period March 1, 1971 to March 1, 1974 to which the American Re policy follows form.  Attached hereto at Tab 1 is a true and correct copy of American Re Policy M0372960 issued to Illinois Central Industries in Chicago, Illinois through the Rollins Burdick Hunter Company broker also in Chicago, Illinois, for the period March 1, 1971 to March 1, 1974.  The American Re policy provides in the first paragraph of the Insuring Agreement that, "[American Re] hereby indemnifies the Insured against ultimate net loss in excess of and *arising out of the hazards covered and as defined in and in excess of the underlying insurance* [Travelers T-Cup  T-Cup 957503 71] as shown in Item 4 of the Declarations." (emphasis added). In addition, American Re admits that its policies follow form to policies issued by Northbrook Excess and Surplus Insurance Company.  [Affidavit of Mark Sheridan ¶5].  Northbrook is one of the insurers that settled with Abex, and it is presently paying expenses for the Abex asbestos-related suits and claims pursuant to a confidential settlement agreement.  Northbrook's settlement is consistent with the prior rulings and settlements in the D.C. Action. In addition, American Re is an insurer on "quota share" policies with another insurer, CNA. Like Northbrook, CNA already has settled with Abex on terms consistent with prior rulings and settlements in the D.C. Action. The American Re policy also provides that it shall reimburse "Costs" defined to include defense costs, not subject to the limits of liability in a manner akin to the supplemental defense obligation in the underlying primary and excess policies in the Abex D.C. Action.

11.     Of the Lloyd's limits applicable to Abex asbestos-related suits and claims almost 80% were issued to IC Industries with the remainder issued to Abex.  All of the Abex Lloyd's policies sit directly above Maryland Casualty and Liberty Mutual policies that are in the Abex D.C. Action.  Like the Maryland Casualty and Liberty Mutual policies, the Abex Lloyd's policies contain a supplemental defense obligation.  As set forth in Paragraph 6, *supra*, Judge Penn has issued several orders, opinions and rulings on the scope and application of the supplemental defense obligation in the context of the Abex asbestos-related suits and claims.

12.   Attached hereto at Tab 2 is a true and correct copy of Policy UQA 0088 issued by one of the Lloyd's entities to IC Industries in Illinois through the Rollins Burdick Hunter of Illinois, Inc. broker for the period April 1, 1983 to April 1, 1984.  Paragraph 1 of the Insurance Agreement provides that, "Underwriters hereby agree, subject to the limitations, terms and conditions herein mentioned, to indemnify [IC Industries] for all sums that [IC Industries] shall be obligated to pay *by reason of the liability caused by or arising out of the hazards covered by and as more fully defined in the Underlying Umbrella Policy. . ."* (emphasis added) The Underlying Umbrella policy for this period is National Union  Policy  BE1338972, which is in the *Abex D.C. Action* and subject to the various rulings and interpretations in that action.

13.   The United States Court of Appeals for the D.C. Circuit, in a decision that applied the "injury-in-fact" trigger of coverage to policies covering the Abex asbestos-related suits and claims and determined the scope and application of the duty to defend and the duty to indemnify, found that "[f]or the most part, all of the insurers have adopted identical language from the standard CGL policy in defining their obligations to Abex.  Under the CGL policy, the insurers are obliged to indemnify Abex for all damages that result from bodily injury or property damage to which this policy applies caused by an occurrence. .. " *Abex  Corp. v. Maryland Casualty Co.*, 790 F.2d 119, 122 ( D.C. Cir. 1986 ).  The court continued by stating that, "an 'occurrence' is defined as an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  This ruling should and may be applied equally to all policies (including excess policies) issued to and covering Abex during the affected policy periods.

14.   IC Industries has never taken the position that New York law should be applied to any of the policies responding to the Abex asbestos-related suits and claims, including the 95% of the limits at issue in this case that were brokered, drafted, negotiated, issued, and delivered in Illinois to IC Industries.

15.    The parties in the *Abex D.C. Action* **never** reached or filed a stipulation regarding the application of New York law to any policy. The court in the *Abex D.C. Action* has never made a choice of law ruling or even undertaken a choice of law analysis.

16.    Review of the policies establishes that all of the post-1970 insurance policies identified in this action, as well as all underlying primary and umbrella policies, were negotiated, drafted, issued and delivered in Illinois to IC Industries. All of these policies were also brokered in Illinois through Rollins Burdick Hunter Company's Chicago, Illinois office. All premiums were paid in Illinois.

17.    Since the time of their issuance all of these post-1970 policies have been maintained in Illinois in the insurance department of IC Industries where they remain to date.

### The Related D.C. Action

18.    Judge Penn also presides over a related case in the United States District Court for the District of Columbia captioned *Whitman Insurance Company, Ltd v. Travelers Indemnity Company, et al.*, 1:05CV01125 (D.D.C.) ("*Related D.C. Action*"). All of the excess insurers that have not paid their entire applicable limits of liability or are have resolved their obligations to the insured pursuant to final and binding settlement agreements are parties in the *Related D.C. Action*, which requests that the same court that has controlled the performance of the insurers under primary and excess policies in connection with the Abex asbestos-related suits and claims continue to resolve the same or similar disputes with the remaining excess insurers.

19.    Service has been effectuated against all of the parties in the *Related D.C. Action*. To date, none of the defendants in the *Related D.C. Action* has filed any jurisdictional challenge. Defendants that have requested additional time to answer or otherwise respond have received such additional time as a courtesy.

20.    A summary judgment motion is pending in the *Related D.C. Action* against all of the non-settled excess carriers, that are parties in this lawsuit, on the appropriate trigger of coverage for the Abex asbestos-related suits and claims and how the trigger of coverage should be applied to the excess policies.

21.    A second summary judgment motion is pending against all of the excess insurers in the *Related D.C. Action* concerning the appropriate interpretation of the primary policies in the *Abex D.C. Action* and their exhaustion for Abex asbestos-related suits and claims.

### *Jensen-Kelly* Litigation in California

22.    Contrary to Lloyd's factually inaccurate statement, all of the policies named by Lloyd's in this action, whether they were named correctly or incorrectly, were part of the *Jensen-Kelly Corporation et al. v. Allianz Underwriters, et al.*, No. BC 069 018 (Los Angeles Superior Court), a coverage action involving all of the same insurers and policies filed in 1992. In fact, *Jensen-Kelly*, included not only all of the insurance policies issued to Abex and IC Industries, but also policies issued to Denison Engineering Company, Pneumo Corporation, Stanray Corporation, Chandeysson Electric Company, and Waukesha Foundry Company. Thus, *Jensen-Kelly* included all of the insurers and policies in this lawsuit.

23.    Mendes & Mount served as liaison counsel for insurers in Jensen-Kelly and thus is familiar with the extensive discovery taken in that matter, including seven years of discovery by the insurers of IC Industries and Abex concerning the same policies and the same insured operations that are at issue in this lawsuit filed by Lloyd's. Indeed, many of the document requests recently served by Lloyd's in this lawsuit cover identical subject matters that were subject to discovery by the very same insurers in *Jensen-Kelly*.

### Previous Stay of Lloyd's New York Action

24.    Lloyd's Opposition contains numerous factual misstatements in describing the history of this lawsuit and the participation of Lloyd's and PepsiAmericas. PepsiAmericas never participated or joined in the effort by Cooper to remove this lawsuit to federal court and move this case to the Federal-Mogul bankruptcy action. Lloyd's also fails to inform the court that it requested an effective stay of discovery and practice motions as memorialized by Judge Preska's May 14, 2003 Order, a true and correct copy of which is attached hereto at Tab 3.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

Daniel E. Chefitz
DANIEL E. CHEFITZ

Subscribed and sworn to before me this 13th day of July, 2005.

Jo Ann Mimms
NOTARY PUBLIC

JO ANN MIMMS
Notary Public, District Of Columbia
My Commission Expires November 30, 2006

My Commission Expires: _____



# AMERICAN
## RE-INSURANCE COMPANY
(HEREINAFTER CALLED THE COMPANY)
99 JOHN STREET        NEW YORK, N. Y. 10038

ROLLINS BURDICK HUNTER COMPANY
231 South La Salle Street
Chicago, Illinois 60604

ATTENTION Mr. Patrick Lynch

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM AND SUBJECT TO THE DECLARATIONS, TERMS AND CONDITIONS HEREOF, THE COMPANY, DOES HEREBY INSURE:

**DECLARATIONS**

## CERTIFICATE OF EXCESS INSURANCE

**ITEM 1**
ILLINOIS CENTRAL INDUSTRIES
(HEREINAFTER CALLED THE INSURED)
135 East Eleventh Place
STREET LOCATION

Chicago                                    Illinois
CITY                                        STATE

M 0372960              02              NEW
CERTIFICATE NUMBER    BRANCH    PRIOR CERTIFICATE NUMBER

**ITEM 2**
March 1, 1971          March 1, 1974     **ITEM 3** $35,625.00
EFFECTIVE DATE          EXPIRATION DATE              TOTAL PREMIUM
12:01 A.M.              12:01 A.M.

| | INITIAL GROSS PREMIUM | 2 | FUTURE INSTALLMENTS |
|---|---|---|---|
| | $11,875.00 | | $11,875.00 |
| | ANNUAL | | 3  1  72 |
| | INSTALLMENT PERIOD | | DATE OF NEXT INSTALLMENT |

**ITEM 3 CONTINUED DEPOSIT PREMIUM ADJUSTMENT:**

NONE

**DESCRIPTION OF COVERAGE HEREUNDER:**

EXCESS UMBRELLA LIABILITY

**ITEM 4 UNDERLYING INSURANCE:**

a.  Primary Insurance at various limits as more fully set forth in schedule
    on file with the Company.

b.  $5,000,000 each occurrence, $5,000,000 annual aggregate where applicable
    Third Party Umbrella Liability in excess of 4 a. above.

**ITEM 5 LIMIT(S) OF COVERAGE HEREUNDER:**

50% share (being $5,000,000) part of $10,000,000 each occurrence
$10,000,000 annual aggregate where applicable in excess of Item
4 b. above.

IMP 01325

AMERICAN RE-INSURANCE COMPANY

**ITEM 6 CANCELLATION:**

June 17, 1971
DATE

Countersigned by

AUTHORIZED REPRESENTATIVE

S. Lennart Barkinge, Assistant Secretary

(a) all expenses for salaried employees and counsel on general retainer, (b) all office expenses of the Insured, and (c) regular fees paid to counsel on general retainer.

15. Costs incurred by the Insured, with the written consent of the Company, shall be apportioned as follows:

(a) in the event of claim or suit arising which appears likely to exceed the underlying insurance limit or limits, no Costs shall be incurred by the Insured without the written consent of the Company.

(b) should such claim or suit be settled previous to going into court for not more than the underlying insurance limit or limits, then no Costs shall be payable by the Company.

(c) should, however the sum for which the said claim or suit may be settled exceed the underlying insurance limit or limits, then the Company, if it approves such settlement or consents to the proceedings continuing, shall contribute to the Costs incurred by the Insured in the ratio that its proportion of the ultimate net loss as finally adjusted bears to the whole amount of such ultimate net loss.

(d) in the event the Insured elects not to appeal a judgment in excess of the underlying insurance limit or limits, the Company may elect to conduct such appeal at its own cost and expense and shall be liable for the taxable court costs and interest incidental thereto, but in no event shall the total liability of the Company exceed its limit or limits of liability as stated above, plus the costs of such appeal.

(e) in the event a judgment is rendered in excess of the underlying insurance limit or limits and the underlying insurer or insurers elect to appeal such judgment, the duty of obtaining an appeal bond in regard to liability in excess of the underlying insurance limit or limits shall rest with the Insured and its underlying insurer or insurers.

**SUBROGATION AND SALVAGE**

16. All salvage, recoveries or payments recovered or received subsequent to a settlement under this Certificate shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this clause shall be construed to mean that losses under this Certificate are not recoverable until the Insured's ultimate net loss has been finally ascertained.

17. Inasmuch as this Certificate is Excess Insurance, the Insured's right of recovery against any person cannot be exclusively subrogated to the Company. It is, therefore, understood and agreed that in case of any payment hereunder, the Company will act in concert with all other parties (including the Insured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any parties (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them, the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder: lastly the parties (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the parties (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

18. Nothing herein contained shall be construed to mean that the Insured shall be required to enforce by legal action any right of subrogation or indemnity before the Company shall pay any loss covered hereunder.

**TERM**

19. This Certificate applies only to accidents or occurrences happening between the effective and expiration dates shown in Item 2 of the Declarations, unless otherwise cancelled.

**NUCLEAR INCIDENT EXCLUSION**

20. It is agreed that this Certificate does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under this Certificate is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provisions relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IMP 01327

ENDORSEMENT
ISSUED BY



# AMERICAN
### RE-INSURANCE COMPANY
99 JOHN STREET            NEW YORK, N. Y. 10038

PRODUCERS COPY

ROLLINS BURDICK HUNTER COMPANY
231 South LaSalle Street
Chicago, Illinois  60604

ATTENTION:  Mr. Patrick J. Lynch

ILLINOIS CENTRAL INDUSTRIES
(HEREINAFTER CALLED THE INSURED)

FROM: 3 . 1 . 71 TO 3 . 1 . 74   TOTAL ADDITIONAL OR RETURN PREMIUM (—) =0=

M0372960 CERTIFICATE NUMBER    7 . 12 . 71 EFFECTIVE DATE OF ENDORSEMENT    01 Endorsement Number    REINSURANCE CERTIFICATE PERIOD

| ADDITIONAL OR RETURN PREMIUM (—) | CHANGE IN FUTURE INSTALLMENTS INCREASE OR DECREASE (—) | AMENDED FUTURE INSTALLMENT | COMM. RATE |
|---|---|---|---|
| —0— | --- | --- | |

DATE OF NEXT INSTALLMENT

IN CONSIDERATION of the premium charged, it is understood and agreed that
except with respect to the insurance afforded under the Travelers Insurance
Policy T-CUP957503-71 for the Products Hazard Liquor Liability injury and
the ownership maintenance operation or use, including loading or unloading
of any automobile, the definition of Named Insured shall not include the
Illinois Central Railroad.

AMERICAN RE-INSURANCE COMPANY

Countersigned by _____  AUTHORIZED REPRESENTATIVE

April 11, 1972  BY
DATE

Printed in U.S.A.

Form C.F 622 x 72 Rev.

IMP 01330

JUL 14 2005  3:32 PM FR MORGAN LEWIS    212 309 7075 TO 15006#0605840004 P.39

- ENDORSEMENT

| TRANSACTION (Other Than A/P or R/P) |
| --- |
| ☐ Audit (Deposit Prem. Adj.) |
| ☐ Flat Cancellation |
| ☐ Pro-Rate/Short Rate Cancellation |

Be Completed By Underwriter
(ONLY) If Changing Prior Entry

| RETENTION (Thousands) | CAPACITY POOL |
| --- | --- |

| PERCENT PARTICIPATION |
| --- |

ROLLINS BURDICK HUNTER COMPANY
231 South LaSalle Street
Chicago, Illinois 60604

ATTENTION:  Mr. Patrick Lynch

ILLINOIS CENTRAL INDUSTRIES
(HEREINAFTER CALLED THE INSURED)

| M-0X72580 | 10 01 72 | 02 | FROM 03 01 72 TO 03 01 74 | $ 2,121.00 |
| --- | --- | --- | --- | --- |
| CERTIFICATE NUMBER | EFFECTIVE DATE OF ENDORSEMENT | Endorsement Number | REINSURANCE CERTIFICATE PERIOD | TOTAL ADDITIONAL OR RETURN PREMIUM (—) |

| ADDITIONAL OR RETURN PREMIUM (—) | | CHANGE IN RETURN PREMIUM INCREASE (+) | | | |
| --- | --- | --- | --- | --- | --- |
| $621.00 | | $1,500.00 | | ——— | 100 |

03 01 73
DATE OF NEXT INSTALLMENT

IN CONSIDERATION of the payment of an additional premium of
$2,121.00, it is understood and agreed that the Certificate
is amended to include as an additional Insured:

Midas Muffler.

AMERICAN RE-INSURANCE COMPANY

Countersigned by _____
AUTHORIZED REPRESENTATIVE

AMR-0000015

Nov. 12, 1972
DATE

Form UR 022-4/72 Rev.

JUL 14 2005  3:32 PM FR MORGAN LEWIS    212 309 7075 TO 15006#0605840004 P.40

**ENDORSEMENT**
ISSUED BY



# AMERICAN
# RE-INSURANCE COMPANY
99 JOHN STREET        NEW YORK, N. Y. 10038

ROLLINS BURDICK HUNTER COMPANY
231 South LaSalle Street
Chicago, Illinois  60604

ATTENTION: Mr. Patrick Lynch

ILLINOIS CENTRAL INDUSTRIES
(HEREINAFTER CALLED THE INSURED)

| M-0372960 CERTIFICATE NUMBER | 10. 01. 72 EFFECTIVE DATE OF ENDORSEMENT | 03 Endorsement Number | FROM: 03 .01 .71 TO: 03 .01 .74 REINSURANCE CERTIFICATE PERIOD | $ -0- TOTAL ADDITIONAL OR RETURN PREMIUM (—) |
|---|---|---|---|---|

| ADDITIONAL OR RETURN PREMIUM (—) | CHANGE IN FUTURE INSTALLMENT INCREASE OR DECREASE (—) | AMENDED FUTURE INSTALLMENT |
|---|---|---|
| -0- | --- | --- |

DATE OF
NEXT INSTALLMENT

IN CONSIDERATION of the premium charged, it is understood that
the name of the Additional Insured on Endorsement #2 is amended
to read:

                    Midas-International Corp.

October 26, 1972    EV
DATE

AMERICAN REINSURANCE COMPANY

Countersigned by _____
                    AUTHORIZED REPRESENTATIVE

S. Lennart Barkinge, Assistant Vice President
                                        Printed in U.S.A.

Form CF-022-4/72 Rev.

INP 01334

CAPACITY POOL SPECIFICATIONS

_____% OF $_____    Xs OF $_____

_____% OF $_____    Xs OF $_____

To Be Completed By Underwriter

TRANSACTION (Other Than A/P or R/P)

☐ Audit (Deposit Prem. Adj.)
☐ Flat Cancellation
☐ Pro-Rate/Short Rate Cancellation

To Be Completed By Underwriter

(ONLY) If Changing Prior Entry

RETENTION (Thousands)          CAPACITY POOL

☐ Exclude From Pool

ROLLINS BURDICK HUNTER COMPANY
231 South LaSalle Street
Chicago, Illinois 60604

ATTENTION: Mr. Patrick J. Lynch

ILLINOIS CENTRAL INDUSTRIES
(HEREINAFTER CALLED THE INSURED)

| M-0372960 | 04 18 73 | 04 | FROM 03 01 71 TO 03 01 74 | NIL |
| CERTIFICATE NUMBER | EFFECTIVE DATE OF ENDORSEMENT | Endorsement Number | REINSURANCE CERTIFICATE PERIOD | TOTAL ADDITIONAL OR RETURN PREMIUM (+-) |

| NIL | | | | |

DATE OF NEXT INSTALLMENT

IN CONSIDERATION of the payment of the premium, it is understood and

agreed that the Certificate is amended to include as an additional

insured:

BUBBLE-UP, INC., OF INDIANAPOLIS, INDIANA

6/12/73 /b

AMERICAN REINSURANCE COMPANY

Countersigned by _____
AUTHORIZED REPRESENTATIVE

June 6, 1973  /b
DATE

AMR-0000017

Form CF 022 8/72 Rev.

IV. As used herein:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraphs (a) or (b) thereof; "nuclear facility" means—

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

21. This Certificate may be cancelled by either party upon written notice. such notice to be not less than the number of days set forth in Item 6 of the Declarations. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate and if cancelled by the Company, adjustment shall be pro rata. However, in the event of cancellation or non-renewal of the underlying insurance immediately preceding this Certificate, this Certificate terminates as of the same date without notice to the Insured. The Company may, however, cancel this Certificate absolutely on five (5) days' notice for non-payment of premium due. Notice shall be given by the Insured to the Company at 99 John Street, New York, New York 10038 and by the Company to the Insured at the latter's address as shown in the Declarations. Notice by the Company to the first named Insured, if more than one, shall be deemed notice to any other interests included as an Insured.

IN WITNESS WHEREOF the AMERICAN RE-INSURANCE COMPANY has caused this Certificate to be signed by its Vice President and Secretary, but same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

R. A. LUM                                                    T. DARRINGTON SEMPLE, JR.

*Vice President*                                             *Secretary*

IMP 01322

## TERMS AND CONDITIONS

**INSURING AGREEMENT**

1. The Company hereby indemnifies the Insured against ultimate net loss in excess of and arising out of the hazards covered and as defined and in excess of the underlying insurance as shown in Item 4 of the Declarations (hereinafter referred to as "underlying insurance") but only up to an amount not exceeding the limit(s) shown in Item 5 of the Declarations.

2. Except as may be inconsistent with this Certificate, the coverage provided by this Certificate shall follow the insuring agreements, conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this Certificate, including any change by endorsements. The Company shall be notified of any change in coverage or premium in such underlying insurance and copies thereof shall be furnished to the Company upon request.

3. The limits of the underlying insurance shall be maintained in full effect during the currency of this Certificate except for reduction of such limits by exhaustion of aggregate limits (if any) contained therein solely by payment of claims resulting from accidents or occurrences happening during the period thereof. Failure of the Insured to comply with the foregoing shall not invalidate this Certificate but in the event of such failure the Company shall be liable only to the extent that it would have been liable had the Insured complied therewith.

4. Unless aggregate limits are specifically stated in Items 4 and 5 of the Declarations, the coverage provided by this Certificate applies only with respect to each accident or occurrence for limits in excess of the amount provided for same in the underlying insurance and does not apply over any reduced amount of underlying insurance in the event of the exhaustion or reduction of aggregate limits (if any) in the underlying insurance.

5. If aggregate limits are specifically stated in Item 4 and 5 of the Declarations, this Certificate will apply in excess of reduced underlying insurance provided such reduction in the underlying insurance is solely the result of accidents or occurrences happening after the inception date of this Certificate. The Insured shall give the Company written notice as soon as possible of any reduction or exhaustion of such aggregate limit in the underlying insurance.

6. If more than one insured is named in the Declarations such additional Insured(s) shall not have the effect of increasing the Company's limit of liability for each accident or occurrence stated in Item 5 of the Declarations.

**PREMIUM**

7. Premium due the Company for this excess insurance shall be that amount shown in Item 3 of the Declarations and is payable upon delivery of this Certificate.

**NOTICE OF LOSS**

8. The Insured shall immediately advise the Company of any accident or occurrence which appears likely to result in liability under this Certificate and of subsequent developments likely to affect the Company's liability hereunder. At no time shall the Company be called upon to assume charge of the settlement or defense of any claims made or suits brought or proceedings instituted against the Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or its underlying insurer or insurers, or both, in the control, defense and/or trial of any claims, suits or proceedings which, in the opinion of the Company, involves or appears reasonably likely to involve the Company. If the Company avails itself of such right and opportunity, the Insured, any underlying insurer or insurers and the Company shall cooperate in the control, defense and/or trial of such claims, suits or proceedings, so as to affect a final determination thereof. Failure on the part of the Insured or the underlying insurer or insurers to cooperate shall relieve the Company, at its option, of liability under this Certificate.

9. The Insured shall be solely responsible for the investigation, settlement, defense and final disposition of any claim made or suit brought or proceeding instituted against the Insured to which this Certificate would apply and which no underlying insurer or insurers is obligated to defend. The Insured shall use due diligence and prudence to settle all such claims and suits which in the exercise of sound judgment should be settled, provided, however, that the Insured shall not make any agree to any settlement for any sum, in excess of the underlying insurance, without the approval of the Company.

10. The Insured shall (a) cooperate with the underlying insurer or insurers, as required by the terms of the underlying insurance, (b) comply with all the terms and conditions thereof and (c) enforce any right of contribution or indemnity against any person or organization who may be liable to the Insured, because of liability with respect to which insurance is afforded under this Certificate and the underlying insurance.

**LOSS PAYABLE**

11. The Company's obligation to pay any ultimate net loss and costs with respect to any accident or occurrence falling within the terms of this Certificate shall not attach until the amount of the applicable underlying limit has been paid by or on behalf of the Insured on account of such accident or occurrence. The Insured shall make claim for any ultimate net loss and costs under this Certificate within a period of not exceeding twelve (12) months after, (a) the Insured shall have paid ultimate net loss in excess of the underlying limit, with respect to any accident or occurrence, or (b) the Insured's obligation to pay such amounts shall have been finally determined, either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

12. All losses covered by this Certificate shall be due and payable by the Company within thirty (30) days after claim has been presented and proper proof of payment of ultimate net loss and costs has been submitted, all in accordance with the terms above.

**ULTIMATE NET LOSS AND COSTS**

13. Ultimate net loss, as used herein, shall be understood to mean the sums paid in settlement of losses for which the Insured is liable after making deductions for all recoveries, salvages and other insurances (other than recoveries under the underlying insurance, policies of co-insurance, or policies specifically in excess hereof), whether recoverable or not, and shall exclude all "Costs".

14. The word "costs", as used herein, shall be understood to mean interest on judgments, investigation, adjustment and legal expenses including taxed court costs and premiums on bonds, for which the Insured is not covered by the underlying insurance (excluding, however,

INP 01326

J (A) (FORM)



# ORIGINAL

## Lloyd's Policy

NOTICE TO POLICYHOLDER: "This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by an insurer not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund."

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called "the Underwriters"),

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that we the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated........ yd's Policy Signing Office by the Assured he material parts of the said List certified Office will be furnished to the Assured on

### ILLINOIS

**For the information of the Attorney-in-Fact.**

Illinois Brokers' Cover Note No. ....... S L   3 0 3 1 ...........     ..anager of Lloyd's Policy Signing Office

Countersigning Date............ M A R   2 7   1 9 93     ING OFFICE.



D. A. Wilson

ROLLINS BURDICK HUNTER OF ILLINOIS, INC.     GENERAL MANAGER.

For Embossment by Lloyd's Policy Signing Office

MAR 11 1985

Thomas L. Stevens
SECRETARY

L.P.S.C.
D.A.I.

## SCHEDULE

Policy No.   551    : UQA0088

Name and Address     :   I.C. Industries Inc. and Others as set forth
of the Insured/Assured        in the Underlying Umbrella Policy/ies,
                          One Illinois Center,
                          111 East Wacker Drive, Chicago, Illinois 60601.

Premium          :   U.S.$65,000.00

Period of Insurance

        From         1st April, 1983    to    1st April, 1984

        both days    at 12.01 a.m. Local Standard Time

        and for such further period or periods as may be mutually agreed upon.

Risk and Sum Insured hereunder:

                        As per wording attached hereto .
                        which shall be taken and read
                        as forming an integral part
                        hereof.

LLOYD'S SURPLUS LINE BROKERS
MAR 11 1985
Thomas L. Stevens
SECRETARY
ASSOCIATION OF ILLINOIS

HERETO:  8.7400%    part of 100% of 40% of the Limits and Premium herein.

DATED in LONDON    19th September, 1984                          JH/pw

2. **MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE** *

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policy/ies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder. Provided always that this Policy shall not apply until the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss in accordance with Insuring Agreement II. Should, however, any alteration be made in the premium for the Underlying Umbrella Policy/ies during the currency of this Policy, Underwriters reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policy/ies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy, or by the operation of a clause contained in said Underlying Umbrella Policy/ies similar to Condition 1 above.

3. **ASSISTANCE AND CO-OPERATION** *

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

4. **CANCELLATION** *

This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by mailing written notice to the other party stating when, not less than *ninety (90) days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this Policy shall be sufficient proof of notice, and the insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by Underwriters or their representatives shall be equivalent to mailing.

*ninety
(90)

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been in force. If this Policy shall be cancelled by the Underwriters the Underwriters shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium with such notice.

5. **OTHER INSURANCE** -

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is specifically stated to be in excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

Page 2 of 4

**6.**    NOTICE OF OCCURRENCE –

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 8 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date would appear to give rise to claims hereunder, shall not prejudice such claims.

**7.**    SERVICE OF SUIT CLAUSE –

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 9 of the Declarations, and that in any suit instituted against any one of them upon this Policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The person or firm named in Item 9 of the Declarations are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this policy of insurance, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

## EXCESS UMBRELLA POLICY

### INSURING AGREEMENTS:

I    **COVERAGE** –

The Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability caused by or arising out of the hazards covered by and as more fully defined in the Underlying Umbrella Policy/ies stated in Item 2 of the Declarations.

II    **LIMIT OF LIABILITY** –

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers (as specified in Item 2 of the Declarations) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

| | |
|---|---|
| $ (as stated in Item 3 of the Declarations) | ultimate net loss in respect of each occurrence, but |
| $ (as stated in Item 4 of the Declarations) | in the aggregate for each annual period during the currency of this Policy, separately in respect of each hazard insured with an aggregate limit in the Underlying Umbrella Policy/ies |

and the Underwriters shall then be liable to pay only the excess thereof up to a further

| | |
|---|---|
| $ (as stated in Item 5 of the Declarations) | ultimate net loss in all in respect of each occurrence – subject to a limit of |
| $ (as stated in Item 6 of the Declarations) | in the aggregate for each annual period during the currency of this Policy, separately in respect of each hazard insured with an aggregate limit in the Underlying Umbrella Policy/ies. |

### CONDITIONS:

1.    **PRIOR INSURANCE AND NON CUMULATION OF LIABILITY** –

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

XO02

Page 1 of 4

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*nor being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

**This policy**                                    **does not apply:—**

I.   Under any Liability Coverage, to injury, sickness, disease, death or destruction
     (a) with respect to which an insured under the policy is also an insured under a nuclear energy
         liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic
         Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an
         insured under any such policy but for its termination upon exhaustion of its limit of liability; or
     (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any
         person or organization is required to maintain financial protection pursuant to the Atomic
         Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not
         been issued would be, entitled to indemnity from the United States of America or any agency
         thereof, under any agreement entered into by the United States of America or any agency
         thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to
     immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease
     or death resulting from the hazardous properties of nuclear material and arising out of the operation of a
     nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the
     hazardous properties of nuclear material, if
     (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an
         insured or (2) has been discharged or dispersed therefrom;
     (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used,
         processed, stored, transported or disposed of by or on behalf of an insured; or
     (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of
         services, materials, parts or equipment in connection with the planning, construction,
         maintenance, operation or use of any nuclear facility, but if such facility is located within the
         United States of America, its territories or possessions or Canada, this exclusion (c) applies only
         to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement: "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means
     "source material", special nuclear material or byproduct material; "source material", "special nuclear
     source material", special nuclear material or byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in
     any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid,
     which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1)
     containing byproduct material and (2) resulting from the operation by any person or organization of any
     nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
     "nuclear facility" means
     (a) any nuclear reactor,
     (b) any equipment or device designed or used for (1) separating the isotopes of uranium or
         plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging
         waste,
     (c) any equipment or device used for the processing, fabricating or alloying of special nuclear
         material if at any time the total amount of such material in the custody of the insured at the
         premises where such equipment or device is located consists of or contains more than 25 grams
         of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium
         235,
     (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal
         of waste,
     and includes the site on which any of the foregoing is located, all operations conducted on such site and all
     premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain
     nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
     With respect to injury to or destruction of property, the word "injury" or "destruction" includes all
     forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject
to the terms, exclusions, conditions and limitations of the Policy to which it is attached.
   *NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words
underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1256

---

**U.S.A.**

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording world-wide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the
Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by
or contributed to by or arising from ionising radiations or contamination by radioactivity from any
nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

U.S.A.

## NEW SHORT RATE CANCELLATION TABLE ENDORSEMENT

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this insurance is written it is agreed that in the event of cancellation thereof by the Assured the earned premium shall be computed as follows:—

### SHORT RATE CANCELLATION TABLE

**A.**  For insurances written for one year:—

| Days Insurance in force | Per cent. of One Year Premium | Days Insurance in force | Per cent. of One Year Premium |
|---|---|---|---|
| 1 | 5 | 154—156 | 53 |
| 2 | 6 | 157—160 | 54 |
| 3— 4 | 7 | 161—164 | 55 |
| 5— 6 | 8 | 165—167 | 56 |
| 7— 8 | 9 | 168—171 | 57 |
| 9— 10 | 10 | 172—175 | 58 |
| 11— 12 | 11 | 176—178 | 59 |
| 13— 14 | 12 | 179—182 (6 months) | 60 |
| 15— 16 | 13 | 183—187 | 61 |
| 17— 18 | 14 | 188—191 | 62 |
| 19— 20 | 15 | 192—196 | 63 |
| 21— 22 | 16 | 197—200 | 64 |
| 23— 25 | 17 | 201—205 | 65 |
| 26— 29 | 18 | 206—209 | 66 |
| 30— 32 (1 month) | 19 | 210—214 (7 months) | 67 |
| 33— 36 | 20 | 215—218 | 68 |
| 37— 40 | 21 | 219—223 | 69 |
| 41— 43 | 22 | 224—228 | 70 |
| 44— 47 | 23 | 229—232 | 71 |
| 48— 51 | 24 | 233—237 | 72 |
| 52— 54 | 25 | 238—241 | 73 |
| 55— 58 | 26 | 242—246 (8 months) | 74 |
| 59— 62 | 27 | 247—250 | 75 |
| 63— 65 | 28 | 251—255 | 76 |
| 66— 69 | 29 | 256—260 | 77 |
| 70— 73 | 30 | 261—264 | 78 |
| 74— 76 | 31 | 265—269 | 79 |
| 77— 80 | 32 | 270—273 (9 months) | 80 |
| 81— 83 | 33 | 274—278 | 81 |
| 84— 87 | 34 | 279—282 | 82 |
| 88— 91 (3 months) | 35 | 283—287 | 83 |
| 92— 94 | 36 | 288—291 | 84 |
| 95— 98 | 37 | 292—296 | 85 |
| 99—102 | 38 | 297—301 | 86 |
| 103—105 | 39 | 302—305 (10 months) | 87 |
| 106—109 | 40 | 306—310 | 88 |
| 110—113 | 41 | 311—314 | 89 |
| 114—116 | 42 | 315—319 | 90 |
| 117—120 | 43 | 320—323 | 91 |
| 121—124 (4 months) | 44 | 324—328 | 92 |
| 125—127 | 45 | 329—332 | 93 |
| 128—131 | 46 | 333—337 (11 months) | 94 |
| 132—135 | 47 | 338—342 | 95 |
| 136—138 | 48 | 343—346 | 96 |
| 139—142 | 49 | 347—351 | 97 |
| 143—146 | 50 | 352—355 | 98 |
| 147—149 | 51 | 356—360 | 99 |
| 150—153 (5 months) | 52 | 361—365 (12 months) | 100 |

**B.**  For insurances written for more or less than one year:—
1. If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.
2. If insurance has been in force for more than 12 months:
   a. Determine full annual premium as for an insurance written for a term of one year.
   b. Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.
   c. Add premium produced in accordance with items (a) and (b) to obtain earned premium during full period insurance has been in force.

N.M.A. 45.

**ILLINOIS**

## CANCELLATION CLAUSE

NOTWITHSTANDING anything contained in this Insurance to the contrary, this Insurance may be cancelled by the Assured at any time by written notice or by surrender of this contract of insurance.

This Insurance may also be cancelled by or on behalf of the Underwriters by mailing notice of cancellation to the Named Assured, at the last mailing address known by Underwriters. The Resident Agent shall maintain proof of mailing of such notice on a recognized U.S. Post Office form, and a copy of such notice shall be sent to the agent of record and/or the Assured's broker. Where cancellation is for non-payment of premium, at least 10 days notice of cancellation shall be given. Otherwise notice of cancellation must be mailed at least 15 days prior to the effective date of cancellation during the first 180 days of coverage or at least 30 days prior to the effective date of cancellation if coverage has been in effect for more than 180 days.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. If the Insurance to which this is attached provides for a greater number of days notice than is provided herein, said greater number of days shall apply in event of cancellation.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

In the event of cancellation the earned premium shall be calculated as stated in the Insurance to which this is attached. If, the said Insurance does not provide for calculation of the earned premium, the following shall apply:—

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

N.M.A. 1941

<u>ATTACHING TO AND FORMING PART OF POLICY NO. 551/UQA0088</u>

<u>ADDENDUM NO. 1</u>

It is hereby understood and agreed that this Policy is extended
to include Workers Compensation Act Liability and Federal
Longshoremen's and Harbor Workers' Act Liability in respect
of the State of Ohio as more fully defined in the Underlying
Umbrella Policy/ies as referred to in the wording of this
Policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

<u>ATTACHING TO AND FORMING PART OF POLICY NO. 551/UOA0088</u>

<u>ADDENDUM NO. 2</u>

It is hereby understood and agreed this Policy is extended to include Employee Benefit Liability as more fully described in the Underlying Umbrella Policy/ies as referred to in the wording of this Policy.

It is further understood and agreed that the above extension in coverage shall not apply to any loss or claim based upon the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

ATTACHING TO AND FORMING PART OF POLICY NO. 551/ UOA0088

## ADDENDUM NO. 3

Where costs are not included in the "Ultimate Net Loss" or any similar definition contained in the Underlying Umbrella Policy/ies, the following shall be deemed to be additional Conditions to this wording:-

### INCURRING OF COSTS

In the event of claim or claims arising which appear likely to exceed the Underlying Umbrella Limits, no costs shall be incurred by the Assured without the written consent of the Underwriters.

### APPORTIONMENT OF COSTS

Costs incurred by or on behalf of the Assured with the written consent of the Underwriters and for which the Assured is not covered by the Underlying Umbrella Policy/ies shall be apportioned as follows:-

(i)     Should any claim or claims become adjustable prior to the commencement of trial for not more than the Underlying Umbrella Limits, then no costs shall be payable by the Underwriters.

(ii)    Should, however, the amount for which the said claim or claims may be so adjustable exceed the Underlying Umbrella Limits, then the Underwriters, if they consent to the proceedings continuing, shall contribute to the costs incurred by or on behalf of the Assured in the ratio that their proportion of the ultimate net loss as finally adjusted bears to the whole amount of such ultimate net loss.

(iii)   In the event that the Assured elects not to appeal a judgment in excess of the Underlying Umbrella Limits, the Underwriters may elect to conduct such appeal at their own cost and expense and shall be liable for the taxable court costs and interest incidental thereto, but in no event shall the total liability of the Underwriters exceed their limit of liability as provided for in the wording, plus the expenses of such appeal.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Attaching to and forming part of Policy No. 551/UQA0088

ADDENDUM NO. 5

## PROFESSIONAL LIABILITY

### THIS EXTENSION OF COVERAGE
### IS ON A CLAIMS MADE BASIS

This Policy, subject to the terms and conditions hereof, is extended to include liability in respect of any claim or claims which are first made against the Assured during the period of this Policy and arising out of any negligent act, error or omission of the Assured in the rendering or failing to render professional services for others in the Assured's capacity as real estate agent, broker or real estate appraiser or notary public, as more fully described in the underlying Umbrella Policy No. BE1338972 issued to the Assured by National Union Fire Insurance Company of Pittsburgh, PA and UQA0087 issued to the Assured by various Insurance Companies.

This Addendum No. 5 is subject otherwise to the terms and conditions of the Policy of which it forms part and nothing contained herein shall operate to increase Underwriters' limit of liability of $25,000,000 in respect of any one occurrence.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Attaching to and forming part of Policy Number 551/UOA 0038

ADDENDUM NO. 4

It is understood and agreed that this policy shall not apply
to Personal Injury or Property Damage arising out of the
discharge, dispersal, release or escape of smoke, vapors, soot,
fumes, acids, alkalis, toxic chemicals, liquids or gases,
waste materials or other irritants, contaminants or pollutants
into, or upon land, the atmosphere or any water course or body
of water, but this exclusion does not apply if such discharge,
dispersal, release or escape is both sudden and accidental.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

... ive N...ers of the Syndicates and Amount, Percents ... P ...tion of the
...utal Sum ...ured hereunder shared between the Members ...hes. ...ndicates.

Percentages signed hereunder are percentages of 40% of the Limits

| FOR LPSO USE ONLY | BROKER | LPSO NO. & DATE |
|---|---|---|
| | 551 | 62842 25 | 7 | 83 |
| 2524 | | |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE 1 |
|---|---|---|---|
| PERCENT | | | |
| 6.16 | 989 | 325MC4L9880C | |
| 0.60 | 279 | 325MC4L9880C | |
| 1.19 | 650 | 325MC4L9880C | |
| 0.79 | 35 | 50414A83 | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1983/ 7

| TOTAL LINE | NO. OF SYND. | FOR LPSO USE ONLY |
|---|---|---|
| 8.74 | 4 | 5D | 1953 |

LLOYDS SURPLUS LINE BROKERS

MAR 11 1985

Thomas L. Stewart

SECRETARY

ASSOCIATION OF ILLINOIS

JUL 14 2005  3:37 PM FR MORGAN LEWIS   212 309 7075 TO 15006#0605840004 P.58

The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to:

# Lloyd's Policy

### 551/UOA0088



## Lloyd's, London

JUL 14 2005  3:37 PM FR MORGAN LEWIS    212 309 7075 TO 15006#0605840004 P.60

MAY-15-2003 12:44    MENDES & MOUNT    1 212 261 8750    P.02/03
05/15/03 THU 12:39 FAX 973 639 7350    MENDES & MOUNT,LLP    →→→ MENDES&MOUNT,LLP    @002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
PNUEMO ABEX CORPORATION, et al.,        :
                                        :
            Plaintiffs,                 :    02 Civ. 7919 (LAP)
                                        :
        -against-                       :
                                        :
CERTAIN UNDERWRITERS AT                 :
LLOYDS AT LONDON, et al.,               :
                                        :
            Defendants.                 :        ORDER
------------------------------------x
PNEUMO ABEX CORPORATION, et al.,        :
                                        :
            Plaintiffs,                 :
                                        :
        -against-                       :
                                        :    02 Civ. 8604
CONTINENTAL CASUALTY COMPANY,           :
et al.,                                 :
                                        :
            Defendants.                 :
------------------------------------x

LORETTA A. PRESKA, United States District Judge:

        In a teleconference with counsel held on May 14, 2003,

it was agreed that:

        1.   Through oversight, this case opened under two

separate docket numbers.  Case No. 02 Civ. 7919 is dismissed as

repetitious of 02 Civ. 8604, the latter action being the one in

which most of the documents have been docketed.

        2.   The motion to withdraw the reference from the

Bankruptcy Court, having been unopposed, is granted. With respect

to the currently-pending motion to remand the action to the State

Court, opposition papers shall be filed no later than May 21,

JUL 14 2005  3:37 PM FR MORGAN LEWIS     212 309 7075 TO 15006#0605840004 P.61

1 212 261 8750     P.03/03
MAY-15-2003 12:44     MENDES & MOUNT
05/15/03  THU 12:39 FAX 973 639 7350     MENDES & MOUNT,LLP     +++ MENDES&MOUNT,LLP  @003

2003, and reply papers shall be filed no later than June 19, 2003.

3. With the exception of the motion to remand and the motion of Home Insurance to stay the action, all other pending motions are denied as premature in light of the pending motion to remand. Those motions may be reinstated by letter following resolution of the motion to remand.

SO ORDERED

May _14_, 2003

*Loretta A. Preska*

LORETTA A. PRESKA, U.S.D.J.

2

TOTAL P.03

** TOTAL PAGE.61 **