**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WHITMAN INSURANCE COMPANY, LTD.,

Plaintiffs,

vs.

TRAVELERS INDEMNITY COMPANY, et. al.,

Defendants.

Civil Action No.:  05-1125 (JGP)

## LONDON MARKET INSURER DEFENDANTS' MOTION TO DISMISS

Defendants Certain Underwriters at Lloyd's, London and Certain London Market Companies as identified on Attachment A hereto ("London Market Insurers") hereby move to dismiss the Plaintiff's Amended Complaint:  1) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because the jurisdictional amount in controversy requirement has not been met; 2) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction due to a lack of diversity; 3) because the named plaintiff is not the real party in interest as required by Fed. R. Civ. P. 17(a), and there is no case or controversy between Plaintiff and these defendants; and, 4) because the court should abstain from exercising jurisdiction due to the existence of the prior action filed in New York state court.

In support of this motion, the London Market Insurers rely on the accompanying memorandum of points and authorities.  The London Market Insurers also rely on the Declaration of Lynda Edwards, the Declaration of Alexander Mueller, and the

Declaration of Eileen T. McCabe including the exhibits attached thereto.  London Market

Insurers also join in First State Insurance Company's Second Motion to Dismiss and its

accompanying Memorandum in Support.

Respectfully Submitted,


 /s/ Michael J. Zoeller
Martin R. Baach, No. 210377
Michael J. Zoeller, No. 426476
Baach Robinson & Lewis PLLC
1201 F Street, NW, Suite 500
Washington, D.C. 20004
Tel. 202-833-8900
Fax: 202-466-5738

*Attorneys for Defendants
Certain Underwriters at Lloyd's, London
and Certain London Market Companies*

*Of Counsel:*

Eileen T. McCabe, Esq.
Alexander J. Mueller, Esq.
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, New York 10019-6829
(212) 261-8000 (telephone)
(212) 261-8750 (facsimile)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WHITMAN INSURANCE COMPANY, LTD.,

Plaintiffs,

vs.

Civil Action No. 05-1125 (JGP)

TRAVELERS INDEMNITY COMPANY, et. al.,

Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## LONDON MARKET INSURER DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT…………………………………………………1

STATEMENT OF FACTS……………………………………………………….3

ARGUMENT…………………………………………………………………..5

I.     THIS ACTION MUST BE DISMISSED BECAUSE THE AMOUNT IN CONTROVERSY REQUIREMENT CANNOT BE SATISIFED……………………………………………….…….………5

    A.  The Unique nature of the Lloyd's Insurance Market and Its Implications For Diversity Jurisdiction……………………………...6

    B.  Plaintiff's Attempt to Satisfy the Diversity Requirement…………………8

    C.  The Potential Liability of the lead Underwriters Cannot Meet the $75,000 Threshold………………………………………………………....9

II.    THIS ACTION MUST BE DISMISSED DUE TO THE ABSENCE OF COMPLETE DIVERSITY OF CITIZENSHIP…………………………...11

III.   THE COURT SHOULD DISMISS THIS ACTION BECAUSE WHITMAN IS NOT A REAL PARTY IN INTEREST AND THERE IS NO CASE OR CONTROVERSY BETWEEN PLAINTIFF WHITMAN AND THESE DEFENDANTS………………………………………………….………..13

IV.   THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION AND DISMISS PLAINTIFF'S COMPLAINT……………………………...16

## TABLE OF CASES AND AUTHORITIES

### CASES

**Page**

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)…………………..15

*Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 62 F. Supp.2d 1116
    (S.D.N.Y. 1999)……………………………………………..……………8

*Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288 (1936)……………………….....14

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)………………….....................17

*Carlton Holdings, Inc. v. NAFCO Insurance Company, Ltd.*, 205 F. Supp.2d 1069
    (D. Minn. 2000)………………………………………….…………...…16

*Colonial Penn Insurance Company v. Centennial Insurance Company*,
    1997 U.S. Dist. LEXIS 133 (S.D.N.Y. 1997)………………………..………………14

*Colorado River Water Conservation District v. United States*, 424 U.S. 800
    (1976)………………………………………………………………….……….17

*Corfield v. Dallas Glen Hills LP*, 355 F.3d 853
    (5th Cir, 2003)……………………………………………………………….7

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 241 F.3d 154
    (2d Cir. 2001)…………………………………………………………………….7

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co*, 160 F.3d 925
    (2d Cir. 1998),……………………………………………………………….…11

*Exxon Mobil Corp. v. Allapattah Services*, 125 S.Ct. 2611 (2005)………………………7

*Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp.2d 67 (D.C. 2001)……………………..18

*Hurley v. Heilig*, 28 F. Supp.2d 33 (D.C. 1998)………………………………………18

*International Harvester v. Deere & Co.*, 623 F.2d 1207
    (7th Cir. 1980)…………………………………………………………  15

*MacMillan v. Federal Ins. Co.*, 764 F. Supp. 38 (S.D.N.Y. 1991)………………………17

*Moses H. Cone Memorial Hospital v. Mercury Construction Company*,
    460 U.S.1 (1982)……………………………………………………..……18

*Public Service Comm'n v. Wycoff Co*., 344 U.S. 237 (1952)……………………………....14

*Skelly Oil Co.\v. Phillips Petroleum*, 339 U.S. 667(1950)………………………………14

*Snyder v. Harris,* 394 U.S. 332 (1969)……………………………………………………7

*Unigard Sec. Ins. Co. v. North River Ins. Co.*, 594 N.E.2d 571
    (N.Y. 1992)……………………………………………………………………..16

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)……………………………………....17

*Zidell Marine Corp. v. Beneficial Fire & Cas. Ins. Co., 2004* U.S. Dist. Lexis 27031
    (W.D. Wash. Feb 19, 2004)………………………………………………………..8

*Zidell Marine Corp. v. Beneficial Fire & Cas. Ins. Co.,* 2003 U.S. Dist. LEXIS 26253
    (W.D. Wash. Dec. 4, 2003)………………………………………………………8

## STATUTES

Fed. R. Civ. P. 12(b)(1)……………………………………………………………………1

Fed. R. Civ. P. 17(a)……………………………………………………...…………1

28 U.S.C. § 1332(a)………………………….......................................................2

28 U.S.C. §2201(a)………………………………………………………………………15

United States Constitution Art. III §2……………………………………………………14

## MISCELLANEOUS

*Appleman On Insurance* (2d) §106.7……………………………….………………………16

Defendants Certain Underwriters at Lloyd's, London and Certain London Market Companies ("London Market Insurers") submit this Memorandum of Law in support of their Motion to Dismiss on the grounds that: 1) pursuant to *Fed. R. Civ. P. 12 (b) (1)* the Court lacks subject matter jurisdiction because the jurisdictional amount in controversy requirement has not been met; 2) pursuant to *Fed. R. Civ. P. 12 (b) (1)* the Court lacks subject matter jurisdiction due to a lack of diversity; 3) the named plaintiff is not a real party in interest as required under *Fed. R. Civ. P. 17(a),* and there is no case or controversy between Plaintiff and these defendants; and, 4) the court should abstain from exercising jurisdiction due to the existence of the prior action filed in New York state court.  London Market Insurers also join in First State Insurance Company's Motion to Dismiss.

## PRELIMINARY STATEMENT

The Court should dismiss this action because the $75,000 amount-in-controversy requirement for subject matter jurisdiction under 28 U.S.C. §1332(a) cannot be met. Alternatively, the Court should dismiss this action for lack of diversity because Pneumo Abex Corporation ("Pneumo Abex") shares an identical interest and should be realigned with the plaintiff, Whitman Insurance Company, Ltd. ("Whitman"). Properly realigned, complete diversity is absent because Pneumo Abex is a Delaware Corporation and at least two of the defendants are Delaware corporations.  Moreover, two other entities who, along with Pneumo Abex, claim they are entitled to coverage under the insurance policies at issue, Cooper Industries, Inc. ("Cooper") and PepsiAmericas, Inc. ("PAS"), are also missing indispensable parties whose inclusion in this action would likewise destroy diversity.

Plaintiff's Amended Complaint is also subject to dismissal because Whitman is not a real party in interest as required under Fed. R. Civ. P. 17(a) and there is no case or controversy

between Whitman and these defendants. Whitman alleges that it is a captive reinsurer of certain primary policies with regard to claims that allege bodily injury during the policy periods 1978-1985. *See* Amended Complaint ¶¶ 6 and 10; PepsiAmericas Reply Memorandum of Law in Further Support of Motion to Stay the New York Action at pp, 16, 19 annexed as Exhibit 2 to First State's Motion to Dismiss. Whomever Whitman supposedly reinsures, it does not have a reinsurance contract with the London Market Insurers. Indeed, Whitman's Amended Complaint alleges no reinsurance contract between Whitman and *any* of the defendants and claim for contribution. Moreover, Whitman does not specify what amount it has paid or which reinsurance policies the payments have been made under. Plaintiff's complaint is defective because it does not articulate what, if anything, it is actually or allegedly entitled to recover from the London Market Insurers or any other defendant.  As a result, Plaintiff cannot establish that it has any concrete interest at stake in this declaratory judgment action.

Even if there were jurisdiction, this Court should abstain from exercising it because there is a more comprehensive action pending in New York State Court that will adequately protect the parties' rights.[1] A federal court should decline to exercise jurisdiction in favor of a state court in the interests of promoting judicial economy and the comprehensive disposition of litigation. This litigation is merely an attempt by I.C. Industries/PAS to stop proceedings in the New York state action and to prevent New York law as it currently exists from being applied to the subject insurance policies. Abstention is appropriate here because: 1) the exercise of jurisdiction by this court would result in piecemeal litigation; 2) the declaratory judgment action in New York was first filed; 3) New York law is applicable to the litigation and that law should be applied by a New York court; and, 4) the New York action is adequate to protect the rights of the parties.

---

[1] Because of the filing of the instant action, the New York State court stayed the action filed there.  London Market Insurers have filed an appeal of that court's order.

## STATEMENT OF FACTS

London Market Insurers join in and adopt the Statement of Facts as set forth in the Memorandum of Points and Authorities in Support of First State Insurance Company's Motion to Dismiss or Stay This Action ("First State's Motion"). The procedural background and facts which are specifically relevant for this motion are as follows:

Plaintiff Whitman alleges that it is captive reinsurance company organized under the laws of Vermont, with its principal place of business in Vermont. Amended Complaint ¶10. Whitman alleges that it is responsible "directly or indirectly" for costs and expenses associated with "Abex asbestos-related suits and claims." Amended Complaint ¶6.

Plaintiff lists 37 policies of excess insurance subscribed by the London Market Insurers that were in effect from 1952 to 1985, which it alleges provide coverage for Abex losses. Amended Complaint ¶45. In fact, entities claiming that they are entitled to coverage under these policies, including Pneumo Abex, Cooper Industries, Inc. ("Cooper") and PAS, have sought coverage with respect to payment for thousands of asbestos-related product liability claims under the policies subscribed in favor of American Brake Shoe Company and I.C. Industries.

On or about July 9, 2002, Certain Underwriters at Lloyd's, London and Certain London Market Companies, filed a declaratory judgment action in the Supreme Court of the State of New York against Pneumo Abex, PAS, Cooper and numerous domestic insurers. *See* Complaint for Declaratory Judgment, dated July 9, 2002, filed in *Certain Underwriters at Lloyd's, London, et al. v. Pneumo Abex Corp, et al.* (Index No. 602493/02), attached as Exhibit 1 to Declaration of Eileen T. McCabe ('McCabe Affidavit"). This comprehensive insurance coverage lawsuit seeks a determination of the rights and legal obligations of all parties arising under contracts of

insurance entered into between American Brake Shoe Company, I.C. Industries and various insurers. See *generally* Exhibit 1 to McCabe Declaration.

Three years after the filing of the New York coverage action, Whitman filed the instant case. After First State moved to dismiss, and Plaintiff otherwise became aware of jurisdictional defects in the original complaint, Plaintiff filed an Amended Complaint on July 29, 2005, in an effort to cure the jurisdictional defects. The Amended Complaint seeks a declaration concerning various insurers' obligations in connection with Abex asbestos liabilities under the Policies allegedly issued between 1952 and 1985, even though Plaintiff alleges that it has only paid for claims that allege bodily injury during the period 1978 through 1985. Plaintiff alleges that it is a "captive reinsurer" of certain primary policies, but it does not identify the amount it has paid under these reinsurance policies, if any, nor does it describe the limits of its own coverage and thus provides no information whatever as to what its own stake is in this controversy.

Whitman does not allege that it entered into any reinsurance contracts with the London Market Insurers. As to the defendants Certain Underwriters at Lloyd's, Whitman's Amended Complaint alleges:

> Defendant Certain Underwriters at Lloyd's, London, ("Lloyd's") are lead underwriters and managing agents authorized to buy, sell and profit from insurance risks with their principal place of business in London, England. This defendant sold insurance policies to and covering Abex. This defendant operates by and through the Society of Lloyd's incorporated under the laws of the United Kingdom. See, e.g., Society of Lloyd's v. Reinhart, 402 F.3d 982 (10th Cir. 2005). Defendant London Market Companies are individual insurance companies existing under the laws of the United Kingdom or another foreign sovereign with their principal place of business in London, England, and subscribing to insurance policies in the London insurance market covering Abex.

Amended Complaint at ¶19.

Whitman further alleges that "Lloyd's and the London Market Companies severally subscribed, each in its own proportionate share, "to one or more of 37 listed insurance policies,

which are alleged to be responsive to some, or all, of the Abex asbestos-related suits and claims."
Amended Complaint at ¶ 45.  Finally the Amended Complaint makes the conclusory allegations
that the amount in controversy exceeds $75,000, exclusive of interest and costs.  Id. ¶ 34.

## ARGUMENT

### I.    THIS ACTION MUST BE DISMISSED BECAUSE THE AMOUNT IN CONTROVERSY REQUIREMENT CANNOT BE SATISFIED.

As originally filed, Plaintiff's complaint named "Certain Underwriters at Lloyd's,
London and the London Market Companies" along with numerous other domestic insurers as
parties defendant.  Plaintiff alleged that the designation "Certain Underwriters at Lloyd's,
London" was meant to describe all those individuals who were underwriting members of
designated Lloyd's syndicates and who subscribed to specifically listed Lloyd's policies.
Original Complaint ¶¶18 and 44.

As framed, the original Complaint was jurisdictionally defective on multiple grounds.
First and foremost, Whitman failed to satisfy the core requirement that the citizenship of all
opposing parties must be diverse.  28 U.S.C. §1332(a).  Although Whitman, the Vermont
"captive reinsurer" that appears to have been specially created to serve as the named plaintiff,
may be diverse in citizenship from the numerous domestic insurers named as defendants, it is not
diverse from all the underwriting members at Lloyd's, some of whom are themselves Vermont
citizens.  See attached Declaration of Lynda Edwards ¶¶ 4-5.

Once Plaintiff became aware of this jurisdictional defect, it attempted to fix it by filing an
Amended Complaint.  In this new version, Plaintiff changed its designation of "Certain
Underwriters" to eliminate all subscribing underwriting members at Lloyd's and include as
defendants only the "lead underwriters and managing agents" who "severally subscribed, each in

its own proportionate share" to the listed Lloyd's policies. Amended Complaint ¶¶ 19, 45. Plaintiff apparently hoped that by thus limiting the defendants it would solve its diversity problem, given that the "lead underwriters and managing agents" were unlikely to include any Vermont citizens.

The Amended Complaint, however, still had two rather glaring defects. First, it eliminated well over 99% of the underwriters who subscribed the Lloyd's policies at issue, thereby making the action woefully incomplete. Second, and more important, it did nothing to solve a separate, insurmountable problem, the failure to allege a sufficient jurisdictional amount. The individual liabilities of the "lead underwriters and managing agents" who are left as defendants simply will not satisfy the $75,000 amount in controversy threshold.

The controlling legal principles pertaining to the issue of jurisdictional amount are straightforward. Where, as here, defendants' potential liabilities are several and not joint, each defendant's exposure must exceed the $75,000 threshold, and the individual exposures of multiple severally liable defendants cannot be aggregated to satisfy this jurisdictional requirement. The Supreme Court recently reaffirmed this longstanding rule, which it first announced in *Snyder v. Harris*, 394 U.S. 332 (1969), in its decision in *Exxon Mobil Corp. v. Allapattah Services*, 125 S.Ct. 2611 (2005). Plaintiff's Amended Complaint founders on this requirement, and this defect cannot be cured. As a result, this action must be dismissed.

### A.    The Unique Nature of the Lloyd's Insurance Market and Its Implications for Diversity Jurisdiction

Beginning in 1989, a number of district court cases began to focus more critically on the allegation of diversity jurisdiction in suits involving Lloyd's underwriters. There is now wide consensus that in a diversity action against the subscribers to a Lloyd's policy two critical jurisdictional requirements must be met: (i) the insured plaintiff's citizenship must be diverse

from the citizenship of each and every individual subscribing Lloyd's underwriter; and (ii) each such underwriter must have exposure on an individual basis in excess of the prescribed amount in controversy. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 241 F.3d 154 (2d Cir. 2001); *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853 (5th Cir. 2003).

These cases merely reflect the application of settled diversity principles to the unique structure of Lloyd's, London.  As is by now well understood among courts and litigants active in the insurance coverage arena, Lloyd's is not an insurance company.  It is a marketplace or exchange where individual underwriters (called "Names") subscribe on a several and not joint basis to individual shares of specific insurance risks.  For convenience, Names join together in syndicates, and one of their number – a Name who is a professional "active underwriter" as distinguished from the names who are passive investing underwriters – will decide which risks to subscribe and what the syndicate's cumulative share of a particular risk will be.  The syndicates are not juridical entities, and they do not themselves subscribe risks.  Only the Names do, and each Name has his or her own individual share of the syndicate's share of any particular risk.  In essence, the policyholder contracts for what is tantamount to multiple individual insurance policies with each of the subscribing Names individually.  It is this structure that explains the now established rules that require both that complete diversity of citizenship exist between the insured plaintiff and each individual Name and that each Name's share is sufficient to expose him or her to individual liability in excess of the jurisdictional threshold.  *See e.g., Corfield,* 355 F.3d 857*; Zidell Marine Corp. v. Beneficial Fire & Cas. Ins. Co., 2004* U.S. Dist. Lexis 27031 (W.D. Wash. Feb 19, 2004); *Zidell Marine Corp. v. Beneficial Fire & Cas. Ins. Co.,* 2003 U.S. Dist. LEXIS 26253 (W.D. Wash. Dec. 4, 2003); *Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 62 F. Supp. 2d 1116 (S.D.N.Y. 1999).

### B.    Plaintiff's Attempt to Satisfy the Diversity Requirements

Plaintiff's original complaint demonstrated an appropriate understanding of the nature and structure of the Lloyd's market but not of its jurisdictional implications. Thus, Plaintiff expressly sued all the Lloyd's underwriters who, as members of designated syndicates, subscribed to their several shares of designated Lloyd's policies. Plaintiff overlooked the likelihood, however, that with the years of policies at issue and literally thousands of Names subscribing those policies, some of them almost certainly would turn out to be Vermont citizens and, hence, non-diverse from plaintiff. As is now confirmed, there are, indeed, Vermont Names, and the original complaint thus could not establish complete diversity. Edwards Declaration ¶¶ 4-5; Declaration of Alexander Mueller ¶ 2.

Plaintiff has now attempted to cure that defect by dropping all the investor Names as parties defendant and suing instead only the "lead underwriters and managing agents" who allegedly "sold" the policies in question. Amended Complaint ¶ 19. Plaintiff does not explain who these "lead underwriters and managing agents" are, but once again the nature and structure of Lloyd's supplies the answer, and it is not one that saves Plaintiff's Amended Complaint.

The Fifth Circuit's decision in *Corfield* describes how these terms are used in the Lloyd's market:

> Each Syndicate appoints a managing agent who is responsible for the underwriting and management of each Name's investments. *Chemical Leaman*, 177 F. 3d at 221. The managing agent receives this authority through contracts with each Name. *Id.* The managing agent, which is typically a legal entity, appoints one of its employees to serve as the "active" underwriter for the Syndicate. *Id.* at 222. The active underwriter selects the risks that the Names in the syndicate will underwrite and has authority to bind all Names in the Syndicate. *Id.*
>
> *                *                *
>
> In practice, since many Names through their respective Syndicates are liable on a Lloyd's policy, the active underwriter from *one* of the underwriting

> syndicates is designated as the representative of *all* the Names on the policy. *Squibb*, 160 F.3d at 929. This single underwriter, called the "lead" underwriter on the policy, is usually the only Name disclosed on the policy with all other Names remaining anonymous. *Id.* The lead underwriter is typically the first to subscribe to the policy and typically assumes the greatest amount of the risk.

*Corfield*, 355 F.3d at 858-59.

Against this background, Plaintiff's allegations naming the "lead underwriters and managing agents" on the policies at issue as the sole Lloyd's defendants means the active underwriters for the syndicates that lead each policy risk.[2] Plaintiff correctly assumed that these active underwriters would be U.K. citizens and that they would have the largest shares of the insurance risks in question. As shown below, however, those shares are still not large enough to satisfy the current $75,000 amount in controversy threshold. As a consequence, the Amended Complaint, like the original one, fails to state a claim within the diversity jurisdiction of this Court.

### C.    The Potential Liability of the Lead Underwriters Cannot Meet the $75,000 Threshold.

In order to satisfy the amount in controversy requirement, Plaintiff must show that every Lloyd's lead underwriter, as well as every London Market Company defendant, has a potential exposure greater than $75,000. This showing is impossible to a legal certainty. One illustration suffices to so establish. As shown in the accompanying declarations, the lead syndicate for many of the Lloyd's policies listed in the amended complaint is Syndicate 989. The active underwriter for Syndicate 989 during the time period in question was Peter Lowsley-Williams. As it happens, Mr. Lowsley-Williams not only had a share of each risk subscribed by Syndicate 989 for which he was the active underwriter, he also was a subscribing Name on two other syndicates

---

[2]    An alternative construction would be that these terms are also meant to include all active underwriters for all subscribing syndicates. The amended complaint fares no better under this construction, however, because it would still include the active underwriters for the lead syndicates among the defendants. Moreover, the active underwriters for the "following" syndicates are almost certain to have even smaller shares.

that also participated in these policies, Syndicate 231 and Syndicate 279.  His cumulative share for each of these syndicates must therefore be considered in calculating his total exposure.[3]

The Amended Complaint seeks declaratory and injunctive relief.  It does not specify the amount that Plaintiff allegedly seeks to recover from these policies. The amount of Plaintiff's stake in this controversy is missing from the Amended complaint and is therefore unknown. What is known is the maximum amount that these policies can be called upon to pay, because each policy specifies its per occurrence and aggregate limits.  Mr. Lowsley-Williams' maximum exposure under these policies can thus be calculated quite simply by multiplying for each policy and each syndicate in which he participated the policy limits times the syndicate share times his individual share of the syndicate's share.  As shown in the attached Mueller Declaration, the total comes to a maximum exposure for Mr. Lowsley-Williams of only $65,395.09.

Even this sum grossly overstates the maximum possible exposure Mr. Lowsley-Williams faces against this plaintiff.  Plaintiff alleges that it is a captive reinsurer of certain primary policies.  Plaintiff does not allege how much it has paid under these reinsurance policies nor articulate how London Market Insurers could possibly have any obligation to reimburse it for amounts paid and which it may have to pay in the future.  As shown later in this memorandum, Plaintiff has no reinsurance relationship with London Market Insurers and, hence, has no amount in controversy with any of them.  But whatever theory of relief plaintiff may assert against Mr. Lowsley-Williams, it cannot possibly translate into a claim larger than a small fraction of the total amount that he has in exposure to the policies.  In short, under any theory, the amount in

---

[3]   The calculation of the maximum exposure faced by Mr. Lowsley-Williams is both illustrative and dispositive.  It is illustrative in that it likely represents the largest exposure of any active underwriter on the policies in issue.  It is dispositive, however, even in the unlikely event there were active underwriters for other syndicates who have greater individual exposures, because *all* defendants must have exposures that meet the amount in controversy, and the failure of any one of them to do so requires dismissal.  *See, e.g., E.R. Squibb,* 160 F.3d at 933; *Zidell Marine Corp. v. Beneficial Fire & Cas. Ins. Co.*, 2003 U.S. Dist. LEXIS 26253 (W.D. Wash. 2003).

controversy between Plaintiff and defendant Lowsley-Williams cannot possibly reach the $75,000 jurisdictional threshold, and this action must be dismissed.

## II.    THIS ACTION MUST BE DISMISSED DUE TO THE ABSENCE OF COMPLETE DIVERSITY OF CITIZENSHIP.

The Amended Complaint's failure to satisfy amount in controversy is apparent on the basis of simple math. Its failure to satisfy the first prong of 28 U.S.C. §1332(a) – diversity of citizenship – requires closer inspection. Seen in its true light, however, the Amended Complaint fails on this basis as well, and this is an independent basis for its dismissal.

Plaintiff's choice of parties and their alignment strain to comply with the requirement of complete diversity. In the first instance, Plaintiff was selected to bring this action, notwithstanding its questionable involvement in the controversy, because of the simple fact that it is a Vermont citizen and unlikely to share the same citizenship with any other defendant. This premise proved false. In its original Complaint Plaintiff sued all Lloyd's underwriters who subscribed the policies in issue, but it turned out that some of them are also citizens of Vermont. This led to the Amended Complaint which dropped all Lloyd's underwriters except the "lead underwriters and managing agents."

The Amended Complaint, however, could not solve the more fundamental problems of misalignment and missing indispensable parties that are addressed in defendant First State's Motion to Dismiss. Chief of these is the fact that Pneumo Abex, the successor to the policyholder, is fully aligned in interest with Plaintiff, yet is improperly named as a defendant. Plaintiff itself asserts that it has the identical interest as Pneumo Abex of requiring the other insurance companies named as defendants in this action to pay the maximum amounts under their policies. Thus Plaintiff requests a declaration that "Abex may select the Policy or Policies and policy year or years to which to allocate such defense or indemnity costs or damages" and

that "Abex is not required to pay or reimburse deductibles, self-insured retentions or uninsured years for the Abex asbestos-related suits and claims as long as the insureds have available insurance." Amended Complaint ¶ 8. In short, the Court is asked to accept as proper an alignment of the parties where the Plaintiff is in the untenable position of seeking relief not on its own behalf but for the benefit of one of the defendants.

Pneumo-Abex should, therefore, be realigned as a plaintiff. Realignment would destroy diversity, however, because Pneumo Abex is a Delaware corporation and at least two of the defendants are Delaware corporations.[4] The argument in support of realignment of Pneumo-Abex as a plaintiff is set forth more fully in First State's motion to dismiss, and London Market Insurers join that motion.

As is further discussed in the First State motion, relief cannot be achieved without the joinder of indispensable parties Cooper and PAS. They cannot be joined because doing so would destroy diversity. In addition to the reasons cited in the First State Motion, London Market Insurers have received, and continue to receive, correspondence from Cooper seeking reimbursement from the London Market Insurers under policies at issue in this litigation. *See* Letter from Cooper dated July 26, 2005, wherein Cooper seeks $99,021,484.88 under the insurance policies subscribed by the London Market Insurers and other insurers that are the subject of this action, annexed to the McCabe Declaration as Exhibit 2. Here, too, Plaintiff's Amended Complaint tortures proper joinder and alignment in order to create an action that complies with the requirements of the diversity statute. Those efforts should be rejected and this action dismissed.

---

[4] For the purposes of this motion, London Market Insurers have taken Plaintiff's allegations regarding corporate citizenship to be accurate. London Market Insurers reserve the right to conduct discovery on this issue and challenge these allegations as necessary.

III.    **THE COURT SHOULD DISMISS THIS ACTION BECAUSE WHITMAN IS NOT A REAL PARTY IN INTEREST AND THERE IS NO CASE OR CONTROVERSY BETWEEN PLAINTIFF WHITMAN AND THESE DEFENDANTS.**

Plaintiff Whitman is not a real party in interest in this action. Rule 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). In addition, there is no case or controversy between Whitman and the defendant insurers as required by Article III of the United States Constitution. As a "captive reinsurer," who alleges no contractual relationship with London Market Insurers, Whitman has no standing to dispute the terms of the London Market Policies. *See Colonial Penn Insurance Company v. Centennial Insurance Company*, 1997 U.S. Dist. LEXIS 133 (S.D.N.Y. 1997).

Whitman does not allege that it has reinsurance contracts at issue with the London Market Insurers and, in fact, it has none. Indeed, there is nothing in the Amended Complaint that remotely alleges how Whitman has anything at all at stake in this lawsuit. "The judicial power does not extend to abstract questions." *Public Service Comm'n v. Wycoff Co*., 344 U.S. 237, 242, 73 S.Ct. 236, 239 (1952)(quoting *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 324, 56 S.Ct. 466, 473 (1936)). Rather, federal courts can only resolve actual "cases" and "controversies" U.S. Const. art. III §2. The existence of a case or controversy is a prerequisite to all federal actions, including those for injunctive and declaratory relief. *Skelly Oil Co. v. Phillips Petroleum*, 339 U.S. 667, 671-672, 70 S.Ct. 876, 878-879(1950). In keeping with Article III, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction…any court in the United States, upon the filing of an appropriate pleading may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

In *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240-241 (1937), the Supreme Court held that "[A] justiciable controversy is…distinguished from a difference or dispute of a hypothetical or abstract character; [or] from one that is abstract or moot." The Supreme Court also held that, "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id*. Whitman's Amended Complaint must be dismissed because it does not allege any case or controversy between it and the London Market Insurers. At most, it is based on a controversy that is undefined, hypothetical and abstract in nature. Even if Whitman were itself a primary insurer (rather then a reinsurer of a primary insurer) it would have no basis for asserting a claim against London Market Insurers, even one for contribution, against excess insurers who sit above the primaries.

To determine whether there is a "controversy," the court must "look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *International Harvester v. Deere & Co*., 623 F.2d 1207, 1210 (7th Cir. 1980). In the Amended Complaint, Whitman asks the Court to engage in speculation. The Amended Complaint merely alleges that asbestos claimants seek damages against Pneumo Abex in amounts that "may" exhaust all of its insurance coverage, and on the basis of this possibility it demands that the Court determine Pneumo Abex's rights to coverage. *See* Amended Complaint ¶87. The Court should not issue a ruling based on speculation about what might happen in the future.

It is well settled that an original Insured cannot assert rights based on the terms of a contract of reinsurance between the direct insurer and a reinsurer. *Unigard Sec. Ins. Co v. North River Ins. Co*., 594 N.E.2d 571, 574 (N.Y. 1992); *Appleman on Insurance (2d) §106.7*. Similarly, a reinsurer cannot assert rights based on the direct insurer's contract with the original insured. *See Carlton Holdings, Inc. v. NAFCO Insurance Company, Ltd.*, 205 F. Supp.2d 1069;

200 U.S. Dist. LEXIS 20926 (D. Minn. 2000).  Notably, in this case, Whitman's standing is particularly lacking because it is suing excess insurers based on contracts between the insured and excess insurers. In *Carlton Holdings*, the policyholder sued its insurer and reinsurers seeking a judgment declaring that its policy with the insurer covered the insured's claims. The reinsurers moved to dismiss the complaint against them on the basis that there was no actual case or controversy between the policyholder and the reinsurers.  The Court held that:

> The movants are all reinsurers of NAFCO's underlying policy with Carlton. As reinsurers, they have a legal relationship with NAFCO; they do not, however, have any legal relationship with Carlton. As such, there is no justiciable controversy between Carlton and the reinsurers. Without a justiciable controversy between Carlton and the reinsurers, any ruling by this court would be speculative and theoretical, and this Court does not have jurisdiction to issue advisory opinions based on speculation and theory.

*Id*. at 1073.

Similarly, there is no privity of contract between Whitman and the London Market Insurers, and any adjudication of the rights of Whitman would be based purely on speculation.

The Court should dismiss the instant action because Whitman is not a real party in interest and there is no case and controversy. It is axiomatic that if there is no case or controversy between the London Market Insurers and Whitman, there is no money at stake between the parties. *See MacMillan v. Federal Ins. Co*., 764 F. Supp. 38, 42-42 (S.D.N.Y. 1991) (finding no case or controversy where no claim for reimbursement was ever made). Therefore, to a legal certainty, Whitman's potential recovery from each London Market Insurer is zero, a sum that falls well below the $75,000 statutory requirement.

## IV.    THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION AND DISMISS PLAINTIFF'S COMPLAINT

The Court should abstain from exercising jurisdiction because the more comprehensive New York State Court action will adequately protect the parties' rights.  Although the New York Court recently stayed the New York action in favor of this case, this Court should properly dismiss this action so that the first filed and more comprehensive New York action can proceed forward. As set forth in First State's Motion, where there is a prior state court action pending that involves substantially the same parties and substantially the same issues as are presented in the federal declaratory judgment action, there is a presumption that the entire suit should be heard in state court. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286; *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S.491, 495-496 (1942).

Abstention is also warranted because abstention would contribute to "…wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation". *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 821 (1976); *Moses H. Cone Memorial Hospital v. Mercury Construction Company*, 460 U.S. 1, 23-27 (1982).

In *Colorado River Water Conservation District, supra,* the Court held that a Federal Court may abstain from exercising jurisdiction in order to avoid "piecemeal litigation."  If this action were allowed to proceed in this court, "piecemeal litigation" would almost certainly result. Although the Whitman Complaint raises issues that will be addressed by the New York Court and involves some of the same parties who are defendants here, the parties in the instant action are a subset of the parties at issue in the New York State Court Action that was filed over three years ago.  For instance, PAS and Cooper, both of whom claim rights to recover insurance proceeds from the policies at issue in this case, are not parties to the instant litigation whereas

they are both defendants in the New York litigation. In addition, there are numerous defendants in the New York action who are not defendants in this case. The New York State action would address all of the rights and legal obligations of all of the known parties arising under contracts of insurance entered into between IC Industries, American Brake Shoe and various insurers. Interestingly, in a coverage chart produced by PAS in the New York litigation, Whitman Insurance Company is not even listed as an insurer of either IC Industries or American Brake Shoe. *See* coverage chart labeled "I.C. Industries/Abex Product Liability Coverage Responsive to Asbestos-Related Claims" annexed to McCabe Declaration as Exhibit 3.

The Court should also abstain from exercising jurisdiction because New York law is applicable and a New York Court is best equipped to decide issues of New York law. *See Hurley v. Heilig*, 28 F. Supp.2d 33; 1998 U.S. Dist. LEXIS 18850 (D.C. 1998); *Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp.2d 67; 2001 U.S. Dist. LEXIS 16132 (D.C. 2001). In the *Abex* primary action that has been pending in the District of Columbia, the Court has been applying New York law. The policyholder plaintiff in that case has been critical of Judge Penn's ability to construe and apply New York law, as well as the Court's overall handling of the *Abex* case. In an amicus curie brief submitted in *Consolidated Edison Co. of New York v. Allstate Ins. Co., et. al.*, Index No. 600142/98, the policyholder plaintiff in *Abex* stated that, "Abex's 20-year ordeal is a lesson in the inefficiency of attempting to address simultaneously the contractual issues between the policyholder and its insurers and the equitable issues among the insurers." *See Brief of Pneumo Abex Corporation as Amicus Curie in Support of Plaintiff-Appellant*, dated February 12, 2002, annexed as Exhibit 4 to the McCabe Affidavit at p.28. The policyholder plaintiff in *Abex* further stated, "Delaying indemnity through two decades of 'internecine struggle' among insurers defies description as either equitable or efficient." *See Id*.

17

The plaintiff in *Abex* sought the assistance of the New York Court of Appeals with regard to the interpretation of New York law.  *See* Exhibit 4 at p.3 where Abex wrote:

> The language of Abex's insurance policies at issue in that case is materially identical to the language of Con Edison's policies at issue here, and New York law governs the insurance coverage claims in Abex's original complaint.

In arguing that the New York Court of Appeals should adopt an "all sums" approach to allocation among the multiple insurance policies at issue in the *Con Edison* matter, Abex described how the court in the District of Columbia incorrectly determined that it was "bound to follow New York federal court decisions that construed New York law not to require an indivisible duty to indemnify where multiple insurers are involved."  *Id.* at 5.  Abex stated that:

> The absence of a controlling decision of [the Court of Appeals] holding that the duty to indemnify under policies such as Con Edison's and Abex's is indivisible has had a profound negative impact upon Abex.  By denying their respective bilateral contractual obligations to indemnify Abex for 'all sums,' the three original defendants in Abex's case have forced Abex to litigate for 20 years while they and four additional insurers against whom they filed third-party complaints have fought among themselves as to their proper shares.  Abex's insurers also have sought to impose a share of indemnity costs on Abex, although the policies give them no right to do so.

*See* Exhibit 4 at p.6.

In sum, counsel for *Abex* argued to the New York Court of Appeals that New York law governed its policies and that this District Court incorrectly interpreted New York State law. In a case involving difficult and complex issues of state law, the federal court may abstain from exercising jurisdiction in order to allow the state court to interpret state law.  Since New York law is applicable, and a declaratory judgment action is already pending in New York, the Court should abstain from exercising jurisdiction and should allow the New York action to proceed.

The London Market Insurers respectfully submit that this Court should also abstain from exercising jurisdiction in this action because the declaratory judgment action in New York State

court is adequate to protect the rights of the parties. *See Foster-El, supra*, at 74. Whitman seeks

a determination of the insurers' obligations to defend, reimburse, and indemnify Abex.

Amended Complaint at ¶87. Therefore, Plaintiff's alleged interests are already represented in the

New York State action. Counsel for Plaintiff Whitman in this case is counsel for PAS/I.C.

Industries in the New York case. Although the Court recently stayed the New York action in

favor of this case, this Court should properly dismiss this action so that the first filed and more

comprehensive New York action can proceed forward.

## CONCLUSION

For all of the above reasons, and those set forth in First State's Motion and Supporting

Memorandum, the Court should grant this motion and dismiss this action.


Respectfully Submitted,


/s/ Michael J. Zoeller
Martin R. Baach, No. 210377
Michael J. Zoeller, No. 426476
Baach Robinson & Lewis PLLC
1201 F Street, NW, Suite 500
Washington, D.C. 2004
(Tel) 202-833-8900
(Fax) 202-466-5738
*Attorney for Defendants*
*Certain Underwriters at Lloyd's, London*
*and Certain London Market Companies*

*Of Counsel*:
    Eileen T. McCabe, Esq.
    Alexander J. Mueller, Esq.
    MENDES & MOUNT, LLP
    750 Seventh Avenue
    New York, New York 10019-6829
    (212) 261-8000 (telephone)
    (212) 261-8750 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on September 16, 2005, he caused true and correct copies of the foregoing London Market Insurer Defendants' Motion to Dismiss, and Memorandum of Points and Authorities in Support of London Market Insurer Defendants' Motion to Dismiss and Exhibits attached therein, and Proposed Order, to be served upon counsel listed on the Notice of Electronic Filing, by electronic notification pursuant to Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and Local Civil Rule 5.4(d), and by first-class mail, postage prepaid, upon:

| | |
|---|---|
| Pneumo Abex Corporation | Barbara E. Rutkowski, Esq.<br>Jones Day<br>222 East 41st Street<br>New York, NY 10017<br><br>Joseph W. Dorn<br>Martin M. McNerney<br>King & Spalding LLP<br>1700 Pennsylvania Avenue, NW<br>Washington, DC  20006-4706 |
| Mt. McKinley Insurance Co. | Fred L. Alvarez, Esq.<br>Lord, Bissell & Brook LLP<br>115 S. LaSalle Street<br>Chicago, IL 60603<br>Telephone:  (312) 443-0700<br>Facsimile:   (312) 443-0336 |
| Compagnie Europeenne d'Assurances Industrielles and Brittany Insurance Company | Glenn D. Curving, Esq.<br>Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>One Speedwell Avenue<br>Morristown, NJ  07962-1981<br>Phone: (973)538-0800<br>Fax:  (973)538-1984 |
| Travelers Indemnity Company | Barry R. Ostrager<br>Jonathan K. Youngwood<br>Simpson, Thatcher & Bartlett<br>425 Lexington Avenue<br>New York, NY 10017-3909 |

/s/ Michael J. Zoeller
Michael J. Zoeller, No. 426476
BAACH ROBINSON & LEWIS PLLC
1201 F Street, NW, #500
Washington, DC  20004
 (202) 659-7217
Fax:  (202) 466-5738

*Attorneys for Certain Underwriters at Lloyd's,*
*London and Certain London Market Companies*