IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WHITMAN INSURANCE COMPANY, LTD.,<br><br>*Plaintiff,*<br><br>v.<br><br>TRAVELERS INDEMNITY COMPANY, *et al.*<br><br>*Defendants.* | Civil Action No. 1:05CV01125<br>John Garrett Penn, Judge<br><br>Related Case: 82 CV 2098 |

## DECLARATION OF ARCHIE L. MEAIRS

I, Archie L. Meairs, declare as follows:

1. I am President of Whitman Insurance Company, Ltd. In this capacity, I have personal knowledge of the facts and records set forth herein, and if called and sworn to testify as a witness, I could and would testify competently thereto.

2. Whitman Insurance Company, Ltd. was incorporated in Bermuda in 1978 as IC Industries Insurance Company, Ltd. and later changed its name to Whitman Insurance Company, Ltd. (collectively "Whitman Insurance"). Whitman Insurance re-domesticated in 1999 and is presently incorporated in Vermont with its headquarters located in Vermont.

3. Whitman Insurance is currently a so-called "captive insurer" in that it accepts coverage for risks arising out of its parent corporation and other affiliated companies.

4. Whitman Insurance is currently a subsidiary of PepsiAmericas, Inc. and continues to accept coverage related to the risks of PepsiAmericas, Inc. Whitman Insurance has no present

corporate relationship with Abex Corporation, now known as Pneumo Abex LLC, and has not had any such relationship since 1988.

5. Prior to the 1988 sale of Abex, during the years 1978 through 1985, Whitman Insurance participated in the IC Industries corporate insurance program under which Abex was provided with insurance coverage. During the 4/1/1978 to 4/1/1985 policy periods, Whitman Insurance has financial responsibility for certain liability claims against Abex that fall within the first $250,000 limits of coverage in the primary layer of insurance.

6. The scope of financial responsibility of Whitman Insurance for the first $250,000 layer of coverage in certain policy periods is reflected in stated limits of the relevant primary policies. For example, in the 1980 through 1985 policy periods, National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") underwrote, priced and issued primary comprehensive general liability ("CGL") coverage to IC Industries that included Abex as an additional named insured. During this time period, Whitman Insurance was financially responsible for all or a portion of the first $250,000 layer of this primary CGL coverage. The National Union policies were originally written with a $1,000,000 combined single limit for CGL coverage. An endorsement to the National Union policies states that this $1,000,000 combined single limit of liability is split between a first $250,000 layer and an "excess" $750,000 layer, as follows:

> ". . . coverage afforded under this policy for comprehensive general liability is amended in part to show limits of
>
>> "- $250,000 combined single limit (CSL) per occurrence.
>>
>> "- $750,000 CSL per occurrence subject to $750,000 CSL annual aggregate where applicable including but not limited to loss arising out of the 'products hazard' or the 'completed operations hazard' excess of $250,000 CSL per occurrence."

Financial responsibility for each of these two layers of limits was by endorsement split between Whitman Insurance (which is responsible for the first $250,000 in loss) and National Union, which is responsible for the next $750,000 in loss. Claims handling decisions were and are handled separately by Whitman Insurance and National Union.

**Whitman Insurance's Use of a Third Party Administrator to Process Claims within the First $250,000 Layer**

7.  Financial responsibility for the $250,000 layer resulted in Whitman Insurance taking a direct role in the management, administration and payment of claims falling within the layer. As a result, the claims management and payment process for the first $250,000 layer was delegated by the primary insurer to Whitman Insurance. A third party administrator ("TPA") was selected by Whitman to administer and pay certain claims on behalf of the underlying insureds, including Abex. The TPA arranged for the payment of such claims from a zero balance account which was funded directly by Whitman Insurance. Accordingly, for claims falling within the $250,000 layer, Whitman Insurance maintained the authority to settle all such claims without any involvement by the "fronting" primary insurer, and TPAs and/or Whitman Insurance has administered and paid claims directly to or on behalf of Abex and other insureds for a variety of claims including the Abex asbestos-related suits."

**Whitman Insurance Has Fully Satisfied Its Insuring Obligations For The Abex Asbestos Suits.**

8.  Pursuant to its insuring obligations, Whitman Insurance has paid to date more than $9,000,000 in defense costs and indemnity limits for Abex asbestos-related suits consistent with and one occurrence approach and the coverage rulings of this Court as set forth in the *Related Abex Action*. Whitman Insurance has fully satisfied its obligations to pay for Abex asbestos-related suits. Despite Whitman Insurance having fully paid its obligations for the Abex

asbestos-related suits, the defendants have failed or refused to recognize this fact. Also, to date, the insured Abex has refused to release the first $250,000 layer from any further obligation for the Abex asbestos-related suits. There is a present case or controversy between Whitman Insurance and the defendants and this controversy exceeds $75,000 in damages.

**All Relevant Policies in the Whitman Insurance Coverage Years Were Drafted, Negotiated, Brokered, and Issued in Illinois.**

9.   A review of the policies providing primary CGL coverage for Abex during the 1978 through 1985 time period, as well as all post-1970 policies at issue in this action, establishes that all such policies were negotiated, drafted, issued and delivered in Illinois. All of these policies were also brokered in Illinois through Rollins Burdick Hunter Company's Chicago, Illinois office.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17 day of October, 2005 at Rolling Meadows, Illinois.

Archie L. Meairs