IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WHITMAN INSURANCE COMPANY, LTD.,<br><br>*Plaintiff,*<br><br>v.<br><br>TRAVELERS INDEMNITY COMPANY, *et al.*<br><br>*Defendants.* | Civil Action No. 1:05CV01125<br>John Garrett Penn, Judge<br><br>Related Case: 82 CV 2098 |

## DECLARATION OF DANIEL E. CHEFITZ

I, Daniel E. Chefitz, declare as follows:

1. I am an attorney with the law firm of Morgan Lewis & Bockius LLP. I represent Whitman Insurance Company, Ltd. ("Whitman Insurance") and PepsiAmericas, Inc., formerly known as Whitman Corporation, IC Industries, Inc. and Illinois Central Industries (collectively "PAS") in connection with various coverage issues and litigation. In this capacity, I have personal knowledge of the facts and records set forth herein, and if called and sworn to testify as a witness, I could and would testify competently thereto.

### I.   Value of London Market Insurers Policy Obligations

2. Attached hereto at Tab 1 is a schedule of the presently known policies of insurance issued by the Underwriters at Lloyd's ("Lloyd's") and the London Market Companies ("London Companies") (collectively, the "London Market Insurers") based upon a review of the policies identified in Whitman Insurance's amended complaint.

3. As set forth in the schedule, the "face value" of the per occurrence indemnity limits in all London Market policies responsive to the Abex asbestos suits is approximately $204,000,000. In addition, most if not all of the London Market policies require the London Market Insurers to reimburse "Costs" or defense costs in addition to the obligation to pay at least $204,000,000 in indemnity costs. Thus, the London Market's obligations under the policies far exceed the face limits of those policies of $204,000,000.

4. The "face value" of the Lloyd's share of the per occurrence indemnity limits in all London Market policies responsive to the Abex asbestos suits is approximately $95,000,000 before taking into consideration Lloyd's supplemental defense obligation or obligation to pay extra-contractual damages.

5. The "face value" of the London Companies' share of the per occurrence indemnity limits in all London Market policies responsive to the Abex asbestos suits is approximately $109,000,000 before taking into consideration the London Companies' supplemental defense obligation or obligation to pay extra-contractual damages.

6. Based upon the recent bill from Abex to Lloyd's, attached to the Declaration of Eileen T. McCabe submitted by Lloyd's in support of its motion to dismiss, Lloyd's presently owes approximately $100 million in past indemnity costs and an unspecified amount of defense costs for the Abex asbestos suits.[*See* McCabe Decl. Tab 2] Not less than 55,000 asbestos claims against Abex remain open.

## II. Potential Share of Lloyd's Lead Underwriter Mr. Lowsley-Williams

7. I have reviewed the Declarations of Lynda Edwards and Alexander J. Mueller submitted by Lloyd's in support of its motion to dismiss the amended complaint.

Neither declaration provides documentation from which one can determine the identity of individual underwriters or their alleged percentages. Lloyd's policy documentation in plaintiff's possession does not identify individual "Names" or their percentages.

8.  Based on my review of the available Lloyd's policy documentation, I have identified several errors in the attempt by the Mueller Declaration to calculate the potential personal exposure of Mr. Lowsley-Williams in connection with the Abex asbestos suits. These errors and their potential impact on the calculation of Mr. Lowsley-Williams' personal exposure for Abex asbestos suits are discussed below.

### A.  Miscalculation of Mr. Lowsley-Williams' Share of "Ultimate Net Loss" Under the Identified Post-1970 Policies

9.  The Mueller Declaration miscalculates Mr. Lowsley-Williams' alleged share of the per occurrence "ultimate net loss" under the policies identified in the declaration. Policy No. ULL 0122 has two policy periods, 1/5/79-4/1/79 and 4/1/79-4/1/80. As the Addendum No. 3 to Policy No. ULL 0122 attached hereto at Tab 2 indicates, the original syndicate participation changed on 4/1/79. The calculations in the Mueller Declaration fail to calculate the effect of multiple policy periods or the change in syndicate participation. Using the same individual percentages alleged in the Mueller Declaration, Mr. Lowsley-Williams' additional personal share of the ultimate net loss for the Policy ULL 0122 for the period 4/1/79-4/1/80 is $3,853.08 as follows:

   a.  **Syndicate 989.** For policy period 4/1/79-4/1/80, syndicate 989 severally subscribed 66.667% of the limits on Policy No. ULL 0122. The Underwriters at Lloyd's have a total per occurrence ultimate net loss exposure of $10,000,005 on Policy No. ULL 0122 ($15,000,000 x 66.6667%). Syndicate 989 had a share of 10.1470% of the risk on ULL

0122. The entire syndicate's share of per occurrence ultimate net loss ($10,000,005 x 10.147%) would therefore be $1,014,700.50. If Mr. Lowsley-Williams' share of Syndicate 989's risk from 4/1/79-4/1/80 was .25%, then Mr. Lowsley-Williams additional share ($1,014,700.50 x .25%) for per occurrence ultimate net loss would therefore be $2,536.75.

b. **Syndicate 231**. Mr. Lowsley-Williams was also a name associated with Syndicate 231 for the period 4/1/79-4/1/80. Syndicate 231 had a share of 2.7424% of the limits on ULL 0122. The entire syndicate's share of per occurrence ultimate net loss ($10,000,005 x 2.7424%) would therefore be $274,240.13. Mr. Lowsley-Williams' share of Syndicate 231's risk from 4/1/79-4/1/80 was .15%. Mr. Lowsley-Williams' additional share ($274,240.13 x .15%) of per occurrence ultimate net loss would therefore be $411.36.

c. **Syndicate 279**. Mr. Lowsley-Williams was also a name associated with Syndicate 279 for the period 4/1/79-4/1/80. Syndicate 279 had a share of 0.8227% of the limits on ULL 0122. The entire syndicate's share of per occurrence ultimate net loss ($10,000,005 x 0.8227%) would therefore be $82,270.04. Mr. Lowsley-Williams' share of Syndicate 279's risk from 4/1/79-4/1/80 was 1.10%. Mr. Lowsley-Williams' additional share ($82,270.04 x 1.10%) of per occurrence ultimate net loss would therefore be $904.97.

### B. Failure to Calculate Mr. Lowsley-Williams' Share of Lloyd's Supplemental Defense Costs Obligation Under Post-1970 Policies

10. The Mueller Declaration also ignores the obligation of the Lloyd's policies to pay "Costs" (i.e. defense costs) in addition to the ultimate net loss limits of liability. The post-1970 Lloyd's policies contain an "addendum" attached hereto at Tab 3, pursuant to which Lloyd's is obligated to pay Costs in addition to Lloyd's obligation to pay "ultimate net loss." As only the payment of "ultimate net loss" is subject to the Lloyd's policies' limits of liability, Lloyd's obligation to pay defense costs is supplemental and applies to the Abex asbestos-related suits. Based on my review of historical costs information for the Abex asbestos suits that has been provided to Abex's insurers on a quarterly basis for a number of years, the historical defense costs to indemnity costs ratio has at times far exceeded a 1:1 ratio. Using a conservative 1:1 ratio of defense to indemnity costs, Mr. Lowsley-Williams' personal exposure for the identified post-1970 policies only as calculated by Mr. Mueller is at least $138,500 based on indemnity exposure of at least $69,250.

### C. Failure to Calculate Mr. Lowsley-Williams' Share of the Pre-1970 Lloyd's Policies

11. The Mueller Declaration and the Edwards Declaration completely ignore the more than $40 million of pre-1970 indemnity limits issued by the London Market Insurers. The failure to consider the pre-1970 coverage is particularly striking given that Mr. Lowsley-Williams' Syndicate 989 participated in several pre-1970 Lloyd's policies as follows: K34251 (9/13/55-9/13/56); K38374 (8/8/56-8/8/57); K38906 (9/13/56-9/13/57); K45478 (8/8/57-8/8/58); K45479 (9/13/57-9/13/58); K51515 (8/8/58-8/8/59). Moreover, Mr. Lowsley-Williams may be responsible for the shares of other names in the

pre-1970 London Market coverage as an "heir" or otherwise. The Mueller and Edwards Declarations fail to indicate whether any attempt was made to determine the share of Mr. Lowsley-Williams under the pre-1970 policies. Additionally, the pre-1970 policies were written on London Form T.P.9, which, like the post-1970 Lloyd's policies, contains a supplemental defense obligation. Therefore, any calculation of amount in controversy under the pre-1970 policies must also take into account the value of Lloyd's supplemental defense obligation.

### III. Many of the Defendant Insurers Have Taken the Position That the Primary Layers of Coverage Have Not Been Satisfied For Abex Asbestos-Related Suits.

12. Attached at Tab 4 is a true and correct copy of Plaintiffs' Opposition to Argonaut's Motion for Summary Judgment filed July 25, 2005, in *Certain Underwriters at Lloyd's, London, et al. v. Pneumo Abex Corporation, et al.*, Index No. 602493/02, Supreme Ct. of N.Y. ("the NY Action"). In opposing Argonaut's motion, Lloyd's argued that the primary layer of coverage was not exhausted because the Abex asbestos suits should be treated as multiple occurrences [See Tab 4 p.9].

13. Attached at Tab 5 is a true and correct copy of American Re-Insurance Company's Memorandum of Law in Opposition to Argonaut Insurance Company's Motion for Summary Judgment filed July 26, 2005, in the NY Action. In its opposition to Argonaut's motion, American Re alleged that the per occurrence deductibles in the primary layer have not been properly exhausted [See Tab 5, p.2].

14. Attached at Tab 6 is a true and correct copy of Mt. McKinley Insurance Company's Affirmation in Opposition to Argonaut Insurance Company's Motion for

Summary Judgment filed July 25, 2005, in the NY Action. Mt. McKinley argued that per occurrence deductibles were not satisfied for the Abex asbestos suits [See Tab 6, p.6].

IV. **The New York Court Rejected The Defendant Insurers' Attempts to Seek Inconsistent Coverage Rulings by Staying the New York Action in Deference to the Related Abex Coverage Actions Before This Court.**

15. Attached at Tab 7 is a true and correct copy of Travelers Memorandum of Law in Opposition to PepsiAmericas, Inc.'s Motion to Stay Lloyd's NY Action filed July 14, 2005, in the NY Action. In its brief, Travelers alleged that the insurers' attempt to proceed in the NY Action instead of this Court is grounded in a desire "to relitigate the prior decisions of [Judge Penn]" because "[Judge Penn] has expressed some reluctance to address the changing circumstances of the case." [Tab 7, p. 10]

16. Judge Cahn rejected the attempts by Travelers and other insurers to relitigate this Court's previous coverage determinations in New York staying the New York action and instructing the parties to proceed with all claims before this Court. Attached at Tab 8 is a true and correct copy of the Order by Judge Cahn entered July 29, 2005, staying the New York action in deference to the related actions before this Court.

V. **None of the Moving Defendants With The Exception of Travelers Has Paid Any Amount Towards the Abex Asbestos Suits.**

17. Despite having present ripe policy obligations for Abex asbestos suits, defendants American Re-Insurance Company, Lloyd's, First State, and Stonewall have not paid any amount to Abex for Abex asbestos suits. In addition, none of the other defendants that have moved to dismiss Whitman Insurance's amended complaint, with the sole exception of Travelers, have paid any amount to Abex for the Abex asbestos suits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17 day of October, 2005, at Washington, D.C..

*Daniel E. Chefitz*

Daniel E. Chefitz