# EXHIBIT 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>PNEUMO ABEX CORPORATION, et al.,<br><br>Defendants. | Index No. 602493/02<br><br>Assigned to<br>Hon. Herman Cahn |

## PLAINTIFFS' OPPOSITION TO ARGONAUT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiffs Certain Underwriters at Lloyd's, London and certain London Market Insurance Companies who severally subscribed certain excess liability insurance policies in favor of American Brake Shoe Co. and I.C. Industries, Inc. (collectively "London Market Insurers") oppose Argonaut Insurance Company's Motion for Summary Judgment dated July 12, 2005.

London Market Insurers respectfully submit that Argonaut's Motion must be denied because there are genuine issues of material fact in dispute. For instance, there is a material factual dispute among the parties as to which state's law applies to the interpretation of the policies and with regard to the applicable law to assess Argonaut's claimed exhaustion. In addition, Argonaut's motion is premature as discovery in this action has just commenced. Moreover, the record is completely void on a number of critical points and, with respect to the materials Argonaut submitted in support of its Motion, the documents generate more questions than they answer.

The sole fact that Argonaut has entered into undisclosed settlement agreements with various entities which allegedly exhaust Argonaut's policy limits is an insufficient basis for Argonaut's dismissal from this action. Argonaut has not established that its policies have been fully and properly exhausted. For instance, Argonaut has not demonstrated that the alleged exhaustion of Argonaut's polices is based on payments for claims that would be covered under the applicable insurance policies and whether the allocation method(s) employed by the parties to these settlement agreements was proper.

Summary judgment in favor of Argonaut under CPLR 3212 is inappropriate in this case because genuine issues of fact still exist concerning the settlements that allegedly exhausted Argonaut's policy limits. Argonaut fails to overcome these factual disputes by providing conclusory affidavits and skeletal information about payments it allegedly made under certain settlement agreements it entered. Plaintiffs do not completely foreclose the possibility of voluntary dismissing Argonaut from this litigation at some point; however, Plaintiffs maintain that Argonaut is currently a proper party to this case pending further proceedings.

**Brief Background**

Although London Market Insurers filed this litigation in July of 2002, they spent approximately three years fighting efforts to transfer this case to the Federal Mogul bankruptcy proceedings. *See* McCabe Affirmation at ¶3. Judge Preska eventually remanded this action back to the New York Supreme Court by Order dated May 1, 2005. *See Exhibit 3 to Affidavit of Ewan Clark filed in support of Argonaut's Motion for Summary Judgment* (hereinafter "Clark Affidavit") A Preliminary Conference and a meeting with the assigned Discovery Master, Judge Bradley, took place on June 16, 2005. *See* McCabe Affirmation at ¶4. Pursuant to Judge

Bradley's request, London Market Insurers served discovery against various entities on June 23, 2005. *See* McCabe Affirmation at Exhibit 1. Many of the items sought in discovery directly impact the issues raised in Argonaut's motion and adequate responses to that discovery must be provided before London Market Insurers can adequately respond to Argonaut's motion for Summary Judgment. *See* McCabe Affirmation at ¶5. Responses to that discovery are not due until July 29, 2005. Argonaut's motion can only be properly considered once discovery on the issues raised in its Motion has been completed.

### A. The Parties Dispute Whether New York Law Governs the Policies and Application at Issue

In support of its summary judgment motion, Argonaut contends that it "resolved its obligations to Abex by paying out its policies' full limits in settlements with Abex and Abex's three main primary insurers: Maryland Casualty Company, Liberty Mutual Insurance Company and Travelers in the context of the primary coverage action pending in the District of Columbia captioned *Abex Corp., et al v. Maryland Cas. Co.*, et al Civil Action No. 82-2098. *See* Argonaut Memorandum at page 1. Argonaut contends that it should be dismissed from the instant action on the basis that it has paid out its full policy limits under both primary and umbrella policies under these settlements in the context of the D.C. litigation, "thereby exhausting coverage and extinguishing all further liability." In its effort to secure such a ruling from this Court, Argonaut alleges that Illinois law should apply to the interpretation of its policies. *See* Argonaut Motion at 4, 10-11, even though the Court in the *Abex* litigation, undeniably applied New York law to the policies in that case. *See Pneumo Abex Corp., et al. v. Maryland Cas. Co., et al.*, No. 82-2098, 2001 U.S. Dist. Lexis 20297 at *9 (stating that the issue of which state's law applies to the case "has now been resolved by the parties by way of a stipulation which is not inconsistent with the

evidence this Court heard during a factual hearing on when injury-in-fact occurs"), attached as Exhibit 2 to McCabe Affirmation. Thus, Argonaut is asking this Court to apply Illinois law even though the case and settlements upon which it relies applied New York law.

The position Argonaut advances on the choice of law issue in connection with its summary judgment motion contradicts the judicial finding in the *Abex* primary case, as well as the position that the parties to that action advocated. Specifically, in a motion for partial summary judgment that London Market Insurers obtained from the otherwise sealed docket in that action, Abex claimed in December 1982 that the determination of the "trigger" of coverage that should apply to the policies at issue in that litigation should be governed by the United States Court of Appeals for the District of Columbia's decision in *Keene Corp. v. Insurance Company of North America*, 667 F.2d 1034 (D.C. Cir. 1981). *See* Exhibit 3 to McCabe Affirmation. In making this argument, Abex specifically noted that "[t]he court in *Keene* interpreted and applied New York law which the defendants contend is applicable in this case [citations omitted]." *Id.* at 3 n. 2. Argonaut admits that it is one of the defendants in that litigation. Abex further, argued "*Keene* is consistent with the applicable principles of New York law *which is the law governing this case*" *Id.* at 10 (emphasis added).

A few years later, Abex filed a brief with the New York Court of Appeals which acknowledged that New York law governed the interpretation of the policies at issue in the Abex primary litigation, which included the Argonaut policies at issue here. In the context of the action *Consolidated Edison Co. of New York v. Allstate Ins. Co., et al.* Index No. 600142/98 ("*ConEd*"), Abex filed an *amicus curiae* brief on the issue of allocation requesting an "all sums" ruling from the court. *See* Exhibit 4 to McCabe Affirmation. Specifically, Abex claimed that similarities between the insurance policies at issue in the Abex primary action, which again

includes the policies which are subject of Argonaut's motion, and the ConEd policies warranted consideration of its *amicus* brief.

> The language of Abex's insurance policies at issue in that case is materially identical to the language of Con Edison's policies at issue here, and New York law governs the insurance coverage claims in Abex's original complaint.

*Id.* at 3.

Abex further argued that

> [a]s a policyholder with policies that are being interpreted under New York law in an ongoing coverage action, Abex has a strong interest in the disposition of this case. If this Court holds that the duty to indemnify under Con Edison's "all sums" policies is indivisible under New York law, that ruling should apply to Abex's case as well.

In arguing that the Court of Appeals should adopt an "all sums" approach to allocation among the multiple insurance policies at issue in the *ConEd* matter, Abex described a significant and lengthy dispute between the various insurer defendants, including Argonaut, in the Abex primary action as follows:

> [t]he absence of a controlling decision of [the Court of Appeals] holding that the duty to indemnify under policies such as Con Edison's and Abex's is indivisible has had profound negative effect upon Abex. By denying their respective bilateral contractual obligations to indemnify Abex for 'all sums,' the three original defendants in Abex's case have forced Abex to litigate for 20 years while they and four additional insurers against whom they filed third-party complaints have fought among themselves as to their proper shares. Abex's insurers also have sought to impose a share of indemnity costs on Abex, although the policies give them no right to do so.

*Id.* at 6.

In fact, the D.C. court's prior ruling that New York law applies to the policies subject to that action (including Argonaut's) collaterally estops Argonaut from now claiming that Illinois

law should instead apply to its policies in this matter. Collateral estoppel bars a party from "re-litigating 'an issue which has been previously decided against him in a proceeding in which he had a fair opportunity to fully litigate the point.'" *Kaufman v. Eli Lilly & Co., et al.*, 65 N.Y.2d 449; 482 N.E.2d 63; 492 N.Y.S.2d 584 (1985) (citations omitted). For the doctrine to apply, the identical issue "must have been decided in the prior action and be decisive of the present action" and "the party to be precluded from re-litigating the issue must have had a full and fair opportunity to contest the prior determination." *Id.* (citations omitted).

Based on publicly available documents from the D.C. court action, it is clear that court applied New York law only after the issue was fully briefed by all parties involved in that action. In *Pneumo Abex Corp., et al. v. Maryland Cas. Co., et al.*, No. 82-2098, 2001 U.S. Dist. LEXIS 20297 at *1, the D.C. Circuit Court recounted the procedural history that led up to a stipulation and the court's confirmation that New York law applied to the policies at issue (including Argonaut's) in that case. Apparently, the district court granted a motion for partial summary judgment filed by Abex, which the insurers (including Argonaut) appealed to the Court of Appeals for the District of Columbia. The Court of Appeals subsequently ruled that the district court had to apply New York law. *Id.* The issue of which state's law applied to the policies was critical for it formed the basis for the court's decision on how costs should be allocated among the policies subject to that action. *Id.* As one of the entities who was clearly a party to the case at the time the opinion was issued, it simply cannot be disputed that Argonaut had its day in court on this issue.

In any event, the myriad of issues concerning which state's law applies to Argonaut's (and other insurers') policies necessarily precludes Argonaut from arguing that summary

judgment is proper at this time. At the very least, Argonaut's mechanical application of choice-of-law rules in its motion is not ripe and cannot support a resolution of this matter by summary judgment. Discovery on the terms and conditions, placement and application of the primary policies including the Argonaut policies, has just commenced and London Market Insurers have directed discovery as to the basis for the assertion that New York law does not apply. *See* Exhibit 1 – Question 38.

Argonaut is fully aware that Plaintiffs have sought and continue to seek confirmation as to whether the alleged exhaustion was in accord with New York law. When seeking to file a Motion for summary judgment when this case was before Judge Preska, Argonaut's counsel wrote on January 28, 2005:

> "So far no party has indicated that it opposes the motion in principle, but rather that more information is needed to determine whether the exhaustion was consistent with the terms of the policy and New York law on allocation."

A copy of Argonaut's letter is attached to the McCabe Affirmation as Exhibit 5.

### B. Argonaut's Motion is Premature

In considering Argonaut's motion for summary judgment, the issue or cause of action which provides the basis for the summary judgment motion must be before the court. *See Dunham v. Hilco Construction Company*, 89 N.Y.2d 425, 654 N.Y.S.2d 335, 676 N.E.2d 1178 (1996). Such is not the case with Argonaut's motion.

First, Argonaut bases its motion in large part on proceedings involving certain insurers, excluding Plaintiffs, in *Pneumo Abex Corp., et al. v. Maryland Cas. Co., et al.*, Case No. 82-CV-2098, which has been pending before the United States District Court for the District of Columbia since 1982. Specifically, Argonaut claims that it is undisputed that "[o]ver the course

of the District of Columbia Action, Argonaut has paid out its policies' limits of liability via payment of claims and via settlements with Abex and three of Abex's primary insurers." Argonaut Statement of Facts, ¶8. Further, Argonaut claims that it has been "effectively dismissed as a party to the District of Columbia action" and that "[s]ince Argonaut's policies have been fully exhausted in the District of Columbia action, and therefore dismissed from the District of Columbia action, *Argonaut now seeks to be dismissed from this New York action on the same basis*." Argonaut Statement of Facts, ¶12, 15 (emphasis added).

Clearly, Argonaut seeks dismissal from the instant case based on its involvement in the D.C. action. However, as non-parties to that case, Plaintiffs are unable to rebut any claims made about its proceedings and only have a handful pleadings and published decisions from that matter. Plaintiffs have filed discovery seeking production of relevant materials from the District of Columbia action. *See* McCabe Affirmation at Exhibit 1 – questions numbered 41-43. Since the claims and settlements upon which Argonaut relies are not part of the record before this Court, they cannot provide a basis for Argonaut's summary judgment motion.

New York law is clear that a primary or lower layer policy must be exhausted before any upper layer or excess policies are called upon for coverage. *See State Farm Fire & Cas. Co. v. LiMauro, et al.*, 65 N.Y. 2d 369, 375-76; 482 N.E. 2d 13, 18; 492 N.Y.S. 2d 534, 539 (1985); *see also Travelers Indem. Co., et al. v. American & Foreign Ins. Co.*, 286 A.D. 2d 626; 730 N.Y.S. 2d 231 (1st Dept. 2001) *(citing LiMauro)* and *Chichkina v. Cohen, et al.*, 1999 U.S. App. LEXIS 906 at *2 (2d Cir. 1999) *(citing same)*. Indeed, courts have denied summary judgment where a claimant under an excess insurance policy has failed to show that primary coverage was exhausted. *See, e.g., CBS Inc. v. Continental Cas. Co.*, 753 F. Supp. 525, 528 (S.D.N.Y. 1991). The extensive inquiry into how and when these lower layer policies are exhausted require the

resolution of many factual issues, including, but not limited to, the allocation method used under the settlement agreement(s) that allegedly exhausted the relevant insurance policies, how the settlement agreement(s) and respective allocation methods affect non-settling insurers and comprehensive analysis of the data regarding underlying claimants' exposure to the asbestos-containing product if this data was used to determine the allocation method appropriate for the settlement agreement(s). *See U.S. Fidelity & Guaranty Co. v. Treadwell Corp., et al.,* 58 F. Supp. 2d 77 (S.D.N.Y. 1999) (providing an in-depth analysis of such issues).

In addition, the record before the Court on Argonaut's Motion is completely void of relevant information on these and other critical points, thereby precluding a finding that the Argonaut policies are fully and properly exhausted. For instance, London Market Insurers have no details regarding the four settlement agreements which allegedly result in the exhaustion of the Argonaut limits. Argonaut has neither produced the Agreements nor explained any of the relevant terms of the settlements with Abex and the three primary insurers. London Market Insurers are entitled to discovery regarding the payments made under the settlement agreements, such as the types of claims paid pursuant to any agreement and whether these claims would be covered under and properly exhaust the applicable insurance policies and how these payments were allocated among the different policies that were called upon for coverage. Moreover, Argonaut's Motion is devoid of any discussion as to how the deductible referenced in policy 90-308-006142 was applied. Argonaut does not explain if it applied one deductible or a deductible for each occurrence. This is obviously a critical issue which goes to the heart of any exhaustion analysis.

Moreover, the materials Argonaut submitted in support of its Motion raise more questions than they answer, and further highlight the need for discovery before Argonaut is entitled to any ruling regarding exhaustion.

For example, although Argonaut states in its Memorandum of Law that it has been dismissed from the D.C. primary action *See* Argonaut Motion, Preliminary Statement, the Clark Affidavit actually states on page 4 as follows: "Since Argonaut has paid out its full policies' limits for the underlying asbestos-related bodily injury claims, it has been **effectively dismissed** as a party to the District of Columbia action." (emphasis added) This begs the question as to whether Argonaut has in fact been dismissed from the DC action or not? If not, why was Argonaut not dismissed? Did Argonaut file a motion or some other pleading in the D.C. action seeking dismissal which was denied? Argonaut is seeking a ruling from this Court dismissing it with prejudice on the basis that its limits are exhausted. Did the Court in D.C. make any such finding? London Market Insurers have served discovery directed at such issues, to which no response has yet been given (*See*, for example, questions numbered 1-5, 25, 26, 29, 30, and 38 attached to McCabe Affirmation at exhibit 1.)

The loss run reports and the affidavit from the Argonaut Insurance Company representative, Mr. Stuhr, are insufficient to support Argonaut's motion and are generally confusing. These reports list the payments made but do not provide any claim data about these payments. These reports also contain six different claim numbers to support its assertion that payment on these claims exhaust the Argonaut policies' indemnity limits. Argonaut does not explain what each claim number is or represents. Does it refer to one claimant or multiple claimants? It would appear the latter, as the Loss Run lists numerous payments with a variety of

payee names under the individual claim numbers. Other issues/discrepancies between the Stuhr chart and the loss run include:

1. Many more payments are listed on loss run than shown on the Stuhr chart. i.e. with respect to claim #09-017176-0, there are a number of entities that are listed as "Typ Pay 1" which allegedly means indemnity payments, which do not appear on the Stuhr Chart. What were these payments for? It is impossible to tell from the chart or the Loss Run if payments were properly or accurately credited to defense or indemnity for this or any of the other claims. Moreover, it is impossible to tell from the chart if the claims paid were products claims and thus chargeable against aggregates.

2. Both the Loss Run and the chart contain numerous negative entries which are unexplained. For instance, with respect to claim number 59-790318-0, the chart reflects that a payment of $1,766,913 was made to "Maryland" (presumably Maryland Casualty) and subsequently backed out. Why was the payment made and why was it then backed out? The chart also lists a $3,705,718 90 indemnity payment to an unknown Payee. A review of the loss run attached shows that this payment was made to the Travelers and that this payment was also backed out. Why? What were these payments?

3. With respect to claim number 09-017350-0, the Stuhr chart lists two payments of $343,000 to an unknown payee, one of which was then backed out. The loss run reflects these two payments, but does not say who the money was paid to or for what. Did this reflect payments for one individual claim? A group of claimants?

Who was the payee of checks #0153123 and 0153170, which total about $700,000. Why was check 0153123 voided or withdrawn? Why and how were these payments allocated to this policy?

4. Similarly, with respect to claim number 09-017176-0, who was the payee of check #0219508 which was made out for $225,000? Although Argonaut relies on this payment to demonstrate exhaustion, it includes absolutely no details about said payment. Who was this money paid to and for what? The Stuhr chart and loss run on this claim also reflect a negative entry of $75,000 for check #0592514, which is listed as an indemnity payment with no payee. What is this negative entry?

As demonstrated above, there are numerous unanswered questions and missing information which are necessary to enable London Market Insurers to fully respond to Argonaut's Motion for Summary Judgment. In addition to the discovery already filed, London Market Insurers anticipate serving additional discovery based on the materials Argonaut produced in connection with this Motion.

WHEREFORE, Plaintiffs London Market Insurers request that the Court deny Argonaut Insurance Company's motion for summary judgment in its entirety and grant such other relief deemed just and proper.

Respectfully Submitted,

Eileen T. McCabe
**MENDES & MOUNT, LLP**
750 Seventh Avenue
New York, New York 10019-6829
(212)261-8000 (telephone)
(212)261-8750 (facsimile)
**ATTORNEYS FOR PLAINTIFFS**