# EXHIBIT 7

SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF NEW YORK
------------------------------------------------------------ x
CERTAIN UNDERWRITERS AT           :
LLOYD'S LONDON, et al.,           :     **TRAVELERS MEMORANDUM**
                                  :     **OF LAW IN OPPOSITION TO**
    Plaintiffs,                   :     **PEPSIAMERICAS, INC.'S**
                                  :     **MOTION TO STAY**
-against-                         :
                                  :     Index No. 602493/2002
PNEUMO ABEX CORPORATION,          :
et al.,                           :
                                  :
    Defendants,                   :
                                  :
ALBA GENERAL INSURANCE            :
COMPANY, et al.,                  :
                                  :
    Nominal Defendants.           :
------------------------------------------------------------ x

Defendant Travelers Indemnity Company, improperly sued herein as Travelers Casualty and Surety Company ("Travelers"), respectfully submits this memorandum of law in opposition to PepsiAmericas Inc.'s Motion to Stay.

## PRELIMINARY STATEMENT

This case involves the judicial determination, for the first time, of the duties and obligations owed by numerous excess insurers to their insured, Abex Corporation ("Abex"), and each other with respect to certain underlying asbestos claims. PepsiAmericas seeks to stay this case (the "N.Y. Action") in favor of two actions pending in the District Court for the District of Columbia (the "D.C. Actions"), notwithstanding the fact that the core issues at stake in this case have never been litigated in the District of Columbia and are extremely unlikely to be litigated there for some time.

PepsiAmericas seeks to blur the difference between the two separate D.C. Actions pending before Judge Penn. The older of the two actions, filed in 1982, has moved slowly and principally concerns rights and obligations of Abex's primary insurers (the "Primary Policy D.C. Action"). No judicial determination has ever been made with respect to the excess policies in this case. The more recent of the cases, filed less than two weeks before PepsiAmericas filed this motion and nearly three years after this case was first commenced, involves some, but not all of the excess policies (the "Excess Policy D.C. Action"). That case was filed by Whitman Insurance Company, Ltd. ("Whitman"), which is represented by the same counsel that represents PepsiAmericas in this action and is purported to be a wholly-owned subsidiary of PepsiAmericas. The time to respond to the Complaint in that action has not yet run and it is likely the case will ultimately be dismissed at the preliminary stage for lack of subject matter jurisdiction or on other grounds. In sum, to date the judicial resources of the District of Columbia have not been directed to resolution of the issues surrounding Abex's excess insurance program.

At its heart, PepsiAmericas' motion is about avoiding litigation in New York state court. It brings this motion only following Cooper Industries, Inc.'s ("Cooper") unsuccessful attempt to remove the case to federal bankruptcy court and transfer it to the District of Delaware. PepsiAmericas' efforts to stay this case in deference to a later-filed case in the District of Columbia should similarly be rejected.

## STATEMENT OF FACTS

### The Primary Policy D.C. Action

On July 27, 1982, Abex Corporation ("Abex") filed the Primary Policy D.C. Action against three of its primary carriers, Maryland Casualty Company, Liberty Mutual

2

Insurance Company, and Travelers (collectively "the pre-1974 carriers") purportedly to determine the parties' defense and indemnity obligations related to the numerous asbestos-related claims that have been filed against Abex. Since 1985, all filings in the Primary Policy D.C. Action have been filed under seal. In October 1987, third-party complaints were filed against four other primary carriers, Argonaut Insurance Company ("Argonaut"), Continental Insurance Company ("Continental"), Northwestern National Insurance Company, and National Union Fire Insurance Co. of Pittsburgh ("National Union") (with the pre-1974 carriers, the "Primary Carriers").

On February 12, 1996, Abex moved to amend its complaint to assert claims against the Travelers excess policy. The court granted the motion and the amendment was deemed filed on June 21, 1996. In doing so the Court in no way issued a substantive ruling concerning the rights or obligations of the policy. Abex also asserted claims against umbrella policies issued by Argonaut, Continental, and National Union. Thus, until June 1996, none of the excess policies were in any way before the D.C. Court. No other excess insurer has ever been joined in the Primary Policy D.C. Action.

Throughout the last two decades, the Court in the Primary Policy D.C. Action has made a number of rulings solely related to the obligations of the Primary Carriers to defend and indemnify Abex. These rulings include the Primary Carriers' obligations to defend and indemnify Abex and the allocation of costs among Abex's primary insurers. The District Court has repeatedly expressly declined to issue a ruling with respect to any excess policies. *See, e.g.,* Affidavit of Jonathan K. Youngwood ("Youngwood Aff."), Exhibit A (Aug. 7, 2002 Order at 6-7) ("The Court notes that several insurers not directly related to the pending motion have addressed the transition rule. Some have opposed the motion and others have suggested that

3

such a rule might be utilized with respect to excess or umbrella policies. The Court will not address the issue at this time."); Youngwood Aff., Exhibit B (Aug. 31, 2004 Order at 4) ("Less there be any misunderstanding, this Court will not seek to enter orders against excess insurers which are not parties to this action.").

### The N.Y. Action

On July 9, 2002, Certain Underwriters at Lloyd's ("Lloyd's") filed this action in New York Supreme Court against Abex, Cooper, PepsiAmericas, and the excess insurers, including Travelers, purportedly seeking a declaration that: (1) certain insurance policies issued by Lloyd's did not cover asbestos claims asserted against Abex and (2) Cooper had no rights under any of the insurance policies identified in the action. The Complaint is limited to Abex's excess policies and does not concern the primary policies.

On July 30, 2002, Cooper filed a notice of removal of the N.Y. Action in the United States Bankruptcy Court for the Southern District of New York pursuant to 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027. Cooper contended that the bankruptcy court had jurisdiction over the state court action because each claim asserted therein was related to the Federal-Mogul bankruptcy. Cooper and Abex thereafter filed a motion to transfer the case to the Bankruptcy Court for the District of Delaware, where the Federal-Mogul bankruptcy is proceeding. On August 28, 2002, Lloyd's filed a motion to remand to state court and opposition to the motion to transfer. The case was subsequently transmitted to Judge Preska in the District Court for the Southern District of New York. On May 1, 2005, Judge Preska remanded the N.Y. Action to this Court.

4

### The Excess Policy D.C. Action

On June 7, 2005, almost three years after the filing of the N.Y. Action, counsel for Whitman, a wholly owned subsidiary of PepsiAmericas (and represented by the same counsel) filed a complaint that it alleges is "related to" the Primary Policy D.C. Action. The Excess Policy D.C. Action seeks a declaratory judgment to determine the obligations of the excess insurers to pay costs relating asbestos-related suits and claims asserted against Abex. *See* Affidavit of Paul A. Zevnik ("Zevnik Aff."), Exhibit 2. The complaint brings the excess insurance issue before the United States District Court for the District of Columbia for the first time. The complaint names 22 excess carriers as defendants, in contrast to the more than 30 excess carriers named in the N.Y. Action. The complaint also names Abex as a defendant and does not name Cooper, an entity that seeks to recover proceeds from Abex's insurance policies. *Id.*

### ARGUMENT

The Motion to Stay should be denied because neither the parties to the N.Y. Action nor the issues to be determined in it are sufficiently identical to the parties and issues before the Court in the Primary Policy D.C. Action, the only action pending at the time this case was filed. Indeed, the differences between this case and the Primary Policy D.C. Action are underscored by Whitman's own actions in filing the recent Excess Policy D.C. Action, which purportedly brings many, but not all, of Abex's excess insurers into a case it claims is "related to" the original Primary Policy D.C. Action. That later-filed complaint, however, is subject to dismissal and its filing provides no basis for staying this action.

5

I.  **The Prior-Filed Primary Policy D.C. Action Involves Neither The Legal And Factual Issues At Stake Here Nor Many of The Parties To This Case**

While New York courts consider a number of factors in determining whether to stay a state action in favor of a prior-filed federal action, two factors are given particular weight in the analysis – whether there is an identify of parties and whether there are overlapping issues. *See Hope's Windows v. Albro Metal Prods. Corp.*, 460 N.Y.S.2d 580, 581 (1st Dep't 1983), *appeal dismissed*, 59 N.Y.2d 968 (1983). An examination of these factors reveals that the N.Y. Action should not be stayed.

   A.  **There is No Identity of Parties in the N.Y. Action and the Primary Policy D.C. Action**

A central factor considered by New York courts in determining whether to stay an action is whether there is an "identity of parties." Some New York courts have required "complete identity of parties," *Middlebury Office Park Ltd. P'ship v Gen. Datacomm Indus., Inc.*, 670 N.Y.S.2d 482, 483 (1st Dep't 1998); *Bridgemarket Assoc. v City of New York*, 593 N.Y.S.2d 1016, 1017 (1st Dep't 1993); *Abrams v Xenon Indus.*, 535 N.Y.S.2d 616, 617 (1st Dep't 1988), while others have required substantial identity between state and federal actions. *See Asher v. Abbott Labs.*, 763 N.Y.S.2d 555, 556 (1st Dep't 2003); *Goodridge v. Fernandez*, 505 N.Y.S.2d 144, 147 (1st Dep't 1986); *Reliance Ins. Co. v Tiger Int'l, Inc.*, 457 N.Y.S.2d 813, 814 (1st Dep't 1983). Regardless of which test the court applies, the Motion to Stay must be denied because a substantial number of parties to the N.Y. Action are not parties to the Primary Policy D.C. Action.

In its motion, PepsiAmericas disingenuously asserts that this Court may stay the N.Y. Action in favor of the Primary Policy D.C. Action because "all necessary parties to this action are also parties in the D.C. Litigation." Motion to Stay at 6. In essence, PepsiAmericas has ignored the fact that there are two separate D.C. cases and that only one of them – the one

6

that concerns the primary policies – has been the subject to date of judicial attention. The Motion to Stay discusses at length the various issues that have been decided in D.C. and the extensive discovery that the parties to the Primary Policy D.C. Action have undergone. PepsiAmericas, however, fails to recognize that the vast majority of excess carriers were not parties to those decisions nor participated in those discovery efforts. The excess insurers in the N.Y. Action were not made parties to the D.C. Actions until the filing of the Excess Policy D.C. Action on June 7, 2005 – a mere two weeks before the filing of the Motion to Stay and nearly three years after the N.Y. Action was filed. Even after the filing of the Excess Policy D.C. Action, certain excess carriers in the N.Y. Action are still not named as parties in either of the D.C. Actions.

A court should deny a motion to stay where, as here, less than all of the parties in the action subject to the stay motion are properly before the Court adjudicating the earlier filed proceeding. *See Hope's Windows*, 460 N.Y.S.2d at 581 (denying motion to stay where there was not complete identity of parties).

### B. The Issues in the Two Actions are Not Identical

New York courts considering motions to stay also place significance on whether the two actions at issue involve overlapping, identical issues. *See Green Tree Fin. Servicing Corp. v. Lewis*, 720 N.Y.S.2d 843, 844 (2d Dep't 2001). In *Abrams v. Xenon Industries, Inc.*, for example, the Appellate Division stated:

> It is only where the decision in one action will determine all the questions in the other action, and the judgment on one trial will dispose of the controversy in both actions that a case for a stay is presented.

535 N.Y.S.2d 616, 617 (1st Dep't 1988) (citing *Hope's Windows*, 460 N.Y.S.2d at 581); *see also Sears v. Country Developers, Inc.*, 577 N.Y.S.2d 338, 339 (3d Dep't 1991) (denying motion to

7

stay where "there may be some overlap between the state and federal actions, there is not 'complete identity of parties, causes of action and relief sought.'") (citation omitted).

Contrary to PepsiAmericas' contentions, the issues before this Court do not substantially overlap with those involved in the Primary Policy D.C. Litigation. While both cases may relate to Abex's asbestos liabilities, the Primary Policy D.C. Action has been limited for the past two decades to issues of primary insurance, whereas the N.Y. Action seeks to resolve issues of excess insurance. For the past 23 years, the Primary Policy D.C. Action has concerned the resolution of the issue of the proper allocation of defense and indemnity expenses among Abex's seven primary insurance carriers. It is unsurprising, therefore, that: (1) not a single excess carrier played a role in the D.C. Action before 1996; (2) after 1996, only four excess carriers (who were also primary carriers) were named as parties in the D.C. Action; and (3) the Court in the D.C. Action has never issued any order with respect to any of the excess policies.

None of the Court's substantive orders in the Primary Policy D.C. Action have extended to the excess policies. For example, on April 6, 1990, the Court held that primary insurer Maryland Casualty Co. has a duty to defend Abex. *See* Youngwood Aff., Exhibit C. The Court further held that the other primary insurers, Liberty Mutual and Travelers, had a duty to defend Abex. On November 6, 2001, the Court addressed the allocation of defense and indemnity costs among Abex's primary carriers. *See* Youngwood Aff., Exhibit D. On August 7, 2002, the Court affirmed Maryland Casualty's duty to defend Abex, which the Court held is equally shared by the six other primary carriers. *See* Youngwood Aff., Exhibit A (Aug. 7, 2002 Order at 5). The Court also refused to address the issue of how to allocate costs among excess insurers. *Id.* at 6-7. Significantly, in its most recent Order, the Court affirmed that it has not and would not decide any issues relating to Abex's excess carriers: *"Less there be any*

8

*misunderstanding, this Court will not seek to enter orders against excess insurers which are not parties to this action.*" Youngwood Aff., Exhibit B (Aug. 31, 2004 Order at 4) (emphasis added).

### C. The Excess Policy D.C. Action Is Likely To Be Dismissed

A decision to stay this action in favor of the Excess Policy D.C. Action would be particularly problematic in light of the fact that the new action is likely to be dismissed for, *inter alia*, lack of subject matter jurisdiction.

Jurisdiction in the Excess Policy D.C. Action is purportedly based on diversity of citizenship. *See* Zevnik Aff., Exhibit 2 at ¶ 33. However, a cursory examination of the Excess Policy D.C. Action reveals that the elements of diversity jurisdiction are not present. It is well-accepted that federal diversity jurisdiction only exists when there is complete diversity – when no plaintiff is from the same state as any defendant. *See Exxon Mobil Corp. v. Allapattah Servs.*, Nos. 04-70 and 04-79, 2005 U.S. LEXIS 5015, at *15 (June 23, 2005) ("In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."). To satisfy this provision, Whitman gerrymandered its Complaint and misaligned at least one of the parties: Abex, which should be realigned as a plaintiff because its interests are aligned with Whitman Corporation and PepsiAmericas. *See, e.g.*, PepsiAmericas, Inc., Annual Report (Form 10-K), at 6 (Mar. 27, 2001) ("Under the agreement pursuant to which the Company sold Pneumo Abex Corporation in 1988 and a subsequent settlement agreement entered into with Pneumo Abex in September, 1991, the Company has assumed indemnification obligations for certain environmental liabilities of Pneumo Abex, net of any insurance recoveries.") (Youngwood Aff., Exhibit E). With this realignment in place, Abex, incorporated in Delaware, would not be diverse with at least four of the insurers, who are also alleged to be

9

incorporated in Delaware. (American Re-Insurance Co. (Zevnik Aff., Exhibit 2 at ¶ 15); Falcon Insurance Co. (*id.* at ¶ 20); Mt. McKinley Insurance Co. (*id.* at ¶ 24); Hudson Insurance Co. (*id.* at ¶ 26)).

The Complaint will likely be dismissed on this ground alone. *See Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir. 1976) (directing complaint to be dismissed where plaintiff improperly manufactured diversity jurisdiction); *Allstate Ins. Co. v. Turner*, 7:01 Civ. 6973, 2002 U.S. Dist. LEXIS 6022 at *6 (S.D.N.Y. Apr. 8, 2002) ("a plaintiff in a case brought pursuant to § 1332 cannot manufacture jurisdiction by naming a defendant he or she does not actually intend to bring into the case. If diversity is not complete, a plaintiff cannot manipulate the situation by adding a "sham" defendant -- diversity still will not be complete, no matter who is added as a defendant."). With the Excess Policy D.C. Action on such tenuous grounds, it would be improper to enter a stay that defers to it.

## II. THE D.C. ACTION WOULD NOT BE A MORE EFFICIENT FORUM TO RESOLVE THESE ISSUES

Respectfully, more than two decades into this case, the Court in the Primary Policy D.C. Action has not fully resolved the issues before it. Motions filed in the Court have languished for more than a decade. Travelers summary judgment motions, for example, first filed in 1990, have never been ruled upon. *See* Zevnik Aff., Exhibit 1 (Docket Nos. 764 (Continental), 765 (National Union), 766 (Northwestern National), and 767 (Argonaut)). In addition, the Court has expressed some reluctance to address the changing circumstances of the case, including the evolution of New York law on the issue of allocation of defense costs and the proper method of allocation upon exhaustion of responsible carriers. *See, e.g.,* Youngwood Aff., Exhibit A (Aug. 7, 2002 Order at 6-7) (refusing to address issue of how to allocate defense costs upon exhaustion of carriers).

10

The Court in the Primary Policy D.C. Action is not familiar with the issues relating to excess carriers and to ask it to address these issues after 23 years would only slow down the Court's resolution of outstanding issues relating to the primary insurers. The D.C. Court would have to address these issues anew as would the N.Y. Court. Furthermore, since most of the excess insurers were not parties to the D.C. Action they will almost certainly seek to relitigate the prior decisions of the Court so that they may be resolved under current New York law.

## CONCLUSION

For the foregoing reasons, Travelers respectfully requests that the Court deny PepsiAmericas' Motion to Stay this case.

July 12, 2005

Respectfully submitted,

By: _____
Barry R. Ostrager
Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

Margaret H. Warner
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, D.C. 20005-3096
(202) 756-8000

11