**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **WHITMAN INSURANCE COMPANY, LTD.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**TRAVELERS INDEMNITY COMPANY,** *et al*.<br><br>*Defendants*. | **Civil Action No. 1:05CV01125**<br>**John Garrett Penn, Judge**<br><br>**Related Case: 82 CV 2098** |

**ERRATA**

    Attached is PLAINTIFF WHITMAN INSURANCE COMPANY, LTD.'S CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CERTAIN INSURER DEFENDANTS' MOTIONS TO DISMISS OR STAY.

                     Respectfully submitted,

Dated: October 20, 2005         Daniel E. Chefitz (D.C. Bar No. 481420)
                         A.C. Brooke Clagett (D.C. Bar No. 460570)
                         MORGAN, LEWIS & BOCKIUS LLP
                         1111 Pennsylvania Avenue, N.W.
                         Washington, D.C. 20004
                         Telephone:    202.739.3000
                         Facsimile:     202.739.3001
                         *Attorneys for Whitman Insurance Company, Ltd.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**WHITMAN INSURANCE COMPANY, LTD.,**

*Plaintiff,*

**v.**

**TRAVELERS INDEMNITY COMPANY,** *et al.*

*Defendants.*

---

Civil Action No. 1:05CV01125
John Garrett Penn, Judge

Related Case: 82 CV 2098

---

**PLAINTIFF WHITMAN INSURANCE COMPANY, LTD.'S
CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO CERTAIN INSURER DEFENDANTS' MOTIONS TO DISMISS OR STAY**

Daniel E. Chefitz (D.C. Bar No. 481420)
Brooke Clagett (D.C. Bar No. 460570)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202.739.3000
Facsimile: 202.739.3001

*Attorneys for Plaintiff
Whitman Insurance Company, Ltd.*

October 20, 2005

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 2

II.   STATEMENT OF FACTS AND RELATED PROCEEDINGS ...................................... 6

III.  ARGUMENT ........................................................................................................... 11

    A.    Whitman Insurance Has Standing To Bring This Suit Because It Is The Real Party In Interest .................................................................................. 11

        1.    Whitman Insurance Has a Direct Financial Stake in the Outcome of This Dispute as an Insurance Company With Responsibility for the First $250,000 Layer of Coverage for The Policy Years 1978 Through 1985 ................................................................................... 11

        2.    Whitman Insurance Need Not Be in Privity to Pursue a Declaratory Judgment Against Defendant Insurers and Pneumo Abex ..................... 14

    B.    The London Market Insurers' Speculation That Certain Unidentified Lloyd's Names May At One Time Have Been Residents Of Vermont Does Not Affect Diversity Jurisdiction ........................................................ 18

        1.    Whitman Insurance Need Not Be Diverse From Each Underwriting "Name." .......................................................................................... 18

        2.    The London Market Insurers Have Not Presented any Competent Evidence That any Lloyd's Name is a Citizen of Vermont .................... 21

    C.    The Amount in Controversy Requirement Has Been Satisfied .......................... 22

    D.    This Case Includes All Necessary And Indispensable Parties, Namely The Insured, Abex, And All Responsible Insurers That Have Not Satisfied Their Policy Obligations ...................................................................... 24

        1.    The Absence of PAS and Cooper Poses No Bar to According Complete Relief Among Those Already Parties ...................................... 25

        2.    The Fact That Cooper and PAS are Indemnitors of Abex Does Not Make Them Necessary Parties Under Rule 19(a) .................................... 25

        3.    PAS's Status as an Insured Does Not Make It a Necessary Party Under Rule 19(a) ................................................................................ 27

        4.    The Absence of PAS and Cooper Will Not Subject Defendants to a Risk of Incurring Inconsistent Obligations. .............................................. 29

        5.    The Insurers That Have Already Satisfied Their Obligations as a Result of the Related Abex Action Need Not Be Joined ......................... 31

## TABLE OF CONTENTS

**Page**

    E.    Pneumo Abex Cannot Be Realigned With Its Insurer Whitman Insurance Because Their Positions Are In Direct Conflict With Respect To Certain Key Coverage Issues In Dispute ........................................................ 32

    F.    This Court Should Not Stay Its Hand In Deference To The Now-Stayed New York Litigation Brought By Lloyd's ........................................................ 36

IV.    CONCLUSION ........................................................................................ 41

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Abex Corp. v. Maryland Casualty Co.*, 790 F.2d 119 (D.C. Cir. 1986) ..........................................9

*Aetna Casualty & Surety Co. v. Dow Chemical Co.*, 44 F. Supp. 2d 870 (E.D. Mich. 1999) ...................................................................................................................................19

*Aetna Casualty & Surety Co. v. Rasa Management Co.*, 621 F. Supp. 892 (D. Nev. 1985) ...................................................................................................................................29

*Allstate Insurance Co. v. Administratia Asigurarilor de Stat*, 948 F. Supp. 285 (S.D.N.Y 1996) ..................................................................................................................................14

*America Casualty Co. of Reading, Pa. v. Continisio*, 819 F. Supp. 385 (D.N.J. 1993) ...............39

*American Re-Insurance Co. v. Insurance Commission of Cal.*, 527 F. Supp. 444 (C.D. Cal. 1981)...................................................................................................................................15

*American Motorist Insurance Co. v. Trane Co.*, 657 F.2d 146 (7th Cir. 1981) ...........................33

*Bankers Trust Co. v. Old Republic Insurance Co.*, 959 F.2d 677 (7th Cir. 1992)........................15

*Bath Iron Works Corp. v. Certain Member Companies of the Institute of London Underwriters*, 870 F. Supp. 3 (D. Maine 1994).................................................................20

*Brown v. American International Group, Inc.*, 339 F. Supp. 2d 336 (D. Mass. 2004) ................27

*Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83 (1993)................................................................4

*Certain Underwriters at Lloyd's London, England v. Layne*, 26 F.3d 39 (6th Cir. 1994)............19

*Chamberlain v. Allstate Insurance Co.*, 931 F.2d 1361 (9th Cir. 1991)......................................40

*Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co.*, 177 F.3d 210 (3d Cir. 1999) ...................................................................................................................................19

*City of Indianapolis v. Chase National Bank*, 314 U.S. 63 (1941) ...............................................33

*Cloverleaf Standardbred Owners Association v. National Bank of Wash.*, 699 F.2d 1274 (D.C. Cir. 1983) ..................................................................................................................25

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)..................37

*Corfield v. Dallas Glen Hills LP*, 355 F.3d 853 (5th Cir. 2003) ..................................................18

*Disabled in Action v. Southeastern Pa. Transp. Auth.*, 224 F.R.D. 601 (E.D. Pa. 2004) ............32

*E.R. Squibb & Sons, Inc. v. Accident & Casualty Insurance Co.*, 160 F.3d 925 (2d Cir. 1998), *on remand*, 1999 WL 350857 (S.D.N.Y. June 2, 1999), *aff'd*, 241 F.3d 154 (2d Cir. 2001) ............................................................................................................................19

*Federal Kemper Insurance Co. v. Rauscher*, 807 F.2d 345 (3d Cir. 1986)................................17

*Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67 (D.D.C. 2001)........................................38

*Gardiner v. Virgin Islands Water & Power Authority*, 145 F.3d 635 (3d Cir. 1998)...................26

*Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) ...............................................40

*Hawkeye-Sec. Insurance Co. v. Schulte*, 302 F.2d 174 (7th Cir. 1962)........................................17

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) ........................22

*Hurley v. Heilig*, 28 F. Supp. 2d 33 (D.D.C. 1998) ......................................................................38

*Indiana Gas Co. v. Home Insurance Co.*, 141 F.3d 314 (7th Cir. 1998).......................................20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................12

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ....................................16

*Maryland Casualty Co. v. W.R. Grace and Co.*, 23 F.3d 617 (2d Cir. 1993)...............................33

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .................................38

*Myles Lumber Co. v. CNA Finance Corp.*, 233 F.3d 821 (4th Cir. 2000)....................................40

*National Union Fire Insurance Co. v. Rite Aid of South Carolina, Inc.*, 210 F.3d 246 (4th Cir. 2000) ....................................................................................................................................28

*Phico Insurance Co. v. Providers Insurance Co.*, 888 F.2d 663 (10th Cir. 1989) .......................15

*Provident Life & Acc. Insurance Co. v. Transamerica-Occidental Life Insurance Co.*, 850 F.2d 1489 (11th Cir. 1988) ..................................................................................................15

*Robertson v. Cease*, 97 U.S. 646 (1878)......................................................................................21

*Rochester Methodist Hospital v. Travelers Insurance Co.*, 728 F.2d 1006 (8th Cir. 1984).........26

*Saylab v. Harford Mutual Insurance Co.*, 271 F. Supp. 2d 112 (D.D.C. 2003)...........................35

*Smith v. Washington*, 593 F.2d 1097 (D.C. Cir. 1978) .................................................................22

*Snodgrass v. Provident Life and Accident Insurance Co.*, 147 F.3d 1163 (9th Cir. 1998) ..........40

*St. Paul Fire & Marine Insurance Co. v. F.H.*, 117 F.3d 435 (9th Cir. 1997) .............................40

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938) .......................................22

*Texas v. Florida*, 306 U.S. 398 (1939) ........................................................................................21

*Thompson v. Gillen*, 491 F. Supp. 24 (E.D. Va. 1980) ................................................................21

*Transamerica Corp. v. Reliance Insurance Co. of Ill.*, 884 F. Supp. 133 (D. Del. 1995) ...........20

*Truck Insurance Exch. v. Ashland Oil, Inc.*, 951 F.2d 787 (7th Cir. 1992) ..................................17

*U.S. Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 955 F.2d 1085 (6th Cir. 1992) .............33

*United Services Automobile Association v. Royal-Globe Insurance Co.*, 511 F.2d 1094
(10th Cir. 1975) ............................................................................................................................15

*Weible v. United States*, 244 F.2d 158 (9th Cir. 1957) ................................................................21

*Western Maryland Railway Co. v. Harbor Insurance Co.*, 910 F.2d 960 (D.C. Cir. 1990) ..........28

*White v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165 (4th Cir. 1990) ............17

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ..........................................................................39

*Wymer v. Lessin*, 109 F.R.D. 114 (D.D.C. 1985) ........................................................................22

## STATE CASES

*Atkinson v. Atkinson*, 326 S.E.2d 206 (Ga. 1985) .......................................................................16

*Baca v. New Mexico State Highway Department*, 486 P.2d 625 (N.M. Ct. App. 1971) ..............16

*Christian v. Sizemore*, 383 S.E.2d 810 (W.Va. 1989) .................................................................16

*Community Action of Greater Indianapolis, Inc. v. Ind. Farmers Mutual Insurance Co.*,
708 N.E.2d 882 (Ind. Ct. App. 1999)............................................................................................16

*Credit General Ins. Co. v. Marine Midland Bank, N.A.*, No. C-3-86-561, 1992 WL.
1258518 (S.D. Ohio)......................................................................................................................15

*General Refrigeration & Plumbing Co. v. Goodwill Industrial*, 333 N.E.2d 607 (Ill. App. 1975) ................................................................................................................................19

*Government Employees Insurance Co. v. New South Insurance Co.*, 459 S.E.2d 817 (N.C. Ct. App. 1995)......................................................................................................16

*Great Atlantic Life Insurance Co. v. Harris*, 723 S.W.2d 329 (Tex. App. 1987) .........................14

*Howard v. Montgomery Mutual Ins. Co.*, 805 A.2d 1167 (Md. Ct. Spec. App. 2002)..................16

*Koken v. Legion Insurance Co.*, 831 A.2d 1196 (Pa. Commw. Ct. 2003).....................................14

*Koken v. Reliance Insurance Co.*, 846 A.2d 167 (Pa. Commw. Ct. 2004)....................................14

*National Sec. Fire & Casualty Co. v. Poskey*, 828 S.W.2d 836 (Ark. 1992) ...............................16

*Reagor v. Travelers Insurance Co.*, 415 N.E.2d 512 (Ill. Ct. App. 1980)....................................16

*Venetsanos v. Zucker, Facher & Zucker*, 638 A.2d 1333 (N.J. Super. Ct. App. Div. 1994).........14

*Whitney v. Whitney*, 440 N.E.2d 1324 (N.Y. 1982)........................................................................40

## DOCKETED CASES

*Abex Corporation v. Maryland Casualty Company*, C.A. No. 82-2098 (D.D.C.)...........................2

*Certain Underwriters at Lloyd's, London v. Pneumo Abex Corp.*, Index No. 602493/02 (N.Y. Sup. Ct.) ...............................................................................................................6

## FEDERAL STATUTES

28 U.S.C. § 1332.............................................................................................................................21

28 U.S.C. § 2201.............................................................................................................................15

## MISCELLANEOUS

*Couch on Insurance 3d* (2003) ......................................................................................................14

13B Wright, Miller & Cooper, *Federal Practice and Procedure*..................................................21

15 *Moore's Federal Practice* (2005) .............................................................................................22

Fed. R. Civ. P. 19 ...........................................................................................................................25

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**[1]

For more than two decades this Court has been adjudicating disputes between Abex

Corporation, now known as Pneumo Abex LLC ("Abex"), and various of its insurers regarding

the insurers' obligation to pay for claims, suits, actions, causes of action, and demands against

Abex alleging bodily injury due to exposure to friction products allegedly containing asbestos

("Abex asbestos suits").  This asbestos coverage dispute is known as *Abex Corporation v.*

*Maryland Casualty Company,* C.A. No. 82-2098 (D.D.C.), which is a related action ("*Related*

*Abex Action*").  Whitman Insurance, Ltd., a Vermont insurance company, has been financially

responsible for Abex asbestos suits alleging bodily injury during the policy years 1978 through

1985.  Whitman Insurance contends that it has fully satisfied its financial obligation for the Abex

asbestos suits.  The defendants contend otherwise.  There is accordingly, a case and controversy.

The case and controversy is ripe for adjudication because Whitman Insurance contends that its

financial obligation for the Abex asbestos suits has been fully satisfied.  Whitman Insurance

wants to obtain a judicial declaration relieving it of any future financial obligation for the Abex

asbestos suits.  It has brought this declaratory judgment action against Abex, the insured, and

---

[1]    Lloyd's, in addition to filing its own motion to dismiss, also joined in First State's motion to dismiss.  The following defendants also joined in one or more of the motions to dismiss:  Allianz Underwriters Insurance Company, American Reinsurance Corporation, Associated International Insurance Company, California Union Insurance Company, Employers Mutual Insurance Company, Federal Insurance Company, Fireman's Fund Insurance Company, Hudson Insurance Company, Mt. McKinley Insurance Company, National Surety Corporation, Stonewall Insurance Company, and TIG Insurance Company.  The motions to dismiss are duplicative, overlapping and disorganized.  This opposition deals with each of the supposed objections to this Court's jurisdiction in a consolidated fashion, without direct reference to each of the various defendants' motions, in light of their disorganized and duplicative nature.

Not all defendants have filed or joined the motions.  National Union Fire Insurance Company of Pittsburgh, PA., AIU Insurance Company, American Home Assurance Corporation, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, and New Hampshire Insurance Company have all answered the Amended Complaint and have thus joined issue.

To add further complexity, two insurance companies that subscribed to the Lloyd's/London Market policies – Compaginie Europeanne D'Assurances Industrialles, S.A. and Brittany Insurance Company – have both answered and purported to join in Lloyd's motion to dismiss.

against other responsible insurers, in order to assure finality as respects direct and indirect liability for Abex asbestos suits, including potential contribution claims and claims regarding exhaustion of underlying insurance.

Whitman Insurance has borne financial responsibility for $250,000 per occurrence in liability for the policy years 1978 through 1985, as depicted in the coverage chart attached hereto at Tab A. National Union participates in the same policy obligations as Whitman Insurance. Defendants First State and Lloyd's "sit above" the Whitman Insurance/National Union layer and should now be paying for the Abex asbestos suits. None of these defendants to date has paid a dime toward the Abex asbestos suits. Declaration of Daniel E. Chefitz ("Chefitz Decl."), ¶17. By this action, Whitman Insurance seeks a declaration that its obligations that lie "underneath" First State, Lloyd's, Associated International, New Hampshire, Granite State, National Surety, Federal, AIU, International, Fireman's Fund, Employers Mutual, Mt. McKinley, National Union, California Union, Falcon, Allianz, and Hudson, have been satisfied. Defendants Lloyd's, Travelers, Stonewall, and American Re-Insurance Corporation sit "horizontally" to Whitman Insurance with policies issued in the years 1952 through 1977 that are currently "ripe" and should be paying for the Abex asbestos suits. None of Lloyd's, Stonewall, or American Re-Insurance has paid a dime toward the Abex asbestos suits. Travelers admits that it is obligated to pay for the asbestos suits, but asserts the right to "contribution" from others, specifically including the 1978 through 1985 policy years (and, accordingly, Whitman Insurance as the financially responsible party). Whitman Insurance seeks a declaration that neither now nor in the future will it bear any financial responsibility for contribution claims asserted by these defendants.

---

Pneumo Abex LLC, the insured against which the Abex asbestos suits have been asserted, has neither answered nor joined the motions to dismiss.

The Moving Defendants do not dispute that Whitman Insurance bears financial responsibility for the first $250,000 in loss for the 1978 through 1985 policy years. Nor do they dispute that Whitman Insurance wants to be relieved of this obligation. Nor can the defendants in fairness assert that there is no case or controversy among the parties to this case. Travelers has itself asserted contribution claims against the 1978 through 1985 policy years for which Whitman Insurance bears financial responsibility. And, Lloyd's has brought a competing action in New York asserting similar contribution claims against the 1978 through 1985 insurers.[2] Accordingly, the Moving Defendants cannot credibly contend that there is no "case or controversy" over financial responsibility for the Abex asbestos suits, since they are vigorously litigating that very "controversy" both in this Court and elsewhere.

So, faced with this stark reality that this is in fact the type of "dispute" over which this Court has jurisdiction, and the further reality that this is in fact the same dispute that this Court has been handling since 1982 in the *Related Abex Action*, the Moving Defendants have resorted to a few hyper-technical reasons why they contend this Court should dismiss this case.

1.     They contend that Whitman Insurance is not a "real-party-in-interest" and thus lacks standing to sue, even though (a) Whitman Insurance has paid over $9,000,000 in loss from the Abex asbestos suits, (b) has not been released by any party in this case from the Abex asbestos suits, and (c) its layer of coverage was sued in the *Related Abex Action* for exactly the same reason that Whitman Insurance now seeks relief here.[3]

---

[2]     The New York action has been stayed in favor of this action and the *Related Abex Action*.

[3]     Travelers is especially two-faced on this issue since it is asserting contribution claims in the *Related Abex Action* against the 1978 through 1985 policy years for which Whitman Insurance has financial responsibility. Apparently, Travelers thinks that one can actually be sued over an issue yet, at the same time, not have standing to bring an action for a declaratory judgment. Such a notion is, of course, nonsense. *Cf. Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 96 (1993) ("If . . . a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction of a [claim for a declaratory judgment] )."

2.      Lloyd's imagines that there might be some as-yet-unidentified Lloyd's "names" resident in Vermont, thus destroying diversity of citizenship – even though Lloyd's later concedes that the *only* jurisdictionally significant Lloyd's subscriber sued in the amended complaint is its "lead underwriter."  Lloyd's concedes, of course, that this "lead underwriter" is a non-Vermont citizen, thus exposing this argument as a sham.

3.      Lloyd's argues that this case fails to meet the $75,000 jurisdictional amount, even though (a) Whitman Insurance has paid over $9,000,000 for Abex asbestos suits, (b) this  Court has already ruled on or has before it in the Related Abex Action policies responsive to Abex asbestos suits with limits of liability in excess of $75,000,000 or 1,000 times the amount in controversy requirement, and (c) the insurance policies issued by the defendants in this case collectively account for over $750,000,000 in limits of liability, or 10,000 times the jurisdictional amount**.**

4.      The Moving Defendants point to other so-called "indispensable parties," apparently forgetting that, after 23 years, this Court is well aware that Abex is the sole party necessary to resolve an insurance dispute involving the "Abex asbestos suits," and ignoring the fact that this Court may not wish to re-open already settled matters at the request of the contract-breaching Moving Defendants.

Finally, there is no merit to Moving Defendants' argument that this case should be stayed in favor of an action commenced by Lloyd's in New York state court.  That court has already determined that, given the *Related Abex Action* "over which District Judge Penn has presided for approximately 20 years" and which has resulted in "trials, discovery, and numerous decisions,"

with other significant issues pending, "[t]he equities militate in favor of granting a stay [of the action before it] in favor of the D.C. federal litigation." *Certain Underwriters at Lloyd's, London v. Pneumo Abex Corp.*, Index No. 602493/02, slip op. at 3 (N.Y. Sup. Ct. July 29, 2005) (hereafter *"Lloyd's Action"*). Accordingly, a stay of this proceeding is inappropriate.

## II.      STATEMENT OF FACTS AND RELATED PROCEEDINGS

Whitman Insurance is a captive insurance company that was incorporated as IC Industries Insurance Company, Ltd. in 1978 and later changed its name to Whitman Insurance. Declaration of Archie L. Meairs ("Meairs Decl.") at ¶2. Whitman Insurance accepted coverage through which Whitman Insurance has a direct financial responsibility for administering and paying Abex asbestos suits that implicate the first $250,000 layer of coverage from 1978 through 1985. Meairs Decl. ¶¶5-7.

Unlike typical insurance policies that have a single limit of liability, the primary policies insuring Abex from 1980 through 1985 purport to have a so-called "split limit" by which the $1,000,000 limit of liability is split between a first layer of $250,000 and a second so-called "excess" layer of $750,000. Meairs Decl. ¶6. Whitman Insurance has financial responsibility for certain claims that fall within the first $250,000 layer. Although Whitman Insurance technically wrote reinsurance policies that reinsured some or all of the $250,000 layer, depending upon the policy year, many claims handling activities were delegated to Whitman Insurance by National Union because of its ultimate financial responsibility in the $250,000 layer. Meairs Decl. ¶7. For example, Abex asbestos suits that fell within the first $250,000 layer were submitted to a third party administrator ("TPA"), which processed and paid the claims. *Id.* A zero balance account, funded directly by Whitman Insurance, paid for all of the TPA's costs in administering and paying all such Abex asbestos suits. *Id.* In stark contrast to a typical reinsurance relationship -- where the primary insurer would manage and pay claims directly to the insured and then

submit its own claims to its reinsurer for reimbursement based on the reinsurer's share -- in the Abex coverage program, Whitman Insurance was responsible for managing and paying the claims directly to the insured, Abex.  Thus, Whitman Insurance has been delegated the responsibility for managing and paying claims that impact the first $250,000 layer.

Over the years, Whitman Insurance has paid Abex asbestos suits consistent with a one occurrence approach and the coverage rulings of this Court as set forth in the *Related Abex Action*.  Meairs Decl. ¶8.  To date, Whitman Insurance has paid all of its indemnity limits and supplemental defense costs based on a one occurrence approach, totaling more than $9,000,000 for such claims. *Id*.  Whitman Insurance believes that it has fully satisfied its obligations under the first $250,000 layer.  Many of the Moving Defendants have stated in court filings and in correspondence that they disagree and believe that the first $250,000 layer has not been fully satisfied and that Whitman Insurance must continue to pay for Abex asbestos suits.  According to Lloyd's, Whitman Insurance is responsible for a significantly large amount of the $99,000,000 in past indemnity costs alone that have been billed to Lloyd's.[4]  Chefitz Decl. ¶¶6, 12. Accordingly, a present case or controversy exists between Whitman Insurance and the defendants exceeding $75,000 in damages, and Whitman Insurance filed this action to protect its financial interests.  The central issue in this action concerns whether Whitman Insurance or the defendant insurers are obligated to pay for past unreimbursed and future defense and indemnity costs arising out of the Abex asbestos suits.

While Whitman Insurance is today a wholly-owned subsidiary of PepsiAmericas, Inc.

---

[4]     Before this Court is a motion for partial summary judgment filed by Whitman Insurance on July 14, 2005, which explains why Illinois law must be applied to the so-called "number of occurrence" issue and why under such law Whitman Insurance has completely satisfied its coverage obligations because all Abex asbestos-related suits must be treated as arising out of a single occurrence. [*See* Dkt #19].  As a courtesy to Moving Defendants, Whitman Insurance has consented to an extension of the time for all parties to respond to the pending summary judgment motion to November 30, 2005, even though the summary judgment motion was filed well in advance of defendants' motions to dismiss.

("PAS"), it has its own interests as an insurance company that are distinct from PAS's interests as a bottler and distributor of soft drinks. Meanwhile, Whitman Insurance has no relationship with Abex other than an insured-insurer relationship. Indeed, there are a number of key coverage questions that have yet to be decided by this Court on which the interests of Whitman Insurance, through its responsibility for a portion of the National Union layer, and Abex are directly adverse. For example, the issues of whether the Whitman Insurance layer has responsibility to pay Abex's in-house defense costs, costs associated with so-called "conspiracy only" claims, and indemnification costs associated with certain settled cases remain contested in the *Related Abex Action*.[5]

In 1982, Abex filed the *Related Abex Action* in this Court. The *Related Abex Action* concerns the same subject matter as that presented by this lawsuit, *i.e.*, the existence and scope of the obligations of various insurers to pay for the Abex asbestos suits. The *Related Abex Action* has included bench trials, fact discovery, and dozens of rulings and opinions. All of the rulings made by this Court in the *Related Abex Action* apply directly to this case. The *Related Abex Action* has resulted, directly or indirectly, in making over $400 million of insurance available for the Abex asbestos suits. Essentially every conceivable factual and legal issue already has been decided or a motion is currently pending before this Court in this action, in the *Related Abex Action*, or in both cases.

In the July 29, 2005, Order staying the duplicative New York lawsuit in deference to the related actions before this Court, the New York Supreme Court (Trial Term) correctly determined that this Court is the most appropriate forum to resolve all remaining coverage issues arising from the Abex asbestos suits. Specifically, the New York court correctly held that (1) the

---

[5]     *See, Related Abex Action*, Dkt ## 986, 987, 1172.

parties and issues in the related actions before this Court and the duplicative New York action are sufficiently similar to warrant a stay, (2) judicial economy will be served by the parties proceeding in the District of Columbia, where more than 20 years of litigation related to the policies of insurance at issue already has occurred, (3) a stay of the NY action will avoid the possibility of conflicting orders, (4) numerous motions are already pending before this Court, and (5) this Court has previously refrained from issuing orders related to the excess carriers only because they were not parties to the *Related Abex Action*, which, as the New York court observed, is an "impediment [that] no longer exists." *Lloyd's Action*, slip op. at 5.

Many of the key coverage issues applicable to the parties in this case have already been resolved in the *Related Abex Action*. For example, the United States Court of Appeals for the District of Columbia Circuit ruled that "Abex is entitled to defense by the insurance companies if the underlying tort complaints 'permit proof' of the facts establishing coverage, or if the complaints do not exclude the possibility that injury-in-fact occurred during the policy period." *Abex Corp. v. Maryland Cas. Co*., 790 F.2d 119, 128-29 (D.C. Cir. 1986). As the New York Court noted in staying the *Lloyd's Action*, the D.C. Circuit held that, "as long as there remains a possibility – however remote – that injury occurred during the policy periods of each insurer, the insurers must defend Abex. Because it is possible for asbestos-induced injuries to occur at any time following initial exposure, the tort complaints against Abex 'permit proof' that the injury-in-fact occurred during the policy periods of all three insurers. We hold, therefore, that the insurers must immediately fulfill their duty to defend Abex. This obligation will continue until the insurers establish that, as a matter of law, there is no possibility that they will have to indemnify Abex." *Abex Corp. v. Maryland Cas. Co*., 790 F.2d 119, 129 (D.C. Cir. 1986); *Lloyd's Action*, slip op. at 2.

Moreover, as the New York Court also noted, this Court already has determined that all of the defendant insurers' policy periods are triggered by the Abex asbestos suits. *Id*. at 4. This Court also has addressed the exhaustion of the Liberty Mutual Insurance Company insurance coverage limits for Abex asbestos suits as of June 1, 2000. [*Related Abex Action,* Dkt #1616]. Many of the Lloyd's policies sit directly in excess of the Liberty Mutual policies that exhausted on June 1, 2000, and Lloyd's has raised underlying exhaustion as a coverage defense.

The New York Court rejected the arguments of Lloyd's and other insurers in opposition to the stay that "the vast majority of excess carriers were not parties to those decisions nor participated in those discovery efforts." *Lloyd's Action*, slip op. at 3. The court pointed out that "complete identity of parties is not necessary to warrant a stay." *Id*. at 5. Moreover, as noted above, the New York Court pointed out that this Court had refrained from issuing certain orders only because of the absence of excess carriers, but that this problem had been remedied by the filing of this action. *Id*.

In rejecting Lloyd's effort to bring competing litigation in New York, the New York Court also relied on the fact that the defendant insurers' policies follow form to the policies that are presently being adjudicated in the *Related Abex Action*. The terms of all of the excess policies at issue in this case "follow the form," either wholly or to a substantial degree, of the primary policies that have been at issue in the *Related Abex Action*. For example, Lloyd's policy 551 URA 0059 is one of five of the Lloyd's excess policies at issue in this case, which provide at least $70 million of per-occurrence limits, that follows the form of the terms and conditions of National Union umbrella policy BE 1338972. Those Lloyd's excess policies, as well as the National Union umbrella policy, unequivocally incorporate the terms and conditions of the National Union primary policy, GLA 9184801, because the National Union umbrella policy has

a "Broad As Primary" endorsement.  This National Union umbrella policy, like its primary

policy, is and has been at issue in the *Related Abex Action*.  In addition, many of the remaining

Lloyd's policies sit directly above policies issued by Maryland Casualty and Liberty Mutual that

were litigated extensively in the *Related Abex Action*.

Similarly, the American Reinsurance ("American Re") excess policy M0372960 (policy

period:  March 1, 1971 to March 1, 1974) attaches above a Travelers umbrella policy, T-Cup

957503 71, and incorporates the definitions, conditions, and exclusions contained in that policy.

The underlying Travelers umbrella policy, which is also at issue in this case, is being adjudicated

in the *Related Abex Action*.  Consequently, the interpretation of the terms and conditions of both

the American Re and the Travelers policies is already before this Court in the *Related Abex

Action*.

These facts caused the New York Court to reject Lloyd's argument that the New York

action should be permitted to go forward because it involved excess rather than primary policies.

The court held that "[t]he actions are not so dissimilar as to preclude a stay hereof, as the excess

policies underlying this action follow the form of the primary policies underlying the D.C.

actions."  *Lloyd's Action*, slip op. at 4.

## III.   ARGUMENT

### A.   Whitman Insurance Has Standing To Bring This Suit Because It Is The Real Party In Interest.

#### 1.   Whitman Insurance Has a Direct Financial Stake in the Outcome of This Dispute as an Insurance Company With Responsibility for the First $250,000 Layer of Coverage for The Policy Years 1978 Through 1985.

Three of the four motions to dismiss assert that Whitman Insurance does not have

standing to bring this action.  The principal arguments proffered in support of this assertion are

(1) Whitman Insurance has not alleged how it "has anything at all at stake in this lawsuit" (London Market Brief at 13, First State Brief at 19); and (2) Whitman Insurance does not have a contractual relationship with the Moving Defendants (London Market Brief at 13, 15; Travelers Brief at 8, First State Brief at 19), or with Pneumo Abex (London Market Brief at 14, First State Brief at 18). The first argument is incorrect as a matter of fact. The second is legally irrelevant to this suit for a declaratory judgment.

As the United States Supreme Court has explained, the standing inquiry focuses on three elements: First, the plaintiff must have suffered an "injury in fact" – *i.e.*, an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual" or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of – *i.e.*, the injury has to be fairly traceable to the challenged action of the defendants, and not the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Contrary to Moving Defendants' uninformed assertion that Whitman Insurance "does not have a stake in the matter," it cannot be disputed that Whitman Insurance has suffered and will continue to suffer an "injury in fact" unless the requested relief is granted. Whitman Insurance has to date paid more than $9,000,000 for Abex asbestos suits. Meairs Decl ¶8.[6] In response to demands for coverage by Abex, the excess insurers have taken the position that Whitman

---

[6]    That is $9,000,000 more than any of the following Moving Defendants has paid for Abex asbestos suits: Lloyd's, London Market Companies, American Re-Insurance Corporation, First State, Allianz Underwriters Insurance Company, Associated International Insurance Company, California Union Insurance Company, Employers Mutual Insurance Company, Federal Insurance Company, Fireman's Fund Insurance Company, Hudson Insurance Company, Mt. McKinley Insurance Company, National Surety Corporation, Stonewall Insurance Company, and TIG Insurance Company. In fact, not a single Moving Defendant except Travelers has paid one dime toward the Abex asbestos suits. The transparent disingenuity of Moving Defendants' "injury in fact" argument speaks volumes about why Whitman Insurance was compelled to bring this action.

Insurance's $250,000 layer must continue to pay for Abex's asbestos-related suits because each suit and claim should be treated as arising from a separate occurrence. This position is contrary to the law of Illinois, which is where each and every one of these insurance contracts was negotiated, drafted, brokered, issued, and delivered. *See* Am. Compl., ¶¶ 76, 88; Meairs Decl. ¶9. Accordingly, in its amended complaint, Whitman Insurance seeks a declaration, among other things, that "all Abex asbestos-related suits and claims arise out of one 'occurrence' covered under the Policies." Am. Compl. ¶78.[7]

Nor is there any dispute that the harm that Whitman Insurance will suffer, absent the relief requested, is "actual" as opposed to "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 561. Abex has billed the excess insurers for more than $99 million in past unreimbursed costs. Under Moving Defendants' legal theory, those costs will be borne in whole or in part by Whitman Insurance's $250,000 layer because that layer is alleged not to contain an applicable aggregate limit.[8]

With respect to the second prong of the *Lujan* test, there is a clear causal connection between the injury about which Whitman Insurance complains and the conduct of the defendants. Absent defendants' assertions, Whitman Insurance would be deemed to have satisfied its obligations for Abex asbestos suits by its past payment of more than $9,000,000 in defense costs and single occurrence indemnity limits for such claims. In contrast, if defendants' position that there are multiple occurrences were to prevail, Whitman Insurance's $250,000 layer could be held responsible for present and future Abex asbestos suits.

For the same reasons, it is beyond question that the third element of the standing test is

---

[7]     Similarly, as to Abex, Whitman Insurance seeks "a declaration and order that plaintiff has no obligation to Abex in connection with the Abex asbestos-related suits or claims." *Id.*

[8]     *See* Meairs Decl. ¶6.

met. A favorable decision holding that the Abex asbestos suits involve only one occurrence would redress the injury that Whitman Insurance would otherwise suffer. Thus, Whitman Insurance has standing to bring this action because it clearly has a "stake in the matter," and Moving Defendants' arguments to the contrary are dead wrong, as well as disingenuous, given their own lack of "skin in the game" and their obvious intent and incentive to keep Whitman Insurance paying while avoiding their own obligations.

      **2.**      **Whitman Insurance Need Not Be in Privity to Pursue a Declaratory Judgment Against Defendant Insurers and Pneumo Abex.**

Moving Defendants argue that Whitman Insurance has no standing because, as a rule, there is no privity of contract between a reinsurer and underlying insureds, and that "this lack of privity is fatal to Whitman's claims against [defendants]." Travelers Brief at 8; s*ee* London Market Brief at 14-15; First State Brief at 18-19. This argument fails for two reasons.

First, there is no requirement that privity of contract exist in a case between a reinsurer and an underlying insured. *See Couch on Insurance* 3d § 9:30, at 9-79 (2003). In fact, courts have expressly found that an insured can proceed directly against a reinsurer, despite having no contractual relationship. *See Venetsanos v. Zucker, Facher & Zucker*, 638 A.2d 1333, 1337-40 (N.J. Super. Ct. App. Div. 1994) (permitting insured to proceed against reinsurer, despite lack of contractual privity); *Great Atl. Life Ins. Co. v. Harris*, 723 S.W. 2d 329, 332-33 (Tex. App. 1987) (same); *Allstate Ins. Co. v. Administratia Asigurarilor de Stat*, 948 F. Supp. 285, 307-08 (S.D.N.Y 1996) (holding that reinsurer might be directly liable to underlying insured under an implied-in-fact contract); *Koken v. Reliance Ins. Co.*, 846 A.2d 167, 171-72 (Pa. Commw. Ct. 2004) (permitting insureds to recover directly from reinsurer); *Koken v. Legion Ins. Co.*, 831 A.2d 1196, 1237-38 (Pa. Commw. Ct. 2003) (permitting policyholders to proceed against reinsurer because insurer was a fronting company and reinsurer handled all claims); *see also*

*American Re-Insurance Co. v. Insurance Comm'n of Cal.*, 527 F. Supp. 444, 453 n.16 (C.D. Cal. 1981).

Second, the lack of privity between Whitman Insurance and defendants is irrelevant because Whitman Insurance is not suing defendants under a reinsurance contract.  Rather, Whitman Insurance is seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, to determine the respective rights and obligations of the parties regarding the Abex asbestos suits.  Courts have recognized that an insurer has standing to seek a declaratory judgment against other insurers, even where there is no privity among them.

In *United Services Auto. Assoc. v. Royal-Globe Ins. Co.*, 511 F.2d 1094 (10th Cir. 1975), for example, a plaintiff insurer sought a declaration that the defendant insurer, rather than the plaintiff, was responsible for paying a claim.  The defendant insurer argued that the plaintiff lacked standing because it was neither a party to, nor a third party beneficiary of, the policy between the defendant and its insured.  *Id.* at 1096.  The Tenth Circuit rejected the defendant's privity argument, holding that the plaintiff insurer had standing "because this action is not one to enforce a contract but rather seeks a declaration of the relative rights and duties" of the parties, each party had a stake in the outcome (*i.e.*, a determination as to whose policy was responsible to provide coverage), and their interests were adverse.[9]  *Id.*; *see Phico Ins. Co. v. Providers Ins. Co.*, 888 F.2d 663, 666-67 (10th Cir. 1989).

Courts have also found standing, despite a lack of privity, in declaratory judgment actions against excess insurers.  In *Bankers Trust Company v. Old Republic Insurance Company*, 959

---

[9]     Although the Eleventh Circuit case of *Provident Life & Acc. Ins. Co. v. Transamerica-Occidental Life Ins. Co.*, 850 F.2d 1489 (11th Cir. 1988), criticizes the Tenth Circuit's approach in *United Services* on the facts of that case, the Eleventh Circuit nonetheless notes that the *United Services* approach would be correct if the insurers had joined the insured in their action.  *See id.* at 1492-93.  Here, that requirement is met and the Eleventh Circuit's concerns do not apply.  *See Credit Gen. Ins. Co. v. Marine Midland Bank, N.A.*, No. C-3-86-561, 1992 WL 1258518, at *10 (S.D. Ohio Aug. 24, 1992) (distinguishing *Provident Life* because the insured was named as a party).

F.2d 677 (7th Cir. 1992), the plaintiff in an underlying negligence suit brought a declaratory judgment action against the excess insurer of the defendant in the underlying action. The plaintiff sought a declaration that, if it prevailed against the defendant in the underlying case, the excess insurer would have to indemnify the defendant up to the policy limits. *Id*. at 679-80. At the time the plaintiff filed for declaratory judgment, the underlying action was still pending and awaiting trial. Despite the lack of an existing judgment, the Seventh Circuit nonetheless found that the plaintiff had presented an actual case or controversy under Article III. The court noted that, even if the plaintiff lost the underlying suit against the defendant, rendering the declaratory judgment action moot, "the victim of an insured's tort, even though he is not a third-party beneficiary of his injurer's insurance policy, has a legally protectable interest in that policy before he has reduced his tort claim to judgment." *Id*. at 682. Such an interest is sufficient to bring a dispute within the scope of Article III.[10] *Id.*

In *Maryland Casualty Company v. Pacific Coal & Oil Company*, 312 U.S. 270 (1941), the Supreme Court recognized the standing of insurers to bring declaratory judgment actions against third parties who obviously were not in privity with the parties to the underlying insurance contract. The Supreme Court held that Maryland Casualty, an insurance company, had standing to pursue a declaratory judgment action against its insured, Pacific Coal, as well as an injured third party who had been struck by a truck driven by one of Pacific Coal's employees.

---

[10]     Although this case is governed by the federal Declaratory Judgment Act, it is notable that a number of state courts have also found that an injured third party has a legally-protected interest in the tortfeasor's insurance policy – even before any potential tort claim is reduced to judgment – such that the injured third party may pursue a declaratory judgment action against the tortfeasor's insurer to determine the amount of coverage it owes to its insured. *See National Sec. Fire & Cas. Co. v. Poskey*, 828 S.W.2d 836, 838 (Ark. 1992); *Christian v. Sizemore*, 383 S.E.2d 810, 812 (W.Va. 1989); *Atkinson v. Atkinson*, 326 S.E.2d 206, 210-11 (Ga. 1985); *Howard v. Montgomery Mut. Ins. Co.*, 805 A.2d 1167, 1172 (Md. Ct. Spec. App. 2002); *Community. Action of Greater Indianapolis, Inc. v. Indiana. Farmers Mut. Ins. Co.*, 708 N.E.2d 882, 885 (Ind. Ct. App. 1999); *Government Employees Ins. Co. v. New South Ins. Co.*, 459 S.E.2d 817, 819 (N.C. Ct. App. 1995); *Reagor v. Travelers Ins. Co.*, 415 N.E.2d 512, 514-15 (Ill. Ct. App. 1980); *Baca v. New Mexico State Highway Dep't*, 486 P.2d 625, 629 (N.M. Ct. App. 1971).

*Id*. at 271.  Maryland Casualty sought a declaration that the truck involved in the accident was not covered under its insurance policy with Pacific Coal, and consequently, that Maryland Casualty was not liable for defending or indemnifying Pacific Coal in a pending state court action brought by the injured third party.  *Id*. at 271-72.  The injured third party demurred, asserting that the complaint did not state a cause of action against him.  *Id*.  The Supreme Court rejected this argument, holding that an actual controversy existed between Maryland Casualty and the injured third party.  *Id.* at 273-74.  A number of courts of appeals have relied on *Maryland Casualty* to find a case or controversy between an insurer and an injured third party, such that either has standing to pursue a declaratory judgment action against the other, even in the absence of the original insured.  *See Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 789 (7th Cir. 1992); *White v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 168 (4th Cir. 1990); *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 351-54 (3d Cir. 1986); *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174, 176-77 (7th Cir. 1962).

Ultimately, the "lack of standing" argument founders on the facts.  Whitman Insurance has paid $9,000,000 for Abex asbestos suits, directly or indirectly.  All of the defendants in this suit either want Whitman Insurance to keep paying for the Abex asbestos suits, or have refused to release Whitman Insurance from any further obligation for such suits, now or in the future. None of the Moving Defendants except Travelers has paid one dime toward the Abex asbestos suits while Whitman Insurance has paid more than $9,000,000; their protestations of "no standing" and "no injury" ring particularly hollow.  These are the facts.  None of the Moving Defendants can challenge these facts.  This argument, accordingly, fails.

**B.    The London Market Insurers' Speculation That Certain Unidentified Lloyd's Names May At One Time Have Been Residents Of Vermont Does Not Affect Diversity Jurisdiction.**

The London Market brief erroneously asserts that, in any suit against Lloyd's, the plaintiff must be diverse from each individual underwriting "Name."  The brief also asserts that Whitman Insurance is not diverse from "all the underwriting members at Lloyd's," some of whom are allegedly "Vermont citizens."  *See* London Market Brief at 5-7.[11]  In making this assertion Lloyd's fails to identify any such Vermont "names" allegedly subscribing to the affected policies; it fails to link any such unidentified hypothetical "name" to one of the Lloyd's syndicates subscribing to the policies at issue; and it neglects to mention that the "lead underwriter" has the contractual authority to bind all of the syndicates and thus all "names" (to the extent even hypothetically relevant).  This argument, therefore, smacks of the worst kind of "throw it against the wall and see if it sticks" fantasy.

**1.    Whitman Insurance Need Not Be Diverse From Each Underwriting "Name."**

The London Market Insurers falsely contend that "[t]here is now a wide consensus" that diversity jurisdiction in an action against the subscribers to a Lloyd's policy will lie only where "the insured plaintiff's citizenship" is diverse "from the citizenship of each and every individual Lloyd's underwriter."  London Market Brief at 6-7.  On the contrary, as one of Lloyd's own cases observes, the courts that have considered the question "have reached differing results based upon differing reasoning."  *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 859 (5th Cir. 2003).  Indeed, in that very case, the United States Court of Appeals for the Fifth Circuit held that complete diversity existed between a citizen of a State and the lead underwriter on the policy; the

---

[11]    A "name" at Lloyd's is an individual investor.  Names, however, do not subscribe to Lloyd's policies; Lloyd's syndicates do.  Furthermore, Lloyd's syndicates are bound by the "lead underwriter," here British resident Lowsley-Williams.

citizenship of the remaining names was not relevant. *Id.* at 863-65. The United States Court of Appeals for the Second Circuit has reached the same conclusion. *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936-37 (2d Cir. 1998) (holding that citizenship of other subscribing names need not be considered when lead underwriter is sued in his individual capacity), *on remand*, 1999 WL 350857 (S.D.N.Y. June 2, 1999), *aff'd*, 241 F.3d 154 (2d Cir. 2001).

Similarly, the United States Court of Appeals for the Third Circuit held that subject matter jurisdiction exists in a case brought by a domestic insured against a diverse lead underwriter. *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222-23 (3d Cir. 1999); *see also Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 44 F. Supp. 2d 870, 879 (E.D. Mich. 1999) (holding that, to determine whether diversity existed, courts look only to the citizenship of the lead underwriter for the syndicates and the corporate subscribers on each London policy). The Third Circuit rejected the notion that the plaintiff's decision to sue the lead underwriter only was an improper ploy to manufacture jurisdiction, stating: "we perceive no reason why [plaintiff] should not be entitled to sue less than all of the names if it so chooses." 177 F.3d at 223 n.16.

Predictably, Lloyd's fails to acknowledge *Certain Underwriters at Lloyd's London, England v. Layne*, 26 F.3d 39, 42 (6th Cir. 1994), in which the United States Court of Appeals for the Sixth Circuit held that the citizenship of the lead underwriter, not the citizenship of each subscribing name, governs diversity jurisdiction.[12] Thus, *three of the four* federal courts of appeals that have confronted the question (the D.C. Circuit has not confronted the question) have

---

[12] In so ruling, the *Layne* court relied in part on the Tennessee agency doctrine that an agent contracting on behalf of an undisclosed principal is personally liable on the contract. 26 F.3d at 43, 44. This same rule is followed under Illinois law, which is applicable to this case. *See, e.g., General Refrigeration & Plumbing Co. v. Goodwill Indus.*, 333 N.E.2d 607, 613 (Ill. App. 1975).

held that the lead or active underwriter of a Lloyd's policy may sue or be sued in a diversity case without reference to the citizenship of the other subscribing names.[13]

Thus, whether diversity jurisdiction exists turns not on whether the suit involves a Lloyd's policy, but rather on the citizenship of the persons named as parties in the complaint. Courts holding that the citizenship of every subscribing "name" must be considered ordinarily do so only where the "complaint explicitly indicates that the plaintiffs intend to sue all syndicates and their members," as opposed to the diverse active underwriters only.  *Transamerica Corp. v. Reliance Ins. Co. of Illinois*, 884 F. Supp. 133, 140 n.7 (D. Del. 1995).  Many such cases involve efforts by Lloyd's itself to secure a federal forum.  *E.g.*, *id.*; *Bath Iron Works Corp. v. Certain Member Companies of the Institute of London Underwriters*, 870 F. Supp. 3 (D. Maine 1994). Indeed, in the *Transamerica* case, Lloyd's removed the case from Delaware state court, and then resisted plaintiffs' attempt to ascertain the citizenship of the "names" having interests in the relevant policies.  *Id.* at 139.  Only after the court ordered Lloyd's to respond did Lloyd's disclose that *nearly three hundred* "names" were citizens of the same states as one of the plaintiffs.  *Id.*  Even then, Lloyd's (unsuccessfully) sought to strike the amended complaint as an "improper attempt to defeat diversity," and urged the court to follow the Sixth Circuit's holding in *Layne* – a case that Lloyd's now ignores in its Brief – that the citizenship of **only** the active underwriters need be considered.  *Id.* at 137-38.

In short, the amended complaint properly names only the "lead underwriters and

---

[13]     The only Circuit to depart from this rule is the Seventh Circuit, which held that the Lloyd's Syndicates subscribing to a policy should be treated as unincorporated associations for diversity purposes, *i.e.*, that they have the citizenship of all of the Syndicates' members.  *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314 (7th Cir. 1998).  But, as the Fifth Circuit explained in *Corfield*, the citizenship of the Syndicates is irrelevant because the Syndicates themselves are not liable on the policies they subscribe to, "they play no role in litigation over a Lloyd's policy," and they have no contractual relationship with the insured.  355 F.3d at 865.  Although the D.C. Circuit has not yet ruled on the issue, we submit that the analysis employed in *Indiana Gas* is unpersuasive.

managing agents" of the listed Lloyd's policies. The London Market Insurers *admit that all of these persons are citizens of the United Kingdom*. London Market Brief at 9. Consequently, diversity of citizenship exists.

### 2. The London Market Insurers Have Not Presented any Competent Evidence That any Lloyd's Name is a Citizen of Vermont.

This Court need not descend into the hypothetical investigation of whether an allegedly unidentified non-foreign "name" actually resides in Vermont. The London Market Insurers submit two declarations addressing certain Lloyd's "names,' but neither declaration discusses the *citizenship* of those "names"; they merely state that two unidentified "names" allegedly *reside* in Vermont. Declaration of Lynda Edwards at ¶4; Declaration of Alexander J. Mueller at ¶2. That is not the relevant inquiry. Nor is it competent evidence.

Under section 1332 of the Judicial Code, diversity jurisdiction turns on the citizenship or domicile of a party. 28 U.S.C. § 1332: "[i]t is a long established proposition that domicile, not residence, determines State citizenship for the purposes of diversity jurisdiction." *Thompson v. Gillen*, 491 F. Supp. 24, 27 (E.D. Va. 1980) (citing *Robertson v. Cease*, 97 U.S. 646 (1878)). "A person has only one domicile at a particular time, even though he may have several residences." 13B Wright, Miller & Cooper, *Federal Practice and Procedure*, Jurisdiction 2d § 3611 at 528 (citing *Texas v. Florida*, 306 U.S. 398 (1939) (party had estate in Massachusetts, winter residence in Florida and apartment in New York)). Given the personal wealth required to be a Lloyd's name, it is certainly conceivable that such a person could have a *residence* in Vermont -- perhaps a ski home -- ***and*** several other places. In contrast, *domicile* "is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode." *Weible v. United States*, 244 F. 2d 158, 163 (9th Cir. 1957). Obviously, the intent of the unidentified alleged Vermont "names" is not a subject on which Edwards or Mueller could

provide competent testimony.  Accordingly, their declarations must be disregarded.  *See Wymer v. Lessin*, 109 F.R.D. 114, 115 (D.D.C. 1985) (where the citizenship of a defendant was a matter peculiarly within defendant's knowledge, it was permissible and appropriate for plaintiffs to plead diversity on information and belief).

These declarations are both worthless and irrelevant.  The lead underwriters were properly sued.  They are all citizens of the United Kingdom.  There is complete diversity of citizenship.

### C.  The Amount in Controversy Requirement Has Been Satisfied.

The amount in controversy pleaded by a plaintiff controls unless it appears "to a legal certainty" that the claim is really for less than the jurisdictional amount.  *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) (cited in 15 *Moore's Federal Practice* § 102.109[4] (2005)); *see Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 346-48 (1977) (standard for complaint seeking declaratory or injunctive relief); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (standard applicable to suits for damages).  Courts look both to the value of the right that the plaintiff seeks to enforce and to the cost to the defendants, whichever is greater.  593 F.2d at 1097.

The amended complaint lists 42 policies to which the London Market Insurers subscribed.[14]  On their face, these policies demonstrate that the London Market Insurers' limits of  liability costs is at least $204 million, of which Lloyd's (as opposed to the London Market Companies) is responsible for at least $95 million.  Chefitz Decl. ¶2-4, at Tab 1.  In addition, each policy requires the London Market Insurers to pay defense costs arising from the Abex asbestos-related suits.  This figure is unlimited in amount.  Historically, defense costs have been

at least as great as the stated limits of liability.  Chefitz Decl. ¶10 at Tab 3.  Lloyd's currently owes approximately $100 million in past indemnity costs and an additional amount of defense costs for the Abex asbestos suits, for a total exposure well in excess of $150 million.  McCabe Decl. at Tab 2; Chefitz Decl. ¶6.  Thus, viewed from London Market Insurers' perspective, the amount in controversy far exceeds the face limits of $204 million, considering the policies' supplemental defense obligation.  Nor does this figure of policy "value" take into account Lloyd's own coverage position, which treats each asbestos suit as a separate "occurrence,' thus magnifying the policy value by a factor of thousands.

The jurisdictional amount is also met when viewed from plaintiff's perspective.  The amended complaint seeks a declaration that Whitman Insurance has no further obligations for the Abex asbestos suits.  Am. Compl. ¶ 87.  To date, Whitman Insurance has paid more than $9 million in defense costs and indemnity limits based on a one occurrence approach fully to satisfy its obligations, and contends that the first $250,000 layer for which it is responsible is exhausted.  Meairs Decl. ¶9.  Lloyd's suggests otherwise, arguing in recent filings that Whitman Insurance must continue to pay for the Abex asbestos suits, and that Whitman Insurance is responsible for more than $99 million in past indemnity costs alone.  Chefitz Decl. ¶12.  Lloyd's position is based in large part on its claim that each Abex asbestos suit constitutes a separate "occurrence," which is one of the issues on which Whitman Insurance seeks declaratory relief in this case.  Thus, by Lloyd's own admission, the amended complaint is worth at least $99 million.

At base, Lloyd's "amount in controversy" argument exposes its brief as an intellectual fraud.  The Lloyd's "amount of controversy" argument is based on Lloyd's calculation that the liability of its lead underwriter is $65,395.09, which is about $9,600 less than the $75,000

---

[14]    In *Aetna Casualty & Surety Company*, the court held that to determine whether the amount-in-controversy requirement has been met, "the court should look to the value of the policies."  44 F. Supp. 2d at 880.

jurisdictional benchmark.  In so doing, Lloyd's apparently thinks that the rest of the world will in the meantime have forgotten its other "positions," *i.e.,* and that each and every asbestos suit is a separate "occurrence," meaning that, according to Lloyd's, its lead underwriter is responsible for $65,395.09, for each and every asbestos suit, or at least $3.5 billion based on the currently pending number of Abex asbestos suits (At least 55,000).  Chefitz Decl. ¶6.

Lloyd's cannot have it both ways.  If it is serious about its "each asbestos suit is a separate occurrence" position, then it should admit that its lead underwriter's potential liability – under its legal theory – exceeds $3.5 billion, or roughly 45,000 times the jurisdictional amount.

Finally, employing the proper "one occurrence" approach, accepting Lloyd's calculations as true, and disregarding $200 million in policy limits in favor of looking only to the risk of lead underwriter and British citizen Lowsley-Williams, the "jurisdictional amount" argument still fails.  Lloyd's admits that Lowsley-Williams owes $65,395.09 – on a "one occurrence" approach to coverage.  Lloyd's fails to point out, however, that Lowsley-Williams also owes supplemental defense costs, in addition to the $65,395.09 in policy limits, interest (since all of the limits of liability were due at least two years ago), and other damages, including potentially extracontractual remedies for failing to pay for thousands of Abex asbestos suits.  The total claimed exposure of Lowsley-Williams under any set of circumstances well exceeds $75,000.[15]

### D.   This Case Includes All Necessary And Indispensable Parties, Namely The Insured, Abex, And All Responsible Insurers That Have Not Satisfied Their Policy Obligations.

The Defendants in This Case are the Insured (Pneumo Abex) and All of the Insurers That Have Not Met Their Insuring Obligations for the Abex Asbestos Suits.  These are the Parties That Are Seeking to Impose Further Financial Burdens on Whitman Insurance, Either Directly or

Indirectly, or That Have Failed or Refused to Release Whitman Insurance From Any Future

Obligation for Abex Asbestos Suits. These Are the Only Parties Necessary for the Relief

Sought.[16]

### 1. The Absence of PAS and Cooper Poses No Bar to According Complete Relief Among Those Already Parties.

The presence of PAS and Cooper in this case is not needed to resolve Plaintiff's claims.

The Moving Defendants appear to argue that, because PAS and Cooper "claim rights" under the

insurance policies or their proceeds, they are "claimants" to the policies, and thus "necessary" to

any litigation regarding the policies. First State Brief at 11-12, Mt. McKinley Brief at 6-7; *see*

Fed. R. Civ. P. 19(a)(1). This argument fails at each of its three steps. As described below, the

Moving Defendants fail to consider the nature of the rights asserted by PAS and Cooper, that

only Abex can seek coverage for the claims at issue, and that binding precedent in the D.C.

Circuit holds that not all claimants to insurance policies are necessary parties in actions resolving

claims under the policy.

### 2. The Fact That Cooper and PAS are Indemnitors of Abex Does Not Make Them Necessary Parties Under Rule 19(a).

The Moving Defendants attempt to use pleadings filed in the New York state court action

to demonstrate that PAS and Cooper are necessary parties, but ignore the nature of the interests

---

[15]     As explained in Mr. Chefitz's declaration, there are other errors or unexplained omissions in Mr. Mueller's declaration that could further increase Mr. Lowsley-Williams' exposure. *See* Chefitz Decl. ¶¶ 9-11.

[16]     A person is a necessary party under Rule 19(a) if (1) complete relief cannot be accorded in his absence; or (2) the absentee's ability to protect his interests may be impaired by the disposition of the action; or (3) those already parties will be subject to a substantial risk of incurring inconsistent obligations because of the absence. *Cloverleaf Standardbred Owners Ass'n v. National Bank of Wash.*, 699 F.2d 1274, 1278-79 (D.C. Cir. 1983). A necessary party is indispensable if he cannot be joined and "equity and good conscience" will not allow the action to proceed among the parties before the court. Fed. R. Civ. P. 19(b). To make this determination, the district court must examine: "(1) the plaintiff's interest in having a forum; (2) the defendant's interest in avoiding inconsistent relief or multiple litigation; (3) the interest of the absent party in protecting his rights; and (4) the interest in complete, consistent, and efficacious settlement of the controversy." *Cloverleaf*, 699 F.2d at 1279.

asserted in that case. PAS and Cooper have taken the following position with regard to their

rights related to the insurance policies:

> PAS and Cooper, as net-of-insurance indemnitors of certain of the
> Asbestos Claims, assert rights to certain of the proceeds of the
> insurance covering Abex, and PAS also has other rights, including
> its rights as successor in interest to IC Industries, an insured under
> policies issued by certain of the Insurance Companies.[17]

The crucial aspect of PAS's and Cooper's claim for the purpose of this analysis—which

Moving Defendants do not even discuss — is the fact that PAS and Cooper are net-of-insurance

indemnitors. PAS and Cooper *do not claim rights to recover under the policies*; they merely

assert rights against any recovery *by Abex* pursuant to their indemnification agreement with

Abex.

Accordingly, although PAS and Cooper are interested in whether and to what extent

Abex recovers under its policies, they are not necessary to determine the liability and obligations

of Whitman Insurance and the defendant insurers to Abex for the Abex asbestos suits. *See*

*Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1016 (8th Cir. 1984) (holding

that complete relief can be granted without the presence of the indemnitor); *cf. Gardiner v.*

*Virgin Islands Water & Power Auth.*, 145 F.3d 635, 641 (3d Cir. 1998) ("[A] defendant's right to

contribution or indemnity from an absent non-diverse party does not render that absentee

indispensable pursuant to Rule 19."). Indeed, this Court, in the *Related Abex Action*, has already

determined that Cooper's interest in insurance proceeds was not enough to make it a party to the

litigation. *See* Memorandum Order at 3 (Aug. 31, 2004) (*Related Abex Action* Dkt #1662)

(Abex's obligation to make insurance proceeds available to Federal-Mogul and Cooper "does not

---

[17]     *See* Answer, Affirmative Defenses, Counterclaims and Crossclaims of Defendants Pneumo Abex
Corporation, Cooper Industries, Inc., and PepsiAmericas, Inc. at 9 (*Lloyd's Action,* Aug. 6, 2002) (Biester
Decl. at Tab 3).

purport to make Federal-Mogul or Cooper parties to this litigation.").

Nor does their status as net-of-insurance indemnitors make PAS and Cooper "claimants" to the policies for Abex asbestos suits. As the amended complaint in this case alleges, Abex manufactured, sold, and distributed friction products containing asbestos materials. As a direct and proximate result of this activity, Abex faces potential liability to persons claiming injuries from alleged exposure to products containing asbestos. PAS, in contrast, never manufactured or sold asbestos-containing products, it had no role in Abex's manufacture of those products, and it was not named in any of the underlying asbestos suits. Likewise, Cooper, which is not even an insured under any of the policies at issue, never manufactured Abex asbestos-containing friction products. Cooper's only connection to this case arose from its subsidiary's purchase of certain assets from Abex several years after Abex stopped manufacturing or selling asbestos-containing products.[18] Although it has been sued for its own involvement in the manufacture of asbestos, it has not faced potential liability for Abex's involvement. Accordingly, *Abex is the only insured that seeks coverage for asbestos-related claims from the defendant insurers*.

### 3. PAS's Status as an Insured Does Not Make It a Necessary Party Under Rule 19(a).

The fact that PAS is an insured is simply of no relevance to this action. PAS is not the defendant in the Abex asbestos suits; Abex is. Abex is a party. There are numerous insureds under the policies in this case. That fact, however, is no more relevant than the fact that the defendant insurers have numerous affiliated insurance companies. The rights of additional insureds are not relevant because this case involves only the duties and liabilities of the insurance company defendants as to one insured, Abex, on liabilities asserted against Abex. *See Brown v. American Int'l Group, Inc.*, 339 F. Supp. 2d 336, 342 (D. Mass. 2004) ("[t]he absence of the

other individual insureds poses no bar to according complete relief among those already parties").

First State's assertion that this Circuit requires "all alleged parties to a contract seeking rights and obligations thereunder [to] be joined if the central focus of the case is the construction of the contract" is a massive overstatement.  First State Brief at 15; *see id.* at 12.  In *Western Maryland Railway Company v. Harbor Insurance Company*, 910 F.2d 960 (D.C. Cir. 1990), the D.C. Circuit held that railroads suing insurers in two separate actions filed the same day were not indispensable parties in each others' actions even though all of the defendants in both actions were the same and several of the plaintiffs were insureds under policies at issue in both actions. If Rule 19 required the joinder of all parties to a contract, the Court of Appeals would not have permitted the plaintiff railroads to sue separately.  Instead, the Court held that the railroads were not necessary parties under any of the three tests set forth in Rule 19(a).  *Id.* at 963.

First State cites *Cloverleaf* to support its argument that all parties to a contract, particularly additional insureds, must be joined.  *Cloverleaf* does not purport to stand for such a sweeping proposition, and the facts of that case are entirely distinguishable.  The contract at issue in *Cloverleaf* was not a shared insurance contract but rather an agreement between two entities, Cloverleaf and Laurel Raceway, in which the latter had to pay the former a set percentage of betting proceeds.  When Laurel failed to pay, Cloverleaf sued Laurel's bank, which had offset funds in Laurel's accounts to cover a loan the bank extended to Laurel.  The holding in *Cloverleaf*, that Laurel was a necessary party in a dispute over funds held in Laurel's own accounts, has no bearing on the present case, which involves insurance policies.

Similarly, in *National Union Fire Insurance Company v. Rite Aid of South Carolina, Inc.*,

---

[18]     That Cooper subsidiary was subsequently sold to a Federal-Mogul entity that is now in bankruptcy.

Rite Aid Corporation ("Rite Aid") was held to be a necessary party in a suit brought by an insurer against Rite Aid of South Carolina, Inc. ("RASC") not merely for the reason that it was also an insured under the policy, but because, unlike in the present case, the subject of the action was not limited to the question of coverage under the policy. 210 F.3d 246, 251 (4th Cir. 2000). At issue in the Rite Aid case was whether a *collateral agreement* entered into by the non-party policyholder *superseded* certain reporting requirements of the policy. *Id.* at 251 n.8. Thus, to rule on the question of coverage, the district court would be required to interpret an agreement other than the insurance policy, and to which the insured claiming coverage (RASC) was not even a party. Here, in contrast, Abex unquestionably is a party to all of the insurance policies under which it claims to be entitled to coverage, and there is no suggestion that some other agreement alters the terms of those policies.

Finally, in *Aetna Casualty & Surety Company v. Rasa Management Company*, the court noted that, "[i]n an action by a liability insurer for declaratory judgment to determine the insurer's liability to an insured party, the insured is, of course, a necessary and indispensable party." 621 F. Supp. 892, 893 (D. Nev. 1985). Whether an insured is necessary in an action to determine the insurer's liability to the insured, as held in *Aetna*, has no bearing on whether other insureds who are not asserting claims under the policy are also necessary or indispensable parties to that action.

In short, although Cooper and PAS "claim rights to proceeds under the Policies for Pneumo Abex's asbestos liabilities," it hardly goes "without saying that…complete relief is impossible in their absence." First State Brief at 12.

### 4. The Absence of PAS and Cooper Will Not Subject Defendants to a Risk of Incurring Inconsistent Obligations.

The Moving Defendants also argue that, absent PAS and Cooper, there is a "substantial

risk of incurring" conflicting legal obligations. First State Brief at 12; Mt. McKinley Brief at 7; *see* Rule 19(a)(2)(ii).[19] Despite Rule 19's requirement that a party seeking compulsory joinder must demonstrate a *substantial risk* that inconsistent obligations will result, *see Western Maryland*, 910 F.2d at 963, Moving Defendants make no attempt to explain how such inconsistent obligations could arise, much less that they *are likely to arise*.

Instead of describing the practical outcomes of litigation in the absence of Cooper and PAS, First State merely asserts that "if these parties remain absent, any judgment of this Court will be open to collateral attack." First State Brief at 13. First State does not explain how Cooper or PAS could collaterally attack a judgment of this Court, or what the basis for such an attack might be. Moreover, First State does not explain how a collateral attack by Cooper or PAS could possibly subject it or any other defendant to *inconsistent obligations*. Ordinarily, a successful collateral attack sets aside or vacates the challenged judgment. If that were to happen here – and, again, there appears to be no reason to think that it could – the defendants would be relieved of any obligation imposed by the first judgment.

Based on an examination of the nature of the rights asserted by PAS and Cooper, and how they relate to this present action, it is clear that PAS and Cooper are not necessary parties. Of course, because PAS and Cooper do not fall under Rule 19(a)'s description of necessary parties, it is not possible for them to be indispensable parties under Rule 19(b). Accordingly, the only necessary parties to this action to determine Whitman Insurance's liability—Abex and the insurers responsible to pay Abex—are already parties to this action.

In reality, Moving Defendants need not worry about incurring inconsistent obligations from the *Related Abex Action* because, as the Court knows, that action is pending before the

---

[19]     Contrary to Rule 19, the Moving Defendants do not argue that the ability of PAS and Cooper to protect their interests may be impaired by the disposition of this action. *See* Rule 19(a)(2)(i).

30

same judge as this one. *Western Maryland*, 910 F.2d at 963. Moreover, to the extent that the

Moving Defendants are concerned about inconsistencies with obligations to PAS regarding any

future claims unrelated to the Abex asbestos suits coverage claims brought by Abex, the "risk of

inconsistent obligations is due not to the absence of other [insureds], but to the terms of its

policy." *Brown*, 339 F. Supp. 2d at 343.[20]

> **5.      The Insurers That Have Already Satisfied Their Obligations as a Result of the Related Abex Action Need Not Be Joined.**

Ironically, the next group of allegedly "indispensable parties" are, according to the

Moving Defendants, the insurers that have satisfied their policy obligations and been

dismissed.[21] Not content with just ignoring their own policy obligations and refusing to pay for

any of the Abex asbestos suits,[22] the Moving Defendants want to un-do the settlements,

payments, and dismissals achieved as a result of the *Related Abex Action* and start from scratch.

Of course, this argument demonstrates conclusively why this lawsuit should proceed as pleaded:

it is exactly this type of "re-opener" shenanigans that Whitman Insurance is trying to prevent

through this declaratory judgment action.

The *Related Abex Action* originally involved 32 primary insurance policies underlying

each and every one of the excess policies before the Court in this related action. When certain of

the first-layer and excess policies in the *Related Abex Action* were no longer available to pay for

Abex asbestos suits, a number of the excess insurers agreed to pay for Abex asbestos suits in a

---

[20]     Of course, since none of the Moving Defendants except Travelers has ever paid a dime for the Abex asbestos suits, the concept of "paying twice" is hardly credible. The real risk by and through the Moving Defendants' attempt to flee this jurisdiction is a total escape of liability, not "inconsistent obligations."

[21]     Lloyd's, of course, is pursuing all of these resolved insurers in New York too, suggesting another reason for staying or dismissing that case.

[22]     In the upside-down world of these defendants, insurance companies that have satisfied their contractual obligations become "necessary parties," to be sued by the insurance companies that have not yet paid anything, on the off chance that one of the earlier-paying defendants might not have paid "enough."

manner consistent with the controlling rulings reached by this Court in the *Related Abex Action*. As a result of these settlements, eight excess insurers have fully satisfied, or agreed to satisfy fully, in a manner consistent with the rulings in the *Related Abex Action*, their insuring obligations for Abex asbestos suits.[23]  Contrary to the arguments of the Moving Defendants, these insurers are not necessary, and certainly not indispensable, parties to this case.  *Cf. Disabled in Action v. Southeastern Pa. Transp. Auth.*, 224 F.R.D. 601, 606 (E.D. Pa. 2004) ("[a] review of the law with respect to the dismissal of a settling 'indispensable' party suggests that once that party resolves the claims against it, the party may be dismissed from the action").

Finally, it bears reiterating that Rule 19 does not require that all parties that could be joined in an action must be joined.  On the contrary, Rule 20 makes joinder of parties asserting or subject to related claims merely permissive.  If Moving Defendants believe that they have viable claims against any of the settled insurers, they are always free to seek to join them as third-party defendants under Rule 14.

> **E.    Pneumo Abex Cannot Be Realigned With Its Insurer Whitman Insurance Because Their Positions Are In Direct Conflict With Respect To Certain Key Coverage Issues In Dispute.**

The Moving Defendants' argument that Abex should be realigned as a plaintiff mischaracterizes Whitman Insurance's purpose for bringing this suit and altogether ignores the typical posture of insurance-coverage cases.  Whitman Insurance, a captive reinsurer, is seeking a declaration and order that the defendant insurers, and not Whitman Insurance, have an obligation to Abex in connection with the Abex asbestos suits.  Am. Compl. at ¶¶24-25.

The Federal Reporter is rife with examples of cases in which an insurance company has

---

[23]    Allstate Insurance Company, as successor-in-interest to Northbrook Excess Surplus Insurance Company (formerly known as Northbrook Insurance Company), Argonaut Insurance Company, Columbia Casualty Insurance Company, Continental Casualty Insurance Company, Continental Insurance Company, Evanston Insurance Company, Harbor Insurance Company, and Great American Surplus Insurance Company.

brought a declaratory action against an insured and other insurers for a declaration of liabilities and obligations. *See, e.g.*, *Maryland Cas. Co. v. W.R. Grace and Co.,* 23 F.3d 617 (2d Cir. 1993); *American Motorist Ins. Co. v. Trane Co.,* 657 F.2d 146, 151 (7th Cir. 1981). Indeed, even the case that Lloyd's brought in New York stands as an example. In such cases, like the present one, the plaintiff-insurer seeks a declaration that it has no obligation to the insured and that the defendant insurers do. The fact that Whitman Insurance and Abex may have a mutuality of interest in a declaration that defendant insurers have an obligation to Abex does not justify realignment because of the collision of interest regarding whether Whitman Insurance has an obligation to Abex. *Cf. American Motorist*, 657 F.2d at 151 ("[a] mere mutuality of interest in escaping liability is not of itself sufficient to justify realignment").

Although Moving Defendants cite *City of Indianapolis v. Chase National Bank,* in which the Supreme Court declared that "[t]o sustain diversity jurisdiction there must exist an *actual, substantial controversy* between citizens of different states." 314 U.S. 63, 69 (1941) (emphasis added) (internal citation and quotation marks omitted), neither that case nor its progeny provide support for their position. In *City of Indianapolis*, the Supreme Court stated that "Whether the necessary 'collision of interest' exists, . . . must be ascertained from the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.' " *Id.* (citations omitted). Although the Circuits have interpreted this language somewhat differently, under no circuit's standard is it required that Abex be realigned.

The Third, Fifth, Sixth, and Ninth Circuits have held that *Indianapolis* "requires that the parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." *U.S. Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 955 F.2d 1085 (6th Cir. 1992) (applying the "primary

33

purpose" test).  In *Thomas Solvent*, the Sixth Circuit concluded that the primary purpose was whether the insurers have a duty to indemnify any of the insureds.  *Id.* at 1089 (explaining that whether the court reached the issue of contribution between the insurers depended on whether there was a duty to indemnify).  Whitman Insurance's claims in the present case are quite different.  Whitman Insurance has already paid more than $9,000,000 in defense and indemnity costs for Abex asbestos suits consistent with a one occurrence approach.  The primary purpose of the present action, therefore, is to absolve Whitman Insurance of any *further* obligation to Abex by obligating the defendant insurers to indemnify Abex. Am. Compl. at ¶24.  Thus, no realignment is necessary under the primary purpose test.

The Second, Seventh, Eighth, and Tenth Circuits have declined to apply the "primary purpose" test, and instead apply the "substantial conflict" or "collision of interests" test.  *See, e.g.*, *Maryland Cas.*, 23 F.3d at 622 ("[t]he primary purpose approach is not actually dictated by *Indianapolis* because though the facts of that case involved only a single controversy among the litigants involving the enforceability of a 99-year lease, the Supreme Court did not intend that all cases be forced into a single-issue posture").  The United States Court of Appeals for the Second Circuit explained that characterizing parties in a lawsuit as having a singular primary purpose "ignores the practical reality of the litigation."  *Id.* at 623 ("Because the insurers are of a single mind to escape liability for paying claims does not mean that they are not in conflict with one another.").

The United States Court of Appeals for the Seventh Circuit in *American Motorist* applied the substantial conflict test in a case factually similar to the present case, specifically, a case in which an insurance company brought an action against an insured and another insurance company.  In reversing the district court's realignment of the parties, the Seventh Circuit

explained that "[i]n cases such as the one at bar, it is the points of substantial antagonism, not agreement, on which the realignment question must turn." *American Motorist*, 657 F.2d at 151; *Maryland Cas.*, 23 F.3d at 623 ("[r]ealignment hinges on those issues that divide the parties, not on those on which they agree").

Applying the substantial conflict test to this case demonstrates that the parties are properly aligned. An insurance company seeking a declaration that it is not obligated to cover an insured, such as Whitman Insurance is in this case, certainly creates substantial conflict. In addition, Whitman Insurance seeks a declaration that all Abex asbestos-related suits arise out of one "occurrence." This is a very important part of the relief Whitman Insurance seek and Abex has refused to dismiss with prejudice and release Whitman Insurance's $250,000 layer from any further coverage obligation for Abex asbestos suits.

The Moving Defendants are correct that "[r]ealignment is proper where there is no actual, substantial conflict between the parties that would justify placing them on opposite sides of the lawsuit." *American Motorist*, 657 F.2d at 151. But that is not the case here because there is an actual, substantial conflict between Whitman Insurance and all the defendants, including Abex. This is best illustrated by examining a case in which realignment was appropriate—*Saylab v. Harford Mutual Insurance Company*, 271 F. Supp. 2d 112 (D.D.C. 2003)—a case cited by the Moving Defendants. Realignment was appropriate in *Saylab* because, in that case, there was no actual conflict between the plaintiff and one of the defendants.

A bit of the background to that case is instructive: The plaintiffs in *Saylab* were two survivors of a tragic automobile accident (collectively, "Saylab") who sued two restaurants and their owners for damages in D.C. Superior Court. *Id.* at 113. When Saylab became aware that one of the restaurants did not have the resources to defend itself, Saylab took it upon herself to

institute a separate action in Superior Court against that restaurant's insurers, insurance agency, and insurance agent (collectively, "Harford Mutual") seeking a declaration that they were obligated to defend and indemnify the restaurant. *Id.* at 114. While Saylab named the restaurant in her case against Harford Mutual, with the restaurant's liability pending in the first case, she made no claims against the restaurant in the complaint. Harford Mutual removed the case to this Court. *Id.* at 114. Because Saylab, in the action that was removed to this Court, had not brought a claim against the restaurant, there was no actual conflict between Saylab and the restaurant. *Id.* at 116 ("The 'real controversy' in this lawsuit is whether [Harford Mutual] owes a duty . . . to indemnify and defend [the restaurant]."). Indeed, it would have been in the restaurant's interest for Saylab to prevail in the case she brought against Harford, because then Harford would have a duty to defend the restaurant, and indemnify if necessary, in the separate pending action Saylab brought against the restaurant. *Saylab* stands for the proposition that, when there is no actual conflict, realignment is appropriate. In the present case, however, there is an actual conflict.

### F. This Court Should Not Stay Its Hand In Deference To The Now-Stayed New York Litigation Brought By Lloyd's.

Moving Defendants accuse plaintiff of "procedural fencing" when Moving Defendants are admittedly trying to achieve inconsistent coverage rulings by relitigating in another forum the very same factual and legal issues already decided by this Court. As Travelers openly admits, its goal in the duplicative New York action is "to relitigate the prior decisions of [Judge Penn] so that they may be resolved under current New York law." Chefitz Decl. ¶15. If successful, Moving Defendants' end run around this Court's rulings would be prejudicial to those insurers, like Whitman Insurance, that have honored their coverage obligations for the Abex asbestos suits based on this Court's decisions. Fortunately, both this Court and the court in New York have previously rejected the procedural maneuvering of the non-performing insurers by determining

36

that all issues arising out of the Abex asbestos-related coverage dispute should be resolved by this Court, where the dispute has been managed for twenty-five years. Moving Defendants submit no sound reason why this Court should defer to a court that has already ruled that "in the interest of judicial economy, and that of the parties, as well as the need to avoid conflicting orders, the court defers to the long-standing and continuing litigation in the D.C. Federal District Court, and stays this action." *Lloyd's Action,* slip op. at 5.

Moreover, this Court has already addressed the issue of whether the District of Columbia or New York is the appropriate forum for the coverage dispute concerning the Abex asbestos suits, in connection with the first attempt by the non-performing insurers to transfer this action to New York. *See Related Abex Action* Dkt #14. After numerous briefs were filed, s*ee Related Abex Action* Dkt ## 14, 20, 28, 48, 51, 52, and a hearing was held on the issue on December 23, 1982, this Court denied the non-performing insurers' motion to transfer the action to New York. *See Related Abex Action* Dkt #53.

The London Market Insurers rely on *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) to support their request for dismissal or a stay. They neglect to point out, however, that in *Colorado River*, the Supreme Court noted that the "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," and ruled that "only the clearest of justifications will warrant dismissal." *Id*. at 817, 819.

The London Market Insurers do not meet this standard. They argue that a federal court may abstain to avoid piecemeal litigation, citing the absence here of PAS, Cooper, and the settled or insolvent insurers. This argument ignores the fact that the sole Plaintiff in this case, Whitman Insurance, is not a party to the New York action. Moreover, as demonstrated above,

none of the absent parties is required to adjudicate the rights and obligations under the insurance policies issued by solvent, non-settling insurers in this case.

Another case cited by the London Market Insurers, *Hurley v. Heilig*, 28 F. Supp. 2d 33 (D.D.C. 1998), further demonstrates that there is no threat of piecemeal litigation here.  In *Hurley*, the court was concerned that "allowing both of these suits to continue to go forward would most assuredly result in messy, piecemeal litigation."  *Id*. at 35.  In contrast, the state court in this case has already decided to defer to this Court and has stayed the action before it.  One of the reasons that the New York state court decided to issue a stay was that this Court has presided over the *Related Abex Action* for approximately 20 years and has conducted several trials and issued numerous other decisions.  This fact distinguishes *Foster–El v. Beretta U.S.A. Corporation*, 163 F. Supp. 2d 67 (D.D.C. 2001), also relied on by the London Market Insurers.  In *Foster-El*, the Court pointed out that, in looking at the factor of the order in which jurisdiction was obtained by the two forums, the issue is not which case was filed first, but "how much progress has been made in the two forums."  *Id*. at 72 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)).  Here, there can be no dispute that the proceedings in this Court are far ahead of the New York action.

The London Market Insurers also improperly rely on *Foster-El* for the notion that this Court should abstain "because New York law is applicable and a New York court is best equipped to decide issues of New York law."  London Market Brief at 17.  Regardless of whether New York law is applicable, the *Foster-El* court specifically held that the absence of federal law questions does not always warrant abstention.  *Foster-El*, 163 F. Supp. 2d at 73.  In short, the London Market Insurers have failed to present the "clearest of justifications" for abstention under the *Colorado River* decision upon which they rely.

For its part, First State contends that this Court has discretion whether to exercise jurisdiction over claims asserted under the Declaratory Judgment Act.  First State Brief at 23 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).  Whitman Insurance agrees that this Court's jurisdiction is discretionary but, in these circumstances, where a related declaratory judgment action has been before the Court for more than 20 years and the state court in the parallel proceeding already has stayed its own hand, Whitman Insurance respectfully submits that it would be an abuse of discretion to dismiss or stay this case.  Notably, the New York *Lloyd's Action* is also a declaratory judgment action, over which jurisdiction is discretionary.  Thus deference to the parallel state court proceeding is not appropriate in this case.  *See American Cas. Co. of Reading, Pa. v. Continisio*, 819 F. Supp. 385, 394 (D.N.J. 1993), *aff'd*, 17 F.3d 62 (3d Cir. 1994) (involving parallel declaratory judgment actions in federal and state courts).

In arguing for dismissal or a stay, First State makes the same flawed argument as the London Market Insurers that this Court cannot fully resolve the controversy because Cooper and PAS are not parties.[24]  It also unwarrantedly relies on the fact that the New York case was filed in 2002.  As demonstrated above, however, the key consideration is what progress has been made in the two forums, a consideration that clearly weighs in favor of this Court's retaining jurisdiction.  The New York case has been effectively stayed since 2002 with no substantive activity taking place and no discovery.  Indeed, it was because of the numerous decisions this Court had already issued that the New York court, recognizing that it was also "vested with

---

[24]    First State's argument that there is no controversy between Whitman Insurance and the defendants is addressed in detail above.

'broad discretion',"[25] chose to "defer[] to the long-standing and continuing litigation" before this Court.  *Lloyd's Action,* slip op. at 5.

 For this same reason, declining to exercise jurisdiction over this case would not spare the Court the task of adjudicating the longstanding controversy in the *Related Abex Action*, which involves many of the same parties and state-law issues as those involved in this case.  Many courts of appeals have affirmed decisions by district courts to retain jurisdiction over declaratory judgment actions where dismissal would not have saved the district court from having to adjudicate the controversy and deal with state law issues.  *See Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 824 (4th Cir. 2000); *Snodgrass v. Provident Life and Accident Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998); *St. Paul Fire & Marine Ins. Co. v. F.H.*, 117 F.3d 435, 438 (9th Cir. 1997), *overruled on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc); *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367-68 (9th Cir. 1991).

---

[25] New York state trial courts are vested with the same broad discretion as federal district courts in considering whether to dismiss an action on the ground that another action is pending between the same parties on the same cause of action.  *See Whitney v. Whitney*, 440 N.E.2d 1324, 1324 (N.Y. 1982).

**IV.**    **CONCLUSION**

For the reasons set forth herein and in the supporting declarations, this Court should deny

Moving Defendants' motions to dismiss this action or stay proceedings in this action.

                                            Respectfully submitted,

October 20, 2005                      Daniel E. Chefitz (D.C. Bar No. 481420)
                                         Brooke Clagett (D.C. Bar No. 460570)
                                       MORGAN, LEWIS & BOCKIUS LLP
                                       1111 Pennsylvania Avenue, N.W.
                                       Washington, D.C. 20004
                                       Telephone:    202.739.3000
                                       Facsimile:    202.739.3001
                                       Attorneys for Plaintiff
                                       Whitman Insurance Company, Ltd.

# TAB A

# Exhibit A to Opposition of Whitman Insurance Company, Ltd. to Motions to Dismiss

California Union
AIG (AIU, American Home, Granite State, Home, ISOP, National Union, New Hampshire)
American Re-Insurance Company
Associated International
Employers Mutual
Falcon
Federal
Fireman's Fund
First State
Gibraltar
Hudson
International
Lloyd's
National Surety
Stonewall
Travelers
Whitman Insurance Company, Ltd.
Settled Coverage Including Pursuant to Coverage-in-Place Agreement
Insurer in Liquidation Proceeds—Not Subject to Suit
American Re-Insurance Company
'52 '53 '54 '55 '56 '57 '58 '59 '60 '61 '62 '63 '64 '65 '66 '67 '68 '69 '70 '71 '72 '73 '74 '75 '76 '77 '78 '79 '80 '81 '82 '83 '84 '85



## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of October, 2005, a copy of the foregoing

PLAINTIFF WHITMAN INSURANCE COMPANY, LTD.'S CORRECTED

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CERTAIN

INSURER DEFENDANTS' MOTIONS TO DISMISS OR STAY was served by electronic

filing upon counsel listed on the Notice of Electronic Filing, and by first class mail, postage

prepaid, addressed to the following:

| Company Representing | Name of Counsel |
|---|---|
| Mt. McKinley Insurance Company | Rocco N. Covino, Esq.<br>Lord, Bissell & Brook LLP<br>885 Third Avenue, 26th Floor<br>New York, NY 10022 |
| Travelers Indemnity Company | Barry R. Ostrager, Esq.<br>Jonathan K. Youngwood, Esq.<br>Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, NY 10017-3909 |

Daniel E. Chefitz, D.C. Bar No. 481420