LEXSEE 2001 U.S. DIST. LEXIS 20297

PNEUMO ABEX CORPORATION, et al., Plaintiffs v. MARYLAND CASUALTY COMPANY, et al., Defendants

Civil Action No 82-2098 (JGP)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*2001 U.S. Dist. LEXIS 20297*

October 9, 2001, Decided
October 9, 2001, Filed

**DISPOSITION:** [*1] Court concluded that pro rata allocation is the proper method of allocation relating to indemnity. The Court concluded that defense costs should be paid equally by the responsible insurers..

**LexisNexis(R) Headnotes**

**COUNSEL:** For ABEX CORP, plaintiff: Martin M. McNerney, Joseph William Dorn, KING & SPALDING, Washington, DC.

For PNEUMO ABEX CORPORATION, plaintiff: Joseph William Dorn, Jeffrey M. Telep, M. Alexander Koch, Thomas A. Monheim, KING & SPALDING, Washington, DC.

For WHITMAN CORPORATION, intervenor-plaintiff: Kevin M. Murphy, LATHAM & WATKINS, Chicago, IL.

For MARYLAND CASUALTY COMPANY, THE defendant: Thomas William Brunner, Bruce Lowry McDonald, Marilyn E Kerst, Keith U. Kuder, WILEY, REIN & FIELDING, Washington, DC.

For LIBERTY MUTUAL INSURANCE GROUP, defendant: Robert L. Hoegle, Mary Seminara Diemer, CARTER, LEDYARD & MILBURN, Washington, DC.

For TRAVELERS INSURANCE COMPANY, defendant: Kyle Ann Kane, William Joseph Carter, CARR GOODSON, P.C., Margaret Hanley Warner, Peter Karl Tompa, MCDERMOTT, WILL & EMERY, Edward Michael Andries, PEPPER, HAMILTON L.L.P., Washington, DC.

For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. defendants: Douglas Cowne McAllister, JACKSON & CAMPBELL, P.C., Washington, DC.

For NORTHWESTERN NATIONAL LIFE INSURANCE, [*2] NORTHWESTERN INSURANCE COMPANY, defendants: John Jude Hathway, WHITEFORD, TAYLOR & PRESTON, L.L.P., Washington, DC.

For ARGONAUT INSURANCE COMPANY, defendant: Stuart Lewis Peacock, Margaret R. Posa, Joseph S. Crociata, BONNER, KIERNAN, TREBACH & CROCIATA, Washington, DC.

For CONTINENTAL INSURANCE COMPANIES, INC., defendant: James Wilson Greene, II, Brooke A. Pinkerton, Michele Louise Bulger, THOMPSON, O'DONNELL, MARKHAM, NORTON & HANNON, Rebecca Lynn Ross, William Holt Briggs, Jr., ROSS, DIXON & BELL, LLP, Washington, DC.

For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., defendant: Mary Elizabeth Medaglia, Donald L Uttrich, JACKSON & CAMPBELL, P.C., Washington, DC.

For MARYLAND CASUALTY COMPANY, THE, third-party plaintiff: Thomas William Brunner, Marilyn E Kerst, Keith U. Kuder, WILEY, REIN & FIELDING, Washington, DC.

For LIBERTY MUTUAL INSURANCE GROUP, third-party plaintiff: Robert L. Hoegle, Mary Seminara Diemer, CARTER, LEDYARD & MILBURN, Washington, DC.

For TRAVELERS INSURANCE COMPANY, third-party plaintiff: Kyle Ann Kane, William Joseph Carter, CARR GOODSON, P.C., Margaret Hanley Warner, Peter Karl Tompa, MCDERMOTT, WILL & EMERY, Edward [*3] Michael Andries, PEPPER, HAMILTON L.L.P.,

Case 1:05-cv-01125-PLF   Document 118-2   Filed 11/07/2005   Page 2 of 12

Page 2
2001 U.S. Dist. LEXIS 20297, *3

Washington, DC.

For ARGONAUT INSURANCE COMPANY, third-party defendant: Stuart Lewis Peacock, Margaret R. Posa, Joseph S. Crociata, BONNER, KIERNAN, TREBACH & CROCIATA, Washington, DC.

For CONTINENTAL INSURANCE COMPANIES, INC., third-party defendant: James Wilson Greene, II, Brooke A. Pinkerton, THOMPSON, O'DONNELL, MARKHAM, NORTON & HANNON, Washington, DC.

For NORTHWESTERN INSURANCE COMPANY, third-party defendant: John Jude Hathway, Denise Elaine Jackson, WHITEFORD, TAYLOR & PRESTON, L.L.P., Washington, DC.

For NORTHWESTERN INSURANCE COMPANY, NORTHWESTERN NATIONAL INSURANCE COMPANY, third-party defendants: Stephen D. Straus, TRAUB, EGLIN, LIEBERMAN & STRAUS, Hawthorne, NY.

For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., third-party defendant: Douglas Cowne McAllister, Mary Elizabeth Medaglia, Donald L Uttrich, JACKSON & CAMPBELL, P.C., Bruce Kenneth Trauben, DORSEY & WHITNEY, L.L.P., Washington, DC.

For ARGONAUT INSURANCE COMPANY, cross-claimant: Stuart Lewis Peacock, Margaret R. Posa, Joseph S. Crociata, BONNER, KIERNAN, TREBACH & CROCIATA, Bruce Kenneth Trauben, DORSEY & WHITNEY, L.L.P., Washington, [*4] DC.

For CONTINENTAL INSURANCE COMPANIES, INC., cross-defendant: James Wilson Greene, II, Brooke A. Pinkerton, THOMPSON, O'DONNELL, MARKHAM, NORTON & HANNON, Bruce Kenneth Trauben, DORSEY & WHITNEY, L.L.P., Washington, DC.

For NORTHWESTERN INSURANCE COMPANY, cross-defendant: John Jude Hathway, WHITEFORD, TAYLOR & PRESTON, L.L.P., Bruce Kenneth Trauben, DORSEY & WHITNEY, L.L.P., Washington, DC.

For NORTHWESTERN INSURANCE COMPANY, cross-defendant: Stephen D. Straus, TRAUB, EGLIN, LIEBERMAN & STRAUS, Hawthorne, NY.

For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., cross-defendant: Douglas Cowne McAllister, Mary Elizabeth Medaglia, Donald L Uttrich, JACKSON & CAMPBELL, P.C., Bruce Kenneth Trauben, DORSEY & WHITNEY, L.L.P., Washington, DC.

For MARYLAND CASUALTY COMPANY, THE, cross-defendant: Thomas William Brunner, Marilyn E Kerst, Keith U. Kuder, WILEY, REIN & FIELDING, Bruce Kenneth Trauben, DORSEY & WHITNEY, L.L.P., Washington, DC.

For LIBERTY MUTUAL INSURANCE GROUP, cross-defendant: Robert L. Hoegle, Mary Seminara Diemer, CARTER, LEDYARD & MILBURN, Bruce Kenneth Trauben, DORSEY & WHITNEY, L.L.P., Washington, DC.

For TRAVELERS INSURANCE COMPANY, [*5] cross-defendant: Kyle Ann Kane, CARR GOODSON, P.C., Bruce Kenneth Trauben, DORSEY & WHITNEY, L.L.P., Margaret Hanley Warner, Peter Karl Tompa, MCDERMOTT, WILL & EMERY, Edward Michael Andries, PEPPER, HAMILTON L.L.P., Washington, DC.

For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, cross-defendant: Douglas Cowne McAllister, JACKSON & CAMPBELL, P.C., Bruce Kenneth Trauben, DORSEY & WHITNEY, L.L.P., Washington, DC.

For ARGONAUT INSURANCE COMPANY, counter-claimant: Stuart Lewis Peacock, Margaret R. Posa, Joseph S. Crociata, BONNER, KIERNAN, TREBACH & CROCIATA, Washington, DC.

For MARYLAND CASUALTY COMPANY, THE, counter-defendant: Thomas William Brunner, Marilyn E Kerst, Keith U. Kuder, WILEY, REIN & FIELDING, Washington, DC.

For LIBERTY MUTUAL INSURANCE GROUP, counter-defendant: Robert L. Hoegle, Mary Seminara Diemer, CARTER, LEDYARD & MILBURN, Washington, DC.

For TRAVELERS INSURANCE COMPANY, counter-defendant: Kyle Ann Kane, William Joseph Carter, CARR GOODSON, P.C., Margaret Hanley Warner, Peter Karl Tompa, MCDERMOTT, WILL & EMERY, Edward Michael Andries, PEPPER, HAMILTON L.L.P., Washington, DC.

For TRAVELERS INSURANCE COMPANY, counter-defendant: [*6] Robert F. Cusumano, SIMPSON,

THACHER & BARTLETT, New York, NY.

For AMERICAN HOME ASSURANCE COMPANY, movant: Donald L Uttrich, JACKSON & CAMPBELL, P.C., Washington, DC.

**JUDGES:** JOHN GARRETT PENN, United States District Judge.

**OPINIONBY:** JOHN GARRETT PENN

**OPINION:**

This case comes back before the Court on a variety of motions for summary judgment and motions for partial summary judgment filed by the parties in this litigation. Abex n1 which at one time manufactured products which contained asbestos originally brought this action against three insurers, Maryland Casualty Company (Maryland), Liberty Mutual Insurance Group (Liberty Mutual) and Travelers Insurance Company (Travelers) who the plaintiff contended had issued Comprehensive General Liability (CGL) policies to Abex. Thereafter, the defendants filed third party complaints against National Union Fire Insurance Company (National Union), Northwestern National Life Insurance (Northwestern), Argonaut Insurance Company (Argonaut), and Continental Insurance Company, Inc. (Continental).

> n1 The action was originally filed by Abex Corporation, however, thereafter, Abex became Pneumo Abex Corporation as the result of a merger. Whitman Corporation was allowed to intervene as a plaintiff. Throughout the opinion, the Court will refer to "Abex" which includes the original Abex and Pneumo Abex.

[*7]

**I**

Very briefly, the background of this litigation is as follows: Abex brought this action for declaratory judgment seeking to have the Court require the insurers, at that time, Maryland, Liberty Mutual and Travelers to defend it in the growing number of asbestos related litigation cases. Abex filed a motion for partial for summary judgment which the Court granted based upon the decision in *Keene v. Insurance Company of North America*, 215 U.S. App. D.C. 156, 667 F.2d 1034 (1981), cert. denied, 455 U.S. 1007, 102 S. Ct. 1644, 71 L. Ed. 2d 875, 102 S. Ct. 1645 (1982). The insurers appealed and the Court of Appeals issued an opinion and remanded the case for action consistent with its decision. *Abex Corporation v. Maryland Casualty Company*, 252 U.S. App. D.C. 297, 790 F.2d 119 (1986). The Court of Appeals ruled that the Court must apply New York law and thus, the decision in *Keene* was inapplicable because that case did not purport to apply New York law. The court noted that:

> Instead [of applying New York law in *Keene*], because we determined that none of the states whose law was arguably applicable had addressed specifically [*8] the issue in dispute, we applied "the basic principles governing the interpretation of insurance policies," in interpreting the CGL policy. *Keene*, therefore, does not necessarily identify the correct interpretation of the CGL policy under New York law.

*252 U.S. App. D.C. at 302, 790 F.2d at 124* (footnote omitted, matter in brackets supplied by this Court.) In interpreting the meaning of "occurrence" in the policy the court relied upon the decision in *American Home Products Corp. v. Liberty Mutual Insurance Co.*, 565 F. Supp. 1485 (S.D.N.Y. 1983), affirmed as modified, 748 F.2d 760 (2nd Circuit 1984). The Court of Appeals then went on to discuss what is meant by the trigger, that is, the "event or events" which will "trigger" the insurers' duty to defend and indemnify Abex. *252 U.S. App. D.C. at 302, 790 F.2d at 124*. The trigger refers to when injury-in-fact occurs under New York law. The court remanded the case to this Court noting that "the principal task for the District Court on remand will be to determine when injury-in-fact occurred" and that there was no need to "pinpoint the exact date of injury; "rather, "all [*9] that is necessary is reasonably reliable evidence that the injury, sickness, or disease more likely then not occurred during the period of coverage." *252 U.S. App. D.C. at 306, 790 F.2d at 128* (footnote omitted).

That issue has now been resolved by the parties by way of a stipulation which is not inconsistent with the evidence this Court heard during a factual hearing on when injury-in-fact occurs. Therefore, this issue has been resolved.

With respect to the duty to defend, the Court of Appeals noted that:

> Although the issues surrounding the insurers' duty to indemnify Abex cannot be resolved on a motion for summary judgment, the same is not true with respect to the duty to *defend* Abex. Under well-settled principles of New York law, Abex is entitled to defense by the insurance companies if the underlying

tort complaints "permit proof" of the facts establishing coverage, or if the complaints do no exclude the possibility that injury-in-fact occurred during the policy period. Only if the insurers establish, "*as a matter of law*, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify," would they escape [*10] their duty to defend Abex.

*252 U.S. App. D.C. at 306-307, 790 F.2d 128-129* (emphasis in the original, footnotes omitted).

Finally, the Court of Appeals noted that this Court must consider the applicability of the so-called, "deemer" clauses and "other insurance" clause in the Liberty Mutual policies. This matter has been resolved by this Court. *See* Memorandum Order filed August 18, 1994, at 7-11.

The above sets the stage for the issue now before the Court – that is, the question of allocation with respect to indemnification and defense costs. Those issues present difficult questions. Some parties suggest that with respect to these issues the Court should continue to adhere to its prior ruling. Some parties suggest that the earlier ruling is the "law of the case" and the ruling should remain, presumably whether or not it is consistent with the most recent interpretations of the New York law. Finally, other parties suggest that the Court should follow what they contend is now the New York law whether or not it is consistent with the prior ruling of the Court.

II

Before addressing the earlier rulings of this Court or the rulings in more recent cases relating [*11] to allocation, the Court will attempt to set forth the various positions of the parties. This is by no means an easy task since the there is such a mix of positions being argued. There is also the question of fairness or what is equitable. This discussion must be taken with an understanding that the law relating to asbestos litigation and the law of allocation with respect to indemnification and defense costs has been developing since this case was first flied.

**A. The present positions of the parties.**

**1. Abex Corporation.**

Abex contends that there are two distinct issues, first is the insurer's obligation to defend the insured and the second is the how the defense costs are divided up among the insurers. It contends that this is the law of the case as set forth in the *Abex* decision of the District of Columbia circuit and by this Court in its ruling on April 6, 1990. Abex states that "as long as at least one insurance company's policy is triggered by an asbestos claim, Abex doesn't get allocated any costs." Motion Argument Volume 1A (Vol.1A) n2 at 58. Contending that some of the parties rely on *Olin Corporation v. Insurance Company of North America, 221 F.3d 307 (2nd Cir. 2000),* [*12] and *Stonewall Insurance Co. v. Asbestos Claims Management Corp., 73 F.3d 1178 (2nd Cir. 1995),* in support of their contentions that under certain circumstances, some of the defense costs should be allocated to Abex, that plaintiff argues that *Olin* and *Stonewall* dealt with indemnity, not defense costs and are therefore inapplicable to the issue of payment by the insured for defense costs. It argues that "it is well settled that Abex cannot be assessed any portion of defense costs for asbestos-related claims when the policy of one insurer is triggered." Vol. 1A at 62.

n2 Refers to the transcript of the oral argument.

With respect to the issue of indemnification, Abex notes that it had argued that New York law had allowed it to pick and choose insurers, that is, "policyholder could decide which of the — which one from among several insurance policies that are triggered by a claim responded in full to that claim. Because of the decisions in *Stonewall* from December of '95 and the *Olin* [*13] case from August of his year [2000], Abex no longer pursues that result under New York law. And, rather, the rule under New York law is that indemnity costs for asbestos claims must be allocated pro rata over the unexhausted years of primary insurance that remain that cover Abex." Vol. 1A at 64. Abex goes on to note that: "Now, the *Stonewall* and the *Olin* cases call for pro rata allocation of indemnity costs, and both cases do recognize that in appropriate circumstances there may be situations where some indemnity costs are allocated to the policyholder. Not defense costs, but only indemnity costs." *Id.* Abex also argues that the correct interpretation of the New York cases is that an insured "can only be allocated a prorated share of indemnity if it has voluntarily assumed the risk for itself." Vol. 1A at 65. It also notes that a question before the Court is whether Abex can be allocated a share for indemnity costs from April 1st of 1985 to December 31, 1987. Abex argues against such a result because it contends that beginning April 1, 1985, it was unable to purchase insurance to cover asbestos claims. In making the claim that asbestos insurance was not available after [*14] April 1, 1985, Abex cites to the testimony of a witness who was responsible for purchasing insurance for Abex. In this regard, Abex states, "that person testified clearly that he tried to buy insurance to cover Abex for asbestos claims, was successful in the early part of the 1980'a, but could not buy it after April 1, 1985." Vol. 1A at 66. Abex also points to the testimony of an expert who

Case 1:05-cv-01125-PLF    Document 118-2    Filed 11/07/2005    Page 5 of 12

Page 5
2001 U.S. Dist. LEXIS 20297, *14

allegedly testified that there was no insurance coverage for asbestos after 1984. *Id.* Finally, Abex cites to the situation of National Gypsum, presumably as referred to in *Stonewall Insurance Co. v. Asbestos Claims Management Corp., supra.* The Court would note that with respect to this issue it seems reasonable for the parties to resolve the issue of whether there was insurance available after 1984 by stipulation. Perhaps a starting place would be for the insurers to examine whether they offered such insurance for that time frame. A somewhat similar argument issue was discussed relating to whether Abex was insured prior to August 1, 1943.

### 2. Whitman Corporation

Essentially, Whitman takes the same position as Abex. It argues that "the per capita allocation of defense [*15] costs, consistent with the policy language that imposes a duty to defend upon each of the carriers whose policies are triggered, consistent with the law of New York as it stood as stood in 1990, when this Court last addressed that issue, consistent with this Court's order of April of 1990, and consistent with the law of New York today." Vol. 1A at 70. In short, Whitman argues that the Court should follow the law of the case.

### 3. Travelers Insurance Company.

Travelers notes that it has funded approximately 30 million dollars related to the Abex asbestos problem for defense and indemnity although it provided coverage for only three years. Although Travelers feels that it should only be paying three percent, it contends that it has paid something like 30 percent. Travelers contends that within the last three years the New York law has been amplified by *Stonewall* and other cases. It argues that there are two aspects of the New York rule. First, "the New York rule is fixed horizontal allocation." Vol. 1A at 8. The second aspect "is that if, for any reason, there is no coverage for a given year or years in the horizontal scheme, then that year defaults to the policyholder. [*16] Whether the policyholder decided not to buy insurance, whether the policyholder settled it insurance, whether the policyholder bought insurance that had exclusions, whether the insurers are bankrupt, whatever it is, that year pays its fixed share directly or implicitly." *Id.* Travelers also states that New York rejects the notion that "anybody ought to be able to shoehorn into one policy a large horizontal share of an overall underlying insurance problem." Vol. 1A at 9. it states that Abex has now accepted the fact that its prior position is no longer valid under New York. The Court assumes that this reference is to the "pick and choose" claim that Abex has now conceded does not represent New York law. But, Travelers disagrees with the Abex asserted that the change in New York law does not apply to both indemnity and defense. Travelers clearly disagrees with any contention that for defense costs there should be a "joint and several" liability. In short, as the Court understands Travelers' argument, the current New York law is that *Olin* and *Stonewall* applies to both indemnity and defense costs. As its counsel stated: "I think Your Honor at this point need do no more than [*17] say at the end of the day, 'I hereby order an *Olin* allocation on defense and indemnity,' and order that the parties spend 30 days and work this out." Vol. 1A at 11. Finally, in response to a question from Court as to how Travelers' argument differs from what this Court has ordered in the past, counsel responded that the earlier law the Court relied on was "not only not definitive, but virtually opaque." Vol. 1A at 12. Travelers emphasized that as the result of the earlier order, Travelers with three coverage out of 40 years pays one third and that the post-1974 insurers with 12 years of coverage have paid nothing.

Last, Travelers also addressed the issue relating to those years when Abex did not have coverage. Its position was that Abex was self-insured for a period in the 1940's, presumably pre-1943. This issue is important because it has an effect on the allocation formula. These comments by Travelers refer to any years in which insurance for asbestos coverage was available but during which Abex did not purchase coverage. This is often referred to as "going bare." Travelers also briefly addressed the question concerning those years when Abex did not have insurance coverage for [*18] asbestos because it was not available on the market. That is what Abex contends was the case beginning in April 1985. Counsel for Travelers responded to that issue by stating that under those facts there may be an "exception." He notes that "there is an indication in those cases, if insurance was simply unavailable for the risk that is being allocated in a given year, in other words, if in 1992 you could not buy liability insurance for asbestos, let's say, there is *significant* authority in New York cases that say, well, that's not going to be included in the allocation; that will not default to the policyholder." Vol. 1A at 14 (emphasis the Court's). But, in the end, Travelers did not concede that issue; rather, it stated that there is a debate about whether in 1987 and 1988 when Abex did not have insurance because it was not available whether those years should be included for allocation since the company continued to manufacturer Abex products.

In short, Travelers argues that over the years the law relating to indemnification and defense costs has become clearer and that the Court should apply the law as it currently stands.

### 4. Continental Insurance Company, Inc. [*19]

Continental states that it settled with Abex in July of 1999 and "exhausted its two policy limits." Vol. 1A at 16. It also states that it has "settled in principle with

Case 1:05-cv-01125-PLF    Document 118-2    Filed 11/07/2005    Page 6 of 12

Page 6
2001 U.S. Dist. LEXIS 20297, *19

Maryland Casualty." *Id.* It notes that it "is before this Court on the allocation question only with respect to the contribution claims filed against it by Liberty Mutual and Travelers." It contends that the allocation issues raised by Travelers and Liberty are the same allocation issues that the Court must resolve with respect to all of the parties and it states that there are two basic issues. First how the defense costs should be allocated among the insurers, and second, should Abex be allocated a portion of those defense costs "relating to claims alleging injury during the periods when it was uninsured, under insured, or otherwise did not have available insurance. *Id.* Continental, which is at times referred to as a post-1974 insurer came into this case as a third-party defendant. It notes that the first question before the Court, insofar as it is concerned, is the allocation between insurance carriers. It argues that the decision in *Maryland Casualty Co. v. W.R. Grace and Co., 218 F.3d 204 (2nd Cir. 2000).* [*20] Continental contends that *W.R. Grace* said that contribution claims between carriers are not a matter of contract or of subrogation, but rather, a matter of equity, and that, in order to obtain contributions, a carrier must prove that it paid more than its fair share.

Continental states that it gave two years of coverage to Abex on the asbestos claims. It contends that Continental had limits of 1.75 million compared with Liberty which had limits of 42 million. It argues that Liberty Mutualwants the Court to go back to its April 5, 1990, more than ten years ago and apply the law of the case. It contends that the 1990 order was a *preliminary ruling when both the facts and the law were different* and was rendered when Abex had not even sued the post-1974 insurers and before the coverage issues were resolved. It observes that, on behalf of all of the post-1974 insurers, National Union had forecast that there would have to be a reallocation of the defense costs once the coverage issue was resolved. Continental notes that in 1994, this Court determined that indemnity allocation would be pro rata and that in 1999, the Court entered the injury-in-fact stipulation. Continental contends [*21] that the 1990 order notes that this circuit follows the home circuit rule and the Court held that it would defer to the home circuit rule and that the Court, based upon the decision in *Federal Insurance Co. v., Cablevision Systems Developments Co., 662 F. Supp. 1537* (S.D.N.Y.), *affirmed, 836 F.2d 54 (2nd Cir. 1987),* held that the duty to defend is equal. According to Continental, that is not the law of New York and that the law of the case doctrine should not apply when the law has changed. Thus, Continental argues that the allocation applied to both indemnity and defense costs should be the same as set out in *Olin* and *Stonewall*, that is, there should be a pro rata allocation for both indemnity and defense costs.

### 5. National Union Fire Insurance Company.

National Union notes that it is another post-1974 carrier. It also notes that over the years the posture of the different parties has changed due to various settlements and arrangement. National Union notes that it issued five policies to Abex, one of which was a two year policy. Under a settlement with Abex, three of those years are now exhausted. Counsel referred to four matters [*22] which are of importance insofar as National Union is concerned. First, is that since the 1990 order of this Court there has been considerable discovery so that the parties can evaluate any collateral issues remaining after the Court resolves the allocation issue. Second, over the years the law which was unsettled is becoming clearer and further that various settlements have reduced the number of issues. Third, since the 1990 order the parties have entered into a stipulation relating to the trigger when injury takes place.

National Union notes that it did not join in a stipulation that New York law applies but contends that whether Illinois law should apply or New York law, there is "no conflict of law between New York and Illinois, *so that is not an issue*." Vol. 1A at 26-27 (emphasis the Court's).National Union argues that the proper rule is that indemnity and defense costs should be allocation on a pro rata basis to time on the risk.

Turning to the matter whether Abex should be included in the allocation methodology, National Union argues that it should be for those years during which it did not carry insurance. Presumably, the years referred to are those years during which [*23] asbestos insurance was available but Abex decided to "go bare." National Union notes that in the event the Court decides that Abex will be a part of the allocation methodology, then there would be an issue as to whether Abex should be assigned a particular period of time on a particular basis - that is, how would the allocation be handled between Abex and the relevant insurers. With respect to the pre-1943 years where there is a question as to whether Abex carried insurance, National Union argues that the burden of proof should be on Abex to prove it had such insurance. It notes that Abex may have been manufacturing asbestos products since the late 1920's.

Finally, National Union raises the issue of Abex participation in indemnification for those periods after April 1, 1985 when Abex claims that it no longer could purchase insurance. It notes that the period extended to 1987 and contends that notwithstanding the lack of insurance beginning in 1985, Abex continued to manufacture asbestos products through the end of 1987 and "in fact, increased its production in 1987 in order that there would be a bank of products so they could go into the stream of

Case 1:05-cv-01125-PLF    Document 118-2    Filed 11/07/2005    Page 7 of 12

Page 7
2001 U.S. Dist. LEXIS 20297, *23

commerce through - - after the end [*24] of 1987." Vol. 1A at 30-31. National Union poses the question whether such facts would take Abex out of the rule of *Stonewall* (suggesting that under such circumstances where asbestos insurance was simply not available that the manufacturer might not be required to participate in allocation). It states that the allocation issue for the period 1985 through 1987 is something it may wish to address in the future.

National Union contends that the allocation issue should be decided for both indemnification and defense costs based on pro rata allocation.

### 6. Northwestern National Life Insurance.

Basically, Northwestern joins with the other post-1974 insurers which argue in favor of a "proper method of allocation on an equitable time-on-the-risk basis." Vol.1 1A at 39. It notes that it issued only one year of insurance coverage and that it was the first insurer to enter into a "full and final settlement with Abex and it paid its remaining policy limits to exhaust its sole policy. There are no more issues between Northwestern National and Abex in this case. The only issues that remain are the contribution claims of certain of the pre-1974 insurers who argue for an equal share [*25] allocation, which we submit is a flawed argument based on the reasons that have already been stated." Vol. 1A at 39-40.

### 7. Liberty Mutual Insurance Group.

Liberty Mutual argues that the methods of allocation *for both defense costs and indemnification* have been decided for years in this case. It contends that the Court decided the defense issue in its 1990 Memorandum Order and decided the indemnity allocation in 1994. It further argues that Travelers, Argonaut, Continental, National Union and Northwestern argued at that time that defense costs should be decided pro rata by years of coverage whereas Liberty Mutual and Maryland argued that each insurer must bear an equal share of the defense costs for those claims which triggered a duty to defend. Vol. 1A at 41. Liberty Mutual argues that this Court decided those issues and that decision represents the law of the case. Liberty Mutual also argues that the third party defendants, also referred to as the post-1974 insurers, submitted themselves to the Court of the method of allocating defense costs. *Id.*

Liberty Mutual also argues that the Court's 1990 ruling with respect to Court's equal share decision followed the decision [*26] of the D.C. Circuit in *Abex*. It notes that the Court of Appeals refused to grant "summary judgment" on the duty to indemnify but ruled that: "As long as there remains a possibility, a possibility, however remote, the injury occurred during the policy periods of each insurer, the insurers must defend Abex." Vol. 1A at 43

Liberty Mutual goes on to argue that "as the Court recognized in its 1990 allocation order, the Second Circuit has definitively addressed this allocation issue. In *Cablevision System [ Federal Insurance Co. v. Cablevision Systems Development Co., 836 F.2d 54 (2nd Cir. 1987),* and that what Your Honor relied upon, the Second Circuit held that defense costs must be shared equally among primary insurers. Contrary to the tortured reading of *Cablevision* by the post-1974 insurers and the District Court in *Avondale [ Avondale Industries, Inc v. Travelers Indemnity Co., 774 F. Supp. 1416 (S.D.N.Y. 1991),* which just disregarded *Cablevisions Systems* - - and, you know, you follow the Court of Appeals, not a wayward District Court. Vol. 1A at 44. Liberty Mutual contends that the law of Illinois is no different. In clarifying its argument, [*27] Liberty Mutual states: "Liberty Mutual is not asking, as Mr. Peacock [counsel for Argonaut] suggested, the Argonaut pay an equal share for all of Abex's claims. *Liberty Mutual is asking Argonaut to pay an equal share on those claims that trigger, that permit proof of injury in fact during Argonaut's policy period.*" Vol. 1A at 47 (emphasis the Court's).

Liberty Mutual also seeks prejudgment interest in the context of contribution claims among co-insurers.

Finally, Liberty Mutual argues that the decision in *Maryland Casualty Co. v. W.R. Grace and Co., supra* was fact driven and that the decision in that case contained other insurance clauses that require apportionment of defense costs of a pro-rata basis.

### 8. Maryland Casualty Company.

Maryland states the issue is whether this Court's April 5, 1990 order must or should be vacated and replaced by a new rule as advocated by Travelers and the post-1974 carriers. It notes that it has a partial settlement agreement with Abex which governs its payment of indemnity payments under a rule that is a pro-rata allocation rule. Maryland also contends that with respect to defense costs, it has "paid a lot, not qualitatively [*28] different than the position that Travelers has been in." Vol.1A at 51. Maryland noted that it was on the "cusp" of singing an agreement settling their claims for contribution against Argonaut and Continental and that, as soon as that is done, it will withdraw its motions against those insurers. Over all, Maryland takes the position that changes in the law do not require the Court to vacate the 1990 order since the more recent cases are really referring to pro-rata allocation for indemnity payments. It contends that changing the rule now would not help in the resolution of the case and would probably lead to more disputes.

Maryland also argues that the pro-rata allocation for defense costs would lead to a "lot of bookkeeping in or-

der to figure out what your obligations are. It is not clear whether when looking backwards that bookkeeping is going to be easy, or whether looking forward it would be feasible either." Vol. 1A at 55.

In short, Maryland's position is fairly consistent with that of Liberty Mutual.

II

### A. The April 5, 1990 Memorandum and Order.

Any discussion on the question of allocation must begin with the prior ruling of this Court addressing that issue. Indeed, [*29] most of the parties have addressed the April 5, 1990 Memorandum and Order and the August 18, 1994 Memorandum Order as clarified by the Order dated September 12, 1994.

On April 5, 1990, the Court filed a Memorandum in response to the motion for partial summary judgment filed by Travelers against Liberty Mutual and Maryland. In that Memorandum, the Court stated that "the parties in this case agree that the issue before the Court is the proper allocation of defense cost owed by Travelers, Liberty, and Maryland to the plaintiff Abex Corporation." Memorandum at 1. In a footnote the Court observed that, "the third-party defendants have submitted themselves to the Court on the issue of the method of allocation, but have not conceded liability to Abex. The third-third defendants have submitted briefs on this issue and were heard during oral argument. There has been no judgment against the third-party defendants." *Id.* at 1, n.1.

The Court noted the decision in *Federal Insurance Co. v. Cablevision Systems Development Co., 836 F.2d 54 (2nd Cir 1987)*. This Court stated that the initial issue before the Court was whether the Second Circuit had addressed the issue of allocation [*30] of defense costs in *Cablevision*. At that time, the Court understood Travelers' argument to be that, absent a clear expression of intent "the rule is that insurers with concurrent obligations to defend must share defense and indemnity cost pro rata, with each carrier paying an amount equal to the proportion that its coverage bears to the total coverage available to the insured." Memorandum, at 2. The Court noted that it disagreed with Travelers' interpretation of the holding in *Cablevision*. The Court stated that "this Court reads *Cablevision* to conclude that under New York law, the duty to defend is equal." *Id.* The Court ruled that "for the reasons discussed above, the Court concludes that the proper method of allocation of defense cost should be apportioned equally." Memorandum at 2-3. The Court then went on to state "that Travelers is entitled to be reimbursed by Liberty and Maryland for any defense cost paid to Abex in excess of its equal share."

Thus, the Court ruled that defense costs would be paid on an equal basis by the insurer, Travelers, Liberty Mutual and Maryland. The Memorandum did not refer to the third-party defendant, but it seems reasonable to believe [*31] that the ruling would apply to *all* parties. There is no reason to believe that one insurer would carry a heavier burden than another insurer provided both policies covered the particular loss involved. The Court concludes that was understood by the parties. Moreover, the Order entered by the Court provided that "the proper method of allocation of defense cost is apportionment equally." Order filed on April 5, 1990. Hypothetically, if a particular loss was insured by Insurer A and Insurer B, and assuming nothing in the policy which would provide otherwise, and assuming that the defense costs amount to $50,000 relating to a particular claim, then each would pay $25,000. All insurers would share the defense costs equally.

### B. The August 14, 1994 Memorandum Order.

Several issues were addressed in the 1994 decision, including questions relating to "deemer" clauses, and "other insurance" clauses. The Court need not refer to those clauses and its decision with respect to those clauses for the purposes on this Opinion. That Memorandum Order also discussed the question of when injury-in-fact occurs, but that is no longer an issue here because the parties have resolved that [*32] issue by stipulation and are now bound. Moreover, as the Court noted above, the stipulation entered by the parties does not appear to be inconsistent with the facts presented in the mini-trial before the Court prior to the stipulation by the parties.

In the 1994 decision, the Court noted that one issue raised by Abex "is the request that the Court rule that 'with respect to each policy triggered for indemnification by "injury in fact," each defendant has an indivisible and several liability obligation to indemnify Abex up to the policy limits for each covered asbestos claim." Memorandum Order at 6. In addressing that question the Court turned to the decisions in *American Home Products Corp. v. Liberty Mutual Insurance Co., 565 F. Supp. 1485 (S.D.N.Y. 1983), affirmed as modified, 748 F.2d 760 (2nd Cir. 1984, and Uniroyal, Inc. v. Home Insurance Co., 707 F. Supp. 1368 (E.D.N.Y. 1988)*. On the question of allocation of losses among insurers, the *Uniroyal* court considered four options, namely, "'stacking' the policies, finding each policy to be jointly and severally liable for the entire loss, allowing the insured to choose the policy [*33] it prefers, and allocating the losses to each policy according to the proportion of injuries triggering that policy." *707 F. Supp. At 1391*. The *Uniroyal* then stated that "only the last method make sense in this case." *Id.* This Court then stated that it concludes that it should follow

Case 1:05-cv-01125-PLF    Document 118-2    Filed 11/07/2005    Page 9 of 12

Page 9
2001 U.S. Dist. LEXIS 20297, *33

the lead of *Uniroyal* in this case. Thus, this Court concluded that with respect to indemnification, the pro rata allocation approach should be utilized. In short, the Court rejected the first three options mentioned by the *Uniroyal* court and selected the last one. Its decision was based on the reasoning set forth by Judge Weinstein in rejecting the first three options and adopting the fourth.

The Court notes that in the 1994 Memorandum Order, it referred to one other issue raised by Abex, that being whether "where more than one policy is triggered by the same underlying asbestos related claim, Abex may select the policy it seeks for indemnification." Memorandum Order at 6. A reading of the Memorandum Order reflects that the Court did not address that issue. However, that is of no moment here because Abex no longer makes that claim.

One more comment must be made with respect [*34] to the 1994 Memorandum Order. After the *al* decision, the parties filed a joint motion to clarify the Memorandum Order. The joint motion was filed by Travelers, Liberty Mutual and Maryland. They stated: "As set forth in the accompanying memorandum, making explicit that the Memorandum Order applies to *all* parties in this action, *including the third-party defendants*, is appropriate to ensure that the proceedings contemplated by the Court's Memorandum Order completely resolve the issues in dispute among the parties." (Emphasis the Court's). The joint motion was filed on August 24, 1994. The Court granted the joint motion without objection by the third-party defendants. That Order provided, in part, that "where this Court's August 18, 1994 Memorandum Order, refers to "parties" that term is to include all parties to this action, including the third party defendants." The Memorandum Order is binding on *all* parties, including the post-1974 insurers.

### III

**A. Allocation as it relates to indemnification.**

With respect to the method of allocation relating to indemnification, there appears to be little or no issue. As noted above, this Court adopted the approach followed [*35] in *Uniroyal*, that is, pro rata allocation. Recent decisions in *Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2nd Cir 1995) and *Olin Corp. v. Insurance Company of America*, 221 F.3d 307 (2nd Cir 2000) do not change that decision. In particular, *Olin* held that under the facts of that case, the district court was correct in adopting allocation, that is pro rata allocation rather than joint and several liability. As the court noted, "under this methodology, liability for injury or damages is allocated among all triggered policies, and to the insured for periods of self-insurance, if any, based upon some objective factor. *Olin*, 221 F.3d at 322 (citation omitted). The court went on to say that, "more specifically, where the policies triggered are provided by multiple insurers, allocation avoids saddling one insurer with the full loss, the burden of bringing a subsequent contribution action, and the risk that recovery in such an action will prove to be impossible because, for instance, the insurer of other triggered policies is unable to pay." *Olin*, 221 F.3d at 323 (citations omitted). [*36] Another factor is that "allocation also forces an insured to absorb the losses for periods when it was self-insured and can prevent it from benefitting from coverage for injuries that took place when it was paying no premiums . . . . Allocation may also be more efficient because 'any contribution proceeding will involve many of the same issues that are raised in the initial liability proceeding, and . . . it is more efficient to deal with these issues in a single proceeding." *Olin*, 221 F.3d at 323 (citations omitted).

The Court does not read either *Stonewall* or *Olin* as ruling that pro rata allocation is the only method that may be utilized. It depends on the facts of each case, but certainly, where there are multiple insurers, pro rata allocation appears to be the favored method. The *Olin* court gave an example of a situation where the joint and several approach may be properly utilized. It stated that "where the triggered policies were obtained from a single insurer and there is no period of self-insurance with which to deal, the joint and several approach may be appropriate because there is little or no threat of future litigation seeking contribution" [*37] *Olin*, 221 F.3d at 323 (citation omitted).

It is now quite clear that under New York law, the pro rata allocation approach to indemnification should be followed in this case. The case involves multiple insurers, over a number of years, and also includes the issue whether during a period of time Abex was self insured or choose to "go bare." With respect to that later issue, this Court adopts the approach that it can allocate a pro rata share of liability to Abex in any years where Abex *voluntarily* choose not to purchase insurance to cover the risk involved here. This ruling is consistent with New York law. The court in *Stonewall* stated: "We agree with Judge Martin that proration-to-the-insured is a sensible way to adjust the competing contentions of the parties in the context of continuous triggering of multiple policies over an extended span of years. We agree that proration is appropriate as to years in which [the insured] *elected* to purchase insurance or purchased insufficient insurance, as demonstrated by the exhaustion of policy limits." *Stonewall*, 73 F.3d at 1203 (emphasis this Court's). The decision in *Olin* is in accord with [*38] *Stonewall* on this issue. *Olin*, 221 F.3d at 322. But, that court explained by what was meant by "*elected*." It stated

that: "We agree with the district court that its findings as to the general availability of insurance that would have covered the risk at issue here and Olin's failure to obtain it were all that was necessary to allocation the uninsured years to Olin. There was no need to analyze whether Olin subjectively elected to forego insurance and self-insure. *Stonewall,* we think stands for that proposition. While the opinion does use the term "elected," the touchstone of our analysis was *availability*, not election. And we said that 'periods of no insurance reflect a decision by an actor to assume or retain a risk' when it 'is reasonable' to 'expect the risk-bearer to share in the allocation,' comparing such periods 'to periods when coverage for a risk is not available." *Olin, 221 F.3d at 326* (citations omitted, underlined emphasis in the original, emphasis this Court's).

Whether this is or is not the fact in this case, that is, whether insurance was available during any relevant year is not clear at this point. There has been [*39] a claim that Abex did not have insurance for some years prior to 1943. The Court assumes that if Abex did have such insurance, it can establish that. But *all* of the parties are charged with the responsibility of resolving this issue and there is no reason for them to engage in further protracted litigation on that issue. Abex, as plaintiff, has the burden of proof on that issue. It is in the best position of establishing that it carried such insurance, otherwise, the insurers would be required to prove a negative. Once Abex puts forth such proof, the burden of going forward on that issue rest with the particular insurers which may be involved for the relevant year or years. This Court strongly encourages the parties to meet and confer with respect to this issue.

Of course, there is another issue in this case which involved the years after April 1, 1985. Abex contends that asbestos insurance was not available and that. if the Court adopts pro rata allocation to the insured, the years after that date should not be included. Not all of the insurers agree with Abex. In those cases, the non-agreeing insurers seem to contend that if Abex did not have insurance, even where the insurance [*40] was not available, then Abex should share in the allocation. Moreover, at least one insurer suggest that, although Abex may be of the hook, for say 1985, the first year insurance may not have been available, that fact that Abex continued to manufacture such products after 1985 reflected a deliberate decision by Abex to go uninsured, and those, pro rata allocation should apply.

In *Stonewall,* the court addressed the issue of non-availability of insurance. While that court noted that it agreed with Judge Martin "that proration-to-the-insured is a sensible way" to approach the issue where the insured either elects not to purchase insurance, or presumably as the *Olin* court said, when insurance is not available, it went on to say, "we do not agree with the District Judge's subsidiary ruling that proration-to-the-insured should be applied to years after 1985 when asbestos liability insurance was no longer available." *Stonewall, 73 F.3d at 1203. Olin* also discussed this issue and, as noted above, focused on the question of whether insurance was "available" rather than whether the insured "elected" not to purchase insurance, In gave as a reason for doing so that [*41] "availability" is a more objective standard than "elected" and further "focusing on availability rather than election removes from those assessing risk the impetus to create a record to establish that they never made such an election." *Olin, 221 F.3d at 326.*

*Stonewall* and *Olin* set forth the New York law and this Court adopts that approach. Therefore, if it is established that the relevant insurance was not available in 1985 or thereafter, then Abex will not be involved in pro rata allocation for those years. The Court understands that there is not serious dispute relating to whether it was available. Certainly, the court in *Stonewall* concluded that it was not available in 1985 and the court in *Olin*, while not mentioning a specific year, assumes the same. The Court recalls references to the non availability of asbestos insurance in 1985 and thereafter in other cases as well. Absent some objection to that conclusion by one or more of the parties to this litigation, the Court will hold that asbestos insurance was not available in 1985 and thereafter. That decision will be binding on *all* parties.

Having said that, the Court has not addressed the issue [*42] of how long Abex continued manufacturing asbestos products when insurance was not available. For example, to use an extreme, suppose Abex continued to manufacture asbestos products five or ten years after asbestos insurance was no longer available, then what? The Court does not suggest that this is an issue which needs to be resolved. The Court only puts all parties on notice that absent any further authority or objection relating to the effect of the non-availability of insurance after 1985, the Court will conclude that once it is agreed or established that asbestos insurance was not available afer 1985 and through 1987, that shall be the end of it. In that case, Abex will not be required to participate in allocation for those years, notwithstanding that it did not have asbestos insurance. Once additional factor must be mentioned. An insurer would not be liable for a given year when it did not issued insurance. For example, if the injury-in-fact occurred in 1986, then the insurer would not be liable who did not issue insurance for that year would not be liable.

IV

The final question the Court will address at this time relates to the payment of defense costs and how such payments [*43] should be allocated among the insurers.

Case 1:05-cv-01125-PLF    Document 118-2    Filed 11/07/2005    Page 11 of 12

Page 11
2001 U.S. Dist. LEXIS 20297, *43

Whether the insurers in this case are required to pay defense costs is a given and has been such since the Court of Appeals addressed that issue. As the Court of Appeals stated, "although the issues surrounding the insurers' duty to indemnify Abex cannot be resolved on a motion for summary judgment, the same is not true with respect to the duty to defend." *Abex, 252 U.S. App. D.C. at 306, 790 F.2d at 128.* The Court of Appeals went on to state"

> Under well-settled principles of New York law, Abex is entitled to defense by the insurance companies if the underlying tort complaints "permit proof" of the facts establishing coverage, or if the complaints do no excluded the possibility that injury-in-fact occurred during the policy period. Only if the insurers establish, "*as a matter of law*, that there is no legal basis on which the insurer might eventually be obligated to indemnify," would they escape their duty to defend Abex. Recently, a New York trial court applied these principles and granted an insured summary judgment on the duty to defend when the insurers "failed to establish that there was no possible factual or legal [*44] basis on which they might eventually be obligated to indemnify [the insured] against liability." Summary judgment is also appropriate here in this case because the insurers here to have failed to establish that no coverage is possible as a matter of law.
>
> We hold, therefore, that the insurers must immediately fulfill their duty to defend Abex. This obligation will continue until the insurers establish that, as a matter of law, there is no possibility that they will have to indemnify Abex.

*252 U.S. App. D.C. at 307, 790 F.2d at 129* (footnotes omitted). This was the law of the case when the only insurers were Travelers, Liberty Mutual, and Maryland and it is the law now that those insurers have been joined the post-1974 insurers.

As has been discussed above, *see* Part II A, *supra*, this Court addressed the issue in 1990 and concluded, based upon the ruling in *Federal Insurance Co. v. Cablevision Systems Development Co., 836 F.2d 54,* that the duty to defend is equal. That became the law of the case. But, under certain circumstances, it is not mandatory that the Court follow the law of the case, such as the issue of the payment for defense [*45] costs. In other words, the Court believes it is not bound to blindly follow that decision if it is indeed wrong. And, Travelers and others have suggested that the law has either changed or been clarified with the result that the Court's decision was or is wrong. Travelers and others contend that the law has been clarified by the decisions in *Stonewall* and *Olin*. This Court must disagree. While it is true that both *Stonewall* and *Olin* discuss pro rata allocation, they were referring to allocation relating to indemnification, not defense costs. Indeed, this Court does not read either case as truly addressing the issue of defense costs, and to the extent one might read into the decision a discussion of defense costs, it seems clear that those courts did not establish a firm rule on the allocation of defense costs among groups of insurers.

The law relating to allocation of indemnification or defense costs does not appear to be set in stone in either case, although after *Stonewall* and *Olin*, the better approach for handling indemnification is pro rata allocation. In short, with respect to indemnification, it would seem that such cases would be handled on pro rata allocation [*46] basis, however, there may be that rare case where another approach may be warranted based upon the contract between the parties or the number of insurers involved. But, as this Court reads the New York cases, with respect to defense costs, the rule is not so clear and the courts have used more than one method. Such issues are usually fact driven as appears to have been the case in *Maryland Casualty Co. v. W.R. Grace and Co.,* There the court noted that some of the contracts required pro rata allocation of defense costs. Moreover, the court was dealing with the issue of contribution.

After taking into consideration that the law of the case requires defense costs to be shared equally, that the law was settled by the Court in 1990, and that such a resolution is not inconsistent with current New York law, the 1990 ruling by this Court will stand.

This is not to say, however, that if Travelers is correct in arguing that it has had to carry the heavy load in paying defense costs that such a result was intended. What was intended by the Court's ruling was that *all* insurers share equally in the payment of such costs. It would seem that this is the major issue before the parties, but [*47] it is an issue should be easily resolved if each insurer recognizes its obligation. Once again, the Court encourages the parties to meet and confer, with the assistance of a Magistrate Judge Kay to reach a final settlement in this case.

After weighing the arguments made by the parties, the Court adheres to its 1990 decision in which requires all insurers to share equally in the defense costs.

V

In sum, the Court concludes that pro rata allocation

is the proper method of allocation relating to indemnity. The Court concludes that defense costs should be paid equally by the responsible insurers. The plaintiff cannot pick and choose the insurer it will collection from. All parties are bound by the Court's Memorandum and Order filed in 1990 and by the Court's Memorandum Order filed in 1994, as modified by all the parties without objection.

Over the next several weeks, the Court will issue orders consistent with this Opinion and addressing any outstanding motion, recognizing that this Opinion is comprehensive.. But, the parties are strongly encouraged to immediately begin to engage in settlement discussions to resolve the various claims between the parties and to resolve this case. [*48]

OCT 9 2001

**JOHN GARRETT PENN**

**United States District Judge**