**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

WHITMAN INSURANCE COMPANY, LTD.,

    Plaintiffs,

    vs.

TRAVELERS INDEMNITY COMPANY, et. al.,

    Defendants.

Civil Action No.: 05-1125 (JGP)

---

**<u>REPLY  MEMORANDUM OF POINTS AND AUTHORITIES IN
FURTHER SUPPORT OF LONDON MARKET INSURER DEFENDANTS'
MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT……………………………………………………………1

I.   WHITMAN IS NOT A REAL PARTY IN INETERST AND THERE IS NO
     CASE OR CONTROVERSY BETWEEN WHITMAN AND THESE
     DEFENDANTS……………..…………………………………….…….…………3

     A.  Whitman Has Not Provided Competent Evidence that It Has a Financial
         Stake in the Outcome of this Litigation………………………………......3

     B.  There is No Case or Controversy Between Whitman Insurance Company
         and the London Market Insurers……………………….…………………6

II.  WHITMAN'S ATTEMPT TO AVOID THE DIVERSITY REQUIREMENT
     HAS RENDERED THIS ACTION INCOMPLETE………………………...10

III. WHITMAN HAS NOT SATISFIED ITS BURDEN TO MEET THE
     AMOUNT IN CONTROVERSY REQUIREMENT…………………………...12

     A.  Whitman Has Nothing at Stake With Respect to the London Market
         Insurers………………………………………...……………………………14

     B.  Whitman Cannot Aggregate Its Claim Against the London Market
         Insurers……………...……………………………………………………15

     C.  Peter Lowsley-Williams' Maximum Exposure Could Not Exceed
         $65,395.09……………………………………………………………………..16

IV.  COOPER AND PEPSIAMERICAS ARE NECESSARY AND
     INDISPENSABLE PARTIES TO THE ACTION………………………….…20

     A.  Whitman Misstates the Standard for Determining Whether Parties Are
         Necessary……………………………………………………………………...20

     B.  Both Cooper and PepsiAmericas Assert Rights to the Policies at
         Issue………………………………………………………...…………21

V.   PNEUMO ABEX SHOULD BE REALIGNED AS PLAINTIFF………..…22

VI.  THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION
     AND DISMISS OR STAY THE ACTION………………….…………...24

## TABLE OF CASES AND AUTHORITIES

### CASES

Page

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)…………………..6

*Allstate Ins. Co. v. Administratia Asigurarilor de Stat*,
    948 F. Supp. 285, 307-308 (S.D.N.Y. 1996)………………………………………9-10

*Certain Interested Underwriters at Lloyd's v. Layne*,
    26 F.3d 39 (6th Cir. 1994)……………………………………………………………11

*Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co*.,
    177 F.3d 210 (3d Cir. 1999)………………………………………………………....11

*City of Indianapolis, et al. v. Chase National Bank*,
    314 U.S. 63, 62 S. Ct. 15 (1941)…………………………………………………..23

*Corfield v. Dallas Glen Hills LP*, 355 F.3d 853
    (5th Cir, 2003)………………………………………………………………………...11

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co*,
    *160 F.3d 925 (2d Cir. 1998),*………………………………………………………...…11

*Exxon Mobil Corp. v. Allapattah Services*,
    125 S.Ct. 2611 (2005)……………………………………………………………15,17

*Indiana Gas Co. v. Home Ins. Co*., 141 F.3d 314 (7th Cir. 1998)………………………..11

*Log on America v. Promethean Asset Management, LLC*, 223 F. Supp.2d 435,
    2001 U.S. Dist. LEXIS 20374 (S.D.N.Y. 2001)......…………………………………..6

*Maryland Casualty Company v. Pacific Coal & Oil Company*,
    312 U.S. 270 (1941)…………………………………………………………….......8-9

*Mercantile & General Reinsurance Company, PLC v. Spanno Corporation*,
    151 Misc.2d 311, 573 N.Y.S.2d 102 (1991)…………………………………………..7

*Moses H. Cone Memorial Hospital v. Mercury Construction Company*,
    460 U.S.1 (1982)………………………………………………………………..……24

*Snyder v. Harris,* 394 U.S. 332 (1969)…………………………………………….…15

*Sofia Brothers, Inc. v. General Reinsurance Company*,
    153 Misc. 6, 274, 274 N.Y.S.2d 565 (1934)…………………………………………..7

ii

*St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S.283 (1938)………………………13

*Tongkook America, Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 786
  (2d Cir. 1984)………………………...……………………………………...…13, 14

*Travelers Indemnity Company v. Household International, Inc*.,
  775 F.Supp. 518, 1991 U.S. Dist. LEXIS 15023 (D.Conn.
  1991)………………………………………………………………..……...7-8

*United Food & Comm. Workers Union, Local 919, AFL-CIO*
  *v. Centermark Properties Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir. 1994).....13

*United Services Auto Assoc. v. Royal Globe Ins. Co*.,
  511 F.2d 1094 (10th Cir. 1975)…………………………………………………….....8

*United States Fidelity & Guaranty Company v. S.B. Phillips & Company, Inc*.,
  359 F. Supp.2d 189 (D.Conn. 2005)……………………………………………...……7

## STATUTES

Fed. R. Civ. P. 19(a)(b)……………………………………………………………………20

Fed. R. Civ. P. 17(a)………………………………………………………………………6

28  U.S.C. §1332(a)…………………………………………………………...…13, 15, 20

28 U.S.C. §2201(a)………………………………………………………………...6,9

## PRELIMINARY STATEMENT

Defendants Certain Underwriters at Lloyd's, London and Certain London Market Companies ("London Market Insurers") submit this Reply Memorandum of Law in further support of their Motion to Dismiss.[1] For the reasons outlined below, Plaintiff has failed to meet its burden to establish that this Court has jurisdiction. Whitman and its parent have intentionally obscured the facts in an attempt to gerrymander jurisdiction.

The Plaintiff in this action is WHITMAN INSURANCE COMPANY, LTD. (hereinafter "Whitman"). The Plaintiff is not IC Industries, the named insured under a number of the London Market policies at issue in this litigation, or PepsiAmericas, Cooper Industries or Pneumo Abex, all of whom have asserted rights to proceeds from the London Market insurance policies at issue in this action for Abex asbestos claims. Whitman Insurance Company is not a named assured under any of these London Market policies nor has it articulated a basis under which it would somehow be entitled to any rights and benefits under the policies. However, when arguing that there is an actual amount in controversy between Whitman and the London Market Insurers, Whitman has assumed the position of the alleged policyholder and otherwise has attempted to morph into PepsiAmericas and/or Cooper Industries.

For example, in an effort to sustain its argument that the jurisdictional amount in controversy requirement has been met, Whitman relies on a letter from Cooper Industries seeking reimbursement of about $100 million which was directed to the London Market defendants and other insurer defendants in this lawsuit. But, given the way Whitman has constructed the lawsuit, Cooper's demand is not part of and will not be resolved in this

---

[1] The London Market Insurers join in First State Insurance Company's Motion to Dismiss and the arguments set forth in First State's Reply Memorandum of Points and Authorities in support thereof.

lawsuit.   Whitman has not named Cooper as a party to this lawsuit and it has vigorously disputed the insurers' contention that Cooper is a necessary party.[2] Whitman cannot be permitted to rely on the claim of a non-party, especially one that it denies is necessary to a resolution of this case, to sustain its burden with regard to the jurisdictional amount-in-controversy requirements.

Simply put, Whitman cannot to a legal certainty meet the amount in controversy requirement.  Even if Whitman were to obtain a ruling in its favor on every single one of the nine prayers for relief in its Amended Complaint, the London Market Insurers would owe Whitman <u>ZERO</u> at the end of this case.  In its Amended Complaint, Whitman asks this Court to issue a number of declarations, none of which would result in the London Market Insurers owing Whitman one penny.  Although Whitman may in fact believe that it has paid too much under its alleged reinsurance policy, Whitman's recourse is to pursue that claim against the entity it reinsures, which is not the London Market Insurers. Whether Whitman has to pay additional money in the future will depend on the terms of the reinsurance contract to which it is a party with its reinsured.

Whitman implies that the London Market Insurers have filed pleadings in the New York litigation to the effect that Whitman must keep paying. London Market Insurers have filed no such submission against Whitman in the New York action and, in fact, were unaware of Whitman Insurance Company's alleged involvement until this lawsuit was filed. The New York litigation does not name reinsurers.  Since counsel for Whitman Insurance Company in this case is also counsel for PepsiAmericas Inc.,  in the more comprehensive and first filed New York action, Whitman could easily have

---

[2] Cooper is, however, a party to the lawsuit London Market Insurers initiated in New York in 2002 against Cooper, PepsiAmericas and Pneumo Abex.

intervened in the New York action since 2002 if it had a legitimate dispute with the London Market Insurers. Whitman did not intervene in New York because it has nothing at stake in the New York action, just as it has nothing at stake against the London Market Insurers here.

Ironically, Abex, the entity on whose behalf Whitman seeks the declarations in this lawsuit, does not want this action to proceed. Abex has filed a submission with the Court in New York asking the New York Court to lift the stay in the first filed and more comprehensive action so that the litigation can go forward in New York. (See Serotta Declaration at ¶6.) When the numerous factual inaccuracies and misinterpretations of law contained in the Whitman Opposition are stripped away, it is clear that the London Market Insurers are entitled to dismissal of the Plaintiff's Amended Complaint.

## WHITMAN IS NOT A REAL PARTY IN INTEREST AND THERE IS NO CASE OR CONTROVERSY BETWEEN WHITMAN AND THESE DEFENDANTS

### A. Whitman Has Not Provided Competent Evidence that It Has a Financial Stake in the Outcome of this Litigation

The Whitman Opposition contains no competent proof that Whitman has anything at stake with respect to this lawsuit. Whitman has thus failed to meet its burden of establishing that the Court has jurisdiction. Despite the fact that Whitman argues that it "has a direct financial stake in the outcome of this dispute as an insurance company with responsibility for the first $250,000 layer of coverage for the policy years 1978 through 1985," Whitman Opposition at 11, Whitman has provided no evidence that it is "an insurance company with responsibility for the first $250,000 of coverage." *Id.* Instead, Whitman contends that it issued a reinsurance policy with respect to a $250,000 deductible contained in certain National Union policies. See Whitman Opposition at P. 6.

3

Whitman did not produce a copy of any of the policies it allegedly issued. It did not identify the entity or company it allegedly reinsures. It did not identify to whom it paid the $9 million it claims that it paid.

Whitman concedes that it has no contractual relationship with any of the Moving Defendants, including the London Market Insurers, nor any contractual relationship with Pneumo Abex Corporation. *Id*. Whitman erroneously contends that it is "legally irrelevant" that it does not have any contractual relationship with Pneumo Abex or any of the Defendant Insurers. In the absence of any contractual relationship or a contribution claim, there is no case or controversy between Whitman and the London Market Insurers.[3]

The only evidence provided by Whitman that it issued any policies at all is the Declaration of Archie L. Meairs, the President of Whitman Insurance Company (hereinafter the "Meairs Declaration"), and a "coverage chart" (annexed as "Tab A" to the Meairs Declaration). Counsel herein for Whitman submitted a different chart on behalf of PepsiAmericas in the New York litigation. The chart submitted in the New York litigation did not identify Whitman as an insurer with responsibility for any portion of the primary layer of coverage. (See coverage chart attached to Serotta Declaration at ¶5).

Mr. Meairs claims that Whitman is obligated to provide coverage on the first $250,000 of coverage under policies issued by National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union") to I.C. Industries with Abex as an additional named insured. According to Mr. Meairs, the $1,000,000 National Union

---

[3] There is, however, a case or controversy between London Market Insurers and the entities who are properly named as parties to the New York litigation- namely IC Industries/PepsiAmericas, Cooper and Pneumo Abex.

4

policy limit was split between a first $250,000 "each occurrence" layer and an "excess" $750,000 layer. Mr. Meairs claims that Whitman had responsibility for the $250,000 layer "by endorsement." Meairs Declaration at ¶¶ 2-3. The Whitman Opposition does not include copies of the National Union Policies referenced in the Meairs Declaration and does not include a copy of the endorsement. Although the declaration contains what is alleged to be a portion of the language from the endorsement, the quoted portion of the endorsement makes no reference to Whitman Insurance Company.

The Court and the Moving Defendants are left to wonder why Whitman has not provided copies of the insurance policy or endorsement that allegedly makes Whitman an insurer of I.C. Industries and Abex as an additional named insured. The coverage chart that was included as an Exhibit to the Meairs Declaration does not establish that Whitman provided coverage under the National Union policies. *It would be highly unusual, if not unprecedented, for one insurance company to provide coverage "by endorsement" to the policy of a totally unrelated and separate insurance company*. The more likely explanation is that the $250,000 each occurrence is merely a self-insured retention ("SIR"), and that PepsiAmericas, for internal financial reasons, chose to fund this SIR through its captive, Whitman. In short, Whitman has done all it can to obscure the real relationship between it and the insured.

Although Whitman alleges that it has spent "…more then $9,000,000 for Abex asbestos suits." Meairs Declaration at ¶8, it has not submitted any proof of payments made by Whitman with respect to the Abex asbestos related claims.[4] Absent from Whitman's opposition are any cost runs or other evidence reflecting payments made in

---

[4] Although Whitman contends that it has made these payments on a "one occurrence basis" that is mathematically impossible, as evidenced by a simple mathematical calculation. If Whitman paid only $250,000 per year on a one occurrence basis the most it would have spent would be $1,750,000 - 7 years at $250,000 per year.

connection with the Abex asbestos related claims or to whom these alleged payments were made.

### B. There is No Case or Controversy Between Whitman Insurance Company and the London Market Insurers

Plaintiff Whitman is not a real party in interest in this matter. Rule 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P.17(a). Whitman acknowledges that it does not have any contracts with the London Market Insurers. Whitman Opposition at p. 14.  In order to have standing to bring a declaratory judgment action under the Declaratory Judgment Act, an insurer must be able to establish that it has a stake in the outcome of the litigation. Whitman cannot establish its stake in the outcome of an action against the London Market Insurers because there is no relationship, contractual or otherwise, between Whitman and the London Market Insurers that would allow Whitman to recover against them.

Whitman's complaint fails to present an "actual controversy" necessary for the issuance of declaratory relief under the Declaratory Relief Act. See 28 U.S.C. § 2201; see also Log on America v. Promethean Asset Management LLC, 223 F. Supp.2d 435, 2001 U.S. Dist. LEXIS 20374 (S.D.N.Y. 2001). In Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-241, 57 S. Ct. 461 (1937), the Supreme Court held that a justiciable controversy must, "…be definite and concrete, touching the legal relations of parties having adverse legal interests…It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts". Aetna Life Ins. Co. at pp 240-241. Whitman has not demonstrated that a real and substantial controversy exists between it and the London Market Insurers.

Taking at face value Whitman's unsupported claim that it is a reinsurer, Whitman fails to meet its burden of establishing how a reinsurer could even potentially have a claim against a direct insurer under these circumstances. Contrary to the assertions contained in the Whitman Opposition, a contract for reinsurance does not give rise to a right of action by an insured against a reinsurer. See United States Fidelity & Guaranty Company v. S.B. Phillips & Company, Inc., 359 F. Supp.2d 189 (D. Conn. 2005); The Mercantile & General Reinsurance Company, PLC v. Spanno Corporation, 151 Misc.2d 311, 573 N.Y.S.2d 102 (1991); Sofia Brothers, Inc. v. General Reinsurance Corporation, 153 Misc.6, 274, 274 N.Y.S.2d 565 (1934). In United States Fidelity and Guaranty Company, supra, an insurer and its captive reinsurer brought an action against an insured seeking declaratory relief and damages for breach of contract. The insured filed counterclaims including a claim for breach of contract. The Court held that the insured did not have a cause of action against the reinsurer. The Court held that, "It is an undisputed principle of Connecticut law that a contract for reinsurance does not give rise to a right of action by the insured against the reinsurer, unless there is a specific contractual provision that recognizes such a right. (citation omitted). The basis for this rule is the lack of privity between the reinsurer and the insured." United States Fidelity and Guaranty at 99. Contrary to the assertions contained in the Whitman brief, a reinsurer does not have a cause of action against an insured because there is no privity between reinsurer and the insured.

Whitman's assertion that an insured has a cause of action against a reinsurer in the absence of privity is not supported by the case law either. In Travelers Indemnity Company v. Household International, Inc., 775 F. Supp. 518, 1991 U.S.Dist. LEXIS

15023 (D.Conn. 1991), an indemnity company brought suit against a holding company and a car rental company to recover $2,000,000 that the indemnity company had paid out under a catastrophic liability policy.  In  Travelers Indemnity Company, the Court held that, "…the general rule is that, absent the reinsurer's assumption of direct liability to the original insured by contract, there is no privity of contract between the person insured and the reinsurer." Travelers Indemnity Company at 526.

None of the cases cited by Whitman involve a situation where a reinsurer recovers against another insurer who is not a party to the reinsurance contract. For example, United Services Auto. Assoc. v. Royal Globe Ins. Co., 511 F.2d 1094 (10th Cir. 1975), was a contribution action between two insurers. The plaintiff, the insurer for a driver involved in an accident, sought a declaration that the insurer of the rental car company was responsible for providing coverage for damages arising from an auto accident. The case does not involve a reinsurer of one of those direct insurers trying to bring a claim against the other direct insurer.

Maryland Casualty Company v. Pacific Coal & Oil Company, 312 U.S. 270 (1941) likewise did not involve a situation where a reinsurer sought recovery against another insurer. In Maryland Casualty, the Supreme Court held that Maryland Casualty, an insurance company, had standing to pursue a declaratory judgment action against its insured, Pacific Coal, as well as an injured third party who had been  struck by a truck driven by one of Pacific Coal's employees. Whitman's characterization of the court's holding in Maryland Casualty is misleading.  Maryland Casualty does not stand for the proposition that an insurer can bring an action against a  reinsurer even in the absence of privity. In Maryland Casualty, a contribution action, the Supreme Court held that an

insurance company had standing to seek a declaratory judgment against an insured and a third-party driver.

The Supreme Court's holding in <u>Maryland Casualty</u> is instructive concerning the standard for determining the presence of a case or controversy under the Declaratory Judgment Act. In <u>Maryland Casualty</u> the Supreme Court held that:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. (citations omitted).

<u>Maryland Casualty</u> at 512.

In the present case, plaintiff has failed to demonstrate the presence of a case or controversy under the Declaratory Judgment Act because the plaintiff has not demonstrated that there is "a substantial controversy, between parties having adverse legal interests…"

Whitman also cites <u>Allstate Ins. Co. v. Administratia Asigurarilor de Stat</u>, 948 F. Supp. 285, 307-308 (S.DN.Y. 1996) in support of its contention that it has standing to bring a declaratory judgment action against the London Market Insurers. However, the holding in <u>Allstate Insurance</u> is not applicable to the facts of the instant case because <u>Allstate Insurance</u> does not address the relationship between a reinsurer and an excess insurer. In <u>Allstate Ins. Co</u>., the subsidiary of an insurer obtained reinsurance through a pool of reinsurers. When the subsidiary's claims began to go unpaid, the insurer filed suit against the reinsurance pool. The insurer sought a declaratory judgment that the members

9

of the reinsurance pool were liable for future claims based on the subsidiary's retrocession agreements, breach of implied contract, and unjust enrichment. In <u>Allstate Insurance</u>, the Court held that, absent an express provision to the contrary, a reinsurer has no privity with, and is generally not liable to, the original purchaser of the underlying policy.

## WHITMAN'S ATTEMPT TO AVOID THE DIVERSITY REQUIREMENT HAS RENDERED THIS ACTION INCOMPLETE

Substituting invective for advocacy, Whitman labels London Market Insurers' argument on diversity jurisdiction a "'throw it against the wall and see if it sticks' fantasy" and an "intellectual fraud." These insults cannot obscure the fact that this action is jurisdictionally defective. This is why in an attempt to comply with the diversity requirement Whitman was forced to file an amended complaint that dropped more than 99% of the Lloyd's underwriters as defendants. It is also why Whitman erected and dismantled a straw man in defending this tactic, first erroneously asserting that London Market Insurers had argued that the Court remains obliged to consider the citizenship of all Lloyd's underwriters notwithstanding the amendment and then contending that they had not established that any Lloyd's underwriter is domiciled in Vermont. The Amended Complaint's jurisdictional failing cannot be avoided or obscured, however, and there is nothing "hyper-technical" about it.

This case is a paradigm of an action that does not belong in federal court. It is not brought by the logical plaintiff, the policyholder claiming entitlement to insurance coverage, but is brought instead by its captive reinsurer, an off-shore company conveniently reincorporated in 1999 in a state that is diverse from all the U.S. insurance companies in the policyholder's program, but one that has no genuine dispute with any of

these companies. When the policyholder and its captive realized that some of the Lloyd's underwriters they originally sued as defendants were likely to be citizens of the same state as the captive, they devised an amended complaint that simply dropped all of the investor underwriters and limited the defendants to the few active underwriters who lead the Lloyd's syndicates participating in the risk. Never mind that the resulting lawsuit was rendered incomplete. At least it was diverse as against the Lloyd's active underwriters.

In opposing the motion to dismiss, the Whitman camp then pretended that London Market Insurers had argued against jurisdiction on grounds that some of the dropped Lloyd's underwriters are non-diverse Vermont citizens. This non-issue offered a distracting target. Even on this non-issue, however, Whitman's arguments misfired.

First, London Market Insurers did not "falsely contend" that there is "wide consensus" that in an action against the subscribers to a Lloyd's policy the plaintiff must be diverse from each and every Lloyd's underwriter. Opp. at 18. There is nothing at all false about this contention. It is precisely the holding of <u>Corfield v. Dallas Glen Hills LP</u>, 355 F.3d 853 (5th Cir. 2003); <u>Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.</u>, 177 F.3d 210 (3d Cir. 1999); <u>E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.</u>, 160 F.3d 925 (2d Cir. 1998); <u>Indiana Gas Co. v. Home Ins. Co.</u>, 141 F.3d 314 (7th Cir. 1998); and every district court case outside the Sixth Circuit to have considered the issue. The sole circuit court decision to the contrary is <u>Certain Interested Underwriters at Lloyd's v. Layne</u>, 26 F.3d 39 (6th Cir. 1994), a decision that: (i) predated the more recent cases cited above that turn on the actual structure of the Lloyd's market; (ii) has been universally criticized; and (iii) would almost certainly be reversed if revisited in the Sixth

Circuit. It is, nonetheless, precisely because of <u>Layne</u> that we described the consensus as "wide" rather than universal.

Second, it was because the above contention is exactly correct that Whitman had to abandon its original complaint, which was framed as an action against all the subscribers to the listed Lloyd's policies, and limit it to an action solely against the active underwriters. The problem with this formulation is that the action becomes one that is solely against the active underwriters individually and not as representatives of the other Names. Perforce, such an action is incomplete. Unless the other Names agree to abide by any resulting judgment against the active underwriters they are not bound by that judgment. Unlike this action, the litigation pending in New York involves all the subscribers to the policies at issue.

Third, while they noted how the Whitman team scrambled to frame a jerry-rigged amended complaint featuring a Vermont captive insurer as plaintiff and less than 1% of the subscribing Lloyd's underwriters as defendants, London Market Insurers most assuredly did not challenge Whitman's amended complaint on grounds of the citizenship of the dismissed defendants. Whitman's discussion of the fine distinctions between residency and domicile are therefore a red herring.

Fourth, London Market Insurers proffered their evidence as to the residences of the two Vermont Names simply to explain why Whitman chose to abandon its original complaint. If their citizenship had become an issue, London Market Insurers would have established that these Vermont residents are in fact Vermont domiciliaries and not just owners of ski houses in that state.

## WHITMAN HAS NOT SATISFIED ITS BURDEN TO MEET THE
## AMOUNT IN CONTROVERSY REQUIREMENT

A federal district court has subject matter jurisdiction over a suit when the amount in controversy exceeds $75,000 and the parties are diverse in citizenship. 28 U.S.C. §1332(a). In its Opposition, Whitman dismisses the amount in controversy requirement as a "hyper-technical reason" why the Court should dismiss this action. Whitman Opposition at pp 4-5. However, when, as here, no amount is alleged in the complaint, it is the burden of the party seeking the court's jurisdiction to establish by a reasonable probability that the amount is over the threshold. See United Food & Comm. Workers Union, Local 919, AFL-CIO v. Centermark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994). The Whitman complaint fails to allege that any of the London Market Insurers owe or could owe a monetary award of any amount to Whitman. The Whitman complaint also fails to articulate any theory whatsoever as to how each London Market Insurer could possibly owe Whitman any amount of money.

In St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586 (1938), the United States Supreme Court stated, "But if, from the face of the pleading, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proof the court is satisfied to a like certainty that the plaintiff was never entitled to recover that amount, and that his claim was therefore colorable for the purpose of confirming jurisdiction, the suit will be dismissed." St. Paul Mercury Indem. Co., Id. at 289; see also Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3rd 781, 786 (2d Cir. 1984) (holding that "seller, from the outset, 'to a legal certainty' could not recover the amount required for diversity jurisdiction"). In the instant case, even if plaintiff had

alleged a certain sum of damages, plaintiff cannot establish that any Lloyd's Underwriter owes any amount of damages to Whitman.

### A.  Whitman Has Nothing At Stake With Respect To The London Market Insurers

Whitman is not an assured under the London Market Policies and <u>Whitman does not have a claim for contribution against the London Market Insurers</u>. Therefore, Whitman cannot recover damages under the London Market policies. According to the Whitman Opposition and the Meairs Declaration, Whitman was a reinsurer with responsibility for the first $250,000 for each and every occurrence under the National Union primary policies. Whitman's responsibility as a reinsurer of some of the primary policies does not implicate the London Market policies in any way. The Whitman Opposition states, "Although Whitman Insurance technically wrote reinsurance policies that reinsured some or the entire $250,000 layer, depending upon the policy year, many claims handling activities were delegated to Whitman Insurance by National Union because of its ultimate financial responsibility for the $250,000 layer." Whitman Opposition at pp 5-6.

As a mere reinsurer of some portion of the primary policies, Whitman is not entitled to damages from an excess insurer. Therefore, as a matter of law, Whitman cannot establish that it has any amount in controversy with respect to the London Market Insurers. Instead, Whitman simplistically argues that, because it has purportedly paid over $9,000,000 in Abex asbestos claims pursuant to its obligation as a reinsurer, the London Market Insurers must owe Whitman an unspecified sum. Although counsel for Whitman dismisses the amount in controversy issue as a "hyper-technical requirement" the Court can not base jurisdiction on such a vague and shoddy argument, particularly

when Whitman has the burden on this threshold issue. See Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994).

Moreover, Whitman relies on a letter from Cooper Industries to London Market Insurers and other insurers in which Cooper seeks about $100 million in reimbursement as the basis for its amount in controversy argument. Whitman cannot take advantage of Cooper's demand and "claim" to support its contention that the aggregated amount at issue is over $100 million. This is particularly so when Whitman refuses to admit that Cooper is a necessary party to this litigation. It is disingenuous at best for Whitman to claim on the one hand that Cooper's inclusion is unnecessary to the resolution of this case and to contend on the other that Cooper's claim should be considered proof of the amount at issue in this case.

**B.     Whitman Cannot Aggregate its Claims Against the London Market Insurers**

In order to satisfy the amount in controversy requirement, Plaintiff must show that every Lloyd's lead underwriter, as well as every London Market Company defendant, has a potential exposure greater than $75,000. This showing is impossible to a legal certainty. When liability among defendants is several, a plaintiff cannot aggregate its claims against individual defendants in order to satisfy the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332. It must satisfy the jurisdictional amount with respect to each defendant. See Exxon Mobil Corp. v. Allapattah Services, 125 S.Ct. 2611 (2005); Snyder v. Harris, 394 U.S. 332 (1969). Whitman completely ignores Exxon Mobil and Snyder. Its opposition does not even acknowledge the non-aggregation rule. Instead, it blithely asserts that Lloyd's underwriters owe $100 million in liability and another $50 million in defense costs and that this is the value of the jurisdictional amount viewed

from their defense perspective. Whitman's "separate occurrences" submission, moreover, is particularly misleading because every Lloyd's policy has aggregate limits, regardless of the number of occurrences.

Ironically, the letter Whitman relies on with regard to the $100 million figure is a letter from Cooper Industries to London Market Insurers and various others insurers, wherein Cooper contends that as a group the insurers owe about $100 million. Cooper does not specify which insurer allegedly owes any particular sum of money. Whitman's reliance on the letter from Cooper is curious at best since Whitman contends that Cooper is not a necessary party to the litigation. As Cooper is not a party to the litigation, any amount that it contends it is owed and the claims that are the subject of that letter are not at issue in the instant lawsuit. Whitman cannot avail itself of Cooper's claim to support its amount in controversy argument or its aggregation analysis.

Even if Cooper's claim were part of this lawsuit, Whitman does not challenge the fact that each subscribing Lloyd's underwriter can only be held liable for his or her individual, several shares. Under Snyder, the potential exposure of the Lloyd's underwriters collectively is irrelevant. Indeed, Whitman has no controversy with more than 99% of them, because it has expressly withdrawn its suit against them. The few active underwriters it has sued must have their liabilities considered individually.

## C. Peter Lowsley-Williams' Maximum Exposure Could Not Exceed $65,395.09

For the sake of simplicity, London Market Insurers focused on only one of the active underwriters sued, Peter Lowsley-Williams, the active underwriter of Syndicate 989 and an investing underwriter in two other syndicates. If Mr. Lowsley-Williams's potential liability cannot reach $75,000, this Court lacks jurisdiction, regardless of

whether the liabilities of others might exceed this threshold. There is no dispute that the individual liabilities of each and every defendant must exceed $75,000. See e.g., Exxon Mobil, 125 S.Ct. 2611 (2005). Mr. Lowsley-Williams was chosen for illustration purposes because he likely has one of the largest individual exposures on this asbestos risk. There are active underwriters for other syndicates whose individual exposures are a tiny fraction of Mr. Lowsley-Williams's. If his exposure falls short of $75,000, it is likely that no active underwriter will have exposure that approaches that amount.

Whitman contends that Mr. Lowsley-Williams's exposure is understated on five possible grounds. None of them bear scrutiny.

**(1) Policy ULL0122's 15 month policy period**. The Chefitz Declaration incorrectly states that Policy No. ULL 0122 has two policy periods. See Chefitz Declaration at ¶9. Based on this misstatement, Whitman argues that an additional $3,853.08 should be added to Mr. Lowsley-Williams' share of potential liability. In fact, Policy ULL0122 has a period from January 5, 1979 to April 1, 1980 with one aggregate limit. An endorsement contained in the policy states that "…it is noted and agreed that this policy is extended to expire on April 1, 1980 and that the aggregate period is January 5, 1979 to April 1, 1980." See annexed Declaration of Christopher Serrotta at ¶4. The policy by its clear terms provides one limit of liability for this period. Therefore, Whitman's assertion that an additional $3,853.08 should be added to Mr. Lowsley-Williams' share of potential liability is incorrect.

**(2) Costs included or in addition.** The Chefitz Declaration also incorrectly states that the policies in effect from 1970 forward are "costs in addition" policies by virtue of an inclusion in each of the London Market policies of an endorsement. See

Chefitz Declaration at ¶10.  A review of the available policy information confirms that the London Market Policies in effect from 1970 forward do not contain the endorsement referenced in the Chefitz Declaration with the exception of one policy year, 1980-1981. See Serotta Declaration at ¶4. Thus, for fourteen out of the seventeen policies listed in the Amended Complaint which were in effect post 1970, the issue raised by Whitman is inapplicable.

With respect to the London policies in effect during the 1980 to 1981 policy year, a review of the policy documentation, including the endorsement that Whitman relies upon, demonstrates that Whitman is wrong in its assertion that these are "costs in addition" policies. Rather than supporting Whitman's assertion that the policies that contain the language in Addendum 3 are "costs in addition" policies, the addendum actually establishes to a legal certainty that the Lloyd's policies do not pay costs in addition to limits for the claims allegedly at issue. The London Market Insurers' obligations, if any, are thus limited to the face amount of the policies.

First, the clause applies only in circumstances where costs are not included in the 'Ultimate Net Loss' or similar definition in the Underlying Umbrella Policy/ies.[5] In other words, the clause applies where an underlying umbrella policy either pays costs in addition to indemnity limits or pays indemnity only. The underlying Umbrella policy issued by the Northbrook Excess and Surplus Insurance Company in effect from 1980 to 1981 provides that costs are in fact included within the definition of Ultimate Net Loss. See Serotta Declaration at ¶4. The London Market Policies in effect during the 1980 to 1981 period incorporate the definition of ultimate net loss contained in the underlying

---

[5]  Addendum no. 3 provides: "Where costs are not included in the "Ultimate Net Loss" or any similar definition contained in the underlying Umbrella Policy/Policies…" (See Serotta Declaration at ¶4.)

umbrella policy which, as noted, includes costs within the limits. Thus, the issue Whitman raises with regard to Addendum 3 is inapplicable with respect to the London 1980 to 1981 policies as well.

Moreover, even if costs were not included in the Ultimate Net Loss definition in the policy underlying the London Market policies in effect from 1980 to 1981, which they are, the endorsement nonetheless clearly provides that it applies only with regard to "costs incurred by or on behalf of the Assured with the written consent of the Underwriters." The London Market Insurer defendants have most assuredly not provided any such written consent.

In short, there is no basis for Whitman's suggestion that Mr. Lowsley-Williams's exposure is greater than his share of the maximum amount the policies he subscribed can be called upon to pay indemnity. To a legal certainty, Whitman presents no credible claim that he can be liable for defense costs in addition to indemnity limits.

**(3) Pre-1970 syndicate participation.** Whitman speculates that Mr. Lowsley-Williams may have been a Name under Syndicate 989 in the 1950's before he became its active underwriter on the policies subscribed after 1979. Chefitz Dec. at ¶11. This speculation does not create an issue of fact. In its Amended Complaint, Whitman sues policies that date from 1952-1962 and from 1979-1985. Amended Complaint at ¶45. As stated in the accompanying Edwards Declaration (at ¶3), Mr. Lowsley-Williams did not begin underwriting for Lloyd's until 1963. Therefore, Mr. Lowsley-Williams did not have a share of the risk on any of the 1952-1962 policies identified in the Amended Complaint.

**(4) Pre-judgment interest.** Whitman contends that Mr. Lowsley-Williams will owe at least two years worth of interest in addition to his share of the policy limits. Whitman Opposition at p.24. Whether or not pre-judgment interest is recoverable, under the diversity statute it is expressly excluded in calculating jurisdictional amount. 28 U.S.C. §1332(a) (requiring that "the matter in controversy exceeds the sum or value of $75,000, **exclusive of interest and costs**")(emphasis added).

**(5) Extra-contractual damages.** Whitman can hardly argue that some value must be added for "extra-contractual remedies for failing to pay for thousands of Abex asbestos suits" (Whitman Opposition at 24) when its amended complaint seeks no such damages. Whitman cannot add a cause of action in motion papers to support its jurisdictional argument when no such cause of action exists in the complaint. Moreover, it is inconceivable under any theory that Whitman could even assert an extra-contractual cause of action when there is no contract between Whitman and London Market Insurers.

In sum, the Lowsley-Williams illustration demonstrates that the absolute maximum amount in controversy to which the Lloyd's underwriter is exposed, before interest and court costs, is $65,395.09. To a legal certainty, this sum falls short of the requisite jurisdictional amount, and the court lacks subject matter jurisdiction over this case.

## COOPER AND PEPSIAMERICAS ARE NECESSARY AND INDISPENSABLE PARTIES TO THIS ACTION

### A. Whitman Misstates the Standard for Determining Whether Parties Are Necessary

Whitman contends that, "the presence of PepsiAmericas and Cooper is not needed to resolve the Plaintiff's claims." Whitman Opposition at p. 24. However, the standard

for determining whether parties are "necessary" is not solely the resolution of the plaintiff's claims. Fed. R. Civ. P. 19 (a) provides that an absent party is "necessary" to the litigation if: (1) in the party's absence complete relief cannot be accorded among those already parties, or (2) the party claims an interest relating to the subject of the action and is so situated that the disposition of the action in the party's absence may (i) as a practical matter impair or impede the party's ability to protect that interest or (ii) leave any persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reasons of the party's claimed interest. If a 'necessary' party as described in Rule 19(a) cannot be joined the court "shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b).

### B.  Both Cooper and PepsiAmericas Assert Rights to the Policies at Issue

Whitman's assertion that Cooper and PepsiAmericas are not necessary parties because they are "net of-insurance indemnitors" is incorrect. Cooper and PepsiAmericas are necessary parties to the Whitman litigation because they assert rights to the proceeds of the insurance policies and PepsiAmericas also clams to be "a successor in interest" to I.C. Industries, an assured under the policies. Counsel for Whitman herein, in its capacity as counsel for PepsiAmericas, filed an Answer in the New York State action on behalf of PepsiAmericas. See Serotta Declaration at ¶8. The Answer, which included counterclaims and cross-claims states as follows:

> <u>Abex, Cooper and PAS, as may be appropriate, also seek damages</u> <u>for certain Insurance Companies' breaches and anticipatory</u> <u>breaches of their contractual obligations</u> (a) to defend Abex against past, pending and future Asbestos Claims, and/or to pay the costs

of defending Abex against past, pending and future Asbestos
Claims; and (b) to indemnify Abex for losses resulting from past,
pending and future Asbestos Claims. (emphasis added)

See Answer attached as Exhibit "20" to Serotta Declaration at ¶3.

In addition, PepsiAmericas states that, "…PepsiAmericas also has other rights, including its rights as the successor in interest to IC Industries, an insured under policies issued by certain of the Insurance Companies." See ¶3 of Answer attached as Exhibit "20" to Serotta Declaration. Thus, PepsiAmericas filed a pleading in federal court stating that it is entitled to coverage under the policies at issue in this lawsuit for Abex asbestos claims. Having signed a pleading in federal court wherein he asserts that PepsiAmericas has the right to seek coverage for the claims at issue, Plaintiff's counsel cannot credibly argue that PepsiAmericas is not an indispensable party in this action. Moreover, Whitman acknowledges that PepsiAmericas contends that it is an insured under the Abex policies. By asserting that it is "a successor in interest" to I.C. Industries, PepsiAmericas is essentially claiming that it is an assured under the I.C. Industries policies. See Whitman Opposition at p. 27.  In addition to the Answer referenced above, Cooper also filed a submission with the Court in New York stating that it is owed in excess of $140 million from the various insurance policies in that action. Serotta Declaration at ¶8.

The cases cited by Whitman in support of the proposition that Cooper and PepsiAmericas are not necessary parties are inapplicable and/or are readily distinguishable as set forth in First State's Reply Memorandum.

## PNEUMO ABEX SOULD BE REALIGNED AS A PLAINTIFF

Whitman's claim that its interests conflict with those of Abex strains credibility and directly contradicts the pleadings filed by Whitman in this action. In its Amended Summons and Complaint Whitman asserts rights on behalf of Abex. For example,

Whitman's Amended Complaint seeks a declaration that, "Abex may select the policy or policies and policy year or years to which to allocate such defense or indemnity costs or damages for excess policies…(iv) Abex is not required to pay or reimburse deductibles, self-insured retentions or uninsured years for the Abex asbestos related suits and claims." Whitman's Amended Complaint for Declaratory and Injunctive Relief at ¶8.

Whitman misapplies the Supreme Court's holding in City of Indianapolis, et al. v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15 (1941). In City of Indianapolis, the Supreme Court held that diversity jurisdiction requires an "actual" and "substantial" controversy. City of Indianapolis at 69. In City of Indianapolis, the Supreme Court stated that, "Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." Id. The Supreme Court further held that the federal courts have a duty to examine the "principle purpose of the suit" and the "primary and controlling matter in dispute" in order to determine if the parties are properly aligned. City of Indianapolis at 71. In the instant case, Whitman has defined the principle purpose of the suit as a determination of whether the defendant insurers are obligated to provide coverage to Abex. Whitman seeks a determination of Abex's rights under the subject insurance policies and in so doing it aligns its interests with Abex's. Although the Whitman Opposition asserts that there is "a collision of interests" between Whitman and Abex, counsel for Whitman does not explain how Whitman's interests are in conflict with Abex's.

Whitman attempts to establish that this action is a typical declaratory judgment action brought by one insurer against other insurers and the insured. However, counsel for Whitman fails to mention that Whitman has named Abex as a defendant without

requesting any relief from Abex. Instead, Whitman requests relief on behalf of Abex. In attempting to establish that this action is a typical declaratory judgment action, Whitman cites the London Market Insurers' declaratory action in New York State Court. See Whitman Opposition at 32. However, the London Market Insurers' declaratory judgment action is different from the this action because the London Market Insurers have brought claims for contribution against the other insurers and seek a declaration concerning their rights and obligations with respect to the entities who allege they are assureds.

## THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION AND DISMISS OR STAY THE ACTION

A federal court may decline to exercise jurisdiction over a matter that is simultaneously being litigated in state court in order to promote efficient judicial administration and comprehensive disposition of litigation. See Moses H. Cone Memorial Hospital v. Mercury Construction Company, 460 U.S. 1, 23-27, 74 L.Ed.2d 765, 103 S. Ct. 927 (1982). The Whitman Opposition does not address the fact that the *Whitman* action will hinder the comprehensive disposition of litigation by allowing piecemeal litigation. In the Amended Complaint, Whitman requests a declaration concerning Abex's rights under the policies issued by the London Market Insurers and other insurers. The obligations and rights of the various insurers with respect to Abex are already at issue in the first filed and more comprehensive New York action.

Whitman cannot dispute that the New York litigation is more comprehensive. When it amended its complaint to include only the "lead underwriters and managing agents," Whitman removed every one but a handful of Underwriters from the action. The New York action is far more comprehensive than the *Whitman* action because all of the underwriters that subscribed to the subject policies are parties to the New York action.

Although Whitman argues that this action should not be stayed or dismissed because Whitman is not a party to the New York action, Whitman fails to mention that Whitman is not a party in New York because the London Market Insurers did not assert a claim for contribution against any reinsurers.  Moreover, the London Market Insurers have never made any arguments in New York as to whether Whitman has any obligation to continue to pay for Abex asbestos claims as Whitman is not a party to the lawsuit in New York.  See Serotta Declaration at ¶ 7.  It would make more sense for Whitman to intervene in the more comprehensive and first filed action than to proceed forward with this litigation.

## CONCLUSION

For all of the above reasons, the Court should grant the London Market Insurers' Motion and dismiss this action.

Respectfully Submitted,

Martin Baach, No. 210377
Michael J. Zoeller, No. 426476
Baach Robinson & Lewis PLLC
Attorneys for Defendants
Certain Underwriters at Lloyd's, London
and Certain London Market Companies
1201 F Street, NW, Suite 500
Washington, D.C. 2004
(Tel) 202-833-8900
(Fax) 202-466-5738

*Of Counsel*:
Eileen T. McCabe, Esq.
Alexander J. Mueller, Esq.
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, New York 10019-6829
(212) 261-8000 (telephone)
(212) 261-8750 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on November 7, 2005, he caused true and correct copies of the foregoing Reply Memorandum of Points and Authorities in Further Support of London Market Insurer Defendants' Motion to Dismiss and supporting declarations, to be served upon counsel listed on the Notice of Electronic Filing, by electronic notification pursuant to Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and Local Civil Rule 5.4(d), and by first-class mail, postage prepaid, upon:

| | |
|---|---|
| Mt. McKinley Insurance Co. | Rocco N. Covino, Esq.<br>Lord, Bissell & Brook LLP<br>885 Third Avenue, 26th Floor<br>New York, NY  10022<br>Telephone:  (212) 812-8340<br>Facsimile:   (212) 947-1202 |
| Travelers Indemnity Company | Barry R. Ostrager<br>Jonathan K. Youngwood<br>Simpson, Thatcher & Bartlett<br>425 Lexington Avenue<br>New York, NY 10017-3909 |

/s/ Michael J. Zoeller
Michael J. Zoeller, No. 426476
BAACH ROBINSON & LEWIS PLLC
1201 F Street, NW, #500
Washington, DC  20004
(202) 659-7217
Fax:  (202) 466-5738

*Attorneys for Certain Underwriters at
Lloyd's, London and Certain London
Market Companies*