## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WHITMAN INSURANCE COMPANY, LTD., <br><br>          Plaintiffs, <br><br> vs. <br><br> TRAVELERS INDEMNITY COMPANY, et. al., <br><br>          Defendants. | Case No.: 05-01125 <br><br> Judge John Garrett Penn |

### DECLARATION OF CHRISTOPHER J. SEROTTA, ESQ.

I, Christopher J. Serotta , do hereby declare and state as follows:

1.      I am an attorney at law licensed to practice in the State of New York, and I am an associate at the law firm of Mendes & Mount, LLP, attorneys for defendants Certain Underwriters at Lloyd's, London and London Market Insurers. In this capacity, I have personal knowledge of the facts and records set forth herein.

2.      I conducted a review of available policy-related documentation held by our clients with respect to policies identified in the Plaintiff's Amended Complaint. Based upon a review of this documentation, copies of which are attached, Policy ULL0122 has a coverage period from January 5, 1979, to April 1, 1980 with one aggregate limit. In addition, the London policies identified in the Amended Complaint are not "costs in addition" as set forth in the Chefitz Declaration.

3.      Attached hereto as Exhibit 1 is a copy of the policy-related documentation held by our clients for Policy ULL0122.  Policy ULL0122 has a coverage period from January 5, 1979, to April 1, 1980 with one aggregate limit.  An endorsement contained in

the policy states that it is noted and agreed that the policy period is extended to expire on April 1, 1980 and that the aggregate period is January 5, 1979 to April 1, 1980. The endorsement clearly states that the policy has one aggregate limit for the period January 5, 1979 to April 1, 1980.

4.  Attached hereto as Exhibits 1 through 15 are copies of policy-related documentation held by our clients for the London Market Policies sued in this action that were in effect from 1970 forward. I have reviewed the "addendum" annexed as Exhibit 3 to the Declaration of Daniel Chefitz. Addendum no. 3 provides: "Where costs are not included in the "Ultimate Net Loss" or any similar definition contained in the underlying Umbrella Policy/Policies…" I have also reviewed the available policy-related documentation held by our clients for the policies identified in the Amended Complaint. Based on my review of the available policy-related information, the London Market Policies in effect from 1970 forward do not contain the endorsement referenced in the Chefitz Declaration with the exception of one policy year, 1980-1981.

The policies that appear to contain the language in the addendum identified in the Chefitz Declaration are UMA 0205, 0206, and 0207. A copy of the London policy-related documentation for these policies held by our clients is attached hereto as Exhibit 3, 4 and 5. A review of these policies and the underlying policy issued by Northbrook Insurance Company ("Northbrook Policy") confirms that the excess policies issued by the London Market Insurers are not "costs in addition" policies. The endorsement language provides that "[W]here costs are not included in the 'Ultimate Net Loss' or any similar definition contained in the Underlying Umbrella Policy/ies, the following shall be deemed to be additional Conditions to this insurance: …"

Attached hereto as Exhibit 16 is a copy of policy documentation for the Northbrook Policy. The Northbrook Policy in effect for the 1980-1981 year contains the following definition of Ultimate Net Loss:

> "Ultimate Net Loss means the sums paid as damages in settlement of a claim or in satisfaction of a judgment or contract liability for with the insured is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and insurance purchased specifically to apply in excess of this policy and also includes investigations, adjustment, appraisal, appeal and defense costs paid or incurred by the insured with respect to damages covered hereunder."

Clearly stated, costs are included within this definition. Moreover, the London Market policies incorporate the definition of Ultimate Net Loss in the underlying umbrella policy and, hence, include costs within limits and do not pay "costs in addition."

Although the Northbrook Policy does provide in another section (not the Ultimate Net Loss definition) that with respect to occurrences covered by the Northbrook Policy, but not the policies underlying it, Northbrook may under certain circumstances be required to pay defense costs in addition to the limits, that language is inapplicable. Neither Whitman nor the assured, for that matter, could seek to invoke this clause unless they were taking the position that the claims were not covered under the primary policies. They, in fact, contend that all of the primaries and all of the excess policies provide coverage for the Abex asbestos claims.

5.    In addition, I have reviewed a coverage chart submitted by PepsiAmericas in the New York action (whose counsel is the same counsel for Whitman in the instant case), which does not identify Whitman as an insurer with responsibility for any portion

of the primary layer coverage. Attached hereto as Exhibit 17 is a copy of the coverage chart submitted by PepsiAmericas in the New York action.

6. I have reviewed a copy of a letter dated October 4, 2005, from Pneumo Abex Corporation filed in the New York action. In the letter, Pneumo Abex Corporation states that it is opposed to a stay of the New York litigation. A copy of the October 4, 2005 letter from Thomas H. Sear to the Honorable Herman Cahn is attached hereto as Exhibit 18.

7. I have reviewed the various pleadings in the New York State litigation. Whitman is not a party to the New York litigation. Although Whitman argues that this action should not be stayed or dismissed because Whitman is not a party to the New York action, Whitman fails to mention that Whitman is not a party in New York because the London Market Insurers did not assert a claim for contribution against any reinsurers. Moreover, the London Market Insurers have never made any arguments in New York as to whether Whitman has any obligation to continue to pay for Abex asbestos claims as Whitman is not a party to the lawsuit in New York.

8. I have reviewed Cooper Industries' Opposition to PepsiAmericas' Motion to Stay the New York State litigation, which states that Cooper is entitled to reimbursement in excess of $140 million. A copy of Cooper's Opposition to PepsiAmericas' Motion to Stay is attached hereto as Exhibit 19. Moreover, I have reviewed an Answer, Counterclaims and Cross-claims filed by Pneumo Abex, Cooper Industries and Counsel for Whitman, it its capacity as counsel for PepsiAmericas, which in part states that PepsiAmericas is entitled to coverage under the policies at issue in this

lawsuit for Abex asbestos claims. Attached hereto as Exhibit 20 is a copy of the above mentioned Answer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 7 November 2005 at New York, New York.

_____
                Christopher J. Serotta