

**Northbrook**
**Excess and Surplus**
**Insurance Company**
Northbrook, Illinois

# Declarations - Umbrella Liability Policy

**63  006  544**
Policy Number

**Item 1.** Named Insured **I C Industries**

**63  005  497**
Renewal of

Address
**One Illinois Center**
**111 East Wacker Drive**
**Chicago, Illinois 60601**

**Item 2.** Limits of Liability - as defined in Insuring Agreement B

(a) $ **5,000,000**    each occurrence

(b) $ **5,000,000**    in the aggregate for each annual period where applicable

(c) $ **25,000**    retained limit each occurrence

**Item 3.** Policy Period   From **April 1, 1980**   To   **April 1, 1983**   (Beginning and ending at 12:01 A.M. Standard Time at the address of the Named Insured as stated herein)

**Item 4.** Computation of Premium

If the Policy Period is more than one year, the premium shown below is to be paid in installments on the effective date and each subsequent anniversary.

Annual Premium

(a) Flat Charge, not subject to audit    $ **650,000.00**
(See Endt. #11)

(b) Subject to annual audit

| Basis of Premium | Rate | Annual Deposit Premium | Annual Minimum Premium |
|---|---|---|---|
| Sales per $1,000.00 subject to annual re- view | $0.17 | $650,000.00 | $650,000.00 |

**Item 5.** Schedule of Underlying Insurance    See attached schedule

**Item 6.** Endorsements
This Policy is subject to the following endorsements

1) NB 50
2) NB 36
3) Special
4) Special
5) NB 37
6) Special
7) Special
8) Special
9) Special
10) Special
11) Special

RU ___28-3___ (jacket)
Countersignature Date    **March 24,** 19 **80**

Authorized Representative

3358301211

# POOR QUALITY

## DUE TO ORIGINAL



**Northbrook**
**Excess and Surplus**
**Insurance Company**
Northbrook, Illinois

ISSUED TO FORM A PART OF POLICY NO. **63 006 544**

## SCHEDULE OF UNDERLYING POLICIES

| CARRIER, POLICY NUMBER AND PERIOD | TYPE OF POLICY | APPLICABLE LIMITS |
|---|---|---|
| | **I C Industries, Inc.** | |
| (1) Continental Insurance Company #TBA WC 1656397 4/1/80 to 4/1/81 | Standard Worker's Compensation and Employer's Liability | Coverage B-Employers' Liability $1,000,000 one accident |
| (2) Continental Insurance Company #TBA 4/1/80 to 4/1/81 | Comprehensive General Liability including: Products, Personal Injury, Advertising Liability, Blanket Contractual, Host Liquor Liability, Incidental Malpractice, Watercraft Liability, Vendors Liability and Employee Benefits Liability | Combined Single Limit for Bodily Injury and Property Damage Combined $1,000,000 each occurrence $1,000,000 aggregate (where applicable) including $250,000 Self Insured Retention each occurrence |
| (3) Continental Insurance Company #TBA 4/1/80 to 4/1/81 | Automobile Liability (Owned and Non-Owned) | Combined Single Limit for Bodily Injury and Property Damage Combined $1,000,000 each occurrence including $250,000 Self Insured Retention each occurrence |
| (4) U.S.A.I.C. #TBA and Southeastern Aviation Underwriters #TBA | Aircraft Liability (Owned and Non-Owned) | Non-Passenger Bodily Injury Liability, Passenger Bodily Injury Liability, and Property Damage Liability Combined $150,000,000 each occurrence |

Page 1 of 3



**Northbrook**
**Excess and Surplus**
**Insurance Company**
Northbrook, Illinois

ISSUED TO FORM A PART OF POLICY NO. 63  00C  544

## SCHEDULE OF UNDERLYING POLICIES

| CARRIER, POLICY NUMBER AND PERIOD | TYPE OF POLICY | APPLICABLE LIMITS |
|---|---|---|
| | Old Chicago | |
| (1) Fireman's Fund #TBA | Standard Worker's Compensation and Employer's Liability | Coverage B-Employers' Liability $100,000 one accident |
| (2) Sphere Insurance Company #TBA | Comprehensive General Liability (excluding Amusement Park Liability) | Combined Single Limit for Bodily Injury and Property Damage Combined $500,000 each occurrence $500,000 aggregate (where applicable) |
| | including | |
| | Incidental Malpractice | $100,000 each occurrence $100,000 aggregate |
| (3) Fireman's Fund Insurance Company #TBA | Comprehensive Amusement Park Liability | Combined Single Limit for Bodily Injury and Property Damage Combined $1,000,000 each occurrence $1,000,000 aggregate (where applicable) |
| (4) Continental Insurance Company #TBA | Comprehensive Automobile Liability | Combined Single Limit for Bodily Injury and Property Damage Combined $500,000 each occurrence |
| (5) Fireman's Fund Insurance Company #TBA | Umbrella Liability | Combined Single Limit for Bodily Injury and Property Damage Combined $1,000,000 each occurrence $1,000,000 aggregate (where applicable) |

Page 2 of 3

**NESCO**

**Northbrook
Excess and Surplus
Insurance Company**
Northbrook, Illinois

ISSUED TO FORM A PART OF POLICY NO **63**

### SCHEDULE OF UNDERLYING POLICIES

| CARRIER, POLICY NUMBER AND PERIOD | TYPE OF POLICY | APPLICABLE LIMITS |
|---|---|---|
| | **Foreign** | |
| (1) Granite State Insurance Company #TBA | Standard Worker's Compensation and Employer's Liability | Coverage B-Employers' Liability $500,000 one accident |
| (2) Granite State Insurance Company #TBA | Standard Worker's Compensation and Employer's Liability (Iron Curtain Countries) | Coverage B-Employers' Liability $250,000 one accident |
| (3) Granite State Insurance Company #TBA | General Liability and Automobile Liability including: | Combined Single Limit for Bodily Injury and Property Damage Combined $1,000,000 each occurrence |
| | Care, Custody and Control | Combined Single Limit for Bodily Injury and Property Damage Combined $250,000 each occurrence |

**Page 3 of 3**

RU02-2

**NESCO**
**Excess and Surplus**
**Insurance Company**
**Northbrook, Illinois**

# Endorsement

| Named Insured. | I C Industries | Policy No | 63 006 544 |
|---|---|---|---|
| | | Endorsement No | 1 |

In consideration of the premium charged, it is agreed that the insurance afforded by this policy shall not apply with respect to liability arising out of a breach of duty or the rendering of or failure to render professional services in the conduct of any insured's business as a real estate agent or broker or any other person for whose acts any insured is legally liable in the conduct of his business as a real estate agent.

This endorsement to take effect on the    1st    day of    April    19 80    All other terms and conditions remain unchanged

Countersignature Date    March 24, 1980

Authorized Representative

bj

RU7-1 PRINTED IN USA

BROKER COPY



Northbrook
Excess and Surplus
Insurance Company
Northbrook, Illinois

# Endorsement

Named Insured.    **I C Industries**

Policy No.:    **63 006 544**
Endorsement No.    **2**

In consideration of the premium charged, it is agreed that the insurance afforded by this policy shall not apply with respect to liability arising out of a breach of a duty, or the rendering of or failure to render professional services for others, in the conduct of any insured's business as an insurance agent, insurance broker or insurance consultant.

This endorsement to take effect on the    **1st**    day of    **April**    19**80**    All other terms and conditions remain unchanged

Countersignature Date   **March 24, 1980**

Authorized Representative

hj

B(2-1 PRINTED IN USA

BROKER COPY

**NESCO**

**Northbrook**
**Excess and Surplus**
**Insurance Company**
Northbrook, Illinois

3358301217

# Endorsement

Named Insured: **I C Industries**

Policy No.. **63 006 544**
Endorsement No . **3**

In consideration of the premium charged, it is agreed that the insurance afforded by this policy shall not apply to any Personal Injury or Property Damage Liability (including liability assumed under contract) arising out of the ownership, maintenance, use, loading or unloading of any railroad locomotive or rolling stock while away from any premises owned, rented to or controlled by an insured including the ways immediately adjoining such premises.

This endorsement to take effect on the **1st** day of **April** 19 **80** . All other terms and conditions remain unchanged

Countersignature Date **March 24, 1980**

Authorized Representative

hj

BROKER COPY



**Northbrook**
**Excess and Surplus**
**Insurance Company**
**Northbrook, Illinois**

# Endorsement

| Named Insured. | I C Industries | Policy No | 63 006 544 |
|---|---|---|---|
| | | Endorsement No | 4 |

In consideration of the premium charged it is agreed that there is no coverage under this policy for any liability (including liability assumed under contract) for any Personal Injury and/or Occupational Diseases sustained by any person in the course of any employment that is subject to the Federal Employment Liability Act, U. S. Code (1946), and any amendments thereto.

This endorsement to take effect on the **1st** day of **April** 19 **80** All other terms and conditions remain unchanged

Countersignature Date ___March 24, 1980___          Authorized Representative

hj

RU7-1 PRINTED IN USA

BROKER COPY



**Northbrook**
**Excess and Surplus**
**Insurance Company**
**Northbrook, Illinois**

3358301219

# Endorsement

| | |
|---|---|
| Named Insured    I C Industries | Policy No.  63 006 544 |
| | Endorsement No.    5 |

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT THE INSURANCE AFFORDED BY THIS POLICY SHALL NOT APPLY WITH RESPECT TO LIABILITY

(1) ARISING OUT OF ANY OBLIGATION ASSUMED BY THE INSURED AS AN INSURER OR REINSURER UNDER ANY POLICY OR CONTRACT OF INSURANCE, REINSURANCE, SURETYSHIP, ANNUITY OR ENDOWMENT:

(2) ARISING OUT OF PROFESSIONAL SERVICES, ERRORS OR OMISSIONS COMMITTED OR ALLEGED TO HAVE BEEN COMMITTED BY THE INSURED OR ANY PERSON OR ORGANIZATION FOR WHOSE ACTS THE INSURED IS LEGALLY LIABLE IN

    (a) EFFECTING OR FAILING TO EFFECT INSURANCE CONTRACTS, BINDERS, POLICIES, SURETYSHIP, ANNUITY, ENDOWMENT OR REINSURANCE:

    (b) ADVISING OR REPORTING IN ANY CAPACITY AS AN INSURANCE COMPANY, CONSULTANT, INSURANCE AGENT OR BROKER:

    (c) THE RENDERING OF, OR FAILURE TO RENDER SAFETY ENGINEERING OR INSPECTION SERVICES:

    (d) THE AUDITING OF ACCOUNTS OR RECORDS OF OTHERS:

    (e) THE OPERATION OF ITS INVESTMENT, LOAN OR REAL ESTATE DEPARTMENTS.

(3) TO LIABILITY OF THE INSURED FOR FAILURE TO SETTLE ANY CLAIM MADE UNDER ANY CONTRACT OF INSURANCE, SURETYSHIP OR REINSURANCE.

(4) TO PROPERTY DAMAGE TO NEGOTIABLE AND NON-NEGOTIABLE INSTRUMENTS OR CONTRACTS REPRESENTING MONEY OR OTHER PROPERTY, REAL OR PERSONAL, OR OTHER PROPERTY THE CUSTODY OF WHICH THE INSURED HAS UNDERTAKEN IN ANY FIDUCIARY CAPACITY AS TRUSTEE, GUARDIAN, CUSTODIAN, ESCROW OR SIMILAR CAPACITY EITHER GRATUITOUSLY OR OTHERWISE WHETHER LEGALLY LIABLE THEREFOR OR NOT.

| | | | | |
|---|---|---|---|---|
| This endorsement to take effect on the | 1st  day of | April | 19 80 | All other terms and conditions remain |
| unchanged | | | | |

Countersignature Date  **March 24, 1980**

Authorized Representative

bj

RU7-1 PRINTED IN USA

BROKER COPY

335830I220

**NESCO** Northbrook
Excess and Surplus
Insurance Company
Northbrook, Illinois

# Endorsement

| Named Insured | I C Industries | Policy No.. | 63 006 544 |
|---|---|---|---|
| | | Endorsement No.. | 6 |

In consideration of the premium charged, it is agreed the following exclusions are added to this policy:

This Policy does not apply:

1.   (a) To the insured's liability for personal injury or property damage, direct or consequential, and expenses on account of loss arising out of property real or personal held by or in the care, custody or control of the insured in any fiduciary capacity as trustee, guardian, executor, administrator, custodian, escroll or similar capacity.

     (b) To Money, Currency, Bullion, Precious Metals of all kinds and in whatsoever form and articles made therefrom, Gems, Precious and Semi-precious Stones, Certificates of Stocks, Bonds, Coupons and all other forms of securities, Bills of Lading, Warehouse Receipts, Cheques, Drafts, Money Orders, Stamps, Insurance Policies, and all other negotiable and non-negotiable instruments or contracts representing money or other property real or personal or interests therein and all other documents, valuables and the like in which the insured is interested or the custody of which the insured has undertaken, either gratuitously or otherwise whether legally liable therefore or not.

2.   (a) To liability assumed by an insured or any employee or agent of an insured under any insurance binder or contract of insurance, suretyship or reinsurance.

     (b) To liability resulting from errors or omissions in the writing or failing to write contracts of the type described in 2(a) above.

3.   To loss or depreciation of or damage to cash or securities.

4.   To loss, liability, costs and expenses arising from any claim or claims which any person or persons may have against the Insured or which may be made by any

Page 1 of 2

This endorsement to take effect on the    **1st**    day of    **April**    19**80** . All other terms and conditions remain unchanged

Countersignature Date    March 24, 1980         Authorized Representative

hj

RU7-1 PRINTED IN USA

BROKER COPY

3358301221



**Northbrook
Excess and Surplus
Insurance Company**
Northbrook, Illinois

# Endorsement

Named Insured.    I C Industries

Policy No    63 006 544
Endorsement No    6

person or persons against the Insured by reason of any negligent act, error or omission with respect to Acts, Facts or Law while acting in one or more of the capacities hereinafter mentioned, wheresoever such act or omission to act shall have, or shall be alleged to have occurred or been committed by the Insured or by any officer or employee of the Insured or by any other person or persons employed by the Insured in or about the conduct of any business conducted, or transaction undertaken by or on behalf of the insured in their capacity as:

(a)  Administrator, Executor, Trustee under Will or Personal Trust Agreement, Committee for Incompetents (known as consevator in the States of Connecticut and Illinois), Guardians and/or as Agent or Sub-Agent for any Administrator, Executor, Trustee under Will or Personal Trust Agreement, Committee for Incompetents or Guardian and/or as Custodian of Securities and/or as Manager or Real and/or Personal Property.

(b)  Interest or Dividend Disbursing Agent, Paying Agent, Fiscal Agent, Transfer Agent, Registrar, Agent for voting trustees, warrant agent, depository or agent for a committee of holders of stock or securities, escrow agent or in any similar trust capacity, including any loss or liability while acting as trustee under a corporated bond indenture, a sinking fund agent or receiver and/or trustee appointed by any court in receivership, bankruptcy or reorganization proceedings.

**Page 2 of 2**

This endorsement to take effect on the    **1st**    day of    **April**    19 **80**    All other terms and conditions remain unchanged.

Countersignature Date    March 24, 1980

Authorized Representative

hj

RU7-1 PRINTED IN USA

BROKER COPY

 **NESCO** **Northbrook**
**Excess and Surplus**
**Insurance Company**
**Northbrook, Illinois**

# Endorsement

Named Insured.    **I C Industries**

Policy No    **63 006 544**
Endorsement No    **7**

In consideration of the premium charged, it is agreed that Condition N "Cancellation" of the Umbrella Liability Policy jacket (Form RU 28-3) is amended in part to read "sixty (60) days" in lieu of "thirty (30) days".

This endorsement to take effect on the    **1st**    day of    **April**    19 **80**    All other terms and conditions remain unchanged

Countersignature Date    **March 24, 1980**

Authorized Representative

bj

BROKER COPY

RU7-1 PRINTED in USA

NESCO

**Northbrook
Excess and Surplus
Insurance Company**
Northbrook, Illinois

3358301223

# Endorsement

| Named Insured | I C Industries | Policy No. | 63 006 544 |
|---|---|---|---|
| | | Endorsement No.: | 8 |

In consideration of the premium charged, it is agreed that subject to the
terms and conditions of this policy, such insurance as is provided by this
policy shall also apply to the following as an Additional Insured, but only
to the extent that such insurance is afforded in the underlying policies
and only insofar as liability arises out of the operations of the Named
Insured as shown in Item 1 of the Declarations are concerned.

### Names of Additional Insureds

Richard H. Evans & Associates as respects
the operations of Old Chicago Town

This endorsement to take effect on the   **1st**   day of   **April**      19 **80**   All other terms and conditions remain
unchanged.

Countersignature Date   March 24, 1980

Authorized Representative

BROKER COPY

**Excess and Surplus**
**Insurance Company**
Northbrook, Illinois

# Endorsement

Named Insured   I C Industries

Policy No.   63 006 544
Endorsement No.   9

In consideration of the premium charged it is hereby agreed that as respects Old Chicago, coverage under this policy is limited to excess liability on a follow form basis over the Firemans' Fund Umbrella Policy No. TBA listed in the Schedule of Underlying Insurance.

It is further agreed that the limit of liability as respects Old Chicago is $24,000,000 excess of $1,000,000 excess the applicable primary insurances.

This endorsement to take effect on the   1st   day of   April   19 80   All other terms and conditions remain unchanged.

Countersignature Date   March 24, 1980

Authorized Representative

hj
RU7-1 PRINTED in USA

BROKER COPY

NESCO **Northbrook**
**Excess and Surplus**
**Insurance Company**
Northbrook, Illinois

3358301225

---

# Endorsement

| | | |
|---|---|---|
| Named Insured: **I C Industries** | Policy No.: | **63 006 544** |
| | Endorsement No.: | **10** |

In consideration of the premium charged, it is agreed that the aggregate limit of liability applies separately to each consecutive period of this policy.

It is further agreed that such periods shall be determined as follows:

From: April 1, 1980      To: April 1, 1981

From: April 1, 1981      To: April 1, 1982

From: April 1, 1982      To: April 1, 1983

---

This endorsement to take effect on the **1st** day of **April** **1980** All other terms and conditions remain unchanged

Countersignature Date   **March 24, 1980**      Authorized Representative

hj

SL7-1 PRINTED IN USA

BROKER COPY

**NESCO** Northbrook
Excess and Surplus
Insurance Company
Northbrook, Illinois

3358301226

# Endorsement

| | |
|---|---|
| Named Insured. **I C Industries** | Policy No **63 006 544** |
| | Endorsement No . **11** |

It is agreed that the premium for this policy is to be paid in annual install-ments, subject to annual review as shown below:

| Effective Dates | Installment Amount |
|---|---|
| 1) April 1, 1980 to April 1, 1981 | $650,000.00 |
| 2) April 1, 1981 to April 1, 1982 | To be determined |
| 3) April 1, 1982 to April 1, 1983 | To be determined |

This endorsement to take effect on the **1st** day of **April** 19**80** All other terms and conditions remain unchanged.

Countersignature Date _____ **March 24, 1980** _____

Authorized Representative

bj

RU7-1 PRINTED IN USA

BROKER COPY



3358301227

**Northbrook**
**Excess and Surplus**
**Insurance Company**
Northbrook, Illinois

# Endorsement

| | |
|---|---|
| Named Insured  **I C Industries** | Policy No..  **63 006 544** |
| | Endorsement No..  **12** |

In consideration of the premium charged, it is agreed that Endorsement #8 as respects "Names of Additional Insureds" is amended to include the following:

Valley Potato Company, a Joint Venture

It is further agreed that the Schedule of Underlying Policies as respects "I.C. Industries, Inc." is amended to include the following:

| Carrier, Policy # & Period | Type of Policy | Applicable Limits |
|---|---|---|
| (5)  Hartford Insurance Group #TBA | Comprehensive General Liability and Automobile Liability (Valley Potato Company a Joint Venture) | Combined Single Limit for Bodily Injury and Property Damage Combined $500,000 each occurrence $500,000 aggregate (where applicable) |

This endorsement to take effect on the  **1st**  day of  **April**  19 **80**  All other terms and conditions remain unchanged

Countersignature Date  **May 13, 1980**

_____
Authorized Representative

jv

3358301229

Northbrook Excess and Surplus Insurance Company (herein called NORTHBROOK) agrees with the named INSURED, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy as follows:

# I.  DEFINITIONS

The following words and phrases have special meaning throughout this policy and appear in bold face type when used.

A.  **ADVERTISING LIABILITY** means:

    (1)  libel, slander or defamation,
    (2)  any infringement of copyright or title or slogan,
    (3)  piracy or unfair competition or idea misappropriation under an implied contract,
    (4)  any invasion of right of privacy,

committed or alleged to have been committed during the policy period, in any advertisement, publicity article, broadcast or telecast and arising out of the INSURED's advertising activities

B.  **AIRCRAFT:** means any heavier than air or lighter than air vehicle designed to transport persons or property in the air (including any missile or spacecraft)

C.  **AIRCRAFT PRODUCTS:** means **AIRCRAFT** or any ground support or control equipment used therewith, any **AIRCRAFT** part and goods or products installed in or on **AIRCRAFT** or used in connection with **AIRCRAFT**, manufactured, sold, handled or distributed by any **INSURED** or by others trading under the **INSURED's** name **AIRCRAFT PRODUCTS** includes tooling used in the manufacture of **AIRCRAFT PRODUCTS**, and also includes ground handling tools and equipment, training aids, instructions, manuals, blueprints, engineering and other data, engineering and other advice and services and labor relating to **AIRCRAFT PRODUCTS**

D.  **AUTOMOBILE,** means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment

E.  **COMPLETED OPERATIONS HAZARD:**

    (1)  Includes **PERSONAL INJURY** and **PROPERTY DAMAGE** arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the **PERSONAL INJURY** or **PROPERTY DAMAGE** occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the **INSURED** Operations include materials, parts or equipment furnished in connection therewith

    Operations shall be deemed completed at the earliest of the following times

        (a)  when all operations to be performed by or on behalf of the **INSURED** under the contract have been completed,
        (b)  when all operations to be performed by or on behalf of the **INSURED** at the site of the operations have been completed, or
        (c)  when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project

    Operations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed

    (2)  The **COMPLETED OPERATIONS HAZARD** does not include **PERSONAL INJURY** or **PROPERTY DAMAGE** arising out of:

        (a)  operations in connection with the transportation of property, unless the **PERSONAL INJURY** or **PROPERTY DAMAGE** arises out of a condition in or on a vehicle created by the loading or unloading thereof,
        (b)  the existence of tools, uninstalled equipment or abandoned or unused materials.

F.  **EMPLOYEE BENEFIT PLANS** as used in this policy includes Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Worker's Compensation Insurance Plans, Unemployment Insurance, Social Security Insurance, Disability Benefits and any other similar Employee Benefit Programs sponsored by the **INSURED**, and shall also include professional or semiprofessional services or advice given by or on behalf of any of the **INSUREDS** to any of the **INSURED's** employees or the employees representatives relative to the above mentioned plans

G.  **GROUNDING** means the withdrawal, at or about the same time, in the interest of safety, of one or more **AIRCRAFT** from flight operations because of a like condition or suspicion thereof in two or more such **AIRCRAFT** whether such **AIRCRAFT** so withdrawn are owned or operated by the same or different persons firms or corporation A **GROUNDING** shall be deemed to commence on the date of an accident or **OCCURRENCE** which discloses such condition, or on the date an **AIRCRAFT** is first withdrawn from service on account of such condition, whichever first occurs.

H.  **INSURED:** Each of the following is an **INSURED** to the extent set forth below.

    (1)  the named **INSURED** meaning the named **INSURED** stated in Item 1 of the Declarations and any subsidiary, owned or controlled companies as now or hereafter constituted and of which prompt notice has been given to NORTHBROOK.
    (2)  any officer, director, stockholder or employee of the named **INSURED** or organization while acting as real estate manager for the named **INSURED**,
    (3)  any **INSURED** (not being the named **INSURED** under this policy) included in the Schedule of Underlying Insurance, but not for broader coverage than is available to such **INSURED** under the Schedule of Underlying Insurance.
    (4)  except with respect to the ownership, maintenance, operation, use, loading or unloading of an **AUTOMOBILE**, **AIRCRAFT** or **WATERCRAFT**, any officer, director, employee or stockholder of the named **INSURED**, while acting within the scope of that person's duties as such, but this subparagraph (4) shall not apply if it restricts the insurance granted under subparagraph (3) above.
    (5)  if the named **INSURED** is designated in the Declarations as a partnership or joint venture, any partner or member thereof, but only with respect to the liability incurred in the operation of that partnership or joint venture, however, this policy does not apply to any **AUTOMOBILE** owned by or registered in the name of any partner

3358301228

I.   INSURED'S PRODUCTS means goods or products manufactured, sold, handled or distributed by the named INSURED or by others trading under the INSURED's name, including any container thereof (other than a vehicle), but the INSURED'S PRODUCTS shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold

J   OCCURRENCE, with respect to PERSONAL INJURY and PROPERTY DAMAGE coverage, OCCURRENCE shall mean an accident or event including continuous or repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purpose of determining the limit of NORTHBROOK's liability, all PERSONAL INJURY and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE With respect to ADVERTISING LIABILITY coverage, all damages involving the same injurious material or act, regardless of the frequency of repetition thereof, the number or kind of media used, and the number of claimants shall be deemed to arise out of one OCCURRENCE.

K.   PERSONAL INJURY means.

(1)   bodily injury, sickness, disease, disability or shock, including death at any time resulting therefrom, mental anguish and mental injury,
(2)   false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention or malicious prosecution,
(3)   libel, slander, defamation of character, humiliation or invasion of the rights of privacy, unless arising out of advertising activities,

which occurs during the policy period

L   PRODUCTS HAZARD includes PERSONAL INJURY and PROPERTY DAMAGE arising out of the INSURED'S PRODUCTS or reliance upon a representation or warranty made at any time with respect thereto, but only if the PERSONAL INJURY or PROPERTY DAMAGE occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others.

M   PROPERTY DAMAGE means

(1)   physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and
(2)   loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period

N.   RETAINED LIMIT: means the sum stated in Declaration 2c which, in the absence of underlying insurance, the INSURED shall retain as self-insurance with respect to each OCCURRENCE

O   ULTIMATE NET LOSS: means the sums paid as damages in settlement of a claim or in satisfaction of a judgement or contract liability for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and insurance purchased specifically to apply in excess of this policy and also includes investigations, adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder

ULTIMATE NET LOSS does not include.

(1)   costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on the INSURED's behalf, or
(2)   office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED, or
(3)   general retainer fees of counsel retained by the INSURED

P.   UNDERLYING LIMIT, the amount equal to the limits of liability indicated on the Schedule of Underlying Insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED.

Q.   WATERCRAFT, means a vehicle designed for travel principally on the water, and includes a Hovercraft

# II.  INSURING AGREEMENTS

A.   Coverage:

To indemnify the INSURED for the ULTIMATE NET LOSS, in excess of the greater of the RETAINED LIMIT, or UNDERLYING LIMIT for all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of

(1)   PERSONAL INJURY,
(2)   PROPERTY DAMAGE, or
(3)   ADVERTISING LIABILITY

to which this policy applies, caused by an OCCURRENCE, happening anywhere in the world

B   Limits of Liability:

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of NORTHBROOK's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in Item 2(a) of the Declarations.

NORTHBROOK's liability shall be further limited to the amount stated as the annual aggregate limit in Item 2(b) of the Declarations on account of all OCCURRENCES during each annual policy period arising out of.

1    either the PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined, or
2.   occupational disease by all employees of the INSURED

In the event that the aggregate limits of liability of the underlying policies, listed in the Schedule of Underlying Insurance, are exhausted solely as the result of OCCURRENCES taking place after the inception date of this policy, this policy shall, subject to NORTHBROOK's limit of liability and to other provisions of this policy, with respect to OCCURRENCES which take place during the

period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the aggregate limit of liability as stated in Item 2(b) of the Declaration is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance In the event that the aggregate limits of liability of the underlying insurance are exhausted or reduced as the result of OCCURRENCES taking place prior to the inception date of this policy, NORTHBROOK shall only be liable to the same extent as if the aggregate limits had not been so exhausted or reduced.

For the purpose of determining the limit of NORTHBROOK's liability.

1.  all PERSONAL INJURY and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions, and
2.  all ADVERTISING LIABILITY involving the same injurious material or act, regardless of the number or kind of media used, or frequency or repetition thereof, whether claim is made by one or more persons shall be considered as arising out of one OCCURRENCE

**C   Defense-Settlement**

1.  With respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in the Schedule of Underlying Insurance hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT stated in Item 2(c) of the Declarations, NORTHBROOK shall.

    a.  defend any suit against the INSURED alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING LIABILITY or damage and seeking damages therefore, even if such suit is groundless, false or fraudulent; but NORTHBROOK may make such investigation, negotiation or settlement of any claims or suit as it deems expedient. The INSURED shall promptly reimburse NORTHBROOK for any amount paid in the satisfaction of cases defended hereunder within the RETAINED LIMIT after making proper deduction for all recoveries and salvage collectible, but excluding all loss expense and legal expense

    b.  with respect to any suit defended under the terms of this coverage, in addition to the applicable limit of liability under this policy NORTHBROOK will
        (i)   pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds;
        (ii)  pay all expenses incurred by NORTHBROOK, all costs taxed against the INSURED in any such suit and all interest accruing after the entry of judgment until NORTHBROOK has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of NORTHBROOK's liability thereon;
        (iii) pay reasonable expenses incurred by the INSURED at NORTHBROOK's request in assisting NORTHBROOK in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $100 per day, but NORTHBROOK shall not be required to reimburse the INSURED for salaries of employees of the INSURED

    In jurisdictions where NORTHBROOK may be prevented by law or otherwise from carrying out this agreement, NORTHBROOK shall pay any expense incurred with its written consent in accordance with this agreement

2.  When underlying insurance, whether or not listed in the Schedule of Underlying Insurance, does apply to an OCCURRENCE, NORTHBROOK shall have no duty to pay defense, investigations, settlement or legal expenses covered by such underlying insurance, however, NORTHBROOK shall have the right and opportunity to associate with the INSURED and any underlying insurer in the defense and control of any claim or suit reasonably likely to involve NORTHBROOK under this policy.

# III. EXCLUSIONS

This policy shall not apply

A.  Under PERSONAL INJURY to any obligation for which the INSURED or any of the INSURED's insurers may be held liable under any worker's or unemployment compensations, disability benefits or similar law; provided, however, that this exclusion does not apply to liability of others assumed by the named INSURED under any valid contract in being at the time of an OCCURRENCE

B.  Under PROPERTY DAMAGE to injury to or destruction of or loss of.
    (1) property owned by any INSURED or
    (2) property rented to, occupied or used by or in the care, custody or control of the INSURED to the extent that any INSURED is required to provide insurance thereof under any contract or agreement, or
    (3) any goods, products, or containers thereof, manufactured, sold, handled, or distributed or work completed by or for the INSURED, out of which the OCCURRENCE arises.

C.  Under coverage for PERSONAL INJURY and/or PROPERTY DAMAGE to loss of use of tangible property which has not been physically injured or destroyed resulting from.
    (1) a delay in or lack of performance by or on behalf of the INSURED of any contract or agreement, or
    (2) the failure of the INSURED'S PRODUCTS or work performed by or on behalf of the INSURED to meet the level of performance, quality, fitness or durability warranted or represented by the INSURED, but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the INSURED'S PRODUCTS or work performed by or on behalf of the INSURED after such products or work have been put to use by any person or organization other than an INSURED
    (3) Any damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the INSURED'S PRODUCTS or work completed by or for the INSURED or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein

D.   Under **ADVERTISING LIABILITY** arising out of:

  (1)   failure to perform a contract, or
  (2)   infringement or misappropriation of a trademark, service mark or tradename, except with respect to titles or slogans, or
  (3)   incorrect description of any article or commodity, or
  (4)   mistake in advertised price

E.   To **PERSONAL INJURY** or **PROPERTY DAMAGE** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into, from or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is both sudden and accidental.

F.   To any liability of the **INSURED** directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not) civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or naturalization or requisition or destruction of damage to property by or under the order of any government or public or local authority.

G.   To any claim against the **INSURED** arising out of discrimination. Discrimination includes but is not limited to the following types of discrimination, racial, religious, marital status, mental, physical handicap, age or sex discrimination.

H.   Under **PERSONAL INJURY** or **PROPERTY DAMAGE** for an **OCCURRENCE** arising out of **AIRCRAFT PRODUCTS** or **GROUNDING** which any **INSURED** becomes legally obligated to pay. This exclusion does not apply to any of the **INSURED'S PRODUCTS** that are not reasonably expected nor intended to be used as **AIRCRAFT PRODUCTS** when manufactured, sold, handled or distributed by the **INSURED** or by others representing the **INSURED** unless, prior to the **OCCURRENCE** involving such product, the **INSURED** knew or should have known that such product was in fact being used as an **AIRCRAFT PRODUCT**.

I.   To nuclear energy liability:

  1   Under any Liability Coverage, to loss or **ULTIMATE NET LOSS**.

    a.   with respect to which an **INSURED** under this policy is also an **INSURED** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **INSURED** under any such policy but for its termination upon exhaustion of its limit of liability; or
    b.   resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **INSURED** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization

  2   Under any Liability Coverage, to loss or **ULTIMATE NET LOSS** resulting from the hazardous properties of nuclear material, if

    a.   the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an **INSURED** or (b) has been discharged or dispersed therefrom, or
    b.   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **INSURED**; or
    c   the loss or **ULTIMATE NET LOSS** arises out of the furnishing by an **INSURED** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to loss or **ULTIMATE NET LOSS** to such nuclear facility and any property thereat

  3   As used in this policy.

    "hazardous properties" include radioactive, toxic or explosive properties;
    "nuclear material" means source material, special nuclear material or by-product material.
    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
    "nuclear facility" means.

    (a)   any nuclear reactor,
    (b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing fuel, or (3) handling, processing or packaging waste.
    (c)   any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the **INSURED** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235
    (d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

    "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
    "loss or **ULTIMATE NET LOSS**" includes all forms of radioactive contamination of property.

J.   To **PERSONAL INJURY**, **PROPERTY DAMAGE** or **ADVERTISING LIABILITY** arising out of the conduct of any partnership, or joint venture of which the **INSURED** is a partner or member and which is not designated in this policy as a named **INSURED**;

K.   To any liability arising out of any statute, law, ordinance or regulation regarding requirements for uninsured motorist liability.

3358301232

L.   To any loss as a result of a breach of fiduciary responsibility, obligations or duties as are imposed upon any of the INSUREDS by the Employee Retirement Income Security Act of 1974 or amendment thereto or any regulation as is promulgated thereunder.

This policy shall not apply to the following unless insurance is provided in the underlying insurance and then for no broader coverage than is afforded by such insurance

M.   To liability of any INSURED hereunder for assault and battery committed by or at the direction of the INSURED except liability for personal battery committed for the purpose of preventing or eliminating danger in the operation of AIRCRAFT, or for the purpose of preventing PERSONAL INJURY or PROPERTY DAMAGE, it being understood and agreed that this exclusion shall not apply to the liability of the named INSURED for PERSONAL INJURY to that person's employees, unless such liability is already excluded under Exclusion A above

N.   To liability arising out of the ownership, maintenance, use of, loading or unloading of.

    (1)   any WATERCRAFT owned or operated by or rented or loaned to any INSURED, or
    (2)   any other WATERCRAFT operated by any person in the course of that person's employment by any INSURED,
    but this exclusion does not apply to any WATERCRAFT while ashore on premises owned by any INSURED

O.   To punitive or exemplary damages awarded against any INSURED

P.   To any liability of any INSURED for PROPERTY DAMAGE to the property of another INSURED

Q.   To the ownership, maintenance, operations, use, loading or unloading of AIRCRAFT owned by any INSURED, or chartered without crew by or on behalf of any INSURED.

R   To employee benefit liability for all sums the INSURED shall become obligated to pay on account of any claim made against the INSURED or any other person for whose acts the INSURED is legally liable in the administration of the INSURED'S EMPLOYEE BENEFIT PLANS.

S   To any employee with respect to injury to or the death of another employee of the same employer injured in the course of such employment.

# IV. CONDITIONS

A.   Premium Computations· The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations If the earned premium thus computed exceeds the advance premium paid, the named INSURED shall pay the excess to NORTHBROOK, if less, NORTHBROOK shall return to the named INSURED the unearned portion paid by such INSURED The named INSURED shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to NORTHBROOK at the end of the policy period, as NORTHBROOK may direct.

When used as a premium basis, the following definitions will apply:

    (1)   "admissions" means the total number of persons, other than employees of any INSURED, admitted to any event insured or to events conducted on any premises covered by the policy whether on paid admission tickets, complimentary tickets or passes.
    (2)   "receipts" means the gross amount of money charged by any INSURED for such operations by any INSUREDS or by others during the policy period.
    (3)   "payroll" or "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of any INSURED;
    (4)   "sales" means the gross amount of money charged by any INSURED or by others trading under the INSURED's name for all goods and products sold or distributed during the policy period and charged during the policy period for installations, servicing or repair, and includes taxes, other than taxes which any INSURED and such others collect as a separate item and remit directly to a governmental division.

B   Inspection and Audit: NORTHBROOK shall be permitted but not obligated to inspect the named INSURED's property and operations at any time. Neither NORTHBROOK's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation

C   Severability of Interest. The term INSURED is used severally and not collectively except with respect to UNDERLYING LIMIT and RETAINED LIMIT as defined in this policy, and Insuring Agreement B, Limits of Liability and the Other Insurance Condition, of the policy. The inclusion in this policy of more than one INSURED shall not operate to increase NORTHBROOK's total liability for all INSUREDS covered by this policy beyond the limits set forth in Item (b) of the Declaration.

D.   Notice of OCCURRENCE, Claim or Legal Proceeding: Upon the happening of an OCCURRENCE reasonably likely to involve NORTHBROOK hereunder, written notice shall be given as soon as practicable to NORTHBROOK or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time. The INSURED shall give like notice of any claim made or legal proceeding commenced on account of such OCCURRENCE. IF LEGAL PROCEEDINGS are begun, the INSURED, when requested by NORTHBROOK shall forward to it each paper thereon, or a copy thereof, received by the INSURED or the INSURED's representative, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

E   Action Against NORTHBROOK No action shall lie against NORTHBROOK unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this policy, nor until the amount of the INSURED's obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and NORTHBROOK.

3358301233

F. **Appeals:** In the event the INSURED or the INSURED's primary insurer elects not to appeal a judgment in excess of the amount of the primary insurance or the INSURED'S RETAINED LIMIT, as the case may be, NORTHBROOK may elect to appeal, but in no event shall NORTHBROOK's liability exceed the amount set forth in the Declarations for each OCCURRENCE plus the expenses incidental to such appeal.

G. **Payment of ULTIMATE NET LOSS:** Coverage under this policy shall not apply unless and until the INSURED, or the INSURED's underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING LIABILITY. When the amount of ULTIMATE NET LOSS has finally been determined, NORTHBROOK shall promptly indemnify the INSURED the amount of ULTIMATE NET LOSS within the terms of this policy.

H. **Other Insurance:** If other collectible insurance with any other insurer is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT or the UNDERLYING LIMIT, the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other policy(ies) of NORTHBROOK is available to the INSURED, covering a loss also covered hereunder (other than excess), NORTHBROOK's total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of NORTHBROOK is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by underlying insurance shall not be cumulative.

I. **Underlying Insurance:** If underlying insurance applicable in any one OCCURRENCE is exhausted by payment of judgment or settlement on behalf of the INSURED, NORTHBROOK shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the INSURED resulting from the same OCCURRENCE but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

J. **Bankruptcy and Insolvency:**

  (1) The insolvency or bankruptcy of the INSURED shall not release NORTHBROOK from the payment of damages for injuries sustained or death resulting therefrom on loss occasioned during the term of this policy.

  (2) In case execution against the INSURED is returned unsatisfied in any action brought by the injured person or his or her personal representative in case death results from the accident because of such insolvency or bankruptcy then an action may be maintained by the injured person or his or her personal representative against such company under the terms of the policy and subject to all of the conditions thereof for the amount of the judgment in such action not exceeding the amount of the policy.

K. **Subrogation:** In the event any payment under this policy, NORTHBROOK shall be subrogated to the extent of its payments to all of the INSURED's rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
The amount recovered as subrogation shall be apportioned in the inverse order of payment of ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

L. **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop NORTHBROOK from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of NORTHBROOK.

M. **Assignment:** Assignment of interest under this policy shall not bind NORTHBROOK until its consent is endorsed hereon, if, however, the named INSURED shall be adjudged bankrupt or insolvent, this policy shall cover the named INSURED's legal representative as named INSURED, provided that notice of cancellation addressed to the INSURED named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

N. **Cancellation:** This policy may be cancelled by the named INSURED by surrender thereof to NORTHBROOK or by mailing to NORTHBROOK written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by NORTHBROOK by mailing to the INSURED at the INSURED's last known address written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if NORTHBROOK cancels the policy because the INSURED has failed to pay a premium when due, this policy may be cancelled by NORTHBROOK by mailing a written notice of cancellation to the INSURED stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time surrender or the effective date of the cancellation stated in the notice shall become the end of the policy period.
If the INSURED cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If NORTHBROOK cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. NORTHBROOK's check or the check of its representative mailed to the INSURED shall be a sufficient tender of any refund of premium due to the INSURED.

O. **Maintenance of Underlying Insurance:** It is warranted by the INSURED that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restrictive in coverage, shall be maintained in force during the currency of this policy, except for any reduction in the aggregate limit(s) contained therein solely by payment of claims in respect of OCCURRENCES happening during the period of this policy. In the event of failure by the INSURED so to maintain such policy(ies) in force, the insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force.

P. **Employers' Liability — Common Law Defenses:** As a condition to the recovery of any loss under this policy, with respect to PERSONAL INJURY to or the death of any employee arising out of and in the course of employment by the named INSURED, the named INSURED warrants that it has not and will not abrogate its common law defenses under any worker's compensation or occupational disease law by rejection thereof, or otherwise in the event the named INSURED should, at any time during the policy period, abrogate such defenses, such insurance as is afforded with respect to such employee shall automatically terminate at the same time.

Q. **Service of Suit Clause:** It is agreed that in the event of the failure of NORTHBROOK to pay any amount claimed to be due hereunder, NORTHBROOK at the request of the INSURED, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.
It is further agreed that service of process of such suit may be made upon Kieran T. Ridge, Allstate Plaza, Northbrook, Illinois 60062.

that in any suit instituted against NORTHBROOK upon this contract, NORTHBROOK will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above name is authorized and directed to accept service of process on behalf of NORTHBROOK in any such suit and/or upon the request of the INSURED to give a written undertaking to the INSURED that he will enter a general appearance upon NORTHBROOK's behalf in the event such a suit shall be instituted

Further, pursuant to any statute of any state, territory or district of the United States of America, which make provision therefore, NORTHBROOK hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceedings instituted by or on behalf of the INSURED or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

R.     **Terms of Policy Conformed to Statue:** Terms of this policy which are in conflict with applicable statutes of the State wherein this policy is issued are hereby amended to conform to such statutes

S     **Sole Agent Clause:** If there is more than one named INSURED hereunder, the named INSURED first named in Item 1 of the Declarations shall be deemed to be the agent for all named INSUREDS with respect to notice of cancellation, payment or return premium payment of unabsorbed premium deposit refunds (dividends) and in all other matters pertaining to this insurance

T.     **Addition of Named INSUREDS:** The named INSURED shall promptly notify NORTHBROOK of any addition of named INSUREDS to this policy. If such named INSUREDS are not listed in Item 1 of the Declarations, NORTHBROOK shall have the right to charge an additional premium for such named INSUREDS and to change deposit premiums, rates and minimum premiums.

U     **Special Conditions Applicable to Occupational Disease:** As regards PERSONAL INJURY (fatal or non-fatal) by occupational disease sustained by any employee of the INSURED, this policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability and the renewal agreement, if any) as are contained in or as may be added to the underlying insurance prior to the OCCURRENCE for which claim is made hereunder

IN WITNESS WHEREOF, NORTHBROOK has caused this policy to be signed by its Secretary and its President and countersigned on the Declarations Page by an authorized representative.

Secretary                                                    President