<u>DECLARATIONS</u>

ITEM 1.    a)    NAMED ASSURED:   I.C. INDUSTRIES INC. and others
                                  as set forth in the Underlying
                                  Umbrella Policy/ies.


           b)    ADDRESS OF NAMED ASSURED: One Illinois Center,
                                           111 East Wacker Drive,
                                           Chicago, Illinois 60601.


ITEM 2.    a)    UNDERLYING UMBRELLA POLICY NO(S): a) 63 006 544
                                                   b) 63 006 545
                                                   c) UMA. 0205
                                                   d) 6680-2037
                                                   e) AEL 00365C
           b)    UNDERLYING UMBRELLA INSURER(S):
                 a) b) Northbrook
                 c) Certain Underwriters at Lloyd's, London, and Various Ins.Cos
                 d) Granite State Ins. Co.  e) Associated International.

ITEM 3.    UNDERLYING UMBRELLA LIMITS
           (Insuring Agreement II):              $50,000,000


ITEM 4.    UNDERLYING UMBRELLA AGGREGATE
           LIMITS (Insuring Agreement II):       $50,000,000


ITEM 5.    LIMIT OF LIABILITY
           (Insuring Agreement II):              $25,000,000


ITEM 6.    AGGREGATE LIMIT OF LIABILITY
           (Insuring Agreement II):              $25,000,000


ITEM 7.    POLICY PERIOD:   1st April 1980 to 1st April 1981,
                            both days at 12.01 Local Standard Time.


ITEM 8.    NOTICE OF OCCURRENCE (Condition 6) to:
               Rollins Burdick Hunter and Co.,
               10 South Riverside Plaza, Chicago, Illinois 60606.


ITEM 9.    SERVICE OF PROCESS (Condition 7) upon:
               Thomas L. Stevens, 115 South La Salle Street,
               Chicago, Illinois.

STIP 000188

**U.S.A.**

## NEW SHORT RATE CANCELLATION TABLE ENDORSEMENT

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this insurance is written it is agreed that in the event of cancellation thereof by the Assured the earned premium shall be computed as follows:—

### SHORT RATE CANCELLATION TABLE

**A.  For Insurances written for one year:—**

| Days Insurance in force | Per cent. of One Year Premium | Days Insurance in force | Per cent. of One Year Premium |
|---|---|---|---|
| 1 | 5 | 154—156 | 53 |
| 2 | 6 | 157—160 | 54 |
| 3— 4 | 7 | 161—164 | 55 |
| 5— 6 | 8 | 165—167 | 56 |
| 7— 8 | 9 | 168—171 | 57 |
| 9— 10 | 10 | 172—175 | 58 |
| 11— 12 | 11 | 176—178 | 59 |
| 13— 14 | 12 | 179—182 (6 months) | 60 |
| 15— 16 | 13 | 183—187 | 61 |
| 17— 18 | 14 | 188—191 | 62 |
| 19— 20 | 15 | 192—196 | 63 |
| 21— 22 | 16 | 197—200 | 64 |
| 23— 25 | 17 | 201—205 | 65 |
| 26— 29 | 18 | 206—209 | 66 |
| 30— 32 (1 month) | 19 | 210—214 (7 months) | 67 |
| 33— 36 | 20 | 215—218 | 68 |
| 37— 40 | 21 | 219—223 | 69 |
| 41— 43 | 22 | 224—228 | 70 |
| 44— 47 | 23 | 229—232 | 71 |
| 48— 51 | 24 | 233—237 | 72 |
| 52— 54 | 25 | 238—241 | 73 |
| 55— 58 | 26 | 242—246 (8 months) | 74 |
| 59— 62 (2 months) | 27 | 247—250 | 75 |
| 63— 65 | 28 | 251—255 | 76 |
| 66— 69 | 29 | 256—260 | 77 |
| 70— 73 | 30 | 261—264 | 78 |
| 74— 76 | 31 | 265—269 | 79 |
| 77— 80 | 32 | 270—273 (9 months) | 80 |
| 81— 83 | 33 | 274—278 | 81 |
| 84— 87 | 34 | 279—282 | 82 |
| 88— 91 (3 months) | 35 | 283—287 | 83 |
| 92— 94 | 36 | 288—291 | 84 |
| 95— 98 | 37 | 292—296 | 85 |
| 99—102 | 38 | 297—301 | 86 |
| 103—105 | 39 | 302—305 (10 months) | 87 |
| 106—109 | 40 | 306—310 | 88 |
| 110—113 | 41 | 311—314 | 89 |
| 114—116 | 42 | 315—319 | 90 |
| 117—120 | 43 | 320—323 | 91 |
| 121—124 (4 months) | 44 | 324—328 | 92 |
| 125—127 | 45 | 329—332 | 93 |
| 128—131 | 46 | 333—337 (11 months) | 94 |
| 132—135 | 47 | 338—342 | 95 |
| 136—138 | 48 | 343—346 | 96 |
| 139—142 | 49 | 347—351 | 97 |
| 143—146 | 50 | 352—355 | 98 |
| 147—149 | 51 | 356—360 | 99 |
| 150—153 (5 months) | 52 | 361—365 (12 months) | 100 |

**B.  For Insurances written for more or less than one year:—**

1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

2.  If insurance has been in force for more than 12 months:

    a.  Determine full annual premium as for an insurance written for a term of one year.

    b.  Deduct such premium from the full insurance premium, and on the remainder calculate the *pro rata* earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

    c.  Add premium produced in accordance with items (a) and (b) to obtain earned premium during full period insurance has been in force.

N.MA. 45.

STIP 000189

ILLINOIS

## CANCELLATION CLAUSE

NOTWITHSTANDING anything contained in this Insurance to the contrary, this Insurance may be cancelled by the Assured at any time by written notice or by surrender of this contract of insurance.

This Insurance may also be cancelled by or on behalf of the Underwriters by mailing notice of cancellation to the Named Assured, at the last mailing address known by Underwriters. The Resident Agent shall maintain proof of mailing of such notice on a recognized U.S. Post Office form, and a copy of such notice shall be sent to the agent of record and/or the Assured's broker. Where cancellation is for non-payment of premium, at least 10 days notice of cancellation shall be given. Otherwise notice of cancellation must be mailed at least 15 days prior to the effective date of cancellation during the first 180 days of coverage or at least 30 days prior to the effective date of cancellation if coverage has been in effect for more than 180 days.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. If the Insurance to which this is attached provides for a greater number of days notice than is provided herein, said greater number of days shall apply in event of cancellation.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

In the event of cancellation the earned premium shall be calculated as stated in the Insurance to which this is attached. If, the said Insurance does not provide for calculation of the earned premium, the following shall apply:—

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

1941

STIP 000190

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

This policy*                                                           does not apply:—

   I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction

      (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

      (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

      (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

   IV.  As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

      (a)  any nuclear reactor,

      (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

      (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

      (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60

    1256

---

U.S.A.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64

    1477

STIP 000191

**INDUSTRIES. SEEPAGE. POLLUTION AND CONTAMINATION CLAUSE No. 3**

This Insurance does not cover any liability for:

   (1)   Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed. where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

   (2)   The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

   (3)   Fines, penalties, punitive or exemplary damages.

This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70

     1685

STIP 000192

U.S.A.

### 4% TAX CLAUSE

Notice is hereby given that the Assurers have agreed to allow for the purpose of paying the Federal Excise Tax 4% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Assurers will deduct 4% from the amount of the return and the Assured or his agent should take steps to recover the Tax from the U.S. Government.

1-11-68.

BI 139

STIP 000193

ATTACHING TO AND FORMING PART OF POLICY NO. 551/UMA0206

ADDENDUM NO. 1

It is hereby understood and agreed that this Policy is
extended to include Workers Compensation Act and Federal
Longshoremens and Harbor Workers Act Liability but only
in respect of the State of Ohio, as more fully described
in the Underlying Umbrella Policy/ies as referred to in
the wording of this Policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

STIP 000194

ATTACHING TO AND FORMING PART OF POLICY NO. _____ 551/UMA0206

ADDENDUM NO. 2

It is hereby understood and agreed this Policy is extended to include Employee Benefit Liability as more fully described in the Underlying Umbrella Policy/ies as referred to in the wording of this Policy.

It is further understood and agreed that the above extension in coverage shall not apply to any loss or claim based upon the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

STIP 000195

| Line or Percentage | Companies | Policy References |
|---|---|---|
| | Percentages signed hereunder are percentages of 20% of the Limits | |
| 15.00% | 23.55% Walbrook Insurance Company Limited | |
| | 14.39% "Winterthur" Swiss Insurance Company | |
| | 5.74% El Paso Insurance Company Limited | |
| | 10.34% Mutual Reinsurance Company Limited | |
| | 13.23% Dart Insurance Company Limited | |
| | 9.76% Bermuda Fire and Marine Insurance Company Limited | |
| | 1.72% Compagnie Europeenne d'Assurances Industrielles S.A. | |
| | 5.75% Bryanston Insurance Company Limited | |
| | 8.62% St. Katherine Insurance Company Limited | |
| | 6.90% Louisville Insurance Company Limited | |
| | Per H.S. Weavers (Underwriting) Agencies Limited | L03G17531846 |
| 10.00% | 23.55% Walbrook Insurance Company Limited | |
| | 14.39% "Winterthur" Swiss Insurance Company | |
| | 5.74% El Paso Insurance Company Limited | |
| | 10.34% Mutual Reinsurance Company Limited | |
| | 13.23% Dart Insurance Company Limited | |
| | 9.76% Bermuda Fire and Marine Insurance Company Limited | |
| | 1.72% Compagnie Europeenne d'Assurances Industrielles S.A. | |
| | 5.75% Bryanston Insurance Company Limited | |
| | 8.62% St. Katherine Insurance Company Limited | |
| | 6.90% Louisville Insurance Company Limited | |
| | Per H.S. Weavers (Underwriting) Agencies Limited | L03G19903490 |
| 25.00% | | |

GI 114

STIP 000196

S

551/UMA0206

# Companies Collective Policy

STIP 000197

L1 026

COMPANY(S) COVER NOTE

In the event of claim under this cover note, please notify:

# ROLLINS BURDICK HUNTER

## ROLLINS BURDICK HUNTER OF ILLINOIS, INC.

### 10 SOUTH RIVERSIDE PLAZA  •  CHICAGO, ILLINOIS 60606
### TELEPHONE (312) 454-1400

**Insurers Representative**

This insurance effected with
Insurance Company(s) as noted herein.

STIP 000198

**IMPORTANT** THIS COVER NOTE CANNOT BE CANCELLED FLAT.  EARNED PREMIUM MUST BE PAID FOR THE TIME INSURANCE HAS BEEN IN FORCE.  THE ASSURED IS REQUESTED TO READ THIS COVER NOTE, AND IF INCORRECT, RETURN IT IMMEDIATELY FOR ALTERATION.

Eason Printing Co. Chicago
Form SL/COS/CN

IRI 2312

June 16, 1980

PART TWO: THIS DECLARATIONS PAGE WITH COVER NOTE PROVISIONS (FORM NO. RBH 105) ARE MADE AS PART HEREOF.

NUMBER C 6816

**1**

**Name of Assured**

I C Industries Incorporated Etal. as Underlying
One Illinois Center
111 East Wacker Drive
Chicago, IL 60601

**2**

EFFECTIVE ☒ 12:01 A.M.   BOTH DAYS AT
FROM ☐ 12:00 NOON   STANDARD TIME

FROM April 1, 1980   TO April 1, 1981

**3**

NAME OF INSURERS — AMOUNT OR PERCENT

Acting upon your instruction, we have effected the insurance with:

→ Certain British Insurance Companies — 25.0000% part of 100%

The Insurance Company(s) (hereinafter called the Insurers) do hereby bind themselves, each for itself and not for another, for the percentage shown hereon.

**4**

| AMOUNT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| See Attached Sheet | See Attached Sheet | | $1,875.00 |

AUDIT — TOTAL CHARGED $1,875.00

**5**

SPECIAL CONDITIONS
See Attached Sheet

It is understood and agreed that when the participation as shown above is less than 100% this insurance shall run concurrently with and be subject to the same gross rate, terms, conditions and endorsements as more particularly set forth in and/or as may from time to time be added to Cover Note No. L-2149 issued by Lloyd's Underwriters on the same subject matter and risk.

STIP 000200

This insurance is made and accepted subject to all the provisions set forth herein or endorsed hereon or appearing on the Jacket hereof, all of which are incorporated herein, and any provisions appearing in forms attached hereto and made a part hereof which alter the provisions herein shall supersede such provisions as they are inconsistent therewith.

ROLLINS BURDICK HUNTER OF ILLINOIS, INC.



BY B. J. Keroy

ORIGINAL

IRI 2314

If an original policy is issued replacing this cover note, this insurance is subject to all the terms and conditions of that policy. This cover note shall be automatically terminated and voided by delivery of the original policy to the Assured.

## Short Rate Cancellation Table

### For Term of One Year

| Days Policy in Force | Per Cent of One Year Premium | Days Policy in Force | Per Cent of One Year Premium |
|---|---|---|---|
| 1 | 5% | 154-156 | 53% |
| 2 | 6 | 157-160 | 54 |
| 3- 4 | 7 | 161-164 | 55 |

## COVER NOTE PROVISIONS

1. If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this cover note shall become void, and all claims thereunder shall be forfeited.

2. This cover note may be cancelled on the customary short rate basis by the Assured at any time by written notice or by the surrender of this cover note to the said Insurer's Representative. This cover note may also be cancelled, with or without the return or tender of the unearned premium, by the Insurer's Representative, in their behalf, by delivering to the Assured, or by sending to the Assured by mail, registered or unregistered, at the Assured's address as shown herein, not less than five days' written notice, stating when the cancellation shall be effective, and in such case the Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by the Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by the Insurers or the Assured.

3. Service of Suit Clause—It is agreed that in the event of the failure of the Insurers to pay any amount claimed to be due hereunder, the Insurers, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

   It is further agreed that service of process in such suit may be made upon Lord, Bissell & Brook, 115 South La Salle Street, Chicago, Illinois 60603, or Mendes & Mount, 3 Park Avenue, New York, New York 10016 or their nominee, and that in any suit instituted against any of them upon this contract, the Insurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The above-named are authorized and directed to accept service of process on behalf of the Insurers in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Insurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

4. It is expressly understood and agreed by the Assured by accepting this instrument that the said Insurer's Representative, is not an Assurer hereunder and that the said Insurer's Representative, neither is nor shall be in any way or to any extent liable for any loss or claim whatever, but that the Insurers hereunder are those as shown elsewhere in this cover note.

5. The Assured shall immediately report to the said Insurer's Representative, an occurrence likely to result in a claim under this cover note, and shall also file with the said Insurer's Representative, detailed sworn proof of interest and loss within sixty days from the date of loss. Failure by the Assured either to report the said loss or damage or to file such written proof of loss as above provided, shall invalidate any claim under this cover note.

6. All adjusted claims shall be paid or made good to the Assured within thirty days after presentation and acceptance of satisfactory proofs of interest and loss at the office of the said Insurer's Representative.

7. Loss, if any, to be payable in Chicago, Illinois, in United States Currency.

8. This cover note does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

9. TAX CLAUSE—Notice is hereby given that the Insurers have agreed to allow for the purpose of paying the Federal Excise Tax 4% (1% personal accident or reinsurance) of the premium payable hereon to the extent such premium is subject to Federal Excise Tax. It is understood and agreed that in the event of any return of premium becoming due the Insurers will deduct 4% (1% personal accident or reinsurance) from the amount of the return and the Assured or his agent should take steps to recover the Tax from the U.S. Government.

10. This insurance is made and accepted subject to all the provisions, conditions and warranties set forth herein or endorsed hereon or appearing on the reverse side hereof, all of which are to be considered as incorporated herein.

11. Any provision or conditions appearing in any forms attached hereto and made a part hereof, which conflict with or alter the cover note provisions stated above, shall supersede the provisions appearing in this cover note, insofar as the latter are inconsistent with the provisions appearing in such attached forms.

12. This cover note shall not be assigned either in whole or in part, without the written consent of the said Insurer's Representative, endorsed hereon.

13. This cover note shall not be valid unless signed by the said Insurer's Representative.

IRI 2313

COVERAGE:      Excess Broad Form Liability Insurance

FORM:      J(a) plus short excess wording following Underlying as expiring or to be agreed by Underwriters.
Including Workmen's Compensation Act and Federal Longshoremen's and Harbour Workers Compensation Act (in respect of State of Ohio) and Employee Benefit Liability following Underlying Umbrella, but excluding Employee Retirement Income Security Act of 1974.

INTEREST:      Covering in respect of the Assured's operations.

SUM INSURED:      $5,000,000 any one occurrence
$5,000,000 annual aggregate where in the Underlying
Part Of
$25,000,000 any one occurrence
$25,000,000 annual aggregate where in the Underlying
Only To Pay The Excess Of
$50,000,000 any one occurrence
$50,000,000 annual aggregate where in the Underlying

SITUATED:      Anywhere in the World.

CONDITIONS:      N.M.A. 1941 Cancellation Clause (Illinois)
Service of Suit Clause (John G. Smith – Licensed Underwriters) (Thomas L. Stevens – Unlicensed Underwriter
Notice of Loss to Rollins, Burdick, Hunter and Company Chicago.
N.M.A. 1256 Nuclear Incident Exclusion Clause – Liability Direct (Broad) – U.S.A.
N.M.A. 1477 Radioactive Contamination Exclusion Clause – Liability – Direct – U.S.A.
N.M.A. 1685 Seepage, Pollution and Contamination Clause No. 3

PREMIUM:      $7,500 (100%)

SECURITY:      Certain British Insurance Companies
25.0000% part of 100%

STIP 000201

IRI 2315

Illinois

## CANCELLATION CLAUSE

NOTWITHSTANDING anything contained in this Insurance to the contrary, this Insurance may be cancelled by the Assured at any time by written notice or by surrender of this contract of insurance.

This Insurance may also be cancelled by or on behalf of the Underwriters by mailing notice of cancellation to the Named Assured, at the last mailing address known by Underwriters. The Resident Agent shall maintain proof of mailing of such notice on a recognized U. S. Post Office form, and a copy of such notice shall be sent to the agent of record and/or the Assured's broker. Where cancellation is for non-payment of premium, at least 10 days notice of cancellation shall be given. Otherwise notice of cancellation must be mailed at least 15 days prior to the effective date of cancellation during the first 180 days of coverage or at least 30 days prior to the effective date of cancellation if coverage has been in effect for more than 180 days.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. If the Insurance to which this is attached provides for a greater number of days notice than is provided herein, said greater number of days shall apply in event of cancellation.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

In the event of cancellation the earned premium shall be calculated as stated in the Insurance to which this is attached. If, the said Insurance does not provide for calculation of the earned premium, the following shall apply.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

STIP 000202

N.M.A. 1941

IRI 2316

**INSURANCE COMPANIES**
**THE POLICY MAKERS**

**ENDORSEMENT**

Additional Premium _____

Return Premium _____

Effective on and after ____**4-1-80**____ 19 ___ **12:01 A.M.** Standard Ti

this endorsement forms part of policy No. __**522 018253 8**__ Expiration Date __**4-1-81**__

Issued to __**I. C. Industries**__

By ____**International Insurance**____ Compa

## Schedule A- Schedule of Underlying Insurance

**A.**  **$25,000. Each Occurrence and in the Aggregate as Provided by:**

First State Insurance Company      (20%)
Harbor Insurance Co.               (20%)
Transit Casualty Co.               (40%)
Lloyd's & Various British Companies (20%)

In Excess of:

**B.**  **$25,000,000. Each Occurrence and in the Aggregate as Provided by:**

Granite State Insurance Co.          (40%)
Associated International Insurance Co. (20%)
Lloyd's & Various British Companies  (40%)

In Excess of:

**C.**  **$20,000,000 Each Occurrence and in the Aggregate as Provided by:**

Northbrook Insurance Company         (100%)

In Excess of:

**D.**  **$5,000,000. Each Occurrence and in the Aggregate as Provided by:**

Northbrook Insurance Co.             (100%)

Which is Excess of Primary Insurance as Provided by Continent
Insurance Company, Great American Surplus Lines Ins. Co.
and Southern American Ins. Co.

STIP 000203

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

FM.0.0.193  (8-67)

IRI 2380

**CRUM&FORSTER**
**INSURANCE COMPANIES**
**THE POLICY MAKERS**

**ENDORSEMENT**

**Second Revision**

Additional Premium _____

Return Premium _____

Effective on and after _____ **4-1-80** _____ 19 ____ , **12:01 AM** _____ Standard Tir

this endorsement forms part of policy No. **522 018253 8** _____ Expiration Date **4-1-81**

Issued to **I. C. Industries** _____

By _____ **International Insurance** _____ Compa:

## Schedule A- Schedule of Underlying Insurance

A. $25,000,000. Each Occurrence and in the Aggregate as Provided by:

| | |
|---|---|
| First State Insurance Company | (20%) |
| Harbor Insurance Co. | (20%) |
| Transit Casualty Co. | (40%) |
| Lloyd's & Various British Companies | (20%) |

In Excess of:

B. $25,000,000. Each Occurrence and in the Aggregate as Provided by:

| | |
|---|---|
| Granite State Insurance Co. | (40%) |
| Associated International Insurance Co. | (20%) |
| Lloyd's & Various British Companies | (40%) |

In Excess of:

C. $20,000,000. Each Occurrence and in the Aggregate as Provided by:

Northbrook Excess & Surplus Ins. Co.     (100%)

In Excess of:

D. $5,000,000. Each Occurrence and in the Aggregate as Provided by:

Northbrook Excess & Surplus Ins. Co.     (100%)

Which is Excess of Primary Insurance as Provided by National Union Insurance Company, Great American Surplus Lines Ins. Co. and Southern American Ins. Co.

STIP 000204

All other terms and conditions of this policy remain unchanged.

**6-4-80  WC**          **Rollins-Burdick-Hunter of Illinois, Inc.**

AUTHORIZED REPRESENTATIVE

FM.0.0.193  (8-67)

IRI 2381

**ENDORSEMENT**

| Endorsement Reference | 1 |
|---|---|
| Policy No. | 551/UMA0206 |

Date    28th May, 1982

To be attached to  **Lloyd's Underwriters**

In the name of   **I.C. Industries Inc.**

RMS/pw.

**Effective Inception**

It is hereby understood and agreed that where costs are not
included in the "Ultimate Net Loss" or any similar definition
contained in the Underlying Umbrella Policy/ies the following
shall be deemed to be additional Conditions to this wording:-

**INCURRING OF COSTS**

In the event of claim or claims arising which appear likely
to exceed the Underlying Umbrella Limits, no costs shall be
incurred by the Assured without the written consent of the
Underwriters.

**APPORTIONMENT OF COSTS**

Costs incurred by or on behalf of the Assured with the written
consent of the Underwriters and for which the Assured is not
covered by the Underlying Umbrella Policy/ies shall be
apportioned as follows:-

   (i)    Should any claim or claims become adjustable prior
          to the commencement of trial for not more than the
          Underlying Umbrella Limits, then no costs shall be
          payable by the Underwriters.

  (ii)    Should, however, the amount for which the said claim
          or claims may be so adjustable exceed the Underlying
          Umbrella Limits, then the Underwriters, if they
          consent to the proceedings continuing, shall contribute
          to the costs incurred by or on behalf of the Assured
          in the ratio that their proportion of the ultimate
          net loss as finally adjusted bears to the whole amount
          of such ultimate net loss.

 (iii)    In the event that the Assured elects not to appeal a
          judgment in excess of the Underlying Umbrella Limits,
          the Underwriters may elect to conduct such appeal at

Continued....

STIP 000205

**ENDORSEMENT**

| Endorsement Reference | 1 | |
|---|---|---|
| Policy No. 551/UMA0206 | | |

Date    28th May, 1982

To be attached to   Lloyd's Underwriters

In the name of    I.C. Industries Inc.
JG/pw.

their own cost and expense and shall be liable for
the taxable court costs and interests incidental
thereto, but in no event shall the total liability of
the Underwriters exceed their limit of liability as
provided for in the wording, plus the expenses of
such appeal.

All other terms and conditions remain unchanged.

STIP 000206

ATTACHING TO AND FORMING PART OF POLICY NO. 551/ UMA.0206.

ADDENDUM NO. 3.

Where costs are not included in the "Ultimate Net Loss" or any
similar definition contained in the Underlying Umbrella Policy/ies,
the following shall be deemed to be additional Conditions to this
wording:-

INCURRING OF COSTS

In the event of claim or claims arising which appear likely to
exceed the Underlying Umbrella Limits, no costs shall be incurred
by the Assured without the written consent of the Underwriters.

APPORTIONMENT OF COSTS

Costs incurred by or on behalf of the Assured with the written
consent of the Underwriters and for which the Assured is not
covered by the Underlying Umbrella Policy/ies shall be apportioned
as follows:-

(i)     Should any claim or claims become adjustable prior
        to the commencement of trial for not more than the
        Underlying Umbrella Limits, then no costs shall be
        payable by the Underwriters.

(ii)    Should, however, the amount for which the said claim
        or claims may be so adjustable exceed the Underlying
        Umbrella Limits, then the Underwriters, if they
        consent to the proceedings continuing, shall contribute
        to the costs incurred by or on behalf of the Assured in
        the ratio that their proportion of the ultimate net loss
        as finally adjusted bears to the whole amount of such
        ultimate net loss.

(iii)   In the event that the Assured elects not to appeal a
        judgment in excess of the Underlying Umbrella Limits,
        the Underwriters may elect to conduct such appeal at
        their own cost and expense and shall be liable for the
        taxable court costs and interest incidental thereto,
        but in no event shall the total liability of the
        Underwriters exceed their limit of liability as
        provided for in the wording, plus the expenses of such
        appeal.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.



CLOSED 9 JUL 1982



STIP 000207