# EXHIBIT 8

**UPA0115**

**4/1/82 – 4/1/83**

J (A) (FORM)

# ORIGINAL

# Lloyd's Policy



**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called "the Underwriters"),

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that we the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified ·Signing Office will be furnished to the Assured on

## ILLINOIS

### For the information of the Attorney-in-Fact.

Illinois Brokers'
Cover Note No. .....  *1 5 2 1* ...............

Countersigning Date.. *O C T  7  1 9 9 2*

General Manager of Lloyd's Policy Signing Office
h of us.

ICY SIGNING OFFICE,

GENERAL MANAGER

For Embossment by
Lloyd's Policy
Signing Office

The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to:

# SCHEDULE

Policy No.    551   :   UPA0115

Name and Address        I.C. Industries Inc. and Others as set forth
of the ~~Excess~~/Assured   :   in the Underlying Umbrella Policy,
                        One Illinois Center,
                        111 East Wacker Drive, Chicago, Illinois 60601.

Premium         :   U.S.$70,000.00

Period of Insurance

    From    1st April, 1982        to    1st April, 1983

    both days   at 12.01 a.m. Local Standard Time

    and for such further period or periods as may be mutually agreed upon.

Risk and Sum Insured hereunder:

    As per wording attached hereto
    which shall be taken and read
    as forming an integral part
    hereof.



D. A. Wilson
ROLLINS BURDICK HUNTER OF ILLINOIS, INC.

HERETO:  33.0500%    part of 100% of 40% of the Limits and Premium herein

DATED in LONDON        19th September, 1984                    JG/pw

<u>EXCESS UMBRELLA POLICY</u>

<u>INSURING AGREEMENTS:</u>

I     <u>COVERAGE</u> –

The Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability caused by or arising out of the hazards covered by and as more fully defined in the Underlying Umbrella Policy/ies stated in Item 2 of the Declarations.

II     <u>LIMIT OF LIABILITY</u> –

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers (as specified in Item 2 of the Declarations) have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

$ (as stated in Item 3 of     ultimate net loss in respect
the Declarations)             of each occurrence, but

$ (as stated in Item 4 of     in the aggregate for each
the Declarations)             annual period during the
                              currency of this Policy,
                              separately in respect of
                              each hazard insured with an
                              aggregate limit in the
                              Underlying Umbrella Policy/ies

and the Underwriters shall then be liable to pay only the excess thereof up to a further

$ (as stated in Item 5 of     ultimate net loss in all in
the Declarations)             respect of each occurrence –
                              subject to a limit of

$ (as stated in Item 6 of     in the aggregate for each
the Declarations)             annual period during the
                              currency of this Policy,
                              separately in respect of
                              each hazard insured with an
                              aggregate limit in the
                              Underlying Umbrella Policy/ies.

<u>CONDITIONS:</u>

1.     <u>PRIOR INSURANCE AND NON CUMULATION OF LIABILITY</u> –

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

2.    MAINT ,NCE OF UNDERLYING UMBRELLA IN     ANCE -

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policy/ies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.  Provided always that this Policy shall not apply until the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss in accordance with Insuring Agreement II.  Should, however, any alteration be made in the premium for the Underlying Umbrella Policy/ies during the currency of this Policy, Underwriters reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policy/ies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy, or by the operation of a clause contained in said Underlying Umbrella Policy/ies similar to Condition 1 above.

3.    ASSISTANCE AND CO-OPERATION -

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

4.    CANCELLATION -

This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by mailing written notice to the other party stating when, not less than thirty (30) days thereafter, cancellation shall be effective.  The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this Policy shall be sufficient proof of notice, and the insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice.  Delivery of such written notice either by the Named Assured or by Underwriters or their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been in force.  If this Policy shall be cancelled by the Underwriters the Underwriters shall retain the pro rata proportion of the premium for the period this Policy has been in force.  Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium with such notice.

5.    OTHER INSURANCE -

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is specifically stated to be in excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.  Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

6.   NOTICE OF OCCURRENCE –

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 8 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date would appear to give rise to claims hereunder, shall not prejudice such claims.

7.   SERVICE OF SUIT CLAUSE –

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 9 of the Declarations, and that in any suit instituted against any one of them upon this Policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The person or firm named in Item 9 of the Declarations are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this policy of insurance, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

## DECLARATIONS

ITEM 1.   a)   NAMED ASSURED: I.C. Industries Inc. and Others as set forth in the Underlying Umbrell Policy.

           b)   ADDRESS OF NAMED ASSURED:

                 One Illinois Center,
                 111 East Wacker Drive,
                 Chicago, Illinois 60601.

ITEM 2.   a)   UNDERLYING UMBRELLA POLICY NO(S):   63007776

           b)   UNDERLYING UMBRELLA INSURER(S):
                 Northbrook Excess and Surplus
                 Insurance Company,
                 Northbrook, Illinois.

ITEM 3.   UNDERLYING UMBRELLA LIMITS       $25,000,000
         (Insuring Agreement II):

ITEM 4.   UNDERLYING UMBRELLA AGGREGATE   $25,000,000
         LIMITS (Insuring Agreement II):

ITEM 5.   LIMIT OF LIABILITY            $25,000,000
         (Insuring Agreement II):

ITEM 6.   AGGREGATE LIMIT OF LIABILITY    $25,000,000
         (Insuring Agreement II):

ITEM 7.   POLICY PERIOD: 1st April, 1982 to  1st April, 1983 both days at 12.01 a.m. Local Standard Time.

ITEM 8.   NOTICE OF OCCURRENCE (Condition 6) to:
                 Rollins, Burdick, Hunter & Co.,
                 10 South Riverside Plaza,
                 Chicago, Illinois 60606.

ITEM 9.   SERVICE OF PROCESS (Condition 7) upon:
                 John G. Smith,
                 115 South La Salle Street,
                 Chicago, Illinois. Page 4 of 4

XOD 2

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
### (Approved by Lloyd's Underwriters' Non-Marine Association)

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

This policy*                                                                                          does not apply:—

I.   Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
   (a) any nuclear reactor.
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste.
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:—As respects policies which afford liability coverage and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1256


U.S.A.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
### (Approved by Lloyd's Underwriters' Non-Marine Association)

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

### INDUSTRIES. SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:

(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(3) Fines, penalties, punitive or exemplary damages.

This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70
N.M.A. 1685

U.S.A.

### NEW SHORT RATE CANCELLATION TABLE ENDORSEMENT

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this insurance is written it is agreed that in the event of cancellation thereof by the Assured the earned premium shall be computed as follows:—

### SHORT RATE CANCELLATION TABLE

A.  For Insurances written for one year:—

| Days Insurance in force | Per cent. of One Year Premium | Days Insurance in force | Per cent. of One Year Premium |
|---|---|---|---|
| 1 | 5 | 154—156 | 53 |
| 2 | 6 | 157—160 | 54 |
| 3— 4 | 7 | 161—164 | 55 |
| 5— 6 | 8 | 165—167 | 56 |
| 7— 8 | 9 | 168—171 | 57 |
| 9— 10 | 10 | 172—175 | 58 |
| 11— 12 | 11 | 176—178 | 59 |
| 13— 14 | 12 | 179—182 (6 months) | 60 |
| 15— 16 | 13 | 183—187 | 61 |
| 17— 18 | 14 | 188—191 | 62 |
| 19— 20 | 15 | 192—196 | 63 |
| 21— 22 | 16 | 197—200 | 64 |
| 23— 25 | 17 | 201—205 | 65 |
| 26— 29 | 18 | 206—209 | 66 |
| 30— 32 (1 month) | 19 | 210—214 (7 months) | 67 |
| 33— 36 | 20 | 215—218 | 68 |
| 37— 40 | 21 | 219—223 | 69 |
| 41— 43 | 22 | 224—228 | 70 |
| 44— 47 | 23 | 229—232 | 71 |
| 48— 51 | 24 | 233—237 | 72 |
| 52— 54 | 25 | 238—241 | 73 |
| 55— 58 | 26 | 242—246 (8 months) | 74 |
| 59— 62 (2 months) | 27 | 247—250 | 75 |
| 63— 65 | 28 | 251—255 | 76 |
| 66— 69 | 29 | 256—260 | 77 |
| 70— 73 | 30 | 261—264 | 78 |
| 74— 76 | 31 | 265—269 | 79 |
| 77— 80 | 32 | 270—273 (9 months) | 80 |
| 81— 83 | 33 | 274—278 | 81 |
| 84— 87 | 34 | 279—282 | 82 |
| 88— 91 (3 months) | 35 | 283—287 | 83 |
| 92— 94 | 36 | 288—291 | 84 |
| 95— 98 | 37 | 292—296 | 85 |
| 99—102 | 38 | 297—301 | 86 |
| 103—105 | 39 | 302—305 (10 months) | 87 |
| 106—109 | 40 | 306—310 | 88 |
| 110—113 | 41 | 311—314 | 89 |
| 114—116 | 42 | 315—319 | 90 |
| 117—120 | 43 | 320—323 | 91 |
| 121—124 (4 months) | 44 | 324—328 | 92 |
| 125—127 | 45 | 329—332 | 93 |
| 128—131 | 46 | 333—337 (11 months) | 94 |
| 132—135 | 47 | 338—342 | 95 |
| 136—138 | 48 | 343—346 | 96 |
| 139—142 | 49 | 347—351 | 97 |
| 143—146 | 50 | 352—355 | 98 |
| 147—149 | 51 | 356—360 | 99 |
| 150—153 (5 months) | 52 | 361—365 (12 months) | 100 |

B.  For Insurances written for more or less than one year:—
1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.
2.  If insurance has been in force for more than 12 months:
    a.  Determine full annual premium as for an insurance written for a term of one year.
    b.  Deduct such premium from the full insurance premium, and on the remainder calculate the *pro rata* earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.
    c.  Add premium produced in accordance with items (a) and (b) to obtain earned premium during full period insurance has been in force.

N.M.A. 45.

ILLINOIS

## CANCELLATION CLAUSE

NOTWITHSTANDING anything contained in this Insurance to the contrary, this Insurance may be cancelled by the Assured at any time by written notice or by surrender of this contract of insurance.

This Insurance may also be cancelled by or on behalf of the Underwriters by mailing notice of cancellation to the Named Assured, at the last mailing address known by Underwriters. The Resident Agent shall maintain proof of mailing of such notice on a recognized U.S. Post Office form, and a copy of such notice shall be sent to the agent of record and/or the Assured's broker. Where cancellation is for non-payment of premium, at least 10 days notice of cancellation shall be given. Otherwise notice of cancellation must be mailed at least 15 days prior to the effective date of cancellation during the first 180 days of coverage or at least 30 days prior to the effective date of cancellation if coverage has been in effect for more than 180 days.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. If the Insurance to which this is attached provides for a greater number of days notice than is provided herein, said greater number of days shall apply in event of cancellation.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

In the event of cancellation the earned premium shall be calculated as stated in the Insurance to which this is attached. If, the said Insurance does not provide for calculation of the earned premium, the following shall apply:—

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

N.M.A. 1941

| Detr... t Numbers of the Syndicates and Amount, ... | ...... | ...se Syndicates. |
| To    Sum Insured hereunder shared between the M... | | |

Percentages signed hereunder are percentages of 40% of the Limits

| FOR LPSO USE ONLY | BROKER | LPSO NO. & DATE | | |
|---|---|---|---|---|
| 2254 | 551 | 62202 23 | 7 | 82 |

| AMOUNT PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE |
|---|---|---|---|
| PERCENT | | | 1 |
| 3.48 | 219 | 977P | |
| 1.74 | 219 | 277P | |
| 6.96 | 918 | LG2HX13A2011 | |
| 1.04 | 653 | 707 | |
| 2.43 | 231 | 707 | |
| 8.70 | 126 | 505X25M821C | |
| 4.35 | 701 | 505X25M821C | |
| 2.61 | 553 | ABTH | |
| 1.74 | 471 | AXL485FRC182 | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1982/107

| TOTAL LINE | NO. OF SYND | FOR LPSO USE ONLY |
|---|---|---|
| 33.05 | 9 | 4091 |

ROLLINS BURDICK HUNTER OF ILLINOIS, INC.

ATTACHING TO AND FORMING PART OF POLICY NO. 551/UPA 0115

ADDENDUM NO. 1

It is hereby understood and agreed that this Policy is extended
to include Workers Compensation Act Liability and Federal
Longshoremen's and Harbor Workers' Act Liability in respect
of the State of Ohio as more fully defined in the Underlying
Umbrella Policy/ies as referred to in the wording of this
Policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

ATTACHING TO AND FORMING PART OF POLICY NO. 551/UPA 0115

ADDENDUM NO. 2

It is hereby understood and agreed this Policy is extended to
include Employee Benefit Liability as more fully described in the
Underlying Umbrella Policy/ies as referred to in the wording
of this Policy.

It is further understood and agreed that the above extension in
coverage shall not apply to any loss or claim based upon the
Employee Retirement Income Security Act of 1974, Public Law
93-406, commonly referred to as the Pension Reform Act of 1974,
and amendments thereto, or similar provisions of any Federal,
State or Local Statutory Law or Common Law.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

ATTACHING TO AND FORMING PART OF POLICY NO. 551/ UPA0115

ADDENDUM NO. 3

Where costs are not included in the "Ultimate Net Loss" or any similar definition contained in the Underlying Umbrella Policy/ies, the following shall be deemed to be additional Conditions to this wording:-

INCURRING OF COSTS

In the event of claim or claims arising which appear likely to exceed the Underlying Umbrella Limits, no costs shall be incurred by the Assured without the written consent of the Underwriters.

APPORTIONMENT OF COSTS

Costs incurred by or on behalf of the Assured with the written consent of the Underwriters and for which the Assured is not covered by the Underlying Umbrella Policy/ies shall be apportioned as follows:-

(i)     Should any claim or claims become adjustable prior to the commencement of trial for not more than the Underlying Umbrella Limits, then no costs shall be payable by the Underwriters.

(ii)    Should, however, the amount for which the said claim or claims may be so adjustable exceed the Underlying Umbrella Limits, then the Underwriters, if they consent to the proceedings continuing, shall contribute to the costs incurred by or on behalf of the Assured in the ratio that their proportion of the ultimate net loss as finally adjusted bears to the whole amount of such ultimate net loss.

(iii)   In the event that the Assured elects not to appeal a judgment in excess of the Underlying Umbrella Limits, the Underwriters may elect to conduct such appeal at their own cost and expense and shall be liable for the taxable court costs and interest incidental thereto, but in no event shall the total liability of the Underwriters exceed their limit of liability as provided for in the wording, plus the expenses of such appeal.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Attaching to and Forming Part of Policy No. 551/UPA 0115

ADDENDUM NO. 4

This Extension of Coverage is on a Claims Made Basis

It is hereby understood and agreed that the coverage
afforded by this Policy is extended to include liability
arising from the Assured's Railroad Products operations as
more fully described in the Underlying Umbrella Policy/ies
as referred to in the wording of this Policy.

Notwithstanding anything contained herein to the contrary
it is understood and agreed that this extension of
coverage shall only apply to claims first made during the Policy
period commencing 1st April, 1982 at 12.01 a.m. Local Standard
Time but only in respect of losses occurring during the period
8th January, 1973 to 1st April, 1982.

This Addendum No. 4 is subject otherwise to the terms and
conditions of the Policy of which it forms part and nothing
contained herein shall operate to increase Underwriters'
limit of liability of $25,000,000 in respect of any one
occurrence.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Attaching to and forming part of Policy No. 551/UPA 0115.

ADDENDUM NO. 5.

### PROFESSIONAL LIABILITY

#### THIS EXTENSION OF COVERAGE
#### IS ON A CLAIMS MADE BASIS

This Policy, subject to the terms and conditions hereof, is extended to include liability in respect of any claim or claims which are first made against the Assured during the period of this Policy and arising out of any negligent act, error or omission of the Assured in the rendering or failing to render professional services for others in the Assured's capacity as real estate agent, broker or real estate appraise or notary public, as more fully described in the underlying Umbrella Policy No. 63007776 issued to the Assured by Northbrook Excess and Surplus Insurance Company.

This Addendum No. 5 is subject otherwise to the terms and conditions of the Policy of which it forms part and nothing contained herein shall operate to increase Underwriters' limit of liability of $25,000,000 in respect of any one occurrence.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**UNDERWRITE**

J'

115, Sout

In the e'
under this P

# Lloyd's Policy

551/UPA0115



Lloyd's, London

J (A) (FORM)



# ORIGINAL
## Lloyd's Policy

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called "the Underwriters"),

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that we the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Si—'ng Office will be furnished to the Assured on

NOTICE TO POLICYHOLDER: "This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by an insurer not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund."

## ILLINOIS

**For the information of the Attorney-in-Fact.**

Illinois Brokers' Cover Note No. . . . . S L 3 0 0 4 . . . . .

Countersigning Date . . . . O C T 8 1 9 8 2 . . . .

l Manager of Lloyd's Policy Signing Office
L

**GNING OFFICE,**

GENERAL MANAGER.

*For Embossment by Lloyd's Policy Signing Office*

LLOYD'S SURPLUS LINE BROKERS
DEC 14 1984
Thomas L. Stevens
SION

The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to:

## SCHEDULE

| | | |
|---|---|---|
| Policy No. | 551 : | UPA0115 |

Name and Address
of the ~~Insured~~/Assured    :    I.C. Industries Inc. and Others as set forth
in the Underlying Umbrella Policy,
One Illinois Center,
111 East Wacker Drive, Chicago, Illinois 60601.

Premium    :    U.S.$70,000.00

**Period of Insurance**

From    1st April, 1982    to    1st April, 1983

both days    at 12.01 a.m. Local Standard Time

and for such further period or periods as may be mutually agreed upon.

Risk and Sum Insured hereunder:

As per wording attached hereto
which shall be taken and read
as forming an integral part
hereof.

D.A. Wilson

ROLLINS BURDICK HUNTER OF ILLINOIS, INC.

DEC 14 1984

Thomas L. Stevens

LLOYDS SURPLUS LINE BROKERS
SECRETARY
ASSOCIATION OF ILLINOIS

HERETO:    8.7000%    part of 100% of 40% of the Limits and Premium herein.

DATED in LONDON    19th September, 1984    JG/pw

## EXCESS UMBRELLA POLICY

### INSURING AGREEMENTS:

I   COVERAGE –

The Underwriters hereby agree, subject to the limitations, terms
and conditions hereinafter mentioned, to indemnify the Assured
for all sums which the Assured shall be obligated to pay by
reason of the liability caused by or arising out of the hazards
covered by and as more fully defined in the Underlying Umbrella
Policy/ies stated in Item 2 of the Declarations.

II   LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters
only after the Underlying Umbrella Insurers (as specified in Item 2
of the Declarations) have paid or have been held liable to pay the
full amount of their respective ultimate net loss liability as follows:

| | |
|---|---|
| $ (as stated in Item 3 of the Declarations) | ultimate net loss in respect of each occurrence, but |
| $ (as stated in Item 4 of the Declarations) | in the aggregate for each annual period during the currency of this Policy , separately in respect of each hazard insured with an aggregate limit in the Underlying Umbrella Policy/ies |

and the Underwriters shall then be liable to pay only the excess
thereof up to a further

| | |
|---|---|
| $ (as stated in Item 5 of the Declarations) | ultimate net loss in all in respect of each occurrence – subject to a limit of |
| $ (as stated in Item 6 of the Declarations) | in the aggregate for each annual period during the currency of this Policy , separately in respect of each hazard insured with an aggregate limit in the Underlying Umbrella Policy/ies. |

### CONDITIONS:

1.   PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –

It is agreed that if any loss covered hereunder is also covered in whole
or in part under any other excess policy issued to the Assured prior to
the inception date hereof the limit of liability hereon as stated in
Items 5 and 6 of the Declarations shall be reduced by any amounts due
to the Assured on account of such loss under such prior insurance.

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policy/ies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder. Provided always that this Policy shall not apply until the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss in accordance with Insuring Agreement II. Should, however, any alteration be made in the premium for the Underlying Umbrella Policy/ies during the currency of this Policy, Underwriters reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policy/ies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy, or by the operation of a clause contained in said Underlying Umbrella Policy/ies similar to Condition 1 above.

3.  **ASSISTANCE AND CO-OPERATION** –

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

4.  **CANCELLATION** –

This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by mailing written notice to the other party stating when, not less than thirty (30) days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this Policy shall be sufficient proof of notice, and the insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by Underwriters or their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been in force. If this Policy shall be cancelled by the Underwriters the Underwriters shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium with such notice.

5.  **OTHER INSURANCE** –

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is specifically stated to be in excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

6.    **NOTICE OF OCCURRENCE** –

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 8 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date would appear to give rise to claims hereunder, shall not prejudice such claims.

7.    **SERVICE OF SUIT CLAUSE** –

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 9 of the Declarations, and that in any suit instituted against any one of them upon this Policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The person or firm named in Item 9 of the Declarations are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this policy of insurance, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

## DECLARATIONS

**ITEM 1.**  a)  NAMED ASSURED: I.C. Industries Inc. and Others as set forth in the Underlying Umbrella Policy.

           b)  ADDRESS OF NAMED ASSURED:

                    One Illinois Center,
                    111 East Wacker Drive,
                    Chicago, Illinois 60601.

**ITEM 2.**  a)  UNDERLYING UMBRELLA POLICY NO(S):   63007776

           b)  UNDERLYING UMBRELLA INSURER(S):

                    Northbrook Excess and Surplus Insurance Company, Northbrook, Illinois.

**ITEM 3.**  UNDERLYING UMBRELLA LIMITS        $25,000,000
(Insuring Agreement II):

**ITEM 4.**  UNDERLYING UMBRELLA AGGREGATE      $25,000,000
LIMITS (Insuring Agreement II):

**ITEM 5.**  LIMIT OF LIABILITY.              $25,000,000
(Insuring Agreement II):

**ITEM 6.**  AGGREGATE LIMIT OF LIABILITY      $25,000,000
(Insuring Agreement II):

**ITEM 7.**  POLICY PERIOD:  1st April, 1982 to  1st April, 1983 both days at 12.01 a.m. Local Standard Time.

**ITEM 8.**  NOTICE OF OCCURRENCE (Condition 6) to:

                    Rollins, Burdick, Hunter & Co.,
                    10 South Riverside Plaza,
                    Chicago, Illinois 60606.

**ITEM 9.**  SERVICE OF PROCESS (Condition 7) upon:

                    Thomas L. Stevens,
                    115 South La Salle Street,
                    Chicago, Illinois. Page 4 of 4

XOD 2

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*
*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

This policy*                                                                                              does not apply:—

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction
    (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
    "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
    (a) any nuclear reactor,
    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
    With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1256


U.S.A.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording world wide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

INDUSTRIES. SEEPAGE. POLLUTION AND CONTAMINATION CLAUSE No. 3

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:

(1)  Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(2)  The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(3)  Fines, penalties, punitive or exemplary damages.

This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70
N.M.A. 1685

**U.S.A.**

### NEW SHORT RATE CANCELLATION TABLE ENDORSEMENT

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this insurance is written it is agreed that in the event of cancellation thereof by the Assured the earned premium shall be computed as follows:—

### SHORT RATE CANCELLATION TABLE

**A.  For Insurances written for one year:—**

| Days Insurance in force | Per cent. of One Year Premium | Days Insurance in force | Per cent. of One Year Premium |
|---|---|---|---|
| 1 | 5 | 154—156 | 53 |
| 2 | 6 | 157—160 | 54 |
| 3— 4 | 7 | 161—164 | 55 |
| 5— 6 | 8 | 165—167 | 56 |
| 7— 8 | 9 | 168—171 | 57 |
| 9— 10 | 10 | 172—175 | 58 |
| 11— 12 | 11 | 176—178 | 59 |
| 13— 14 | 12 | 179—182 (6 months) | 60 |
| 15— 16 | 13 | 183—187 | 61 |
| 17— 18 | 14 | 188—191 | 62 |
| 19— 20 | 15 | 192—196 | 63 |
| 21— 22 | 16 | 197—200 | 64 |
| 23— 25 | 17 | 201—205 | 65 |
| 26— 29 | 18 | 206—209 | 66 |
| 30— 32 (1 month) | 19 | 210—214 (7 months) | 67 |
| 33— 36 | 20 | 215—218 | 68 |
| 37— 40 | 21 | 219—223 | 69 |
| 41— 43 | 22 | 224—228 | 70 |
| 44— 47 | 23 | 229—232 | 71 |
| 48— 51 | 24 | 233—237 | 72 |
| 52— 54 | 25 | 238—241 | 73 |
| 55— 58 | 26 | 242—246 (8 months) | 74 |
| 59— 62 (2 months) | 27 | 247—250 | 75 |
| 63— 65 | 28 | 251—255 | 76 |
| 66— 69 | 29 | 256—260 | 77 |
| 70— 73 | 30 | 261—264 | 78 |
| 74— 76 | 31 | 265—269 | 79 |
| 77— 80 | 32 | 270—273 (9 months) | 80 |
| 81— 83 | 33 | 274—278 | 81 |
| 84— 87 | 34 | 279—282 | 82 |
| 88— 91 (3 months) | 35 | 283—287 | 83 |
| 92— 94 | 36 | 288—291 | 84 |
| 95— 98 | 37 | 292—296 | 85 |
| 99—102 | 38 | 297—301 | 86 |
| 103—105 | 39 | 302—305 (10 months) | 87 |
| 106—109 | 40 | 306—310 | 88 |
| 110—113 | 41 | 311—314 | 89 |
| 114—116 | 42 | 315—319 | 90 |
| 117—120 | 43 | 320—323 | 91 |
| 121—124 (4 months) | 44 | 324—328 | 92 |
| 125—127 | 45 | 329—332 | 93 |
| 128—131 | 46 | 333—337 (11 months) | 94 |
| 132—135 | 47 | 338—342 | 95 |
| 136—138 | 48 | 343—346 | 96 |
| 139—142 | 49 | 347—351 | 97 |
| 143—146 | 50 | 352—355 | 98 |
| 147—149 | 51 | 356—360 | 99 |
| 150—153 (5 months) | 52 | 361—365 (12 months) | 100 |

**B.  For Insurances written for more or less than one year:—**

1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

2.  If insurance has been in force for more than 12 months:

    a.  Determine full annual premium as for an insurance written for a term of one year.

    b.  Deduct such premium from the full insurance premium, and on the remainder calculate the *pro rata* earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

    c.  Add premium produced in accordance with items (a) and (b) to obtain earned premium during full period insurance has been in force.

N.M.A. 45.

<u>ILLINOIS</u>

## CANCELLATION CLAUSE

NOTWITHSTANDING anything contained in this Insurance to the contrary, this Insurance may be cancelled by the Assured at any time by written notice or by surrender of this contract of insurance.

This Insurance may also be cancelled by or on behalf of the Underwriters by mailing notice of cancellation to the Named Assured, at the last mailing address known by Underwriters. The Resident Agent shall maintain proof of mailing of such notice on a recognized U.S. Post Office form, and a copy of such notice shall be sent to the agent of record and/or the Assured's broker. Where cancellation is for non-payment of premium, at least 10 days notice of cancellation shall be given. Otherwise notice of cancellation must be mailed at least 15 days prior to the effective date of cancellation during the first 180 days of coverage or at least 30 days prior to the effective date of cancellation if coverage has been in effect for more than 180 days.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. If the Insurance to which this is attached provides for a greater number of days notice than is provided herein, said greater number of days shall apply in event of cancellation.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

In the event of cancellation the earned premium shall be calculated as stated in the Insurance to which this is attached. If, the said Insurance does not provide for calculation of the earned premium, the following shall apply:—

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

N.M.A. 1941

> Definitive Numbers of the Syndicates and Amount, Percentage or Proportion of the
> Total Sum Insured hereunder shared between the Members of those Syndicates.

Percentages signed hereunder are percentages of 40% of the Limits

| FOR LPSO USE ONLY | BROKER 551 | LPSO NO. & DATE 62836 23 | 7 | 82 | | |
|---|---|---|---|---|---|
| 2257 | | | | | |

| .AMOUNT PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE 1 |
|---|---|---|---|
| PERCENT | | | |
| 6.74 | 989 | 219MA2L9880C | |
| 0.65 | 279 | 219MA2L9880C | |
| 1.31 | 650 | 219MA2L9880C | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1982/   7

| TOTAL LINE 8.70 | NO. OF SYND 3 | 5D | FOR LPSO USE ONLY 1918 |
|---|---|---|---|

DEC 14 1984

LLOYD'S SURPLUS LINE BROKERS
Thomas L. Stevens
SECRETARY
ASSOCIATION OF ILLINOIS