UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WHITMAN INSURANCE COMPANY, LTD.** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**TRAVELERS INDEMNITY COMPANY, et al.,** )<br>)<br>**Defendants.** )<br>)<br>) | Civil Action No: 05-1125 (JGP) |

**LONDON MARKET INSURERS' OPPOSITION
TO WHITMAN'S MOTION FOR LEAVE TO FILE SURREPLY**

London Market Insurers oppose Whitman's motion for leave to file a surreply on the pending motion to dismiss. The proposed surreply is both procedurally improper and substantively defective.

**I.     The Surreply Is Procedurally Improper.**

The Court should not accept Whitman's proposed surreply as it is procedurally improper. While a surreply may be used to refute a new matter, appearing for the first time in a reply, it may not be used simply to rehash prior arguments. *Robinson v. The Detroit News, Inc.*, 211 F. Supp. 2d 101, 112 (D.D.C. 2002). Yet that is precisely what Whitman attempts here by rearguing the legal liability of each Name. Nor may a surreply be justified on the pretext that it serves to "correct the record." *See Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 270, 277 (D.D.C. 2002); *Lewis v. Rumsfield*, 154 F. Supp 2d 56, 64 (D.D.C. 2001) (an asserted "mischaracterization" does not constitute "new matter").

In all events, London Market Insurers submitted nothing in the record that Whitman needs to "correct." The declaration filed by London Market Insurers in their reply contained no "new" information as to the amount in controversy issues but merely responded to Whitman's prior mischaracterization of the policies in its opposition to the motion to dismiss. Instead of attaching the relevant policies when it filed its opposition, Whitman chose merely to characterize them. The fact that London Market Insurers challenged these characterizations in their reply does not open the door for Whitman to file a surreply. Courts routinely condemn attempts to prove in a surreply what should have been presented in the original opposition brief. *See, e.g., United States v. Baroid Corp.*, 346 F. Supp. 2d 138, 143-44 (D.D.C. 2004); *Pogue*, 238 F. Supp. 2d at 277. This tactic should similarly be denied here.

## II.    Whitman's New Factual Assertions Are Unfounded.

The proposed surreply is not only procedurally improper, it is also substantively unfounded. Under the guise of "correcting the record," Whitman continues to "hide the ball." For example, for the first time, as purported "proof" that the Whitman reinsured the alleged National Union policies,[1] the proposed surreply provides "samples" of "cover pages" of a "Facultative Reinsurance Agreement." Whitman declines, however, to attach the actual terms of these agreements and instead advances the incredible assertion that the cornerstone of its contention for the justiciability of its claim, its constitutional standing to bring suit, and its alleged satisfaction of the amount in controversy requirement is "confidential" and presumably therefore needs not be disclosed. See Surreply Memo at p.2, n. 3. It is unclear when, if ever, this "double secret probation" period will end for these crucial documents, but it is clear that this is

---

[1] It is unclear whether the National Union policies "reinsured" by Whitman and mentioned in ¶1 of the proposed surreply are the same National Union policies discussed in ¶2.

not the type of "proof" admissible at any point in these proceedings, let alone for the first time on surreply.

Whitman also uses the surreply as its unwarranted opportunity to submit, finally, some of the policy documentation on which it bases this action, including documentation for many London Market policies. Whitman contends that each of these policies contains what it refers to as the "supplemental defense obligation" set forth in Addendum No. 3, and some of the policies "follow form" to an underlying National Union policy. The National Union policy, Whitman assures the Court, contains "a similar supplemental defense obligation," although it does not recite the language of this purported provision or explain how it is relevant to the amount in controversy issue. On closer inspection, Whitman's contentions remain unsupported, and the Court should reject them.

First, it should be recalled how Whitman initially injected the Addendum No. 3 point into this case. It did so in its opposition to the motion to dismiss by quoting its language and representing that it was featured in each of the London Market policies. Yet the opposition did not attach the London Market policies. The limited policy documentation available to London Market Insurers confirmed Addendum No. 3 as included in only one policy year – 1980 to 1981.[2] London Market Insurers therefore duly attached that policy language to their reply brief. They attached as well the language from what they believed to be the underlying Northbrook umbrella policy showing that the London Market policies are not costs-in-addition policies and contain no

---

[2] It is an accepted and well understood practice in the London Insurance Market that policyholders and their brokers are responsible for preserving their own policy information, and it is their obligation to produce their policies in support of any claim. Hence, it is not surprising that London Market Insurers may have incomplete policy information in the instant case, let alone policies of other insurers, and it is unconscionable that Whitman, as the purported policyholder's captive, should continuously substitute mere characterizations for the policy language itself and only proffer such language when caught in a mischaracterization.

supplemental defense obligation. In short, their reply brief raised no new matter that Whitman could not have dealt with in its opposition brief.

Whitman does not now contest London Market Insurers' submission as to the absence of any supplemental defense cost obligation with respect to the London policies that sit in excess of the Northbrook policy. Instead, Whitman asserts that other London policies are in excess of a different umbrella, a National Union policy BE1338972. (Despite the voluminous exhibits submitted to the Court, only four exhibits concern London Market coverage that is in excess of National Union.) Incredibly, even now Whitman fails to attach the underlying National Union policy, instead simply characterizing that policy as containing an unlimited supplemental defense obligation. Further complicating the issue, Whitman's earlier opposition brief asserted that policy BE1338972 incorporates the terms and conditions of another National Union policy, primary policy GLA9184801, but its proposed surreply does not even characterize what the primary policy provides in respect of defense costs much less attach this policy for the Court's inspection.

The Court should not countenance this sleight of hand. A surreply should not provide Whitman yet another occasion to make unsupported characterizations when Whitman could have produced the source material itself when it filed its opposition brief. Instead of attaching the National Union policy, Whitman contends that a copy of that policy was provided in the so-called Related Abex Action. However, London Market Insurers are not parties in that case, and that matter is sealed. The Court cannot take judicial notice under F.R. Evid. 201 of information to which London Market Insurers are not permitted access. *See Farrell v. Woodham*, 2002 WL

321076 44 (M.D. Fla. May 29, 2002) at *3 (declining judicial notice of matters under seal.) (attached as Exhibit A).[3]

Finally, and importantly, even accepting Whitman's characterizations at face value – that the underlying National Union policy contains an unlimited defense obligation and the related London policies contain Addendum No. 3 – the ultimate point in London Market Insurers' reply brief remains intact. Whatever obligation National Union has in respect of defense costs, and assuming, arguendo, that the conditions precedent to the application of Addendum 3 are met, this addendum imposes costs on London Market Insurers only to the extent that they consent to them. It remains undisputed that their consent has never been requested, and it certainly has never been given. Hence, there is no basis for a claim that this action could result in an award against London Market Insurers for supplemental defense costs beyond their policies' stated indemnity limits.[4]

We comment briefly on a number of other statements contained in Whitman's proposed surreply. The first concerns Whitman's "new evidence" of a letter it submitted to the Judge in New York as "proof" that Pneumo Abex supports the stay of the New York case. The fact remains that counsel representing Pneumo Abex sent the letter attached as Exhibit 18 to the Serotta Declaration to the Judge in New York, specifically stating that Pneumo Abex opposes the stay. That counsel properly spoke for Pneumo Abex in this letter is confirmed by attached

---

[3]     Of course, even if this court were inclined to take judicial notice of the National Union policy, it could only take judicial notice of the fact that such a policy existed, and not of its contents. *See Whitaker v. Garcetti*, 291 F. Supp. 2d 1132, 1141, n. 15 (C.D. Cal. 2003).

[4]     Even if Addendum No 3 applied to all London policies, it would only apply once per occurrence and not 21 times. This is because all of the London policy documentation supplied by Whitman contain a Prior Insurance and Non-Cumulation of Liability Clause as Condition 1, the purpose of which is to restrict liability to a single policy's limit for an occurrence continuing into multiple policy periods. Such clauses are effective. *See, e.g., Liberty Mutual Ins. Co. v. Treesdale, Inc.*, 418 F. 3d 330 (3d Cir. 2005). Thus, under Whitman's "one occurrence" theory, only a single limit would be applicable, and Addendum No. 3, dependent upon the payment of a limit or a portion thereof to be triggered, would come into play only once.

Exhibit B, a copy of a Stipulation and Order of Substitution of Counsel attesting that Jones Day was substituted as counsel for <u>both</u> Cooper Industries <u>and</u> Pneumo Abex in the New York action.

Second, London Market Insurers attached proof to the Serotta Declaration that Policy ULL0122 had a coverage period from January 5, 1979 to April 1, 1980, with a single potential aggregate limit counting towards the amount in controversy. Whitman no longer refutes this. Nor does it now contend that Addendum No. 3 is contained in the pre-1980 London Market policies, as no evidence has been offered on this point.

Third, Whitman admits that policy UQA0087, attached as Exhibit 10 to the Chefitz Supplemental Declaration, contains the following endorsement:

### Clarification of Intent Addendum

> It is understood and agreed that the self-insured retention of $250,000 each occurrence provided for in the primary comprehensive General Liability policy (as listed in the Schedule of Underlying Insurance attached to the Underlying Umbrella Policy and which is to apply on a worldwide basis provided suits are brought in the United States of America), shall be applied on an each and every claimant basis but only in respect of claims of sickness caused (wholly or partly) by asbestos products, or so deemed for the purposes of this Policy.
>
> It is further understood and agreed that such self-insured retention will not be subject to any aggregate limitation.
>
> All other terms and conditions remain unchanged.

This addendum also appears at least in London Market policies URA0059 and URA0060, as shown in the documents submitted in these defendants' reply. Thus, the record reflects that this endorsement appears in the London Market policies that Whitman alleges "follow form" to the National Union policies.[5] Thus, these London Market policies sit above an unaggregated $250,000 each occurrence self-insured retention which is applied on an each and every claimant

---

[5] London Market Insurers dispute that they "follow form" to the National Union primary.

basis. Therefore, the London Market policies in effect above the National Union policies do not pay costs-in-addition nor contain any supplemental defense obligation.

In short, Whitman's proposed surreply adds nothing to its contention that Mr. Lowsley-Williams faces possible exposure beyond his share of the policy limits to which he subscribed, a share that indisputably cannot reach the $75,000 minimum amount in controversy.

## Conclusion

For all of the foregoing reasons, London Market Insurers respectfully request that the Court deny Whitman's motion to file a surreply. In the alternative, should the Court grant the request, London Market Insurers respectfully request that the court consider this submission a rebuttal.

Respectfully Submitted,

*[signature: Michael J. Zoeller]*

Martin Baach, No. 210377
Michael J. Zoeller, No. 426476
Baach Robinson & Lewis PLLC
Attorneys for Defendants
Certain Underwriters at Lloyd's, London
and Certain London Market Companies
1201 F Street, NW, Suite 500
Washington, D.C. 2004
(Tel) 202-833-8900
(Fax) 202-466-5738

*Of Counsel*:
    Eileen T. McCabe, Esq.
    Stephen T. Roberts, Esq.
    Alexander J. Mueller, Esq.
    MENDES & MOUNT, LLP
    Attorneys for Defendants
    Certain Underwriters at Lloyd's, London
    750 Seventh Avenue
    New York, New York 10019-6829
    (212) 261-8000 (telephone)
    (212) 261-8750 (facsimile)